# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated, | **Civil Action No.:** |
| Plaintiff(s), | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, and RICHARD K. PALMER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Victor Pirnik ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Fiat Chrysler Automobiles N.V. ("Chrysler" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a class action on behalf of purchasers of Chrysler securities between August 1, 2014 and July 24, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Chrysler is an automotive group that designs, engineers, manufactures, distributes and sells vehicles and components.  The Company offers passenger cars, light trucks, and light commercial vehicles under brand names including Chrysler, Dodge, Fiat, Jeep, and Ram. Chrysler provides retail and dealer financing, leasing, and rental services, as well as engages in media and publishing business.  The Company sells its products directly, or through distributors and dealers, in approximately 150 countries.

3.      The Company was founded in October 2014 as the result of a merger that completed the integration of Fiat Group Automobiles ("Fiat") and Chrysler LLC ("Chrysler"). Chrysler is incorporated in the Netherlands, with headquarters in London, United Kingdom.  Its shares trade on the NYSE under the ticker symbol "FCAU."

4.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) flaws in the Company's manufacturing processes, supply chain, electronic security measures, and/or quality control rendered at least 3.1 million Chrysler cars and trucks unsafe to drive; (ii) the Company's slow completion rates for recalls, slow or inadequate notifications to consumers, and faulty approaches to addressing safety issues and improper actions by dealers were not in compliance with federal laws and regulations; and (iii)

as a result of the foregoing, Defendants' statements about Chrysler's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

5.     On June 28, 2015, the Company announced a recall that included model-year 2015 Jeep Grand Cherokee and Dodge Durango SUVs.  The Company advised approximately 65 vehicle owners to immediately stop driving their vehicles, and further stated in relevant part:

> [The recalled vehicles] may have been inadvertently equipped with improperly heat-treated suspension components.  This condition, which was not apparent during the assembly process, could lead to component breakage, rear-end instability and/or reduced braking power. . . .
>
> Additional vehicles numbering approximately 7,690 are also subject to recall because they were built during the same eight-day period as the 65 in the field.

6.     On this news, the Company's stock fell $1.06, or roughly 6.8%, to close at $14.53 on June 29, 2015.

7.     On July 24, 2015, Chrysler issued a recall affecting approximately 1.4 million Jeep Grand Cherokee and Dodge Durango SUVs after it was demonstrated that a security flaw in the vehicles' systems rendered the vehicles vulnerable to remote electronic manipulation ("hacking"), including cutting the vehicle's brakes, shutting down the vehicle's engine, steering the vehicle off the road, and shutting down the vehicle's electronics systems.

8.     On this news, the Company's stock fell $0.39, or 2.5%, to close at $15.15 on July 24, 2015.

9.     On Sunday, July 26, 2015, the NHTSA announced its imposition on the Company of a record $105 million fine in connection with the Company's handling of 23 previous recalls affecting more than 11 million vehicles.  The NHTSA penalties were tied to violations in an array of areas, including misleading regulators, inadequate repairs, and failure to alert affected car owners in a timely manner.  The NHTSA stated, in part:

3

*Fiat Chrysler's pattern of poor performance put millions of its customers, and the driving public, at risk.* This action will provide relief to owners of defective vehicles, will help improve recall performance throughout the auto industry, and gives Fiat Chrysler the opportunity to embrace a proactive safety culture.

(Emphasis added.)

10.    On this news, the Company's stock fell $0.74, or roughly 4.9%, to close at $14.41 on July 27, 2015.

11.    On September 4, 2015, Chrysler issued a recall notice affecting approximately 7,810 Jeep Renegade SUVs, reflecting further hacking concerns.

12.    On this news, the Company's shares fell $0.27, or 1.9%, to close at $13.60 on September 4, 2015.

13.    On September 10, 2015, Chrysler issued further recall notices affecting nearly 1.7 million recent-model Ram pickups, addressing faulty wiring harnesses, airbags, and steering components.

14.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

15.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

16.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

17.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the

alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

18.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

19.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Chrysler common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

20.     Defendant Chrysler is a Netherlands corporation with its principal executive offices located at 25 St. James's Street, London SW1A 1HA, United Kingdom.  Chrysler's common stock trades on the NYSE under the ticker symbol "FCAU."

21.     Defendant Sergio Marchionne ("Marchionne") has served at all relevant times as Chief Executive Officer and Executive Director of Chrysler.

22.     Defendant Richard K. Palmer ("Palmer") has served at all relevant times as Chief Financial Officer of Chrysler.

23.     The defendants referenced above in ¶¶ 21-22 are sometimes collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Chrysler is an automotive group that designs, engineers, manufactures, distributes and sells vehicles and components.  It offers passenger cars, light trucks, and light commercial vehicles under brand names including Chrysler, Dodge, Fiat, Jeep, and Ram.  Chrysler provides retail and dealer financing, leasing, and rental services, as well as engages in media and publishing business.  The Company sells its products directly, or through distributors and dealers, in approximately 150 countries.

