# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 20, 2015

Via ECF

The Honorable Jesse M. Furman,
   United States District Judge,
      United States District Court for the Southern District of New York,
      Thurgood Marshall United States Courthouse,
         40 Foley Square,
            New York, New York 10007.

      Re:   *Pirnik* v. *Fiat Chrysler Automobiles N.V. et al.*,
            No. 15 Civ. 7199 (JMF)

Dear Judge Furman:

      On behalf of Defendants Fiat Chrysler Automobiles N.V., Sergio Marchionne and Richard K. Palmer, I write concerning the Court's November 13, 2015 Order requesting that proposed co-lead plaintiffs, Gary Koopmann and Timothy Kidd, provide additional information concerning their claimed ability to represent fairly and adequately the interests of the putative shareholder class.

      The brief submitted by Messrs. Koopmann and Kidd in support of their motion for appointment as co-lead plaintiffs and to approve their selection of counsel (Docket No. 15) provides no information about their qualifications to fulfill the duties of co-lead plaintiffs, other than a conclusory recitation of the standard under the Private Securities Litigation Reform Act ("PSLRA"). (*Id.* at 1, 5-8.) Tellingly, as to each of their "qualifications," Messrs. Koopmann and Kidd are referred to collectively, with no attempt to distinguish between them or their "qualifications." In fact, Messrs. Koopmann and Kidd appear to be entirely unrelated plaintiffs who have been paired by two separate law firms for the sole purpose of making this application and allowing both firms to serve as lead counsel.

      The formation of a group of unrelated plaintiffs to serve as co-lead plaintiffs is generally disfavored. In this District, courts have held that "[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff" under the PSLRA. *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (Cedarbaum, J.) ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage

lawyers to direct the litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.").[1] As a result, courts in this District repeatedly have refused to allow unrelated plaintiffs to serve as co-lead plaintiffs. *See, e.g., In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (Rakoff, J.) (rejecting proposed group, which was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff'"); *In re Tarragon Corp. Sec. Litig.*, 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) (stating that there was "no evidence that the members of these groups have ever communicated with other members of their respective group or will do so in the future"); *Goldberger v. PXRE Grp.*, 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007) (Karas, J.) (rejecting proposed group that "shares only this lawsuit in common," because group reflected the "type of lawyer-driven action that the PSLRA eschews").

Accordingly, when unrelated investors seek to join together as a lead-plaintiff group, the Court should assess whether the proposed grouping would best serve the putative class. *See, e.g., Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (Marrero, J.). A "proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers." *Id.* In this District, courts have considered: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id.*

The brief filed by Messrs. Koopmann and Kidd does not address any of these factors for assessing whether investors can form a group. For instance, Messrs.

---

[1] In enacting the lead plaintiff provisions in the PSLRA, Congress was concerned about costs of "lawyer driven" securities class action litigation. *See* Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369, at 31-32 (1995). Congress enacted the lead plaintiff provisions "to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, [would] participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." *Id.* at 32. Congress further "believe[d] that increasing the role of institutional investors in class actions [would] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." *Id.* at 34. The fact that no institutional investors have sought to serve as lead plaintiff (but, instead, individuals who allege that they lost less than $16,000 collectively) confirms that this action is a lawyer-driven strike suit.

Koopmann and Kidd have not provided any information regarding the formation of their "group," whether they have any pre-litigation relationship, whether either of them has any experience as a lead plaintiff in securities class action litigation, or any factual basis to think that they are likely to be able to work together effectively in litigating this action, rather than merely delegating the management of this action to their attorneys. The motion also offers no evidence from which this Court can satisfy itself that "the lawyers [did not] seek the lead plaintiff." *In re Donnkenny*, 171 F.R.D. at 158.

Accordingly, the Court should require Messrs. Koopmann and Kidd to provide sufficient information—including, but not limited to, specific information responsive to each of the *Varghese* factors listed above—establishing that they can adequately represent the interests of the putative class. The appointment of two unrelated persons as co-lead plaintiffs will burden the Court and prejudice Defendants by injecting two law firms into this case when one firm would suffice.

Respectfully,

Robert J. Giuffra, Jr.

cc: Jeremy A. Lieberman, Esq. (via ECF)
(Pomerantz LLP)

Phillip Kim, Esq. (via ECF)
(The Rosen Law Firm, P.A.)