UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY KOOPMANN, TIMOTHY KIDD and VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, RICHARD K. PALMER, and SCOTT KUNSELMAN<br><br>Defendants. | Civ. Action No: 15-cv-07199-JMF |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION REQUESTING JUDICIAL NOTICE**

Pursuant to the Court's directives at the May 25, 2017 status conference, Lead Plaintiffs Gary Koopmann and Timothy Kidd and Plaintiff Victor Pirnik ("Plaintiffs") submit this supplemental memorandum of law concerning the implications of the DOJ Complaint and stock prices and volume of Fiat Chrysler Automobiles N.V. (referenced in Plaintiffs' Motion Requesting Judicial Notice (Dkt. No 102-04)) on Defendants' pending Motion to Dismiss The Emissions-Related Claims from the TAC.  (Dkt. 92).

## INTRODUCTION

On May 23, 2017, the Department of Justice ("DOJ") filed a complaint in the Eastern District of Michigan asserting that Defendant FCAU, its United States subsidiary FCA US LLC and other entities violated federal law because, *inter alia*,

> "Defendants illegally sold or caused the illegal sale of approximately 103,828 diesel-fueled new motor vehicles . . . that do not comply with the [Clean Air] Act. The applications for Certificates of Conformity ("COC") for the Subject Vehicles ***did not disclose at least eight software-based features*** that affect the Subject Vehicles' emission control system. . . . In addition, one or more of these undisclosed software features, alone or in combination with one or more of the others, ***bypass, defeat and/or render inoperative the Subject Vehicles' emission control system, causing the vehicles to emit substantially higher levels of NOx during certain normal real world driving conditions than during federal emission tests***.

DOJ Complaint (Dkt. No 104-1), ¶ 2 (emphasis supplied).  Furthermore, "[t]he United States alleges, subject to a reasonable opportunity for further investigation or discovery, that ***members of FCA NV management were involved in the process of gathering and/or approving certain information regarding FCA US' submissions as part of its COC applications for the Subject Vehicles***."  *Id*. ¶ 83 (emphasis supplied).

On May 23, 2017, FCAU's stock price declined from $10.89 at 9:30 a.m. to $10.32 at 4:00 p.m., a decline of 5.2%, on unusually high volume of 26,270,000 shares. *See* https://finance.yahoo.com/quote/FCAU/history?p=FCAU.

On May 24, 2017 Plaintiffs filed a Motion for Judicial Notice, requesting that the Court take judicial notice of: 1) the DOJ Complaint and 2) the price and volume of FCAU stock. (Dkt.

1

No. 102-04). At the May 25, 2017 status conference the Court stated that it would grant the Motion for Judicial Notice as uncontested and provide the parties with "an opportunity to submit a supplemental brief on what bearing, if any, the Department of Justice's complaint and the stock price has on the pending motion." May 25, 2017 Hearing Transcript (attached hereto as Exhibit A) at 4:9-13.

Plaintiffs respectfully submit that, irrespective of the truth of the allegations contained in the DOJ complaint, the fact that the DOJ has filed a complaint accusing FCAU of illegally selling the same diesel vehicles that are at issue in the TAC with illegal defeat devices further supports Defendants' scienter, requiring denial of Defendants' pending Motion to Dismiss.

Relatedly, the significant decline in FCAU's stock price and heavy trading volume following this news demonstrates the importance to investors of FCAU's complying with emissions regulations, which in turn demonstrates motive to mislead and supports scienter (*See,* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. No. 96 at 22-23).

