UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY KOOPMANN, TIMOTHY KIDD and VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, RICHARD K. PALMER, and SCOTT KUNSELMAN,<br><br>Defendants. | No. 15 Civ. 7199 (JMF) |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS THE EMISSIONS CLAIMS
FROM THE THIRD AMENDED COMPLAINT**

Robert J. Giuffra, Jr.
William B. Monahan
Joshua S. Levy
Anil K. Vassanji
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants*

June 1, 2017

On May 25, 2017, this Court took judicial notice (a) "of the fact that the Department of Justice [('DOJ')] filed the EPA Complaint" on May 23, 2017 against Fiat Chrysler Automobiles N.V. ("FCA NV"), FCA US LLC ("FCA US"; together, "FCA") and certain of their affiliates, and (b) "the trading history of FCA NV[']s stock" on the day the DOJ filed the EPA Complaint. (ECF No. 106.)  In accordance with the Court's Order, dated May 25, 2017, Defendants respectfully submit this Supplemental Brief to explain why the filing of the EPA Complaint does not save the emissions-related claims in Plaintiffs' Third Amended Complaint ("TAC"; ECF No. 69).  The unproven allegations of the EPA Complaint are immaterial in this Circuit, and, in any event, the EPA Complaint does not include particularized allegations raising the required strong inference that any senior FCA executives, including FCA's CEO, Sergio Marchionne, intentionally made any misrepresentations regarding emissions or acted with "conscious recklessness—*i.e.*, a state of mind approximating actual intent."  *S. Cherry St., LLC* v. *Hennessee Grp.*, 573 F.3d 98, 109 (2d Cir. 2009).  Moreover, the EPA Complaint—filed more than three months after the end of the putative class period alleged in the TAC—could not constitute a corrective disclosure as a matter of law.

**I.  THE EPA COMPLAINT DOES NOT SAVE PLAINTIFFS' LEGALLY FLAWED SCIENTER ALLEGATIONS.**

There are at least four reasons why the EPA Complaint does not help Plaintiffs plead the required particularized facts giving rise to a strong inference of Defendants' scienter:

*First*, "Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or *otherwise not resolved, are, as a matter of law, immaterial*."  *RSM Prod. Corp.* v. *Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) (Wallach, J.) (emphasis added) (citing *Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 892–94 (2d Cir. 1976)), *aff'd*, 387 F. App'x 72 (2d

Cir. 2010).[1]  Because Plaintiffs cannot appropriate the allegations of the EPA Complaint as Plaintiffs' own allegations in this Action, those unproven allegations are entitled to no weight.

*Second*, "the fact that a regulator is fulfilling [its] role"—here, the DOJ's role, on behalf of the EPA, to police alleged violations of the Clean Air Act, which does *not* contain a scienter requirement—"cannot be sufficient to allege scienter." *In re Gentiva*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (Spatt, J.) (quoting *In re Manulife Fin. Corp.*, 276 F.R.D. 87, 102 (S.D.N.Y. 2011) (Keenan, J.)); *see Union Cent. Ins. Co.* v. *Ally Fin., Inc.*, 2013 WL 2154381, at *1 (S.D.N.Y. Mar. 29, 2013) (Daniels, J.) ("Plaintiffs' citation to a number of lawsuits and government investigations involving RBS Securities provides no evidence of scienter.").

*Third*, even if unproven allegations could be considered here, the EPA Complaint does not allege any facts, much less particularized facts, demonstrating that Mr. Marchionne (or anyone else) knew or was consciously reckless of FCA US's alleged noncompliance with U.S. emissions regulations in 2014 to 2016, when Defendants made the statements at issue.  At most, the EPA Complaint alleges, "subject to a reasonable opportunity for further investigation or discovery, that members of FCA NV management were involved in the process of gathering and/or approving certain information regarding FCA US's submissions as part of its COC [Certificate of Conformity] applications for the Subject Vehicles." (EPA Complaint ¶ 83.)  The allegation that unnamed FCA NV employees "were involved" in "gathering and/or approving" unspecified "information" does not plead that any of those individuals, let alone FCA NV senior

---

[1]  *See also In re CRM Holdings, Ltd.*, 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) (Patterson, J.) ("Plaintiffs' citation to 'unproven allegations' made in the WCB or NYAG complaints do not constitute factual allegations."); *Footbridge Ltd.* v. *Countrywide Home Loans*, 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (Castel, J.) (striking paragraphs in complaint that were "based on pleadings, settlements, and government investigations in other cases"); *In re Merrill Lynch & Co.*, 218 F.R.D. 76, 78–79 (S.D.N.Y. 2003) (Pollack, J.) (striking allegations "that refer to or rely on the SEC's complaints").

management, knew of any contrary information about FCA US's compliance with U.S. emissions regulations when they made those statements. Even accepting the unproven allegations in Paragraph 83 of the EPA Complaint as true, the fact that members of FCA NV's management gathered or approved "certain information" for FCA US's "COC applications" is in no way surprising or nefarious, let alone particularized pleading that shows that any Defendant possessed contrary information about FCA US's compliance with U.S. emissions regulations.

