# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GARY KOOPMANN, TIMOTHY KIDD and VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., FCA US LLC, SERGIO MARCHIONNE, RICHARD K. PALMER, SCOTT KUNSELMAN, MICHAEL DAHL, STEVE MAZURE, and ROBERT E. LEE,<br><br>Defendants. | No. 15 Civ. 7199 (JMF)<br><br>(Oral Argument Requested) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE EMISSIONS-RELATED CLAIMS FROM THE FOURTH AMENDED COMPLAINT

Robert J. Giuffra, Jr.
William B. Monahan
Joshua S. Levy
Anil K. Vassanji
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants*

September 5, 2017

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ......................................................................... 1

**THE NEW ALLEGATIONS IN THE FOURTH AMENDED COMPLAINT** ..................... 6

    A.    2015 SCR Field Fix ...................................................... 6

    B.    FCA US's Ongoing Dialogue with the EPA ........................... 7

    C.    The EPA Notice of Violation and Complaint ......................... 8

    D.    Additional Defendants ................................................ 9

**ARGUMENT** ................................................................................... 10

**I.    PLAINTIFFS' NEW ALLEGATIONS ABOUT FCA'S PRELIMINARY "DIALOGUE" WITH REGULATORS, OVER A YEAR BEFORE THE NOVS, DO NOT SUPPORT THE REQUIRED STRONG INFERENCE OF SCIENTER** ............................................................... 11

    A.    FCA US's Informal "Dialogue" with EPA Engineers Is Not Sufficient "To Clear the Scienter Bar" ................................. 11

    B.    Plaintiffs Attempt To Manufacture Scienter by Mischaracterizing Communications with the EPA ...................................... 15

**II.   PLAINTIFFS' RECASTING OF A ROUTINE "FIELD FIX" INTO AN EMISSIONS ISSUE DOES NOT SUPPORT THE REQUIRED STRONG INFERENCE OF SCIENTER** ................................................. 16

**III.  PLAINTIFFS' REHASHED ALLEGATIONS REMAIN LEGALLY INSUFFICIENT "TO CLEAR THE SCIENTER BAR"** ................... 18

    A.    The Court Should Again Reject Plaintiffs' Allegations About European Regulators and Vehicles Not Sold in the United States ............ 18

    B.    Plaintiffs Rehash Other Allegations that This Court Rejected as Insufficient To Support the Required Strong Inference of Scienter ...... 19

**IV.  PLAINTIFFS EXCEEDED THE SCOPE OF THIS COURT'S ORDER BY ADDING DEFENDANTS, AND, IN ANY EVENT, THEIR FOURTH AMENDED COMPLAINT DOES NOT ALLEGE THAT THESE ADDITIONAL DEFENDANTS MADE ANY ACTIONABLE MISREPRESENTATIONS** ...................................................... 23

**CONCLUSION** .................................................................................. 25

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*In re Alkermes*,
  2005 WL 2848341 (D. Mass. Oct. 6, 2005) ........................................................................ 14

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 16

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .................................................................................................. 10

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 16

*Campo* v. *Sears Holdings Corp.*,
  371 F. App'x 212 (2d Cir. 2010) ......................................................................................... 22

*Chambers* v. *Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .................................................................................................. 6

*In re Citigroup, Inc.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004) ................................................................................. 24

*City of Brockton Ret. Sys.* v. *Avon Prods., Inc.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) .................................................................... 20

*Doscher* v. *Sobel & Co.*,
  2015 WL 774695 (S.D.N.Y. Feb. 11, 2015) ....................................................................... 21

*ECA, Local 134 IBEW Joint Pension Tr. of Chi.* v. *J.P. Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ................................................................................................ 24

*In re EDAP TMS S.A.*,
  2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) .............................................................. 13, 14

*In re Fannie Mae 2008*,
  525 F. App'x 16 (2d Cir. 2013) ........................................................................................... 21

*Foley* v. *Transocean Ltd.*,
  861 F. Supp. 2d 197 (S.D.N.Y. 2012) ................................................................................. 20

*Ind. Pub. Ret. Sys.* v. *SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016) .................................................................................................. 23

# TABLE OF AUTHORITIES
### (continued)

*Page(s)*

*Janus Capital Grp., Inc.* v. *First Derivative Traders*,
    564 U.S. 135 (2011) ................................................................................ 19, 24, 25

*Kuhns* v. *Ledger*,
    202 F. Supp. 3d 433 (S.D.N.Y. 2016) ............................................................ 25

*Lipsky* v. *Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) ........................................................................ 21

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund* v. *Am. Exp. Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010) ............................................................ 22

*In re Manulife Fin. Corp.*,
    276 F.R.D. 87 (S.D.N.Y. 2011) .................................................................... 12

*In re MedImmune, Inc.*,
    873 F. Supp. 953 (D. Md. 1995) .................................................................. 14

*In re MELA Scis., Inc.*,
    2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012) .............................................. 13

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2008) ................................................................... 8, 22

*Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of*
    *Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) ............................................................ 22

*Podany* v. *Robertson Stephens, Inc.*,
    318 F. Supp. 2d 146 (S.D.N.Y. 2004) ............................................................ 16

*In re PXRE Grp.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009) ............................................................ 20

*Richman* v. *Goldman Sachs Grp., Inc.*,
    868 F. Supp. 2d 261 (S.D.N.Y. 2012) ............................................................ 24

*RSM Prod. Corp.* v. *Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) ............................................................ 21

*SEC* v. *First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996) ........................................................................ 25

**TABLE OF AUTHORITIES**
**(continued)**

*Page(s)*

*Silvercreek Mgmt., Inc.* v. *Citigroup, Inc.*,
   2017 WL 1207836 (S.D.N.Y. Mar. 31, 2017) ..................................... 10

*Sinay* v. *CNOOC Ltd.*,
   554 F. App'x 40 (2d Cir. 2014) ..................................... 18

*Steinberg* v. *Ericsson LM Tel. Co.*,
   2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) ..................................... 17

*Stevelman* v. *Alias Research, Inc.*,
   174 F.3d 79 (2d Cir. 1999) ..................................... 16

*Stratte-McClure* v. *Morgan Stanley*,
   776 F.3d 94 (2d Cir. 2015) ..................................... 10

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008) ..................................... 10, 22

*Tellabs* v. *Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..................................... 10, 21

*Tongue* v. *Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ..................................... 3, 12, 14, 17

*Wyche* v. *Advanced Drainage Sys., Inc.*,
   2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) ..................................... 19

*Youngers* v. *Vitrus Inv. Partners Inc.*,
   195 F. Supp. 3d 499 (S.D.N.Y. 2016) ..................................... 12

