```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/13/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
 :
VICTOR PIRNIK, :
 :
                    Plaintiff, : 15-CV-7199 (JMF)
 :
     -v- : MEMORANDUM OPINION
 : AND ORDER
FIAT CHRYSLER AUTOMOBILES, N.V., et al., :
 :
                 Defendants. :
 :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In this securities fraud lawsuit, familiarity with which is presumed, investors bring claims against Defendant Fiat Chrysler Automobiles, N.V. ("FCA NV"), a global car company; its United States subsidiary, FCA US LLC ("FCA US" and, together with FCA NV, "FCA"); and several officers and employees of the two, including Sergio Marchionne, the Chief Executive Officer of FCA NV.  The Court has issued two prior opinions addressing the validity of Plaintiffs' claims.  *See Pirnik v. Fiat Chrysler Autos., N.V.*, 15-CV-7199 (JMF), 2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) ("*Pirnik I*"); *Pirnik v. Fiat Chrysler Autos., N.V.*, No. 15-CV-7199 (JMF), 2017 WL 3278928 (S.D.N.Y. Aug. 1, 2017) ("*Pirnik II*").  In the first, the Court denied Defendants' motion to dismiss to the extent that Plaintiffs alleged that Defendants had made false and misleading statements with respect to FCA's compliance with applicable safety regulations.  *See Pirnik I*, 2016 WL 5818590, at *4, 10-11.  Most relevant here, the Court found that Plaintiffs' allegations of scienter as to those claims were sufficient — based, in part, on the fact that FCA officials had assured investors regarding FCA's safety-related compliance and

accountability despite receiving letters from the National Highway Traffic Safety Administration ("NHTSA") expressing concerns with respect to certain FCA recalls. *See id.* at *2, 6-7.

Following the Court's decision in *Pirnik I*, Plaintiffs amended their complaint to add claims that Defendants had made false and misleading statements regarding FCA's compliance with certain federal and state emissions regulations. (Docket No. 69). In *Pirnik II*, the Court granted Defendants' motion to dismiss these new emissions-based claims on the ground that Plaintiffs had failed to allege scienter with sufficient particularity. "On the whole," the Court explained, Plaintiffs' "allegations boil down to general claims about the importance of certain diesel-engine vehicles to the company, the unremarkable fact that Marchionne received regular reports regarding emissions tests and that the company had audited its vehicles for emissions compliance, FCA's awareness that *other* automobile manufacturers were facing regulatory scrutiny for using illegal 'defeat devices,' and vague statements by confidential witnesses that emissions reports were 'forwarded up' through 'senior' management to reach Marchionne." 2017 WL 3278928, at *2 (footnote omitted). The Court noted the "conspicuous[] absen[ce]" of "*any* allegations that FCA officials or Marchionne ever received test results, reports, or other communications indicating that FCA vehicles were not in compliance with relevant emissions regulations" during the relevant period. *Id.* That "doom[ed] Plaintiffs' case for scienter." *Id.*

Despite "some misgivings," the Court granted Plaintiffs leave to amend their emissions-based claims. *Id.* at *4. Among other things, the Court found that amendment would not necessarily be futile, citing evidence that Plaintiffs had acquired after filing the then-operative Third Amended Complaint, including a reported January 2016 email to FCA from Byron Bunker, Director of the Environmental Protection Agency's Office of Transportation and Air Quality ("OTAQ"), "noting that the EPA had told FCA officials at a November 2015 meeting

2

that at least one auxiliary emissions control device on the car maker's vehicles appeared to violate the agency's regulations." *Id.* (internal quotation marks and brackets omitted).  Plaintiffs' new information, the Court opined, "may be specific enough to show that FCA had 'knowledge of facts or access to information contradicting [its] public statements,' such that it 'knew or, more importantly, should have known that [it was] misrepresenting material facts.'"  *Id.* at *5 (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2008)).  "Indeed," the Court continued, "if Plaintiffs can allege that the EPA gave notice to high-level FCA officials that the vehicles at issue had unlawful defeat devices (or undisclosed software that the company was required to disclose), their allegations would be much like those that the Court found sufficient with respect to Plaintiffs' allegations regarding compliance with safety-related regulations" in *Pirnik I.  Id.*

Unsurprisingly, Plaintiffs thereafter filed a Fourth Amended Complaint ("FAC"), adding new allegations with respect to the emissions-based claims and naming several new Defendants (Michael Dahl, Robert Lee, Steve Mazure, and FCA US).  (Docket No. 129).  Among other things, the FAC alleges communication between high-level FCA officials and regulators from the EPA's OTAQ during the Class Period.  In particular, Plaintiffs describe a November 25, 2015 meeting between new Defendant Michael Dahl, the Head of Vehicle Safety and Regulatory Compliance at FCA (a position that Plaintiffs assert "reported directly to Marchionne" (FAC ¶ 24)), and Bunker, OTAQ's Compliance Division Director, in which Bunker claimed that several emission devices in FCA's "Ecodiesel vehicles" appeared to "violate EPA's defeat device regulations."  (*Id.* ¶ 427).  Following that meeting, on January 7, 2016, Bunker emailed Linc Wehrly, Director of Light-Duty Vehicle Compliance at FCA (*id.* ¶ 427), stating that he was "very concerned about the unacceptably slow pace of the efforts to understand the high NOx emissions we have observed."  (*Id.* ¶ 429 (emphasis omitted)).  That email reiterated Bunker's

concern that "at least one of the [emissions devices] in question appears to me [to] violate EPA's defeat device regulations." (*Id.* ¶ 429 (emphasis omitted)). The next day, Dahl had a phone call with EPA officials to discuss the devices, and on January 11, 2016, Dahl emailed the Director of OTAQ to explain that he and his staff had "been engaged in extensive efforts to analyze the issues" in response to the EPA's concerns. (*Id.* ¶¶ 430-31).

