March 9, 2018

**VIA ECF**

The Honorable Jesse M. Furman
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

*Re: Koopmann et al. v. Fiat Chrysler Automobiles N.V. et al.*, **1:15-cv-07199-JMF (S.D.N.Y.)**

Dear Judge Furman:

Pursuant to Rule 2.C of Your Honor's Individual Rules of Practice, we write on behalf of Plaintiffs to request an informal conference with the Court to resolve a discovery dispute between the parties in the above-captioned Action. Counsel for Plaintiffs and Defendants met and conferred via email or telephone on February 14, 2018, February 15, 2018, February 19, 2018, February 27, 2018, March 6, 2018, March 7, 2018 and March 8, 2018 and are unable to resolve the dispute.

The Parties' discovery dispute concerns Defendants' refusal to produce documents for an additional 15 proposed custodians.[1] Parties are entitled to discovery regarding any non-privileged matter that is relevant to any claim or defense, and information need not be admissible at trial to be discoverable. Fed. R. Civ. P. 26(b)(1). The 15 proposed custodians were involved in the recall process for the Recalls at issue in this Action and were engaged in communications with NHTSA respecting these Recalls. Communications between Chrysler personnel and NHTSA are critically relevant because whether NHTSA communicated to Chrysler that it was not conducting vehicle recall campaigns in accordance with the Safety Act goes to whether Chrysler and/or the Individual Defendants had scienter.

The 15 proposed custodians for which Plaintiffs seek document production represent individuals in three groups at Chrysler: the Recall Administration Group, the NHTSA and International Process Group and MOPAR. The Recall Administration Group was the group that effectuated the recall once it was approved. Members of this group were involved in decision-making with respect to the Recalls and communicated with NHTSA extensively on the Recalls.[2] The NHTSA and International Group was *specifically created* to communicate with NHTSA regarding its investigations, including the Recalls. Finally, MOPAR is FCA's parts arm. MOPAR's purchasing and supply division buys and distributes the parts needed to remediate a safety

---

[1] Chris Beach, Wilfred Helfrich, Ruth Venier, Steven Grobbel, Dave Devereaux, Lou Zednick, Ross Putman, Cheryl Fry, Chris Freeman, Brett Gibson, Gabrielle Elser, Scott Holley, Eric Miller, Marvin Lane and Sharon Brooks.

[2] Furthermore, Mr. Helfrich's title, like that of at least two other members of the Recall Administration group for which Plaintiffs seek documents, is "Service & Government Liaison." Hence, by definition, the job responsibilities of Mr. Helfrich and others in his group consisted of communicating with NHTSA.

issue."[3]  NHTSA communicated with MOPAR respecting parts shortages and restrictions placed on the dealers' ability to order the parts needed to remedy a vehicle pursuant to a recall. Defendants have refused to produce emails from any of these individuals.

Defendants object to searching for and producing documents in the possession of the proposed custodians primarily on two bases.  First, Defendants argue that the production of documents of these individuals, who are "low-level employees" would be "on the same topics" as emails produced by more senior level employees and would "therefore [be] cumulative of documents already produced."  They further argue that to the extent that there are emails solely between these individuals and NHTSA they are irrelevant to this Action because these individuals are too "low-level" to legally bind Chrysler.  Defendants additionally point to their production of "over 500,000 documents" to argue that further production would be "unreasonably cumulative or duplicative."  Second, Defendants contend that the collection and searching of the documents for these proposed custodians would be burdensome.  Finally, Defendants cite the April 6, 2018 court deadline to complete fact discovery document production, to argue that document production for the 15 proposed custodians is "not feasible."

Defendants' arguments are unavailing.  First, "the mere fact that many documents have already been produced is not sufficient to establish that there are no other relevant materials to be found."[4]  Additionally, it is simply not true that emails from lower-level employees, despite their inability to legally bind Chrysler, are not relevant.[5]  For example, emails between low-level employees and/or between low-level employees and NHTSA, expressing frustration with the rollout of recall campaigns are precisely the types of documents that would prove invaluable at depositions and could lead to relevant testimony about what these low-level employees conveyed to senior management.[6]  In fact, given the dearth of emails produced from senior management it

---

[3] As demonstrated by the July 2, 2015 Public Hearing and the July 24, 2015 Consent Order between Chrysler and NHTSA, NHTSA expressed concern with Chrysler's obligation to produce the parts needed to remedy the vehicles subject to a recall.  This concern formed part of the basis for NHTSA's determination that Chrysler was in violation of the Safety Act.

