# Exhibit 8

## SCHEDULE OF NECESSARY DEPOSITION WITNESSES[1]

1. **Christopher Freeman,** Products Investigator in the Products Investigations and Campaigns Group at FCA US.  Given the complex organizational structure of the groups at Chrysler that concerned vehicle safety, Plaintiffs noticed a Rule 30(b)(6) deposition on the recall process. Mr. Freeman was designated by Defendants as their Rule 30(b)(6) witness to testify on these matters.  Plaintiffs deposed Mr. Freeman on November 2, 2017.

2. **Bonnie Van Etten**, Head of Group Technical Accounting and Accounting Research at FCA US.  Plaintiffs served on Defendants a Rule 30(b)(6) deposition notice on vehicle and emissions statements.  Ms. Van Etten was designated by Defendants as their Rule 30(b)(6) witness to testify on these matters.  Plaintiffs deposed Ms. Van Etten on December 13, 2017.

3. **Michael Cuson**, Head of BICEP Investigations in the Products Investigations and Campaigns Group at FCA US.  As the head of Investigations, Mr. Cuson worked in the investigation of most of the recalls in this Action.  Mr. Cuson was also contacted by NHTSA with concerns respecting the rollout of various of the recalls. (FCA-PIRNIK-000973174-175, FCA-PIRNIK-000805083, FCA-PIRNIK-000803599).  Plaintiffs deposed Mr. Cuson on January 30, 2018.

4. **David Bernier**, Head of Recall Administration. Mr. Bernier is identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." Mr. Bernier held this position for the duration of all the recalls at issue.  As head of Recall Administration, Mr. Bernier was in charge of the team that handled the effectuation of the recalls.  Review of the documents show that Mr. Bernier was very hands on and personally involved in every aspect entailed not only in the rollout of a recall, but also in answering NHTSA's questions and concerns. For example, document review shows that he was in charge of making sure that Chrysler met its recall notification obligations and he was the point of contact for NHTSA when the agency had concerns about late notifications/missed regulatory deadlines, parts availability issues, and faulty remedy determinations. (FCA-PIRNIK-00836522-523, FCA-PIRNIK-000976724, FCA-PIRNIK-000776215, FCA-PIRNIK-000815803, FCA-PIRNIK-000957968). Document review also shows that Mr. Bernier was involved in coordinating responses to NHTSA's formal Information Requests respecting the recalls, such as Audit Queries and Recall Queries. (FCA-PIRNIK-000782517, FCA-PIRNIK-000958781-782, FCA-PIRNIK-000802765-766, FCA-PIRNIK-000969303).  Additionally, as stated in Defendants' Initial Rule 26(a)(1) disclosures, Mr. Bernier will also be able to testify to communications with dealerships concerning the recalls.  Mr. Bernier's deposition is scheduled for May 15, 2018.

---

[1] While Plaintiffs request that the Court grant them leave to take 40 depositions they have only identified 36 necessary deponents because they are still considering who the remaining four will be.  As Plaintiffs continue to review the recently produced documents, as well as, potentially, the documents that Plaintiffs moved to compel from Bosch, Plaintiffs hope that the Court will grant them time to make appropriate determinations as to who the remaining four additional deponents will be.

5. **Philip Hartnagel**, Head of Product Investigations and Campaigns at FCA US, 2014-2015. Mr. Harnagel is identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As head of Products Investigations and Campaigns, Mr. Hartnagel was in charge of Recall Administration and the product investigators which were tasked with investigating a potential defect. As stated in Defendants' Initial Rule 26(a)(1) disclosures, Mr. Hartnagel will testify to communications with NHTSA concerning owner and dealer recall notifications, as well as "573 reports." A review of the documents shows Mr. Hartnagel's communications with NHTSA concerning missed regulatory deadlines and Chrysler's responses to NHTSA's Information Requests. (FCA-PIRNIK-000976833, FCA-PIRNIK-000803512, FCA-PIRNIK-000807753, FCA-PIRNIK-000782517-518, FCA-PIRNIK-000800345, FCA-PIRNIK-000775587, FCA-PIRNIK-000788833, FCA-PIRNIK-000774603-604, FCA-PIRNIK-000803599, FCA-PIRNIK-0010334238, FCA-PIRNIK-000779815). Mr. Hartnagel's deposition is scheduled for May 17, 2018.