25.     The Company was founded in October 2014 as the result of a merger that completed the integration of Fiat and Chrysler.  Chrysler is incorporated in the Netherlands, with headquarters in London, United Kingdom.  Its shares trade on the NYSE under the ticker symbol "FCAU."

### Materially False and Misleading
### Statements Issued During the Class Period

26.     The Class Period begins on August 1, 2014, when Fiat shareholders approved the merger of Fiat into Chrysler.  On October 12, 2014, the merger was finalized, and on October 13, 2014, the newly merged company's common stock started trading on the NYSE under the ticker symbol "FCAU."

27.     On October 29, 2014, Chrysler issued a press release and filed a Form 6-K with the SEC which was signed by defendant Palmer, announcing its financial and operating results for the quarter and nine months ended September 30, 2014 (the "October 29, 2014 6K").  For the quarter, net profit was €188 million on revenue of €23.6 billion, compared to a net profit of €189 million on revenue of €20.7 billion for the same period in the prior year.  For the nine months, net profit was €212 million, or €0.132 per share, on revenue of €69.01 billion, compared to a net

profit of €655 million, or €0.036 per share, on revenue of €62.7 billion for the same period in the prior year.

28.     On November 5, 2014, Chrysler filed a Form 6-K with the SEC which was signed by defendant Palmer, appending as an exhibit an Interim Report reiterating the Company's previously announced financial and operating results for the quarter and nine months ended September 30, 2015 (the "November 6, 2014 6-K").  In addition to the information announced in the Company's October 29, 2014 6-K, the November 5, 2014 6-K reported net profit of €0.142 per diluted share for the quarter, compared to a net loss of €0.013 per diluted share for the same period in the prior year, and net profit of €0.130 for the nine months, compared to a net profit of €0.036 for the same period in the prior year.

29.     On December 11, 2014, Chrysler issued a press release and filed with the SEC (i) a prospectus on Form 424B4 offering 87 million shares of the Company's common stock; and (ii) a prospectus on Form 424B4 offering $2.5 billion aggregate amount of the Company's mandatory convertible securities (collectively, the "Prospectuses").  Each of the Prospectuses reiterated the Company's previously announced financial and operating results for the quarter ended September 30, 2015.

30.     On January 28, 2015, Chrysler issued a press release and filed a Form 6-K with the SEC which was signed by defendant Palmer, announcing its financial and operating results for the quarter and the fiscal year ended December 31, 2014 (the "January 28, 2015 6-K").  For the quarter, net profit was €420 million, or €0.329 per share, on revenue of €27.1 billion, compared to a net profit of €1.3 billion, or €0.707 per share, on revenue of €23.9 billion for the same period in the previous year.  For the year, net profit was €0.6 billion, or €0.465 per share,

on revenue of €96.1 billion, compared to a net profit of €1.95 billion, or €0.744 per share, on revenue of €86.6 billion for 2013.

31.     On March 5, 2015, Chrysler issued a press release and filed an Annual Report on Form 20-F with the SEC which was signed by defendant Palmer, and reiterated the Company's previously announced financial and operating results for the fiscal year ended December 31, 2014 (the "2014 20-F").  In addition to the information announced in the Company's January 28, 2014 6-K, the 2014 20-F reported a net profit of €0.460 per diluted share, compared to a net profit of €0.736 per diluted share for 2013.  The 2014 20-F appended as exhibits signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by defendants Marchionne and Palmer, stating that the financial information contained in the 2014 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     The 2014 20-F stated, in part:

> At Chrysler, we take transportation safety personally. ***Customers trust the quality and safety of our products, and we constantly do our utmost to warrant this confidence.*** . . .
> In addition, the safety organizations in Chrysler's four regions . . . constantly share information and best practices in order to harmonize design guidelines and processes. ***Safety design guidelines are implemented from the concept phase of every new model through the release of detailed design specifications to all the providers of sub-systems for the vehicle.***
> Our overall approach recognizes that safer highways, improved traffic management and driver education all have a role to play in enhancing safety on the road. That is why we strive to connect our safety efforts to a collective goal we share with our employees, drivers, dealers, suppliers, law enforcement, regulators and researchers.

(emphases added).

33.     On April 29, 2015, Chrysler issued a press release and filed a Form 6-K with the SEC which was signed by defendant Palmer, announcing its financial and operating results for the first quarter of 2015 (the "April 29, 2015 6-K").  Net profit was €92 million, or €0.052 per

diluted share, on revenue of €26.4 billion, compared to a net loss of €173 million, or €0.155 per diluted share, on revenue of €22.1 billion for the same period in the prior year.

34.     On May 5, 2015, Chrysler filed a Form 6-K with the SEC which was signed by defendant Palmer, appending as an exhibit an Interim Report reiterating the Company's previously announced financial and operating results for the quarter ended March 31, 2015 (the "May 5, 2015 6-K").