**The DOJ Complaint Supports Scienter**

As noted in Plaintiffs' Motion Requesting Judicial Notice "[c]ertainly, courts have considered a governmental investigation as one piece of the puzzle when taking a 'holistic' view of the purported facts as they relate to scienter." *In re Gentiva Sec. Litig.*, 932 F. Supp.2d 352, 380 (E.D.N.Y. 2013). Here, the very fact that the DOJ filed a complaint against FCAU alleging the same underlying misconduct concerning emissions violations as alleged in the TAC supports an inference of scienter, irrespective of the truth of the facts alleged in the DOJ Complaint. Judge Crotty's opinion in *VanLeeuwen v. Keyuan Petrochemicals, Inc.*, 2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014) illustrates this. In *VanLeeuwen*, plaintiffs alleged that defendants engaged in illegal undisclosed related party transactions. 2014 WL 3891351 at *3. Plaintiffs' complaint relied on an SEC civil fraud action against defendants, in part, for nondisclosure of related party transactions. *Id*. at *4. Judge Crotty rejected defendants' argument that plaintiffs could not rely on allegations taken from the SEC's complaint to establish scienter, stating "While these facts may not be admissible at trial, '[t]here is no absolute rule barring a private plaintiff

2

from relying on government pleadings of proceedings in order to meet the rule 9(b) and PSLRA thresholds.' In fact, this Court has held that 'there is nothing improper about utilizing information contained in an SEC complaint as evidence to support private claims under the PSLRA.'" *Id.*, quoting *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012) (quoting *SEC v. Lee*, 720 F. Supp. 2d 305, 340 (S.D.N.Y. 2010). *See also In re Bristol Myers Squibb Co. Sec. Litig.,* 586 F.Supp.2d 148, 168 (S.D.N.Y.2008) (including an investigation by the Department of Justice as one of the elements in the scienter analysis); *In re Enron Corp. Sec., Derivative \*115 & ERISA Litig.,* 235 F.Supp.2d 549, 688 (S.D.Tex.2002) (including facts "unearthed in current investigations by the SEC" in the scienter analysis).

Moreover, courts have repeatedly held that Plaintiffs are permitted to rely on complaints filed by governmental entities such as the SEC and DOJ to support scienter. As this court has noted "it would have been irresponsible for plaintiff to have ignored the SEC's highly relevant allegations and findings." *de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003). This is because, the DOJ, as a responsible agency, would not have filed a complaint unless it had exhaustively investigated the claims. *See Hawaii Ironworkers Annuity Trust Fund v. Cole*, 2011 WL 1257756 (N.D. Ohio March 31, 2011) ("Plaintiff suggests that the SEC should be taken at its word, stating that 'There is no doubt that the SEC-having conducted a three-year-long investigation…had ample support for the information it publicly disclosed following its investigation'…I find support for plaintiff's position in *SEC v. Lee,* 720 F.Supp.2d 305, 341 (S.D.N.Y. 2010) which acknowledged that 'there is nothing improper about utilizing information contained in an SEC complaint as evidence to support private claims under the PSLRA..'").

Additionally, the filing of the DOJ Complaint renders moot Defendants' assertion that no governmental entity has accused FCAU of using illegal defeat devices. Indeed, throughout their Motion to Dismiss, Defendants accuse Plaintiffs of mischaracterizing the fact that governmental entities had accused FCAU of using illegal defeat devices. *See, e.g.,* Motion to Dismiss at p. 9 ("The TAC misleadingly alleges that the EPA and CARB concluded in the NOVs that the

3

vehicles addressed by the NOVs included 'defeat devices.'"); Motion to Dismiss at p. 4, fn. 1; ("Contrary to Plaintiffs' conclusory allegations that 'these AECDs were illegal' because 'the Clean Air Act expressly prohibits defeat devices,' neither NOV- unlike in the Volkswagen matter- included any determination that FCA used 'defeat devices.'")  Motion to Dismiss at p. 4 ("Plaintiffs distort government and press reports to claim that FCA NV did not comply with European emission regulations when, in fact the very reports that they cite state the opposite.").

The DOJ Complaint, which unequivocally asserts that "Defendants illegally sold" vehicles containing software to "***bypass, defeat and/or render inoperative the Subject Vehicles' emission control system, causing the vehicles to emit substantially higher levels of NOx during certain normal real world driving conditions than during federal emission tests***," not only undermines Defendants' argument that Plaintiffs have mischaracterized the EPA's NOV but it makes it beside the point.

The filing of the DOJ Complaint adds to the robust allegations already in the TAC concerning Defendants' continued denials of any wrongdoing in the face of mounting investigations by regulatory bodies. For example, Defendants assured investors that the Company was fully compliant with EPA standards and had strong safeguards in place to ensure that their vehicles did not and would not contain illegal defeat devices even after German regulators informed Chrysler on May 23, 2016 that there was "sufficient evidence of an impermissible defeat device" in its diesel vehicles.  TAC ¶¶ 312-313.  When the EPA and CARB issued NOV's to FCAU and FCA US LLC on January 12, 2017, Defendants continued to deny emissions violations stating that the Company "believes its emissions control systems meet the applicable requirements.  *Id.* ¶¶318-320. The DOJ has now formally accused FCAU of violating emissions regulations. Defendants do not challenge the existence of the illegal software, which Defendants - and Marchionne in particular - approved[1]. In the face of investigations and

---

[1] Indeed, as defense counsel stated at the May 25 status conference Defendants are now in the process of modifying the software at issue.  (*See* Ex. A at p. 9:3-6: "Now, just as an aside FCA has been in discussion with the Justice Department for emissions modifications that would involve a software flash that would address all these issues anyway.").

4

accusations by European and U.S. regulators, any reasonable Company would undoubtedly conduct an investigation into the software. The filing of the DOJ Complaint adds to the strength of the inference that Defendants were lying to the market when they continued to deny the existence of illegal software used to cheat emissions tests. *See, e.g. See In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp.2d 452, 486 (S.D.N.Y. 2006) ("Added to the allegations that, after the investigation's announcement, Greenberg and Egan personally made misstatements and aggressively supported the Company's business practices, the existence of the NYAG investigation and the rapid discovery of widespread misconduct at Marsh shortly thereafter constitute strong circumstantial evidence that those defendants either knew or were reckless in not learning of the fraudulent business practices at Marsh.").

**The Decline in FCAU Stock Price Following the DOJ Complaint Supports Scienter**

On May 23, 2017, the date the DOJ Complaint was filed, FCAU's stock price declined from $10.89 at 9:30 a.m. to $10.32 at 4:00 p.m., a decline of 5.2%, on unusually high volume of 26,270,000 shares.  The significant decline in FCAU's stock price following the news that the DOJ had filed a complaint against FCAU accusing it of selling vehicles which contain illegal defeat devices used to cheat emission tests underscores the importance of emissions compliance to investors.  As Plaintiffs argued in their opposition to Defendants' Motion to Dismiss, the centrality of emissions compliance and the sales of the Subject Vehicles to Defendants' success supports a strong inference of scienter. (Dkt. No. 96 at 23).  *See In re Volskwagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 66281, at *14 (N.D. Cal. Jan. 4, 2017) ("The importance and falsity of the emissions-compliance statements gives rise to a plausible inference of VW AG's corporate scienter.").

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court take the DOJ Complaint and FCAU's stock price and volume into account in conducting its holistic analysis of scienter in adjudicating the pending motion to dismiss.

Dated: June 1, 2017

New York, New York

          **POMERANTZ LLP**
          */s/ Jeremy A. Lieberman*
          Jeremy A. Lieberman
          Michael J. Wernke
          600 Third Avenue, 20th Floor
          New York, New York 10016
          Telephone: (212) 661-1100
          Facsimile: (212) 661-8665
          Email: jalieberman@pomlaw.com
                  mjwernke@pomlaw.com

          **POMERANTZ LLP**
          Patrick V. Dahlstrom
          10 South La Salle Street, Suite 3505
          Chicago, Illinois 60603
          Telephone: (312) 377-1181
          Facsimile: (312) 377-1184
          Email: pdahlstrom@pomlaw.com

          */s/ Laurence M. Rosen*
          **THE ROSEN LAW FIRM, P.A.**
          Laurence M. Rosen
          Phillip Kim
          Sara Fuks
          275 Madison Avenue, 34th Floor
          New York, New York 10016
          Telephone: (212) 686-1060
          Fax: (212) 202-3827
          Email: lrosen@rosenlegal.com
          Email: pkim@rosenlegal.com
          Email: sfuks@rosenlegal.com

          *Co-Lead Counsel for Plaintiffs*