*Fourth*, the EPA Complaint does not identify any specific reports or documents that contradict Defendants' public statements, any dates or time frame for the "gathering and/or approving" of the unspecified information, or any particular FCA employees. *See Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital, Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (plaintiffs "have not raised an inference of scienter based on knowledge of or access to information," because they did not "'specifically identify the reports or statements containing this information'") (quoting *Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)); *Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) (Pauley, J.) (no scienter where "Plaintiff has not specifically identified any reports or statements or any dates or time frame in which Defendants were put on notice of contradictory information") (quoting *Teamsters Local 445*, 531 F.3d at 196).

Notably, the DOJ included the unparticularized allegation regarding the involvement of "FCA NV management" in "gathering and/or approving certain information" in the EPA Complaint "subject to a reasonable opportunity for further investigation or discovery"— a phrase that stands out because of its absence from other paragraphs of the EPA Complaint. Even if Plaintiffs properly could import the DOJ's unparticularized allegations into the TAC, Plaintiffs (unlike the DOJ) must meet the heightened pleading requirements of the Private

Securities Litigation Reform Act of 1995. *See Doscher* v. *Sobel & Co.*, 2015 WL 774695, at *5–6 (S.D.N.Y. Feb. 11, 2015) (Berman, J.) ("[A]llegations based upon 'information and belief,' without more, are insufficient to support a securities fraud claim."); *Amusement Indus., Inc.* v. *Buchanan Ingersoll & Rooney, P.C.*, 2013 WL 628533, at *14 (S.D.N.Y. Feb. 15, 2013) (Kaplan, J.) ("Allegations of scienter made on information and belief are insufficient.").

This Court should reject Plaintiffs' effort to add emissions-related allegations to this action. Either with or without the allegations in the EPA Complaint, Plaintiffs have made no allegations resembling those concerning FCA US's noncompliance with National Highway Traffic Safety Administration's ("NHTSA") regulations that this Court previously found sufficient to withstand dismissal. (ECF No. 50.) This Court's conclusion that Plaintiffs adequately pled scienter on the NHTSA claims rested on allegations concerning three letters from NHTSA, including one to Mr. Marchionne, informing FCA (prior to the challenged statements) of NHTSA's belief that FCA US was not in complete compliance with NHTSA regulations. No similar allegations exist here, and Plaintiffs' resort to the EPA Complaint filed last month "is a classic example of pleading fraud by hindsight." *In re Fannie Mae 2008*, 525 F. App'x 16, 19 (2d Cir. 2013).

## II.   STOCK TRADING MORE THAN THREE MONTHS AFTER THE END OF THE CURRENT PUTATIVE CLASS PERIOD IS NOT LEGALLY RELEVANT HERE.

The TAC alleges a putative class period of October 13, 2014 through February 6, 2017 (TAC ¶ 1), ending more than three months *before* the filing of the EPA Complaint. "It is black letter law, at least in the Second Circuit, that disclosures made after the close of the class period cannot be 'corrective' for the purpose of establishing loss causation." *In re OSG*, 2015 WL 3466094, at *2 n.14 (S.D.N.Y. May 29, 2015) (Scheindlin, J.) (citing *Masters* v. *GlaxoSmithKline*, 271 F. App'x 46, 51 (2d Cir. 2008)); *see Prime Mover Capital Partners L.P.*

v. *Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 686 n.76 (S.D.N.Y. 2012) (Kaplan, J.) ("[S]tock drop which occurred after the close of the class period cannot be relied upon for loss causation.") (quoting *Masters*, 271 F. App'x at 51; internal alterations omitted).

Plaintiffs have yet to inform Defendants or the Court whether Plaintiffs intend to claim that the filing of the EPA Complaint was a corrective disclosure or whether Plaintiffs seek to extend the putative class period. Indeed, earlier today, Plaintiffs informed the Court that they have yet to decide whether "to amend the TAC to include the announcement of the filing of the DOJ complaint as a corrective event." (ECF No. 108 at 3.) If Plaintiffs do not seek to amend the TAC, then any movement or trading in FCA NV stock on May 23 falls more than three months after the end of the putative class period and is therefore legally irrelevant. If Plaintiffs decide to allege that the EPA Complaint is a "corrective event"—a position Plaintiffs continue to hold open—then Plaintiffs must seek leave to amend the TAC to extend the putative class period and to add the additional alleged corrective disclosure. (*See* ECF No. 107 at 3.)

Either way, "Defendants are generally not required to defend against a 'moving target'" on class certification. *Vasquez* v. *Reilly*, 2017 WL 946306, at *12 (S.D.N.Y. Mar. 9, 2017) (Karas, J.); *see Wynn* v. *N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016) (Scheindlin, J.) (denying class certification because "[t]o choose the most appropriate class definition where multiple class definitions are presented would reward the plaintiffs for presenting defendants with a moving target"). At this late stage (with Defendants' opposition to class certification due in less than two weeks), Plaintiffs have yet to decide whether to seek to extend the putative class period and add a corrective disclosure. It is not reasonable for Defendants to have to respond to an uncertain target at this late stage. Accordingly, the Court should continue the briefing on class certification until the emissions claims have been tested.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
William B. Monahan
Joshua S. Levy
Anil K. Vassanji
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants*

June 1, 2017