**STATUTES, REGULATIONS AND RULE**

15 U.S.C. § 78t(a) ..................................... 25

15 U.S.C. § 78u-4(b)(2) ..................................... 10

40 C.F.R. § 86.1803–01 ..................................... 15

40 C.F.R. § 86.1809–10 ..................................... 15

Fed. R. Civ. P. 9(b) ..................................... 1, 10, 21

**TABLE OF AUTHORITIES**
**(continued)**

*Page(s)*

**OTHER AUTHORITY**

NHTSA, *U.S. Department of Transportation Launches New Public Awareness Campaign*, https://www.nhtsa.gov/press-releases/us-department-transportation-launches-new-public-awareness-campaign ................................................... 16

## PRELIMINARY STATEMENT

This is Plaintiffs' second attempt to try to inject emissions claims into this case about safety recalls.  On August 1, 2017, in holding that Plaintiffs' initial complaint raising emissions claims against Fiat Chrysler Automobiles N.V. ("FCA NV") "fail[ed] to allege with particularity facts giving rise to a strong inference of scienter," the Court, "with some misgivings," granted Plaintiffs leave to amend one final time to try to plead "additional facts . . . sufficient to clear the scienter bar."  (ECF No. 121 ("2017 Order") at 4, 10, 12.)  With their Fourth Amended Complaint ("Compl."; ECF No. 129), Plaintiffs have not met the standard this Court set, offering only sparse additional allegations falling well short of the Private Securities Litigation Reform Act's ("PSLRA") and Federal Rule of Civil Procedure 9(b)'s heightened requirements for pleading scienter.

Recognizing that Plaintiffs' initial emissions-related allegations "might not be enough to nudge Plaintiffs' claims across the threshold of validity," this Court held that Plaintiffs must "allege that the EPA gave notice to *high-level FCA officials* that the vehicles at issue had unlawful defeat devices."  (2017 Order at 12–13 (emphasis added).)  But in their Fourth Amended Complaint, Plaintiffs at most allege (i) preliminary "dialogue" between November 2015 and January 2016 involving engineers of the EPA and FCA US LLC ("FCA US"; together with FCA NV, "FCA") more than a year before the EPA served its January 2017 Notice of Violation ("NOV"); (ii) a routine and publicized "field fix" to remedy a failed component with an accompanying software update unrelated to any alleged "defeat devices"; (iii) irrelevant discussions between unspecified FCA European entities and European regulators about vehicles not sold in the United States; and (iv) vague, speculative allegations by an additional, purported confidential witness.  Because their Fourth Amended Complaint does not allege that any "high-level" FCA NV officials involved in FCA NV's disclosures to investors knew that "the vehicles

at issue had unlawful defeat devices" prior to making any of the challenged statements, Plaintiffs have not cleared the exacting "scienter bar."

Specifically, Plaintiffs allege that in November 2015, two months after Volkswagen's emissions violations became public, the EPA's Office of Transportation and Air Quality ("OTAQ") raised preliminary "concerns" that "at least one" of the software calibrations contained in certain FCA US diesel-engine vehicles "appear[ed]" to violate U.S. emissions regulations.  Plaintiffs allege that U.S. subsidiary FCA US—not parent company FCA NV, which is the issuer of publicly traded shares—"communicated with the EPA several times (in person, via email and over phone)" (Compl. ¶¶ 24, 244) about OTAQ's preliminary "concerns" from November 2015 to January 2016.  But the Fourth Amended Complaint does not allege that OTAQ, which is *not* an EPA enforcement arm, offered any indication that the EPA was then considering any enforcement action against FCA US.  In fact, the Fourth Amended Complaint alleges that the EPA's preliminary "concerns" only ripened into a claim of noncompliance in January *2017*—a full year later—when the EPA and the California Air Resources Board ("CARB") issued their NOVs to FCA US and FCA NV alleging that certain software in approximately 100,000 diesel-engine Ram 1500 pickup trucks and Jeep Grand Cherokee SUVs (together, the "Trucks") "'*may* be defeat devices' and that 'further investigation' was necessary." (2017 Order at 9 (emphasis in original) (quoting ECF No. 93–4 at 6).)  Fatally, the Fourth Amended Complaint contains no allegations that any FCA executives involved in investor disclosures were advised of any of the back and forth between OTAQ and FCA US.  In fact, the Fourth Amended Complaint contains no allegations at all about communications between EPA and FCA between January 2016 to January 2017.

Plaintiffs' scienter allegations concerning emissions, even in their latest iteration, bear no resemblance to those concerning FCA US's admitted noncompliance with certain regulations promulgated by the National Highway Traffic Safety Administration ("NHTSA") that this Court previously found sufficient to withstand dismissal.  In holding that Plaintiffs had adequately pled scienter on their NHTSA claims, the Court cited allegations that, after months of discussions with the U.S. Department of Transportation, NHTSA and Congress, NHTSA sent three letters to Individual Defendants Sergio Marchionne and Scott Kunselman before the challenged disclosures directing FCA US to undertake detailed actions to remedy noncompliance by specified deadlines.  *See Pirnik* v. *Fiat Chrysler Autos., N.V.*, 2016 WL 5818590, at *7 (S.D.N.Y. Oct. 5, 2016) (Plaintiffs adequately alleged scienter based on "NHTSA's direct correspondence to FCA's top executives").

Here, by contrast, Plaintiffs point only to OTAQ's initial "concerns" as part of an ongoing "dialogue" between engineers, not enforcement personnel, that occurred over a year before the EPA undertook any enforcement action.  Further, whereas NHTSA sent letters to FCA NV CEO Marchionne, Plaintiffs do not allege that any of OTAQ's "concerns" were communicated to "high-level FCA officials" involved in disclosures to investors.  *See Tongue* v. *Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016) ("no plausible allegation" of securities fraud where regulator "expressed concern" because investors are aware of "[c]ontinuous dialogue" between a company and its regulator).

The Fourth Amended Complaint next tries to plead scienter by falsely claiming that Mr. Marchionne stated in a July 27, 2017 earnings call (more than six months *after* the EPA's January 2017 NOV) that "at the time in which we launched these vehicles, we weren't compliant."  (Compl. ¶¶ 40, 248, 359, 411, 435, 438.)  Leaving aside how this quotation (even if

accurate) would support scienter—rather than merely constituting impermissible fraud-by-hindsight pleading—Mr. Marchionne actually said "*we were in compliance*[]."   (Ex. 1 at 16 (emphasis added).)[1]

Plaintiffs also make much of a publicized "field fix" that FCA US instituted between 2014 and 2016 to replace a defective catalyst with a more technically durable catalyst and to update vehicle software on account of the new catalyst.   Plaintiffs assert that because the software update affected one of the Auxiliary Emissions Control Devices ("AECDs") listed in the January 2017 NOVs, FCA US "must have known" at the time of the update that the software was illegal.   (Compl. ¶¶ 239, 415–16, 421.)   But Plaintiffs never explain how updating vehicle software to fix a defective part supports the inference that the software was illegal, let alone that senior FCA NV executives involved in investor disclosures knew of the software update or whether the software satisfied the legal definitions of AECD or "defeat device."   And Plaintiffs' claim that FCA US conducted the field fix in "secret" is simply untrue.   FCA US informed the EPA, CARB and thousands of dealerships across the United States about the field fix, and service bulletins concerning the field fix are publicly available online (and, thus, were available to Plaintiffs prior to filing their previous complaint).   (Levy Decl. ¶¶ 5–9, Exs. 3–7.)   Thus, just as this Court found in dismissing the emissions-related claims from the Third Amended Complaint, "there are no allegations in the [Fourth Amended] Complaint inconsistent with the alternative inference proffered by FCA:   that the company, in good faith, believed these [approximately 100,000] vehicles (which constituted less than one percent of its global sales) were in compliance with the law."   (2017 Order at 9.)

---

[1] All citations to "Ex." refer to the accompanying declaration of Joshua S. Levy ("Levy Decl."), dated September 5, 2017.

Grasping at straws, Plaintiffs are left to point to irrelevant disagreements between European regulators and an unspecified FCA European entity over vehicles *never* sold in the United States, much less the subject of the January 2017 NOVs.  Plaintiffs similarly rely on vague, speculative confidential witness allegations—without identifying this witness' job responsibilities—that "I knew they had an issue with the software" and "[i]t was big issue [*sic*]." (Compl. ¶¶ 241, 423.)  Just as in Plaintiffs' earlier complaints, these assertions "do not establish what specific contradictory information . . . Defendants received or when they received it," and therefore "do not get [Plaintiffs] across the goal line."  (2017 Order at 8–9.)

Finally, Plaintiffs exceed this Court's reluctant grant of leave to amend by proposing to bring claims against four new defendants.   If the Court considers these impermissible claims, in addition to Plaintiffs' failure to plead scienter with particularity, the Court should dismiss all claims against Michael Dahl, Robert Lee, Steven Mazure and FCA US on the additional ground that none of those new Defendants made any actionable misrepresentations.  The Fourth Amended Complaint does not allege a single public statement by Mr. Dahl or identify with particularity any falsity in Mr. Lee's, Mr. Mazure's or FCA US's challenged statements.[2]

---

[2]  The Fourth Amended Complaint re-pleads all of the claims from the Third Amended Complaint, including those the Court previously dismissed with prejudice concerning (i) FCA NV's recall and warranty reserves; (ii) Plaintiffs' claims on behalf of non-U.S. purchasers; and (iii) all claims against Richard Palmer, FCA's Chief Financial Officer.  For the reasons set forth in its Order dated October 5, 2016 ("2016 Order"), this Court should again dismiss those claims. *Pirnik*, 2016 WL 5818590, at *8–9.   Although the Court previously rejected certain of Defendants' arguments in its 2016 Order, including that FCA NV's statements regarding its "substantial[] compliance with the relevant global regulatory requirements," *id*. at *5–6, were inactionable puffery under Second Circuit precedent, Defendants incorporate those arguments herein by reference.

## THE NEW ALLEGATIONS IN THE FOURTH AMENDED COMPLAINT

### A.    2015 SCR Field Fix

FCA US vehicles contain many technologies to reduce NOx emissions, including selective catalyst reduction ("SCR").  (Compl. ¶¶ 229, 231.)  In July 2014, more than two and a half years before the EPA's January 2017 NOV, FCA US experienced increased warranty claims over the SCR catalysts in model year 2014 Trucks.  (*Id.* ¶¶ 418, 444, 448–49.)  FCA US submitted reports to the EPA and CARB in 2014 and 2015 informing them of the increased warranty claims and began implementing a "field fix" to replace the defective catalyst with a more technically durable catalyst.  (*Id.* ¶¶ 418, 440–44.)

To implement this field fix, FCA US sent service bulletins, which were publicly posted online, to its network of thousands of U.S. dealerships.  (*Id.* ¶¶ 418, 441; Levy Decl. ¶¶ 5–9, Exs.  3–7.)[3]  These bulletins informed dealers of the catalyst defect and provided instructions to replace the SCR catalyst with a new catalyst that had an improved washcoat, which also required a software update.  (Compl. ¶¶ 417–18; Exs. 3–7.)  This software update addressed the SCR catalyst washcoat and re-calibrated the formula for calculating the exhaust gas recirculation ("EGR") rate, which affected one of the calibrations that was later alleged to be an undisclosed AECD in the NOVs.  (Compl. ¶¶ 239, 415–16; *see id.* ¶ 232 ("AECD 1 (Full EGR Shut-Off at Highway Speed)").)

In  July  2015,  CARB  requested  that  FCA  US  implement  a  Rapid  Response Transmittal ("RRT"), *i.e.*, that FCA US replace a substantial percentage of SCR catalysts and

---

[3] "[W]hen considering a motion to dismiss, a district court may 'consider' a document 'where the complaint relies heavily upon its terms and effect' as that 'renders the document integral to the complaint.'"  (2017 Order at 7 n.2 (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see* Compl. ¶¶ 418, 441, 445, 449.)  The service bulletins are offered here not for the truth of their contents, but instead to show that FCA US issued them and posted them publicly.  (2017 Order at 9, 12; *see* ECF No. 106.)

then report on the progress of the SCR replacement for six quarters.  (Compl. ¶ 445.)  On November 18, 2015, the EPA similarly requested that FCA US perform a Voluntary Emissions Recall to replace the SCR catalyst.  (*Id.* ¶ 447.)  Pursuant to the RRT and Voluntary Emissions Recall, FCA US instructed dealers to replace the SCR catalyst and related components, and to update the related software.  (*Id.* ¶¶ 446, 449.)

### B.    FCA US's Ongoing Dialogue with the EPA

In September 2015, following the EPA's widely publicized enforcement action against Volkswagen, OTAQ's Byron Bunker sent "Dear Manufacturer" letters to all U.S. automobile manufacturers advising them that the EPA intended to conduct additional emissions testing.  (Ex. 8.)  The EPA then met with a handful of FCA US employees on November 25, 2015 to discuss certain aspects of emissions control systems on FCA US vehicles.  (Compl. ¶¶ 244, 427.)  On January 7, 2016, Mr. Bunker allegedly informed Vaughn Burns of FCA US in an e-mail that "at least one of the AECDs in question *appears to me* [to] violate EPA's defeat device regulations."  (*Id.* ¶¶ 244, 428–29 (emphasis added).)  Mr. Bunker did not indicate or suggest that the EPA might bring an enforcement action during this preliminary investigatory stage; rather, the EPA instead sought "to briefly discuss our concerns today with the intent to schedule a meeting."  (*Id.* ¶ 429.)  The Fourth Amended Complaint contains no allegations that this EPA correspondence was sent to Mr. Marchionne or any other FCA NV executives involved in investor disclosures.

FCA US spoke to the EPA on January 8, 2016 to schedule a meeting for January 13, 2016.  (Compl. ¶¶ 244, 430, 433.)  On January 11, 2016, FCA US responded to the EPA's e-mail by requesting more information to try to understand the EPA's rationale for its compliance "concerns."  (*Id.* ¶ 431.)

### C.     The EPA Notice of Violation and Complaint

Notably, the Fourth Amended Complaint contains no allegations about communications between FCA US and the EPA from January 2016 to January 2017.  Rather, the Fourth Amended Complaint skips from preliminary "dialogue" in January 2016 to January 12, 2017, a year later, when the EPA and CARB issued NOVs alleging that certain software in approximately 100,000 diesel-engine Trucks "'*may* be defeat devices' and that 'further investigation' was necessary."  (2017 Order at 9 (emphasis in original; quoting ECF No. 93–4 at 6).)

Plaintiffs attempt to use these NOVs to sustain a challenge to FCA NV's statements in various SEC filings and Annual Reports from fiscal years 2014 and 2015, such as statements that "[w]e are substantially in compliance with the relevant global regulatory requirements affecting our facilities and products.  We constantly monitor such requirements and adjust our operations to remain in compliance."  (Compl. ¶¶ 275, 281, 302, 314, 316, 353; *see* ECF Nos. 93–6 to 93–10.)  Plaintiffs similarly challenge Mr. Marchionne's statement during a January 2016 earnings call that "on the European side . . . I think we feel comfortable in making the statement that there are no defeat mechanisms or devices present in our vehicles."  (ECF No. 93–14 at 11; Compl. ¶¶ 343, 481.)

On May 23, 2017, the Department of Justice, on behalf of the EPA, filed a civil complaint against FCA and certain of its affiliates (the "EPA Complaint") alleging violations of the Clean Air Act, which does not contain a scienter requirement or require knowledge by any senior executives authorized to speak for the Company.  (*Id.* ¶¶ 38, 374.)  These unproven allegations, filed more than four months after the NOVs, do not identify any facts demonstrating that Mr. Marchionne (or anyone else within FCA NV) knew or was consciously reckless of FCA US's alleged noncompliance with U.S. emissions regulations from 2014 to 2016.  (*See* ECF Nos.

105, 110.)  In fact, the EPA Complaint makes no reference to Mr. Marchionne or anyone else involved in FCA NV's investor disclosures; it does not reference those disclosures at all.

### D.    Additional Defendants

Notwithstanding this Court's Order permitting Plaintiffs to plead only "additional facts" that "FCA had 'knowledge of facts or access to information contradicting [its] public statements'" (2017 Order at 13 (quoting *Novak* v. *Kasaks*, 216 F.3d 300, 308 (2d Cir. 2008))), Plaintiffs seek to add four new defendants to this litigation:

- *FCA US LLC*:  FCA US is the U.S. subsidiary of FCA, headquartered in Auburn Hills, Michigan.  (Compl. ¶ 49.)  The Fourth Amended Complaint only alleges that FCA US made misstatements *to the EPA* (*id.* ¶¶ 249–54, 258–59, 286–87, 318–19); it contains no allegations concerning any statements that FCA US made to investors.

- *Michael Dahl*:  Mr. Dahl became head of Vehicle Safety and Regulatory Compliance at FCA US in November 2015.  (*Id.* ¶ 53.)  Plaintiffs do not allege that he made any misstatements to investors.

- *Steve Mazure*:  Mr. Mazure was a mid-level manager at FCA US who signed cover letters to the EPA on behalf of FCA US.  (*Id.* ¶ 413; *see id.* ¶¶ 55, 249–54, 258–59, 286–87, 318–19.)   The Fourth Amended Complaint contains no allegations concerning any statements Mr. Mazure made to investors.

- *Robert E. Lee*:  Mr. Lee was an FCA US Vice President who gave an interview to an industry publication on December 2, 2015 regarding FCA US's internal audit for emissions compliance.  (*Id.* ¶¶ 54, 339.)  Mr. Lee made no representations as to FCA's emissions compliance, and Plaintiffs do not dispute the truth of Mr. Lee's statements that FCA US "looked at 2 million lines of software code," "[i]t's not against the rules to have something (used for test procedures) that *could* be turned into a defeat device," and "[y]ou're only guilty if you have used the defeat device, which was the case at [Volkswagen]."  (*Id.* ¶¶ 339–40 (emphasis added).)

## ARGUMENT

This Court held that Plaintiffs' initial emissions-related allegations were not "sufficient to clear the scienter bar." (2017 Order at 12.) Although the Court determined that, in order to state a claim, Plaintiffs must "allege that the EPA gave notice to high-level FCA officials that the vehicles at issue had unlawful defeat devices" (*id.* at 13), Plaintiffs have not done so. Instead, Plaintiffs allege only that the EPA expressed preliminary "concerns" to FCA US more than a year before those preliminary concerns, following further investigation, developed into a claim by the EPA of noncompliance. The Fourth Amended Complaint also contains no allegations that any FCA NV executives who made the challenged statements were aware of those discussions. "[U]nder Second Circuit precedent, it is not enough to separately allege misstatements by some individuals and knowledge belonging to some others where there is no strong inference that, in fact, there was a connection between the two." *Silvercreek Mgmt., Inc.* v. *Citigroup, Inc.*, 2017 WL 1207836, at *6 (S.D.N.Y. Mar. 31, 2017) (Oetken, J.) (citing *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d 190, 195–96 (2d Cir. 2008)).

To plead scienter under the PSLRA and Rule 9(b), Plaintiffs must "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (quoting 15 U.S.C. § 78u-4(b)(2)). "To satisfy the PSLRA, a complaint must . . . alleg[e] facts '(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" (2017 Order at 3–4 (quoting *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).) "For an inference of scienter to be 'strong,' a reasonable person must 'deem [it] cogent and at least as

compelling as any opposing inference one could draw from the facts alleged.'" (*Id.* at 4 (quoting *Tellabs*, 551 U.S. at 324).)

Unable "to allege that any of the Defendants sold shares of FCA stock during the class period," Plaintiffs "must allege either actual intent or 'conscious recklessness—*i.e.*, a state of mind approximating actual intent, and not merely a heightened form of negligence.'" (*Id.* (quoting *Stratte-McClure* v. *Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015)).)   Because Plaintiffs have not done so, their latest attempt to plead emissions-related claims should be dismissed, this time with prejudice.

## I.   PLAINTIFFS' NEW ALLEGATIONS ABOUT FCA'S PRELIMINARY "DIALOGUE" WITH REGULATORS, OVER A YEAR BEFORE THE NOVS, DO NOT SUPPORT THE REQUIRED STRONG INFERENCE OF SCIENTER.

### A.   FCA US's Informal "Dialogue" with EPA Engineers Is Not Sufficient "To Clear the Scienter Bar."

Plaintiffs' allegations that, following the EPA's widely publicized September 2015 enforcement action against Volkswagen, the EPA began a "dialogue" over emissions compliance with FCA US and other automobile manufacturers cannot support an inference of scienter.

In their Fourth Amended Complaint, Plaintiffs allege that, according to Mr. Marchionne (in statements made by him prior to the Third Amended Complaint), FCA had "been in dialogue with [the EPA] since September 2015."  (Compl. ¶¶ 240, 422; Ex. 9; *see* Ex. 9 ("We have had discussions now with the EPA on those matters since September of 2015.").)  As part of this "dialogue," Plaintiffs allege that OTAQ, which is not an EPA enforcement arm, met with a handful of FCA US employees in November 2015.  (Compl. ¶¶ 244–45, 427.)  In a subsequent e-mail recounting that meeting, OTAQ's Byron Bunker allegedly expressed "concerns" that at least one part of the software "appears to me" to be a defeat device and sought additional

information from FCA US.  (*Id.* ¶¶ 24, 244, 429.)  From November 2015 to January 2016, FCA US allegedly "communicated with the EPA several times (in person, via email and over phone)" regarding Mr. Bunker's compliance "concerns."  (*Id.* ¶¶ 24, 244; *see id.* ¶ 428.)  And in January 2016, FCA US, the EPA and CARB scheduled a meeting to ensure that FCA understands EPA's rationale for any remaining compliance concerns.  (*Id.* ¶¶ 244–45, 429–32.)  Such routine, informal communications with a regulator doing its job—asking FCA US and other automotive companies about emissions compliance after the Volkswagen enforcement action—cannot support an inference of scienter.  *See Youngers* v. *Vitrus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 518 (S.D.N.Y. 2016) (Pauley, J.) ("[T]he fact that a regulator [here, the EPA,] is fulfilling [its] role cannot be sufficient to allege scienter.") (quoting *In re Manulife Fin. Corp.*, 276 F.R.D. 87, 102 (S.D.N.Y. 2011) (Keenan, J.)); *see Tongue*, 816 F.3d at 211 ("no plausible allegation" of securities fraud where regulator "expressed concern" because investors are aware of "[c]ontinuous dialogue" between a company and its regulator).

Plaintiffs' allegations are thus *unlike* "those that the Court found sufficient with respect to Plaintiffs' allegations regarding compliance with safety-related regulations."  (2017 Order at 13 (citing *Pirnik*, 2016 WL 5818590, at *2, *6–7).)  This Court sustained Plaintiffs' NHTSA-related claims because the Second Amended Complaint included detailed allegations regarding "NHTSA's direct correspondence to FCA's top executives"—in particular, letters NHTSA sent to Mr. Marchionne and others—that allegedly contradicted their subsequent statements to investors.  *Pirnik*, 2016 WL 5818590, at *7.  Those letters, unlike FCA US's informal, preliminary "dialogue" with the EPA, represented the culmination of months of discussions with the U.S. Department of Transportation, NHTSA and Congress, *see id.* at *1–2 (detailing meeting with Mr. Marchionne, the Secretary of Transportation and the NHTSA

Administrator, and Mr. Kunselman's testimony to Congress), and required FCA US to undertake detailed actions to remedy noncompliance by specified deadlines.  (Ex. 10 (requiring FCA US to provide 10 types of information "to NHTSA by no later than November 5" with "weekly updates thereafter"); Ex. 11 ("I request, within 15 days of the date of this letter, that Chrysler confirm that its dealerships are giving owners accurate information and implementing the repairs in a timely and effective manner."); Ex. 12 ("NHTSA expects Chrysler to file a 573 Defect Information Report consistent with the demand in this letter, with a schedule for notifying its affected customers, no later than December 1.").)  Plaintiffs cite no comparable correspondence between the EPA and FCA US *prior to* the January 2017 NOVs.  In fact, Plaintiffs do not identify *any* communications between the EPA and FCA US between January 2016 and January 2017.

In this District, courts routinely find that preliminary concerns expressed by regulators do not support a strong inference of scienter.  In *In re EDAP TMS S.A.*, 2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) (Schofield, J.), for example, defendants stated that FDA approval was "on track," and "we believe we are moving through the approval process in a timely manner."  *Id.* at *5.  Plaintiffs alleged that these statements were misleading and made with scienter because, prior to these statements, the FDA issued a "Major Deficiency Letter" identifying "significant concerns" regarding defendants' application.  *Id.* at *3.  Judge Schofield concluded that these allegations did not support the required strong inference of scienter because a "more compelling inference to the contrary exists—that the company could have known of problems in the testing procedures, planned to remedy those deficiencies, and still thought it would achieve FDA approval."  *Id.* at *14 (internal quotation marks omitted); *see In re MELA Scis., Inc.*, 2012 WL 4466604, at *7–8 (S.D.N.Y. Sept. 19, 2012) (Bricetti, J.) (no scienter where

"defendants continued to tout the conduct and results of the [clinical] trial even after receiving a 'non-approval' letter from the FDA," because "[t]hese statements do not present evidence of defendants' egregious refusal to see the obvious").[4]

The EPA's preliminary "concerns" regarding emissions compliance also do not support a strong inference of scienter here.  As Mr. Marchionne explained in an interview on which Plaintiffs rely, "all the software that goes into these vehicles is disclosed" to regulators, and "[w]e think that the software is compli[a]nt with current legislation."  (Ex. 9.) Mr. Marchionne noted that FCA "may have a difference of opinion as to whether the EPA and CARB have different expectations of disclosure on [software] calibrations," but he emphasized his view that FCA's software "cannot be classified as defeat devices[,] [b]ecause we're trying to defeat nothing."  (*Id.*)  Rather, he believed that this software was "put in place to protect the engine," which is legally permissible, so "[w]e think that the software is compli[a]nt with current legislation."  (*Id.*)  Thus, as in *In re EDAP* and this Court's 2017 Order, "it is not less (and arguably more) plausible to think that FCA believed itself to be in compliance—as it consistently represented."  (2017 Order at 10.)

Plaintiffs "fail[] to allege any facts suggesting that Defendants did not genuinely believe what they were saying at the time they said it."  *Tongue*, 816 F.3d at 208.  Instead, Plaintiffs falsely assert that Mr. Marchionne stated "we weren't compliant" during an earnings call months after the NOVs (Compl. ¶¶ 40, 248, 359, 411, 435, 438), when he in fact said that

---

[4] *See also In re Alkermes*, 2005 WL 2848341, at *16 (D. Mass. Oct. 6, 2005) ("The Defendants had no duty to disclose that the FDA had requested additional studies because they had never guaranteed FDA approval."); *In re MedImmune, Inc.*, 873 F. Supp. 953, 966 (D. Md. 1995) ("[I]t [does not] matter that one or more FDA staffers may have questioned MedImmune or its affiliates about the study design during the review process.  Mere questioning by the FDA imposed no duty upon Defendants either to trim back their opinions as to the efficacy of the drug or to report to the public the FDA staffers' questions as they arose.").

"within the scheme of things that existed at the time, in which we launched these vehicles, *we were in compliance*[]." (Ex. 1 at 16 (emphasis added).)[5]

**B.     Plaintiffs Attempt To Manufacture Scienter by Mischaracterizing Communications with the EPA.**

Recognizing that the EPA's discussions with FCA US cannot support the required strong inference of scienter, Plaintiffs resort to claiming that, prior to the January 2017 NOVs, "the EPA[] conclude[d] that these AECDs were defeat devices" (Compl. ¶ 364; *see id.* ¶¶ 340, 344, 346, 354, 362, 434), when the EPA said nothing of the sort. As Plaintiffs themselves admit, one EPA official merely expressed preliminary "concerns" that certain pieces of software "appear[] to me" to be "defeat devices," and the EPA began a "dialogue" with FCA US. (*Id.* ¶¶ 240, 244, 422, 429.) Even the NOVs reached no such conclusion, as this Court recognized, stating "only that FCA's undisclosed software '*may*' constitute 'defeat devices,' subject to further investigation." (2017 Order at 5 n.1 (emphasis added; quoting ECF No. 93–4 at 6; ECF No. 93–5 at 2).)

Plaintiffs next ignore the legal definitions of AECDs and "defeat devices." They repeatedly refer to "illegal AECDs" (Compl. ¶¶ 22, 236, 406, 409, 412, 414), but ignore that AECDs are lawful if disclosed in the certification application to the EPA and CARB (*see* 2017 Order at 5 n.1 (quoting 40 C.F.R. § 86.1803–01)). Plaintiffs similarly refer to "illegal defeat devices" (Compl. ¶¶ 365, 407), but the Fourth Amended Complaint does not contain a single allegation that the challenged software is not within the "enumerated exceptions" to the definition of a "defeat device," "including, for example, to 'protect[] the vehicle against damage'" (2017 Order at 5 n.1 (quoting 40 C.F.R. §§ 86.1803–01, 86.1809–10)). In fact, as this

---

[5] Defendants will provide an audio file of the July 27, 2017 earning call to the Court with their courtesy copies. (Ex. 2.) The relevant portion occurs at approximately 1:06:50.

Court recognized, "no regulatory body has definitively found that FCA vehicles were using illegal 'defeat devices.'" (*Id.*)  Plaintiffs' conclusory allegations thus presume the illegality of the software in the Trucks—hoping to achieve through repetition what they have not alleged—but fail to plead any particularized facts about the "enumerated exceptions" to support their alleged legal conclusion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("'[A] legal conclusion couched as a factual allegation' . . . does not unlock the doors of discovery.") (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)).

Without any particularized allegations for their claims *prior to* the EPA's January 2017 NOVs, Plaintiffs claim that FCA "updated emissions software calibrations" for Model Year 2017 vehicles months *after* the NOVs.  (Compl. ¶¶ 436–38.)  But Plaintiffs offer no explanation how changing software calibrations to address regulators' concerns "is tantamount to an admission of non-compliance" (*id.* ¶ 438), much less demonstrates that the Individual Defendants, including Mr. Marchionne, knew of any supposed "defeat devices."  "The Second Circuit has firmly rejected this 'fraud by hindsight' approach."  *Podany* v. *Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 156 (S.D.N.Y. 2004) (Lynch, J.) (quoting *Stevelman* v. *Alias Research, Inc.*, 174 F.3d 79, 85 (2d Cir. 1999)).

## II.   PLAINTIFFS' RECASTING OF A ROUTINE "FIELD FIX" INTO AN EMISSIONS ISSUE DOES NOT SUPPORT THE REQUIRED STRONG INFERENCE OF SCIENTER.

FCA US, like all automotive companies in the U.S., routinely replaces defective parts and updates vehicle software in coordination with its regulators.[6]  Plaintiffs' allegation that such routine maintenance somehow "would have alerted" the Individual Defendants to any

---

[6]  In 2015, for example, "there were close to 900 recalls affecting 51 million vehicles nationwide."  NHTSA, *U.S. Department of Transportation Launches New Public Awareness Campaign*, https://www.nhtsa.gov/press-releases/us-department-transportation-launches-new-public-awareness-campaign (last visited September 5, 2017).

alleged emissions noncompliance (Compl. ¶ 238) fails as a matter of law.  *See*, *e.g.*, *Steinberg* v.

*Ericsson LM Tel. Co.*, 2008 WL 5170640, at *13 (S.D.N.Y. Dec. 10, 2008) (Patterson, J.) ("An

allegation that a defendant merely 'ought to have known' is not sufficient to allege

recklessness.").

Plaintiffs allege that a field fix to replace a defective catalyst with a more durable

one, and to update vehicle software accordingly, somehow supports a strong inference of scienter

because it was allegedly done in "secret."  (Compl. ¶¶ 22, 239, 415, 417–19.)  That allegation is

contradicted by FCA US's repeated disclosure to the EPA, CARB and thousands of dealerships

across the country about this field fix.  (*Id.* ¶¶ 418, 441–47, 449.)  And the service bulletins FCA

US sent to dealers regarding the field fix are publicly available online.  (Levy Decl. ¶¶ 5–9, Exs.

3–7.)

Plaintiffs also allege that because the software update affected one of the AECDs

listed in the NOVs, FCA US "must have known" about the "existence" of the "illegal" software.

(Compl. ¶¶ 239, 415–16, 421.)   But Plaintiffs do not allege any particularized facts

demonstrating that the Individual Defendants *believed* this software met the legal definitions of

an AECD, let alone that it was a "defeat device," when they made their challenged statements.

(*See supra* Section I.B.)   Plaintiffs' speculation that Mr. Marchionne may have received

memoranda noting the existence of this field fix—allegations that provide no details concerning

the content of those hypothetical memoranda, but instead quote irrelevant documents discussing

unrelated recalls (Compl. ¶¶ 420–21)—similarly does not demonstrate that he did not "in good

faith, believe[]" that the Trucks "were in compliance with the law" at the time of his challenged

statements.  (2017 Order at 9.)   Plaintiffs thus confuse facts and opinions to try to mask their

"fail[ure] to allege any facts suggesting that Defendants did not genuinely believe what they were saying at the time they said it." *Tongue*, 816 F.3d at 208.

## III.   PLAINTIFFS' REHASHED ALLEGATIONS REMAIN LEGALLY INSUFFICIENT "TO CLEAR THE SCIENTER BAR."

### A.   The Court Should Again Reject Plaintiffs' Allegations About European Regulators and Vehicles Not Sold in the United States.

Notwithstanding this Court's direction that Plaintiffs could try to plead "*additional facts* . . . sufficient to clear the scienter bar" (2017 Order at 12 (emphasis added)), Plaintiffs continue to cite a report issued by German regulators (Compl. ¶ 356) that the Court already has found "is far from conclusive and provides little or no support for Plaintiffs' claim that Marchionne and other FCA officials 'must have known' that FCA cars had illegal defeat devices." (2017 Order at 7–8 (citing *Sinay* v. *CNOOC Ltd.*, 554 F. App'x 40, 42 (2d Cir. 2014)).)  Plaintiffs also continue to allege, as they did before, that "Chrysler cancelled a meeting with German" regulators (Compl. ¶ 355), even though the Italian Transport Minister expressly instructed FCA not to attend that meeting (ECF No. 93–3).

Plaintiffs also again invoke an irrelevant disagreement between German and Italian regulators (Compl. ¶ 360) over vehicles not subject to the EPA's January 2017 NOV, none of which is even sold in the United States (Ex. 13 (discussing "tests by German authorities on the Fiat 500X, Fiat Doblo and Jeep Renegade")).  (*See* 2017 Order at 8 (allegations concerning a report that "did not discuss . . . the two kinds of vehicles that were the subjects of the Notices of Violation from the EPA and CARB . . . are insufficient to meet Rule 9(b)'s particularity standard").)  Then, Plaintiffs distort press reports that German regulators sought to investigate "*potential* illegal manipulation devices" that "*could* prove" use of "defeat devices," and studiously ignore that "Italian tests had shown Fiat 500 cars conformed to emissions rules and did *not* contain defeat devices."  (Ex. 13 (emphasis added); *see* Compl. ¶ 360.)

-18-

Moreover, the Fourth Amended Complaint's reference to testimony before the European Parliament that FCA believed its vehicles were within "the legal limits" (Compl. ¶ 363) cuts *against* the required strong inference of scienter, because it is "more[] plausible to think that FCA believed itself to be in compliance—as it consistently represented" (2017 Order at 10).  In fact, both FCA's primary European regulator in Italy and its own internal audit found its vehicles compliant.   (Ex. 13; Compl. ¶¶ 349, 481.)   And Plaintiffs' allegations about European regulatory developments *after* the EPA's January 2017 NOV (Compl. ¶¶ 372–73) does not support their burden of showing that the Individual Defendants acted with the required strong inference of scienter when they made the challenged statements from 2014 to 2016.  *See Wyche* v. *Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *14 (S.D.N.Y. Mar. 10, 2017) (Failla, J.) (no scienter where "Plaintiff has not identified contemporaneous facts, reports, or statements to which Defendants had access and which contained information contrary to the information Defendants conveyed to the public").  Even if relevant, and they are not, these allegations at most describe the European Commission's effort "to mediate between the German and Italian authorities."  (Exs. 14–15.)

### B. Plaintiffs Rehash Other Allegations that This Court Rejected as Insufficient To Support the Required Strong Inference of Scienter.

Notwithstanding this Court's holding that Plaintiffs' "conclusory allegations" in their Third Amended Complaint were "insufficient to meet Rule 9(b)'s particularity standard" (2017 Order at 8), Plaintiffs continue to press allegations that this Court squarely rejected.  *First*, Plaintiffs try to make much of "the unremarkable fact that . . . [FCA] had audited its vehicles for emissions compliance" (2017 Order at 4; *see* Compl. ¶¶ 242–43, 246, 438), but do not allege that this audit identified any issues.  The internal audit thus "tends to *undermine* any inference of scienter," because this audit shows that Defendants were "endeavoring in good faith to ascertain"

the relevant facts. *City of Brockton Ret. Sys.* v. *Avon Prods., Inc.*, 2014 WL 4832321, at *24 (S.D.N.Y. Sept. 29, 2014) (Gardephe, J.) (emphasis added); *see Foley* v. *Transocean Ltd.*, 861 F. Supp. 2d 197, 214 (S.D.N.Y. 2012) (Buchwald, J.) (internal "audit . . . *undermines* any inference that [defendants] acted with an intent to deceive, manipulate, or defraud, and it certainly renders it difficult to conclude that the inference of scienter is at least as compelling as any opposing inference one could draw") (emphasis added).

   *Second*, Plaintiffs again allege that the FCA's Board was "aware[] that *other* automobile manufacturers [Volkswagen] were facing regulatory scrutiny for using illegal 'defeat devices'" (2017 Order at 4–5; Compl. ¶¶ 243, 246, 426), but it is settled law that knowledge of "'industry-wide' concerns, including the behavior of "'competitors' or 'peers,'" "fail[s] to support an inference of fraudulent intent," *In re PXRE Grp.*, 600 F. Supp. 2d 510, 540–44 (S.D.N.Y. 2009) (Sullivan, J.) (knowledge of facts "the industry was well aware of" that received "widespread publicity," and behavior of defendants' "'competitors' or 'peers,'" "fail to support an inference of fraudulent intent"), *aff'd sub nom. Condra* v. *PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009). (*See* 2017 Order at 4–5.)

   *Third*, Plaintiffs again offer the circular speculation that the Individual Defendants must have known that the software calibrations that FCA US did not disclose to the EPA and CARB were illegal, simply because those calibrations were not disclosed to the agencies. (Compl. ¶ 414; *see id.* ¶¶ 236, 238.) But as this Court held, "FCA's disclosure of software other than the devices for which the company is now being prosecuted" is insufficient to support the required strong inference of scienter. (2017 Order at 9.) To the contrary, "it is no less (and arguably more) plausible to think that FCA believed itself to be in compliance—as it consistently represented—given the myriad of harsh consequences, financial and otherwise, the company

knew it would suffer if the devices were found to be illegal." (*Id.* at 10 (citing *Tellabs*, 551 U.S. at 324).)

*Fourth*, Plaintiffs' appropriation of unproven allegations from the May 2017 EPA Complaint (Compl. ¶¶ 374–75), filed more than four months *after* the EPA's January 2017 NOVs, "is a classic example of pleading fraud by hindsight." *In re Fannie Mae 2008*, 525 F. App'x 16, 19 (2d Cir. 2013). Moreover, "Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that . . . [are] not resolved, are, as a matter of law, immaterial," *RSM Prod. Corp.* v. *Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) (Wallach, J.) (citing *Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 892–94 (2d Cir. 1976)), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

In any event, even accepting the allegations of the EPA Complaint as true—which, unlike the Fourth Amended Complaint, need not satisfy the heightened pleading requirements of the PSLRA and Rule 9(b)—the EPA simply alleged that, "subject to a reasonable opportunity for further investigation or discovery," unnamed FCA NV employees "were involved" in "gathering and/or approving" unspecified "information" (Compl. ¶ 375), which is insufficient to support the required strong inference of scienter against the Individual Defendants or some other FCA NV executive involved in the Company's investor disclosures. *See Doscher* v. *Sobel & Co.*, 2015 WL 774695, at *5–6 (S.D.N.Y. Feb. 11, 2015) (Berman, J.) ("[A]llegations based upon 'information and belief,' without more, are insufficient to support a securities fraud claim."); *Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) (Pauley, J.) (no scienter where "Plaintiff has not 'specifically identified any reports or statements' or any dates or time

frame in which Defendants were put on notice of contradictory information") (quoting *Teamsters Local 445*, 531 F.3d at 196).

Finally, "Plaintiffs' confidential witness allegations do not get them across the goal line either." (2017 Order at 8.) The Second Circuit requires that confidential witnesses be "described in the complaint with sufficient particularity," *Novak*, 216 F.3d at 314, but the Fourth Amended Complaint alleges only that "CW3" was a "Program Manager of Advanced Powertrain at Chrysler . . . from June 2013 through September 2015," with no explanation of his or her job duties or seniority (Compl. ¶¶ 241, 423). Just like the confidential witness allegations this Court found insufficient in the Third Amended Complaint, CW3's vague statements that "I knew they had an issue with the software" and "[i]t was big issue [*sic*]" (*Id.*) "do not establish what specific contradictory information . . . Defendants received or when they received it" (2017 Order at 9 (quoting *Local No. 38 Int'l Bhd of Elec. Workers Pension Fund* v. *Am. Exp. Co.*, 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010) (Pauley, J.), *aff'd*, 430 F. App'x 63 (2d Cir. 2011))). And CW3's speculative allegation, with no alleged connection to AECDs or "defeat devices," that "[i]t went all the way up to Bob Lee" (Compl. ¶¶ 241, 423)—with whom the Fourth Amended Complaint does not allege CW3 had any personal contact—is not sufficient as a matter of law, *see Campo* v. *Sears Holdings Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010) (discounting allegations from confidential witnesses who had no contact with individual defendants); *Local No. 38*, 724 F. Supp. 2d at 460–61 (allegations of "rank-and-file" confidential witnesses who "had no contact with the Individual Defendants" "fail to raise a strong inference" of scienter).

## IV.   PLAINTIFFS EXCEEDED THE SCOPE OF THIS COURT'S ORDER BY ADDING DEFENDANTS, AND, IN ANY EVENT, THEIR FOURTH AMENDED COMPLAINT DOES NOT ALLEGE THAT THESE ADDITIONAL DEFENDANTS MADE ANY ACTIONABLE MISREPRESENTATIONS.

Even though this Court—"with some misgivings"—granted Plaintiffs leave to amend so that Plaintiffs could attempt to add "additional facts . . . sufficient to clear the scienter bar" (2017 Order  at 10, 12), Plaintiffs instead added four new Defendants:  Michael Dahl, Robert Lee, Steve Mazure and FCA US.  Beyond impermissibly adding defendants, Plaintiffs do not allege any actionable misstatements by any of those new defendants; the claims against these additional defendants therefore should be dismissed with prejudice for this additional reason.[7]

The Fourth Amended Complaint does not allege a single public misstatement by Mr. Dahl.  Plaintiffs challenge Mr. Lee's statements during a December 2, 2015 interview with an industry publication (Compl. ¶ 339; Ex. 17), but fail to identify any supposed falsity.  Mr. Lee made no representations about FCA's emissions compliance, and Plaintiffs do not dispute the truth of Mr. Lee's statements that FCA US "looked at 2 million lines of software code," "[i]t's not against the rules to have something (used for test procedures) that *could* be turned into a defeat device," and "[y]ou're only guilty if you have used the defeat device, which was the case at [Volkswagen]."  (Ex. 17 (emphasis added).)  Mr. Lee's general questions (*e.g.*, "Are we as good as we think we are?  This is the right time to ask that question." (*id.*)) are also inactionable as a matter of law, *see, e.g.*, *Ind. Pub. Ret. Sys.* v. *SAIC, Inc.*, 818 F.3d 85, 97–98 (2d Cir. 2016) ("puffery" "does not give rise to securities violations" where challenged "statements are typically 'too general to cause a reasonable investor to rely upon them'") (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chi.* v. *J.P. Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009)).

---

[7] Plaintiffs also added irrelevant alleged misstatements, such as a February 2, 2016 press release discussing "European law," "Europe[an] vehicles" and "Euro 6 calibrations."  (Ex. 16; Compl. ¶ 345.)

Plaintiffs contend that Mr. Mazure signed cover letters to the EPA, not to investors, "on behalf of Chrysler," stating that FCA US "agrees that the exhaust emission standards listed below and in the application for certification apply to both certification and in-use vehicles" under applicable regulations.  (Compl. ¶¶ 249, 251, 253, 258, 286, 318; Exs. 18–19.)  But the Fourth Amended Complaint does not allege that Mr. Mazure exercised "ultimate authority over the[se] statement[s], including [their] content and whether and how to communicate [them]."  *Janus Capital Grp., Inc.* v. *First Derivative Traders*, 564 U.S. 135, 142 (2011).  Because "[o]ne who prepares or publishes a statement on behalf of another is not its maker," *id.*, Mr. Mazure made no alleged misstatements to investors as a matter of law.

Even more importantly, the Fourth Amended Complaint does not—and cannot— allege that these statements by FCA US *to the EPA* were directed *to investors.  See Richman* v. *Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 277 (S.D.N.Y. 2012) (Crotty, J.) ("[T]o state a claim, Plaintiffs have to show that [defendant] made material misstatements and omissions with the intent to defraud *its own shareholders*.") (emphasis added); *In re Citigroup, Inc.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) (Swain, J.) (dismissing securities fraud claims because plaintiffs failed to allege misstatements "in connection with the market for [defendant's] own securities").  Moreover, FCA US's acknowledgement that it is, in fact, subject to applicable emissions regulations is in no way misleading.

To the extent Plaintiffs seek to "state a claim for control person liability under Section 20(a)" of the Securities Exchange Act of 1934, their claim fails because they have not pleaded "a plausible primary violation of Section 10(b)."  *Pirnik*, 2016 WL 5818590, at *5 (citing *SEC* v. *First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)); *see* 15 U.S.C.

§ 78t(a).[8]  Nor can FCA US be held liable for any alleged misstatements by FCA NV, because only FCA NV "bears the statutory obligation to file [forms] with the SEC."  *Janus*, 564 U.S. at 147.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all emissions-related claims from the Fourth Amended Complaint with prejudice.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
William B. Monahan
Joshua S. Levy
Anil K. Vassanji
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants*

September 5, 2017

---

[8]  In any event, nothing in the Fourth Amended Complaint shows how Messrs. Dahl, Lee or Mazure "possesse[d] 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise'" at FCA NV.  *Kuhns* v. *Ledger*, 202 F. Supp. 3d 433, 440–41 (S.D.N.Y. 2016) (Buchwald, J.) (quoting *First Jersey*, 101 F.3d at 1473) (no control person liability where defendant owned 47% of common stock and "substantially influenced" the company).