Moving once again to dismiss the emissions-based claims, Defendants argue that these allegations are still insufficient to "clear the scienter bar," (Docket No. 132 ("Defs.' Mem."), at 11-22), but the Court disagrees. Like the Third Amended Complaint, the FAC identifies repeated affirmative representations by FCA that all of its vehicles were fully compliant with emissions regulations. (*See, e.g.*, FAC ¶¶ 343, 349). At the same time, the FAC identifies specific written exchanges between the EPA and high-level FCA officials warning the company that its vehicles appeared to be out of compliance. (*Id.* ¶¶ 428-33). In those exchanges, the EPA identified particular FCA vehicles (namely, Jeep Grand Cherokees and Ram 1500 trucks) and specific emissions devices that FCA had failed to disclose in its filings with the EPA; just one year later, those vehicles and devices were the subjects of an EPA notice of violation and a civil suit brought by the Department of Justice. (*See id.* ¶ 38). (Notably, the gravamen of EPA's notice of violation was not that the devices were illegal, but rather that FCA had failed to disclose the existence of the devices. (*See id.* ¶ 364).) Taken together, those allegations are sufficient to infer scienter and falsity. *See Novak*, 216 F.3d at 309 ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."); *see also, e.g.*, *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 982 (8th Cir. 2012) (holding that where a company receives communications from a federal agency indicating "a risk that [the agency] may take corrective action," the company "is

obligated to assess the seriousness of the risk and disclose such information to potential investors if it also represents it is in compliance with [the agency's] regulations"); *Todd v. STAAR Surgical Co.*, No. 14-CV-5263 (MWF) (RZ), 2016 WL 6699284, at *5-8 (C.D. Cal. Apr. 12, 2016) (finding scienter adequately alleged with respect to statements of compliance with Food and Drug Administration ("FDA") regulations where an FDA inspector had reported potential regulatory violations to management); *Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328, 342 (D. Conn. 2011) (finding the scienter requirement met where high-level corporate official received emails suggesting certain actions were not in compliance). Indeed, the allegations are substantially in line with those that the Court found sufficient with respect to the safety-regulation claims in *Pirnik I*. *See* 2016 WL 5818590, at *5-7.[1]

Separately, Defendants take issue with Plaintiffs' addition of claims against Michael Dahl, Robert Lee, Steve Mazure, and FCA US. (*See* Defs.' Mem. 23-25). When the Court granted Plaintiffs leave to remedy the deficiencies identified in the Third Amended Complaint, it certainly was not contemplating the addition of new Defendants. *See Pirnik II*, 2017 WL 3278928, at *4 ("Plaintiffs should be given a chance to amend their emissions-related claims."). Nevertheless, the Court did not explicitly limit the scope of Plaintiffs' amendments. And in any event, insofar as the claims against these new Defendants arise out of some newly available facts, the Court concludes that Plaintiffs should be permitted to add them regardless. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); Fed. R. Civ. P. 16(b)(4) (providing that "[a] schedule may be modified only for good cause"). Additionally, drawing all reasonable inferences in Plaintiffs' favor, the Court finds —

---

[1]   In light of this conclusion, the Court need not and does not resolve the parties' disputes over whether Plaintiffs' other additions to the FAC suffice to allege scienter.

substantially for the reasons stated in Plaintiffs' memorandum of law (Docket No. 136, at 23-25) — that the FAC adequately alleges that the new Defendants, as FCA NV's largest subsidiary and high-level executives, were the "makers" of statements concerning their areas of responsibility at the company; that their statements were false or misleading representations to investors; and that they exercised sufficient control to be subject to control person liability under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(t)(a).  *See, e.g.*, *In re Banco Bradesco S.A. Sec. Litig.*, No. 1:16-CV-4155 (GHW), 2017 WL 4381407, at *49 (S.D.N.Y. Sept. 29, 2017) ("Determining whether an individual defendant is a 'controlling person' is 'a fact-intensive inquiry that generally should not be resolved on a motion to dismiss.'" (quoting *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741 (S.D.N.Y. 2015))); *see also, e.g.*, *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001) (finding liability under Section 20 where "[t]he complaint alleges that [the control person] was an officer of the Bank and that he had primary responsibility for the dealings of that Bank").

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' emissions-related claims is DENIED.  By **November 27, 2017**, the parties shall meet and confer and submit a joint letter, not to exceed five pages, concerning their views on the next steps in this litigation, mindful of both the multi-district litigation proceedings pending in the Northern District of California, *see In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices and Prods. Liab. Litig.*, No. MDL 2777, 2017 WL 1282901 (J.P.M.L. Apr. 5, 2017), and the motion for class certification filed by Plaintiffs on March 17, 2017 (Docket No. 85).

The Clerk of Court is directed to terminate Docket No. 131.

SO ORDERED.

Date: November 13, 2017
      New York, New York

_____
JESSE M. FURMAN
United States District Judge