[4] *Family Wireless #1, LLC v. Auto. Techs., Inc*., 2016 U.S. Dist. LEXIS 65885, *7 (D. Conn. May 19, 2016); *See Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.,* 2013 U.S. Dist. LEXIS 167981 (S.D.N.Y. 2012) ("[T]he total number of documents 'harvested' is not a particularly compelling statistic by itself because it says nothing about the possible significance of the documents and may in fact reflect an inefficient search protocol.").

[5] The fact that these additional custodians may be "low-level employees" does not weigh against relevancy.  *See Family Wireless #1, LLC,* 2016 U.S. Dist. LEXIS 65885, *9-10 ("It is reasonable to believe that discussions and transmissions of potentially relevant information could transpire below the highest echelon of management" and "while not issuing directives, lower-level employees may discuss execution of policies amongst themselves and with third parties other than their superiors).

[6] *See Capitol Records, Inc. v. MP3tunes, LLC,* 261 F.R.D 44, 50 (S.D.N.Y. 2009) ("With respect to the issue of custodians, it may well be...that only the more senior...employees sent or received emails that are relevant to the issues in this case.  By the same token, however, it also may be true that employees at that level took care not to say anything incriminating and that lower-level employees were less guarded in their email communications.").

is likely what much of what was communicated to top management was done so verbally, through phone calls and/or meetings. Additionally, of the 500,000 documents produced to date, only 21,693 (emails plus families/attachments) of these represent documents from custodians in the Recall Administration Group. No documents have been produced from anyone in the NHTSA and International Group and MOPAR.

Second, Defendants' argument that production of these emails would be burdensome is not credible. Bare assertions of undue burden are insufficient, and Defendants must come forward with evidence to show the nature and extent of the burden.[7] Out of the 500,000 documents produced, there are only 13,239 emails from custodians in the Recall Administration Group. Indeed, Defendants' entire production only contains a total of 23,746 emails from all custodians. The vast majority of the production consists of voluminous consumer complaints and publicly filed documents. Given these low figures, it defies reason to assume that producing the email communications of the proposed custodians, after application of the already agreed upon search term protocol and de-duplication, could result in anywhere near a burdensome amount.[8] Furthermore, despite Plaintiffs' repeated requests Defendants refuse to even apply the search terms to determine the volume of a potential production, undermining their *ipse dixit* assertion of undue burden.

Finally, Defendants cannot hide behind an impending end-of-fact discovery deadline to refuse production of additional relevant documents, when any potential delay is of their own creation. For starters, Plaintiffs made their request on February 14, 2018, over three weeks ago, and have explained the relevance of the documents. In contrast, Defendants inexplicably refuse to even attempt to determine the volume of documents that would need to be reviewed. Moreover, the roles of two of the three groups to which 11 of these additional custodians belong to – the Recall Administration Group and the NHTSA and International Group – by definition involved communicating with NHTSA about the Recalls at issue in this Action. Thus, at the very least, these 11 individuals should have been identified by Defendants as custodians at the outset of discovery. Instead, it was only through Plaintiffs' review of over 500,000 documents and deposition testimony that the relevance of these individuals was borne out.

Each Rule 26(b)(1) factor weighs in favor of producing these documents: all the proposed custodians are believed to have communicated with NHTSA about the Recalls; the amount in controversy is large; only Defendants have access to these documents; the requested documents

---

[7] *See ZooBuh, Inc. v. Better Broad., Ltd. Liab. Co.*, 2017 U.S. Dist. LEXIS 62061, at *8-11 (D. Utah Apr. 24, 2017) (defendants failed to provide "some quantification…of the material in its possession that [was] responsive" and thus failed to establish undue burden); *Scott Hutchison Enters. v. Cranberry Pipeline Corp.*, 2016 U.S. Dist. LEXIS 127770, at *6-8 (S.D. W. Va. Sep. 20, 2016) (collecting cases that require specific proof).
[8] *See Family Wireless #1, LLC,* 2016 U.S. Dist. LEXIS 65885, *7 (finding that limitation of search parameters so as to exclude the production of duplicative emails "should alleviate some of the cost and time concerns that defendant raises.").

likely bear on central issues in this case; and Defendants have failed to make a credible argument that production would be burdensome.

Respectfully submitted,

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

Patrick V. Dahlstrom
POMERANTZ LLP
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184                `

*/s/ Laurence M. Rosen*
Laurence M. Rosen
Phillip Kim
Sara Fuks
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827

*Co-Lead Counsel for Plaintiffs*


cc: All counsel (by ECF)