6. **Stephen Williams**, Head of Safety Compliance and Product Analysis at FCA. Mr. Williams is identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As stated in Defendants' Initial Rule 26(a)(1) disclosures, Mr. Williams will testify to Chrysler's safety and regulatory compliance programs and communications with NHTSA regarding the recalls. A review of the documents shows Mr. Williams was personally communicated with NHTSA Deputy Administrator Friedman regarding the agency's criticism of Chrysler's rollout of the trailer hitch and Takata recalls. (FCA-PIRNIK-000803365, FCA-PIRNIK-000805439). Document review also shows that Mr. Williams was involved in corresponding with NHTSA regarding Chrysler's responses to NHTSA's Information Request regarding an Audit Query. (FCA-PIRNIK-000782517-518). Mr. Williams deposition is scheduled for May 23, 2018.

7. **Kristin Kolodge,** Head of Product Investigations and Campaigns at FCA US, 2013-2014. Ms. Kolodge is identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As head of Products Investigations and Campaigns, Ms. Kolodge was in charge of Recall Administration and the product investigators which were tasked with investigating a potential defect. As stated in Defendants' Initial Rule 26(a)(1) disclosures, Ms. Kolodge will testify to communications with NHTSA concerning owner and dealer recall notifications, as well as "573 reports." A review of the documents shows Ms. Kolodge's communications with NHTSA concerning missed regulatory deadlines and Chrysler's responses to NHTSA's Information Requests. (FCA-PIRNIK-000773966, FCA-PIRNIK-000804049, FCA-PIRNIK-000696212, FCA-PIRNIK-000976712, FCA-PIRNIK-000834466, FCA-PIRNIK-000957968). Ms. Kolodge's deposition is scheduled for May 30, 2018.

8. **Matthew Liddane,** Vice-President in Vehicle Concepts, Integration, Functional Sciences and Regulatory Affairs at FCA US. Mr. Liddane is identified in Defendants' Initial Rule

26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As stated in Defendants' Initial Rule 26(a)(1) disclosures, Mr. Liddane will testify to communications with NHTSA concerning owner and dealer notifications. A review of the documents shows that Mr. Liddane communicated with NHTSA regarding Chrysler's responses to Information Requests as well as attended meetings with NHTSA to discuss various of the recalls at issue. (FCA-PIRNIK-000801849, FCA-PIRNIK-000804954, FCA-PIRNIK-000803512, FCA-PIRNIK-000973174-175, FCA-PIRNIK-000976833). Mr. Liddane's deposition is scheduled for June 1, 2018.

9. **Reginald Modlin,** Director of Regulatory Compliance at FCA US. Mr. Modlin is identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As stated in Defendants' Initial Rule 26(a)(1) disclosures, Mr. Modlin will testify to Chrysler's safety and regulatory compliance programs and the July 2014 special order. A review of the documents shows that Mr. Modlin communicated with NHTSA regarding Chrysler's responses to Information Requests and other inquiries. (FCA-PIRNIK-000976833, FCA-PIRNIK-000974403, FCA-PIRNIK-000976724, FCA-PIRNIK-000951681, FCA-PIRNIK-000783746, FCA-PIRNIK-000976724, FCA-PIRNIK-802765-766, FCA-PIRNIK-000976833).

10. **Jim Berger**, Director, Quality and Warranty Finance at FCA US. Mr. Berger is identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As stated in Defendants' Initial Rule 26(a)(1) disclosures, Mr. Berger will testify to financial and accounting disclosures. (FCA-PIRNIK-000809509, FCA-PIRNIK-000809519, FCA-PIRNIK-000809517, FCA-PIRNIK-000809517, FCA-PIRNIK-000809526).

11. **Sergio Marchionne**, Chief Executive Officer of FCA NV and FCA US. Mr. Marchionne is a Defendant in this Action and there are allegations against him in the Fourth Amended Complaint ("FAC"). He was also Identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." Additionally, document review shows that Mr. Marchionne was an integral member of a team of Chrysler executives which oversaw a 2014 audit of Chrysler's vehicle safety operations by outside accounting firm Deloitte which found, among various things, that "359 investigations were launched from mostly reactive sources", that there were "delays during root cause analysis due to limited influence of investigation team over engineering priorities", "flagging of issues by Customer Call Canter is not always accurate and documentation is not always consistent", "safety related parts are not factored into planning discussions", and "lack of defined criteria for prioritizing and coordinating campaign execution." (FCA-PIRNIK-000697281). A review of the documents shows Mr. Marchionne personally communicated with NHTSA Deputy Administrator Friedman regarding the agency's criticism of Chrysler's rollout of the trailer hitch and Takata recalls. (FCA-PIRNIK-000773075, FCA-PIRNIK-000805436). Furthermore, document review shows Mr. Marchionne reprimanding employees for making press releases stating that Chrysler does

3

not use defeat devices.  For example, in an email dated September 22, 2015, upon learning FCA US's Chief of Communications released a statement that said that "FCA US does not use defeat devices", Mr. Marchionne replies, "Are you out of your goddam mind?" he further states that he should be fired and called his actions "utterly stupid and unconscionable." (FCA-PIRNIK-001622711).

12. **Mark Chernoby**, Chief Technical Compliance Officer (FCA NV) and Head of North America Vehicle Safety and Regulatory Compliance FCA NV and FCA US.  He was identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses."  Additionally, he is described in Defendants' Initial Rule 26(a)(1) disclosures as having subject matter knowledge regarding "vehicle environmental compliance and emissions certification, and communications with EPA, CARB and/or other government entities for MY 2017 vehicles."  Furthermore, document review reveals that Mr. Chernoby was an integral member of a team of Chrysler executives which oversaw a 2014 audit of Chrysler's vehicle safety operations by outside accounting firm Deloitte which found, among various things, that "359 investigations were launched from mostly reactive sources", that there were "delays during root cause analysis due to limited influence of investigation team over engineering priorities", "flagging of issues by Customer Call Canter is not always accurate and documentation is not always consistent", "safety related parts are not factored into planning discussions", and "lack of defined criteria for prioritizing and coordinating campaign execution." (FCA-PIRNIK-000697281).  Finally, document review also shows that Mr. Chernoby was involved in meetings discussing allegations that Chrysler was cheating on emissions (FCA-PIRNIK-001622711) and discussions surrounding the impact of Chrysler having Bosch engines in their vehicles with regards to what that means for emissions cheating allegations. (FCA-PIRNIK-001625316).

13. **Scott Kunselman,** Senior Vice-President and head of Vehicle Safety and Regulatory Affairs at FCA US.  Mr. Kunselman is a Defendant in this Action and there are allegations against him in the FAC.  He was also Identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As the head of Vehicle Safety and Regulatory Affairs during the time period for approximately half of the recalls at issue, Mr. Kunselman has intimate knowledge of the effectuation of the recalls. Additionally, document review shows that Mr. Kunselman engaged in communications with NHTSA respecting concerns with the rollout of the recalls.  For example, in November 2014, NHTSA's Director of the Office of Investigations, Frank Borris II emailed Mr. Kunselman expressing his displeasure with NHTSA receiving complaints from consumers regarding parts availability. (FCA-PIRNIK-000845659).  Additionally, in November 2014, Mr. Kunselman gave a statement to the United States Senate Committee on Commerce, Science and Transportation regarding Chrysler's rollout of its Takata airbags recalls.  (FCA-PIRNIK-000993785).  Document review also shows that Mr. Kunselman also had involvement with emissions issues.  For example, an October 2014 email shows that Mr. Kunselman was aware that CARB had identified certain AECDs in Chrysler's cars as being defeat devices. (FCA-PIRNIK-001616040).  In this

email, there is discussion that a certain AECD was a "late calibration feature addition to the 2014 MY WK/DS that CARB did not apparently notice with the change disclosure and have only now discovered it during the 2015 MY approval process." *Id.* A September 2015 email also shows that Mr. Kunselman was involved in discussions regarding whether to make public statements to the effect that "FCA US vehicles function the same on the road was they do under testing." (FCA-PIRNIK-001622711). Document review also shows that Mr. Kunselman was generally involved in meetings discussing allegations that Chrysler was cheating on emissions (FCA-PIRNIK-001622711). Finally, Mr. Kunselman has been identified as the person who informed Chrysler's Board of Directors about diesel emissions and regulatory issues. (FCA-PIRNIK-001033893).

14. **Michael Dahl**, Head of Vehicle Safety and Regulatory Compliance FCA US. Mr. Dahl is a Defendant in this Action and there are allegations against him in the FAC. He was also Identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." Additionally, document review shows that Mr. Dahl was a key member in discussions with the EPA and CARB regarding their conclusions that Chrysler's vehicles contained defeat devices. (FCA-PIRNIK-001632116, FCA-PIRNIK-001646046).

15. **Robert E. Lee,** Vice President, Global Powertrain Coordination & Head of NAFTA Engine Powertrain at FCA US. Mr. Lee is a Defendant in this Action and there are allegations against him in the FAC. He was also Identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As the head of Powertrain, Mr. Lee is will provide crucial testimony with respect to powertrain engineering; a key component of which is the ability to measure engine and vehicle exhaust emissions. Document review also shows that Mr. Lee was involved in meetings discussing allegations that Chrysler was cheating on emissions (FCA-PIRNIK-001622711) and discussions surrounding the impact of Chrysler having Bosch engines in their vehicles with regards to what that means for emissions cheating allegations. (FCA-PIRNIK-001625316). Finally, Mr. Lee was a key member in discussions with the EPA and CARB regarding their conclusions that Chrysler's vehicles contained defeat devices.

16. **Vaughn Burns**, Head of Vehicle Emissions, Certification and Compliance at FCA US. There are allegations involving Mr. Burns in the FAC. As the head of Vehicle Emissions, Certification and Compliance, Mr. Burns will provide crucial testimony respecting Chrysler's submission of Certificates of Conformity for the vehicles at issue, contending that they were in compliance with emissions regulations, despite EPA and CARB conclusions that such was not the case. Additionally, document review shows that Mr. Burns was a key member in discussions with the EPA and CARB regarding their conclusions that Chrysler's vehicles contained defeat devices. (FCA-PIRNIK-001616052, FCA-PIRNIK-001616040, FCA-PIRNIK-001646046). For example, an October 2014 email shows that Mr. Burns was aware that CARB had identified certain AECDs in Chrysler's vehicles as being defeat devices. (FCA-PIRNIK-001616040). In this email, there is discussion that a certain AECD was a "late calibration feature addition

to the 2014 MY WK/DS that CARB did not apparently notice with the change disclosure and have only now discovered it during the 2015 MY approval process." *Id.*

17. **Marjorie Loeb**, Senior Vice President in the General Counsel's Office at FCA US. Ms. Loeb was designated by Defendants as a Rule 30(b)(6) witness to testify regarding Chrysler's regulatory filings and public statements concerning its compliance with vehicle safety and emissions regulations. Additionally, document review shows that Ms. Loeb was involved in discussions with Department of Transportation Secretary Foxx regarding various recalls at issue in this Action. (FCA-PIRNIK-000969303). Finally, document review shows that Ms. Loeb was an integral member of a team of Chrysler executives which oversaw a 2014 audit of Chrysler's vehicle safety operations by outside accounting firm Deloitte which found, among various things, that "359 investigations were launched from mostly reactive sources", that there were "delays during root cause analysis due to limited influence of investigation team over engineering priorities", "flagging of issues by Customer Call Canter is not always accurate and documentation is not always consistent", "safety related parts are not factored into planning discussions", and "lack of defined criteria for prioritizing and coordinating campaign execution." (FCA-PIRNIK-000697281).

18. **Gualberto Ranieri**, Chief of Communications at FCA US. Document review shows that Mr. Ranieri was reprimanded by Mr. Marchionne for issuing a statement stating that "FCA US does not use 'defeat devices.'" As a result of causing this statement to be issued Mr. Marchionne asked Mr. Ranieri if he was "out of your goddman mind?" and stated that "he should be fired for such stupidity." (FCA-PIRNIK-001624122).

19. **Steve Mazure**, Senior Manager, Global GHG Compliance Planning; former Vehicle Environmental Certification at FCA US. Mr. Mazure is a Defendant in this Action and there are allegations against him in the FAC. He was also Identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." There is extensive documentary evidence showing that Mr. Mazure was intimately involved in communications with CARB and the EPA regarding their conclusions that Chrysler vehicles contained defeat devices. (FCA-PIRNIK-001616051, FCA-PIRNIK-001208300, FCA-PIRNIK-001056704, FCA-PIRNIK-001482548, FCA-PIRNIK-001449004, FCA-PIRNIK-001443291, FCA-PIRNIK-1646046). Specifically, one email shows that Mr. Mazure advocated not disclosing to CARB if a specific test Chrysler was performing did not meet emissions limits: "If NOx 'grossly fails', Steve [Mazure] believed we should not talk to CARB at all." (FCA-PIRNIK-001056888). In an October 2014 email, Mr. Mazure states that CARB has identified certain AECDs in Chrysler's vehciles as being defeat devices. (FCA-PIRNIK-001616040). In this email, Mr. Mazure states that "late calibration feature addition to the 2014 MY WK/DS that CARB did not apparently notice with the change disclosure and have only now discovered it during the 2015 MY approval process." *Id.* In another email, when discussing sending AECD lists to CARB, Mr. Mazure states that "Bob Lee already declared in the press no defeat devices don't wait for each one to be vetted individually…" (FCA-PIRNIK-001645644). In another email, Mr. Mazure expressed displeasure at learning that another Chrysler

6

employee asked the EPA for clarification on AECDs by stating, "Ugh, you asked EPA about what to put on AECD list? Sensitive topic. Let me know before talking to them on this topic so we can concur on strategy. You ask and they will say all." (FCA-PIRNIK-001622402). Finally, document review also shows that Mr. Mazure was involved in meetings with the EPA discussing their conclusions that Chrysler was cheating on emissions (FCA-PIRNIK-001632116, FCA-PIRNIK-001632726, FCA).

20. **Morrie Lee,** Manager, Performance and Fuel Economy Testing at FCA US. Mr. Lee was identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As Defendants state in their Initial Rule 26(a)(1) disclosures as well as is revealed in document review, Mr. Lee will be able to testify to vehicle emissions certification and communications with EPA, CARB and/or other government entities. Specifically, there is extensive documentary evidence showing that Mr. Lee was intimately involved in communications with CARB and the EPA regarding their finding that the vehicles at issue contained defeat devices. (FCA-PIRNIK-001257553, FCA-PIRNIK-001622311, FCA-PIRNIK-0001446765, FCA-PIRNIK-001632116, FCA-PIRNIK-001632726, FCA-PIRNIK-001443291, FCA-001041021). For example, in a September 2014 email regarding a planned meeting with CARB to discuss certain AECDs that the agency had flagged as defect devices, Mr. Lee states, "As always, discretion is required when discussing things with the agency. Sometimes, discussions can lead to opening additional 'cans of worms'- let's avoid needlessly heading down paths that shouldn't be traveled." (FCA-PIRNIK-001208300). An October 2014 email shows that Mr. Lee was aware that CARB had identified certain AECDs in Chrysler's vehicles as being defeat devices. (FCA-PIRNIK-001616040). In this email, there is discussion that a certain AECD was a "late calibration feature addition to the 2014 MY WK/DS that CARB did not apparently notice with the change disclosure and have only now discovered it during the 2015 MY approval process." *Id.* An October 2015 email shows that Mr. Lee reached out to EPA "asking for clarification on AECDs." (FCA-PIRNIK-001622402). In a November 2015 email, while discussing an upcoming meeting or exchange with CARB, Mr. Lee states, "ok, just did some coaching with Palma and Hennessey and RGO. We can say that maybe the calibration is not as robust in certain conditions but nothing that there should have been an AECD disclosed." (FCA-PIRNIK-001098943).

21. **Beth Borland**, Senior Manager in NAFTA Vehicle Certification. As someone responsible for the accuracy of Chrysler's Certificates of Conformance, Ms. Borland will be able to testify as to why Chrysler submitted these Certificates for the vehicles at issue, contending that they were in compliance with emissions regulations, despite EPA and CARB conclusions that such was not the case. More specifically, Ms. Borland had a role in overseeing and revising Chrysler's OBD ("On Board Diagnostics") Statement which, among other things, purported to list all AECDs contained in any given car model. A November 2014 email shows that Ms. Borland suggested a change to the description, in the OBD Statement, to a controversial AECD. (FCA-PIRNIK-001120371). She states, "Regulatory Affairs brought to our attention a problem with one of the AECD features…EGR #12 - Emissions Impact. Due to the EGR turning to closed, the vehicle

7

may produce more NOx than normal. However this will only be for the set 5 minute cycle." *Id.* She then adds, "We have the following suggested change for you. Under the above conditions, the NOx emission level of the vehicle is not expected to increase. Please change this so we can submit to CARB today." *Id.*

22. **Mark Shost,** Director, Powertrain Applications Engineering. As the head of Powertrain Applications Engineering, Mr. Shost oversaw, and will testify to, virtually every aspect of emissions, ranging from Chrysler's engine, transmission and OBD group, to torque security calibration and exhaust after treatment. Thus, every key member in the emissions portion of the case directly or indirectly reported to Mr. Shost. Additionally, Mr. Shost was a key member in discussions with the EPA and CARB regarding their conclusions that Chrysler's vehicles contained defeat devices. Document review also shows that as a result of the EPA and CARB's findings respecting the AECDS, Mr. Shost was in charge of doing "a critical review and refresh" of Chrysler's "AECD list." (FCA-PIRNIK-001622402).

23. **Scott Henson,** Senior Technical Specialist, Gasoline OBD. Document review shows that Mr. Henson was in charge of determining which AECDs Chrysler would identify to the EPA and CARB. (FCA-PIRNIK-001622402). Additionally, Mr. Henson expressed apprehension and skepticism respecting an AECD training implemented by Chrysler as a result of the EPA and CARB findings. In an October 2015 chat conversation, he states: "That defeat device training is getting me in some serious hot water. Mark is giving it to Bob Lee. Bob is giving it to Sergio, and he is presenting it to the board of directors. :-O" "The goal of this of course is to instruct those who are involved with Defeat Devices how to comply with the law, NOT how to get around it LOL." (FCA-PIRNIK-001640873).

24. **Emanuele Palma,** Senior Manager, Diesel Drivability and Emissions Calibration at FCA US. Mr. Palma was identified in Defendants' Initial Rule 26(a)(1) disclosures as a person "likely to have discoverable information" that Defendants "may use to support [their] claims or defenses." As Defendants state in their Initial Rule 26(a)(1) disclosures as well as is revealed in document review, Mr. Palma will be able to testify to diesel drivability and emissions. Additionally, document review shows that from very early on during the development of Chrysler's diesel engines Mr. Palma expressed concern about Chrysler's lack of desire to understand certain "red flags" regarding the implementation of certain AECDs. In a January 2012 email he states, "I have mixed feelings about this: on the one hand during all the several meetings we're having with the people in Chrysler dealing with the certification group they basically smile when we tell them our concerns about these strategies and they only want a general explanation with no description on how we're actually going to calibrate it. They even say they don't think they're going to bring it to the attention of the EPA…" (FCA-PIRNIK-001530757). Despite his reservations with Chrysler's desire not to be informed of certain "red flags", email communications between Mr. Palma and Bosch personnel respecting the calibration of the engines at issue, show that he opted to hold back certain information from others at Chrysler regarding a defeat device. (FCA-PIRNIK-001054167). After being informed by someone at Bosch that "this is an emissions device and must be clarified to Chrysler AECD", Mr. Palma replies, "Last, Chrysler and VM would like not to have this topic

8

added to the open point list you share with Doug Stander and the rest of the team for the moment, Antonio would rather mention it to him before discussing it further with you and all of us." *Id.* Document review also shows that Mr. Palma was heavily involved and in charge of performing emissions testing as a result of specific requests by the EPA and CARB. (FCA-PIRNIK-001258084, FCA-PIRNIK-001208300, FCA-PIRNIK-001056704, FCA-PIRNIK-001056888, FCA-PIRNIK-001482545, FCA-PIRNIK-001050409-411, FCA-PIRNIK-001443291, FCA-PIRNIK-001041021-023). Also, document review shows that Mr. Palma attended meetings between Chrysler, the EPA and CARB to discuss their conclusions that Chrysler was cheating on emissions (FCA-PIRNIK-001632116, FCA-PIRNIK-001632726-730).

25. **Matt Lipkowitz**, Dataset Manager at V.M. Motori. Mr. Lipkowitz was involved in the testing and calibration of the engines at issue. Document review shows that from very early on during the development of Chrysler's diesel engines Mr. Lipkowitz expressed concern about Chrysler's lack of desire to understand certain "red flags" regarding the implementation of certain AECDs. In a January 2012 email he states: "the tEng working at the warm re-start is a clear red-flag to CARB as well and can't happen…. We aren't violating a specific rule, but it could be called into question by CARB's BS-factor if they would somehow detect it working when running their own emission tests. Also, if their diagnostic strategy has to reflect in some way the modification of the EGR rate and it would be called into question by CARB, then there could be some legal obligation to explain what's going on." (FCA-PIRNIK-001530757).

26. **Daniel Hennessy**, Materials Manager, Diesel OBD and Specialty Gas Drivability and Emissions. Mr. Hennessy was involved in the testing and calibration of the engines at issue for emissions compliance. Document review shows that from very early in the development of the Chrysler's diesel engines, Mr. Hennessy was aware that CARB was concerned with Chrysler, as well as other automakers, trying to get certification of engines that were subpar and/or still in the middle of development. In an August 2013 email he states, "We received informal information from CARB last evening that the approval for the OBD on the WK Diesel program is at significant risk. The feedback was based on their opinion that the precedent had been set when they rejected a couple of other diesel manufacturers for the same reason…bad docs, poor answers, lack of data, massive speculation and the clear view that they were trying to get something certified that was still in the middle of development. This has already been elevated to our VP level. The risk to the company is significant." Review of documents also shows that Mr. Hennessy was aware that the engines were not testing as expected and/or exhibited signs of inefficiency. (FCA-PIRNIK-001481910-912). Additionally, document review also shows that Mr. Hennessy handled testing of emissions as requested by CARB. (FCA-PIRNIK-001257553, FCA-PINRIK-001056741, FCA-PIRNIK-001482545, FCA-PINRIK-001050409, FCA-PINRIK-001041021-023).

27. **Michele Padovan**, OBD Calibration Manager. Document review shows that Mr. Padovan was involved in discussions regarding CARB's conclusions about certain proposed AECDs. (FCA-PIRNIK-001056704). Document review also shows that Mr. Padovan was involved in discussions showing that Chrysler struggled to reduce

emissions.  (FCA-PIRNIK-001266340). Document review also shows that an employee of I.A.V alerted Mr. Padovan that a particularly controversial AECD was a defeat device. In an October 2014 email, the I.A.V. employee states, "Okay - I agree it is a defeat device, in fact I brought my concern to Michele's [Padovan] attention way back in the spring. CARB has confirmed it for us." (FCA-PIRNIK-001416298).

28. **Dennis Jeng,** Manager, Base Engine, Drivability and Emissions Calibration.  Document review shows Mr. Jeng knew that Chrysler's diesel engines contained defeat devices.  In an October 2015 chat conversation, Mr. Jeng is asked by a colleague about a certain functionality which involved the manipulation of the CAT RES ENABLE system. (FCA-PIRNIK-001640873).  After replying on how to "trick" the system to behave in a way that does not comport with emissions regulations, he adds, "NP I'm always looking to cheat the system." *Id.*  Later on in the chat, in an effort to justify this, he states, "Well the law says protecting powertrain components and customer safety If the failure mode is unknown, I'm saying its protecting components or safety because I don't fully understand failure mode." *Id.*

29. **Hal Zatorski**, Manager, OBD Documentation.  Document review shows that Mr. Zatorski knew that Chrysler's diesel engines contained defeat devices.  For example, in a February 2013 email Mr. Zatorski, referring to a function of one of the AECDs, states, "VM lowers their Urea dosing rates during off cycle event to save fluid (e.g. steady state @ 65 MPH).  It is currently not mentioned as an AECD. CHEATERS!" (FCA-PIRNIK-001525059).  In a March 2013 email, Mr. Zatorski states, "sitting here arguiing [sic] with vm about their dosing defeat device." (FCA-PIRNIK-001525059). In a September 2015 chat, Mr. Zatorski expresses surprise when being informed by a colleague that one function of Chrysler's engines involves an AECD know as "on-line dosing" which means that there is a way to reduce dosing when not on FTP."(FCA-PIRNIK-001455109).  He states, "how can you reduce it without blowing emissions??? And we do that??" *Id.*  In a June 2016 chat conversation, regarding the inclusion of the online dosing functionality in the MY14-16 models, Mr. Zatorski states, "essentially a defeat device." (FCA-PIRNIK-001416126). Additionally, the review of documents also shows that Mr. Zatorksi was involved in answering questions posed by CARB respecting the AECDs.  (FCA-PIRNIK-00127424-225, FCA-PIRNIK-001444281-284, FCA-PIRNIK-001056966).

30. **Mark Frank**, ODB Documentation.  Document review shows that Mr. Frank knew that Chrysler's diesel engines contained defeat devices and potentially alerted upper management, Mr. Shost, of it.  In a September 2015 chat, regarding a function of Chrysler's engines which an AECD know as "on-line dosing" he states, "Note: Chysler diesels do 'on-line' dosing. B sure 2 tell Shost he can thank Kass (& me) for minimizing it's off-cycle effects & making sure it was documented in the cert docs. Or FCA would have been in the same boat w VW." (FCA-PIRNIK-001455109).

31. **Kasser Jaffri**, OBD Documentation Diesel.  Document review shows that Mr. Jaffri knew that Chrysler's diesel engines contained defeat devices and alerted upper management.  In an April 2014 chat, discussing Chrysler AECD statements submitted to CARB, Mr. Jaffri states,  "So, I think VM and Fiat try to leverage the first paragraph and

state that the AECD which 'deactivates the operation of part of the emission control system', does not impact the emissions control system which is crap." (FCA-PIRNIK-001416300). With regards to the fact that the statement was inaccurate he adds, "if it worked at EPA, I would jump all over this"…"I really dont know what is better. I know that the AECD documents are crap. why would you declare a AECD if it doesnt impact emissions ?"…" I brought this up some time back and I got push back I was told, this is emissions, not OBD, back off. lol emissions guys are cheaters, and they know it." *Id.* In an October 2014 chat, regarding a particularly controversial AECD, Mr. Jaffri states, "the reasoning for the AECD is weak, they shut off EGR for 5 mins after 30 minutes of operating to "clean the exhaust values for soot deposits". Really, its turned off help remove soot coating from the O2 and exhaust temperature sensors." (FCA-PIRNIK-001537424). In a June 2016 chat, with respect to and undisclosed AECD, Mr. Jaffri states, "they really messed up by not including that in the MY14-16 AECD." (FCA-PIRNIK-001416126). Additionally, the review of documents also shows that Mr. Jaffri was involved in answering questions posed by CARB respecting the AECDs. (FCA-PIRNIK-00127424-225, FCA-PIRNIK-001444281-284). Finally, document review also shows that Mr. Jaffri was involved in conversations with CARB where they stated that their findings showed that Chrysler was cheating on emissions (FCA-PIRNIK-001416298).

32. **Michael Berry** Diesel Gasoline Systems, OBD Calibration at Bosch. Document review shows that Mr. Berry was a key person at Bosch who communicated with Chrysler personnel regarding testing performed on the emissions impact of certain calibration functions of the diesel engines. This review shows that Mr. Berry communicated to Chrysler that a specific function suggested by Chrysler for calibration was a defeat device. In a February 2012 email, Mr. Berry states, "I've learned a little more about this T_Eng functionality during the test trip and have now seen the ranges in which it will be used…By using the functionality, the EGR flows are being altered while on an FTP test and running a different value in the real world. This is an emissions defeat device and must be clarified to Chrysler AECD." (FCA-PIRNIK-001054167).

33. **Tamas Szailer** Technical Program Manager at FEV. Document review shows that Mr. Szailer knew that Chrysler's diesel engines contained defeat devices. In an April 2014 chat, discussing Chrysler AECD statements submitted to CARB, Mr. Szailer states, "yes, we are releasing that cal in a few days only DEF frozen/cavity all rest are 'claimed' to be not impacting emissions." (FCA-PIRNIK-001416300). In an October 2014 chat, discussing the fact that in order for a specific AECD known as "online dosing" to be acceptable it cannot be used to achieve urea consumption targets, he states, "hahaha you know that it is used for def consumption." (FCA-PIRNIK-001577359).

34. **Michael Taljonick,** Technical Director, Hybrid and Electrification at I.A.V. Document review shows that Mr. Taljinick was a key person at I.A.V who communicated with Chrysler personnel regarding testing performed on the emissions impact of certain calibration functions performed on the diesel engines and communicated to Chrysler personnel that a specific function was a defeat device. In an October 2014 email, discussing a particularly controversial AECD. Mr. Taljonick states, "Okay - I agree it is a

defeat device, in fact I brought my concern to Michele's [Padovan] attention way back in the spring. CARB has confirmed it for us." Then, later in the chat, Taljonick writes, "Thanks for the update, it's quite helpful. Let's keep in touch, I am anticipating a commercial shitstorm, and I have no idea how it will translate to what work we do with you in the future." (FCA-PIRNIK-001416298).

35. **Aldo Marangoni**, Head of Powertrain Engineering, EMEA Region at FCA NV. As head of Powertrain Engineering in EMEA, Mr. Marangoni will testify to Chrysler's compliance with European emissions regulations. Additionally, document review shows that Mr. Marangoni was in communications with various European governments respecting their findings that Chrysler European vehicles were not in compliance with emissions regulations. (FCA-PIRNIK-001633444, FCA-PIRNIK-001633470). Document review also shows that Mr. Marangoni was involved in communicating with Bosch regarding American and European government investigations into emissions violations. (FCA-PIRNIK-001633435-436, FCA-PIRNIK-001624166).

36. **Robert Garris**, General Engineer, U.S. Department of Transportation, NHTSA. Mr. Garris was a NHTSA engineer in the Recall Management Division ("RMD") of the Office of Defect Investigations ("ODI"). Part of Mr. Garris' job responsibilities included conducting investigations on the performance of safety recalls initiated by vehicle manufacturers. Mr. Garris' investigation into Chrysler's safety recall campaigns led to the 2015 Consent Order. Document review shows that Mr. Garris worked on Audit Query 14-003, which was an investigation in which NHTSA uncovered that Chrysler had parts restriction in place, had awareness that dealers were unable to obtain sufficient parts, and had engaged in a practice of canceling dealer back orders for recall parts. (FCA-PIRNIK-000976724, FCA-PIRNIK-000776215, FCA-PIRNIK-000834466, FCA-PIRNIK-000957968, FCA-PIRNIK-000783746, FCA-PIRNIK-000768060-61, FCA-PIRNIK-000958781-783).