35.     The statements referenced in ¶¶ 26-34 were materially false and misleading because defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) flaws in the Company's manufacturing processes, supply chain, electronic security measures, and/or quality control rendered at least 3.1 million Chrysler cars and trucks unsafe to drive; (ii) the Company's slow completion rates for recalls, slow or inadequate notifications to consumers, and faulty approaches to addressing safety issues and improper actions by dealers were not in compliance with federal laws and regulations; and (iii) as a result of the foregoing, the Company's financial statements were false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Begins to Emerge**

36.     On June 28, 2015, the Company announced a recall that included model-year 2015 Jeep Grand Cherokee and Dodge Durango SUVs.  The Company advised approximately 65 vehicle owners to immediately stop driving their vehicles, and further stated in relevant part:

> [The recalled vehicles] may have been inadvertently equipped with improperly heat-treated suspension components.  This condition, which was not apparent during the assembly process, could lead to component breakage, rear-end instability and/or reduced braking power. . . .

9

Additional vehicles numbering approximately 7,690 are also subject to recall because they were built during the same eight-day period as the 65 in the field.

37.     On this news, the Company's stock fell $1.06, or roughly 6.8%, to close at $14.53 on June 29, 2015.

38.     On July 24, 2015, Chrysler issued a recall affecting approximately 1.4 million Jeep Grand Cherokee and Dodge Durango SUVs after it was demonstrated that a security flaw in the vehicles' systems rendered the vehicles vulnerable to remote electronic manipulation ("hacking"), including cutting the vehicle's brakes, shutting down the vehicle's engine, steering the vehicle off the road, and shutting down the vehicle's electronics systems.

39.     On this news, the Company's stock fell $0.39, or 2.5%, to close at $15.15 on July 24, 2015.

40.     On Sunday, July 26, 2015, the NHTSA announced its imposition on the Company of a record $105 million fine in connection with the Company's handling of 23 previous recalls affecting more than 11 million vehicles.  The NHTSA penalties were tied to violations in an array of areas, including misleading regulators, inadequate repairs, and failing to alert affected car owners in a timely manner.  The NHTSA stated, in part:

> ***Fiat Chrysler's pattern of poor performance put millions of its customers, and the driving public, at risk.***  This action will provide relief to owners of defective vehicles, will help improve recall performance throughout the auto industry, and gives Fiat Chrysler the opportunity to embrace a proactive safety culture.

(Emphasis added.)

41.     On this news, the Company's stock fell $0.74, or roughly 4.9%, to close at $14.41 on July 27, 2015.

42.     On September 4, 2015, Chrysler issued a recall notice affecting approximately 7,810 Jeep Renegade SUVs, reflecting further hacking concerns.

10

43.    On this news, the Company's shares fell $0.27, or 1.9%, to close at $13.60 on September 4, 2015.

44.    On September 10, 2015, Chrysler issued recall notices affecting nearly 1.7 million recent-model Dodge Ram pickups, addressing faulty wiring harnesses, airbags, and steering components.

45.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Chrysler securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

47.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Chrysler securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Chrysler or its transfer agent and may be notified

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Chrysler;

- whether the Individual Defendants caused Chrysler to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Chrysler securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

52.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Chrysler securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Chrysler securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Chrysler securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Chrysler securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

58.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Chrysler securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Chrysler's finances and business prospects.

59.     By virtue of their positions at Chrysler, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Chrysler securities from their personal portfolios.

61.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Chrysler, the Individual Defendants had knowledge of the details of Chrysler's internal affairs.

62.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Chrysler. As officers and/or directors of a publicly-held company, the Individual Defendants

had a duty to disseminate timely, accurate, and truthful information with respect to Chrysler's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Chrysler securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Chrysler's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Chrysler securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

63.     During the Class Period, Chrysler securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Chrysler securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Chrysler securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Chrysler securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

64.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

66.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67.     During the Class Period, the Individual Defendants participated in the operation and management of Chrysler, and conducted and participated, directly and indirectly, in the conduct of Chrysler's business affairs.  Because of their senior positions, they knew the adverse non-public information about Chrysler's misstatement of income and expenses and false financial statements.

68.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Chrysler's financial condition and results of operations, and to correct promptly any public statements issued by Chrysler which had become materially false or misleading.

69.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

17

releases and public filings which Chrysler disseminated in the marketplace during the Class Period concerning Chrysler's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Chrysler to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Chrysler within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Chrysler securities.

70.     Each of the Individual Defendants, therefore, acted as a controlling person of Chrysler. By reason of their senior management positions and/or being directors of Chrysler, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Chrysler to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Chrysler and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

71.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Chrysler.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:   September 11, 2015

Respectfully submitted,

**POMERANTZ LLP**

_____

Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com
          mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, _Victor Pirwik_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Fiat Chrysler Automobiles N.V. ("Fiat Chrysler" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Fiat Chrysler securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Fiat Chrysler securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Fiat Chrysler securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed ___6/29/15___
         /(Date)

_____
(Signature)

_Victor Pirwik_
(Type or Print Name)

### SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 5/29/2015 | Purchase | 100 | 16.088 |
| 5/6/2015 | Purchase | 100 | 15.63 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |