## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY KOOPMANN, TIMOTHY KIDD and VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, RICHARD K. PALMER, SCOTT KUNSELMAN, SCOTT KUNSELMAN, MICHAEL DAHL, STEVE MAZURE and ROBERT E. LEE<br><br>Defendants. | **Civ. Action No: 15-cv-07199-JMF** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS FOR DOCUMENTS AND TESTIMONY

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................... 1

RELEVANT FACTS ................................................................................................ 7

ARGUMENT ......................................................................................................... 10

    I.      LEGAL STANDARD ........................................................................ 10

          A.     Both the Documents and the Testimony Sought by the Subpoenas
                  Are Work Product ......................................................................... 12

                  1.     The Documents Sought by the Subpoenas Are Opinion
                          Work Product ................................................................ 12

                  2.     The Deposition Testimony Sought by the Subpoenas Is
                          Opinion Work Product ................................................. 15

          B.     Plaintiffs Have Not Waived Work Product Protection ............................ 16

          C.     Even if the Court Determines that the Requested Discovery is Fact
                  Work Product Defendants Have Not Demonstrated Substantial
                  Need For It ..................................................................................... 19

          D.     The Document Subpoenas are Untimely .................................................. 23

          E.     In the Event that The Court is Inclined to Permit the Depositions to
                  Proceed They Should Occur After the Close of Fact Discovery
                  Prior to the Filing of Summary Judgment Motions ................................. 24

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdell v. City of New York,*
No. 05 CIV. 8453 KMK JCF, 2006 WL 2664313 (S.D.N.Y. Sept. 14, 2006) ................ 10, 19

*Aboeid v. Saudi Arabian Airlines, Inc.,*
No. CV-10-2518 SJ VVP, 2012 WL 3637430 (E.D.N.Y. Aug. 22, 2012) .................... 4, 5, 16

*Appeal of Hughes,*
633 F.2d 282 (3d Cir.1980) ................................................................................. 15

*Appleton Papers, Inc. v. E.P.A.,*
702 F.3d 1018 (7th Cir. 2012) ............................................................................. 16

*Baker v. General Motors Corp.,*
209 F.3d 1051 (8th Cir. 2000) .................................................................... 3, 11, 12

*City of Lakeland Employees' Pension Plan v. Baxter Intern., Inc.,*
No. 10 C 6016, 2013 WL 2151509 (N.D. Ill. May 16, 2013) ............................... 16

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.,*
952 F. Supp. 2d 633 (S.D.N.Y. 2013) ............................................................ 17, 22

*City of Pontiac Gen. Employee's Ret. Sys. v. Lockheed Martin Corp.,*
No. 11 CIV. 5026 JSR, 2012 WL 4202657 (S.D.N.Y. Sept. 18, 2012) ................ 17

*Cty. of Niagara v. Netherlands Ins. Co.,*
No. 14-CV-737A(F), 2017 WL 2059808, (W.D.N.Y. May 15, 2017), *aff'd,* No. 14-
CV-737-A(F), 2017 WL 3917133 (W.D.N.Y. Sept. 7, 2017) ............................... 11

*Dukes v. Wal-Mart Stores, Inc.,*
2013 WL 1149754 (N.D. Cal. Mar. 19, 2013) .................................................... 13

*Feacher v. Intercontinental Hotels Grp.,*
No. CIV.A. 3:06-CV-0877, 2007 WL 3104329 (N.D.N.Y. Oct. 22, 2007) .................... 12, 15

*Gerber v. Down E. Cmty. Hosp.,*
266 F.R.D. 29 (D. Me. 2010) ............................................................................... 14

*Hatamian v. Advanced Micro Devices, Inc.,*
No. 14-CV-00226-YGR(JSC), 2016 WL 2606830 (N.D. Cal. May 6, 2016) ......... 3, 6, 18, 22

*Hickman v. Taylor,*
329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) ............................................. 4, 19

*In re Fitch, Inc.,*
330 F.3d 104 (2d Cir.2003) ................................................................................. 10

*In re Grand Jury Proceedings,*
473 F.2d 840 (8th Cir. 1973) ............................................................................ 3, 20

*In re Harmonic, Inc. Sec. Litig.,*
245 F.R.D. 424 (N.D. Cal. 2007) ......................................................................... 13

*In re JDS Uniphase Corp. Sec. Litig.*,
   2005 WL 6296194 (N.D. Cal. Sept. 23, 2005) ............................................................. 13, 16

*In re Millennial Media, Inc.*,
   2015 WL 344918 (S.D.N.Y. May 29, 2015) ....................................................................... 22

*In re St. Paul Travelers Securities Litigation II*,
   2007 WL 1424673 (D. Minn. May 10, 2007)...................................................................... 16

*In re Symbol Techs., Inc. Sec. Litig.*,
   No. CV053923DRHAKT, 2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017)............. 5, 21, 22, 23

*Institute for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*,
   272 F.R.D. 124 (S.D.N.Y. 2011) ................................................................................. 12, 13

*International Business Machines Corp. v. Edelstein*,
   526 F.2d 37 (2d Cir. 1975)................................................................................................. 15

*John Wiley & Sons, Inc. v. Doe Nos. 1–30*,
   284 F.R.D. 185 (S.D.N.Y. 2012) ....................................................................................... 10

*Lake Shore Radiator, Inc. v. Radiator Express Warehouse*,
   No. 3:05CV1232 J12MCR, 2007 WL 842989 (M.D. Fla. Mar. 19, 2007) .......... 14, 15, 19, 20

*Meyer v. Kalanick*,
   212 F. Supp. 3d 437 (S.D.N.Y. 2016)................................................................................ 22

*Miller Oil Co. v. Smith Indus.*,
   No. 1:88 CV 785, 1990 WL 446502 (W.D. Mich. Dec. 13, 1990)....................................... 20

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. AARPO, Inc.*,
   No. 97-CV-1438, 1998 WL 823611 (S.D.N.Y. Nov. 25, 1998)............................................ 14

*Neal v. Gen. Motors, LLC*,
   No. 2:14-CV-633-WKW-GMB, 2016 WL 9710087 (M.D. Ala. Dec. 13, 2016).................... 15

*O'Connor v. Boeing N. Am., Inc.*,
   216 F.R.D. 640 (C.D. Cal. 2003) ....................................................................... 4, 11, 15, 18

*Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron*,
   278 F.R.D. 335 (S.D.N.Y. 2011) ....................................................................................... 19

*S.E.C. v. Nadel*,
   No. CV 11-215 WFK AKT, 2013 WL 1092144 (E.D.N.Y. Mar. 15, 2013) .......... 5, 13, 20, 21

*S.E.C. v. Roberts*,
   254 F.R.D. 371 (N.D. Cal. 2008)....................................................................................... 14

*S.E.C. v. Sassano*,
   274 F.R.D. 495 (S.D.N.Y. 2011) ....................................................................................... 10

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998)............................................................................................. 11

*United States v. Nobles*,
   422 U.S. 225, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)...................................................... 18

iii

*United States v. Sanders,*
    211 F.3d 711 (2d Cir.2000)..................................................... 10

*Upjohn Co. v. United States,*
    449 U.S. 383, 399–400, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).................................... 11, 12

*von Bulow by Auersperg v. von Bulow*,
    811 F.2d 136 (2d Cir. 1987)..................................................... 12

**Rules**

Fed. R. Civ. P. 26(b)(1)............................................................. 10

Fed. R. Civ. P. 26(b)(3)............................................................. 3, 10, 11

Fed. R. Civ. P. 45(c)(3) (B) ....................................................... 10

Fed. R. Civ. P. 45(c)(3)(A) ........................................................ 10

Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv) ............................................. 10

**Other Authorities**

*Confidential Informants and Securities Class Actions:  Mixed Messages and Motives*
    45 Loy. U. Chi. L.J. 571, 573-74 (2014) ...................................... 20

Lead Plaintiffs Gary Koopmann and Timothy Kidd ("Lead Plaintiffs") and Victor Pirnik (together with Lead Plaintiffs, "Plaintiffs") submit this memorandum of law in support of their motion to quash the deposition and document subpoenas directed to Stephanie Stanley and Patrick Maio.

## INTRODUCTION

On June 14, 2018, with approximately one month left until the close of fact discovery, Defendants issued subpoenas demanding both documents and deposition testimony from Stephanie Stanley and Patrick Maio, Plaintiffs' Counsel's investigators, who conducted interviews of the Confidential Witnesses ("CW's") referenced in Plaintiffs' Complaint (the "Subpoenas"). The Subpoenas are nothing more than an attempt by Defendants to shift Plaintiffs' attention away from Plaintiffs' case prosecution in this very last month of discovery. Between June 14 and July 13 Plaintiffs will be taking 12 out of the 20 fact depositions, including the depositions of three of the four Individual Defendants.

Defendants attempt to utilize the Court's June 4, 2018 Order ("June 4 Order") (Dkt. 207) in which the Court required Plaintiffs to disclose the identities of the investigators who interviewed the CWs, as leverage to assert that they are entitled to the depositions of *both* of the investigators as well as "*all* documents concerning *any* communications with *any* Confidential Witness, including but not limited to, all documents memorializing or otherwise reflecting any communications between You and any Confidential Witness, *including e-mails, electronic notes, and handwritten notes*." *See* Subpoenas, annexed at Exhibits 1-4 to the Declaration of Sara Fuks in Support of Motion to Quash ("Fuks Dec.") (emphasis added).

Defendants' request for documents comes far too late. The subpoena for documents was served on June 14, 2018, over two months after the end of document production. *See* Dkt. No. 186 (Court's order denying Plaintiffs' application for document discovery based upon parties'

1

April 6, 2018 deadline for fact discovery document production). While the Court in the June 4 Order held that the declaration of one of the CWs, Alex Crabb, which Defendants submitted to the Court, "raises sufficient cause for concern and further inquiry" and required Plaintiffs to disclose "the identities of those who communicated with the CWs," the Court did not order Plaintiffs to disclose "the dates of all communications between representatives of Plaintiffs and the CWs" because Defendants had not explained why that information was "relevant and proportional to the needs of the case." (June 4 Order at p. 3). Accordingly, because Defendants had not even shown that such information is relevant the Court did not assess Plaintiffs' assertion that disclosure of such information would reveal counsel's methods and strategies which are protected from disclosure under the work product doctrine. *Id*.

So too here, Defendants have made no showing as to how the information sought by the Subpoenas is relevant and proportional to the needs of the case. For example, Defendants seek deposition testimony and documents from Ms. Stanley despite the fact that she had no communications with Alex Crabb, and despite Defendants raising no issues calling into question anything about the other CWs in the Complaint. Defendants also seek all documents and communications between Maio and Stanley and all of the CWs despite the fact that Defendants have not presented any evidence concerning the other two CWs.

Even if Defendants were able to demonstrate relevance under Rule 26, the information sought by the Subpoenas is protected from disclosure under the work product doctrine. First, the documents sought- Plaintiffs' investigators communications and notes with the CWs- is opinion work product because the questions and answers are intertwined with mental impressions, opinions and legal theories. Notes and memoranda of an attorney's agent from a witness

interview are opinion work product "entitled to almost absolute immunity." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).

Second, even if the documents sought by the Subpoenas are considered fact work product they are protected from discovery because Defendants have not shown "substantial need of the materials in the preparation of [their] case and that [they are] unable without undue hardship to obtain the substantial equivalent of the materials by other means" as required by Fed. R. Civ. P. 26(b)(3). Defendants do not dispute that the documents sought by the Subpoenas are, at the very least, fact work product.

As to utilizing the requested discovery to prepare their case Defendants fail to show how the perceived discrepancies between the Crabb Declaration and the statements attributed to Crabb (CW1) in the Complaint in any way goes to their defense of Plaintiffs' allegations that Defendants committed securities fraud. *Hatamian v. Advanced Micro Devices, Inc*., No. 14-CV-00226-YGR(JSC), 2016 WL 2606830, at *4–5 (N.D. Cal. May 6, 2016) ("The parties are, in fact, now in the deposition and dispositive motion stage of the litigation. The interview notes and reports are not relevant to whether it is more likely than not that Defendants engaged in securities fraud").

Defendants also cannot demonstrate that they are unable obtain the discovery sought or a substantial equivalent thereto, by other means. Defendants have not sought the depositions of the CWs themselves. When a party has had the opportunity to depose a witness concerning the subject at issue, courts have held that there can be no showing of substantial need. *In re Grand Jury Proceedings,* 473 F.2d 840, 849 (8th Cir. 1973) ("[I]f a witness is available to the party seeking discovery of his statement to opposing counsel, such discovery should not be allowed.").

Indeed, the only cases in which courts have found it appropriate for opposing counsel to depose the other party's investigator are where counsel has also first deposed the witnesses themselves.

Third, Plaintiffs have not waived the protection of the work production doctrine. Defendants' lackluster argument that Plaintiffs have waived work product by utilizing statements Plaintiffs' investigators obtained from the CWs in the Complaint has been rejected by Courts in throughout the country. Indeed, permitting discovery into such matters would allow defendants in securities litigations (in which confidential witness allegations obtained by investigators hired by plaintiffs' counsel are the norm) to create a litigation-within-a-litigation by seeking all sorts of discovery into the complaint drafting process. The only instances where Courts have found waiver are where plaintiffs themselves affirmatively invoked memos or other material prepared by their investigators or offered the testimony of their investigators to discern who was telling the truth where confidential witnesses had recanted their statements. And even in under those circumstances, which are not present here, many cases nevertheless hold that work product is not waived.

Next, as to taking the depositions of Plaintiffs' investigators the analysis is the same. While a deposition is not a "tangible thing" it nonetheless is protected work product. "Although a deposition of the investigator would not in itself be a document or tangible thing that falls within the precise definition of work-product, to permit a deposition of an investigator…would eviscerate the protection afforded to work-product and undermine the purpose of the doctrine, i.e. to protect the files and mental processes of attorneys preparing their cases." *Aboeid v. Saudi Arabian Airlines, Inc.,* No. CV-10-2518 SJ VVP, 2012 WL 3637430, at *3 (E.D.N.Y. Aug. 22, 2012), citing *Hickman v. Taylor,* 329 U.S. 495, 510–14, 67 S. Ct. 385, 91 L. Ed. 451 (1947). *See*

*also O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 643 (C.D. Cal. 2003) (finding "oral testimony regarding witness interviews" to be within the work-product doctrine).

First, the testimony of Plaintiffs' investigators is not relevant to claims and defenses in this case. *See In re Symbol Techs., Inc. Sec. Litig.*, No. CV053923DRHAKT, 2017 WL 1233842, at *13–14 (E.D.N.Y. Mar. 31, 2017) (finding questions focusing on plaintiffs' actions in conjunction with investigation irrelevant stating that "Defendants focus solely on the purported inconsistencies that exist between what the Plaintiff alleges in the [Amended] Complaint, what the CIs testified to in their depositions and what the Memoranda say about what the CIs told Plaintiff's investigator' …It is not the Court's job to pave the way for Defendants to bring a Rule 11 motion. This case is seemingly well beyond that stage"). This is confirmed by the fact that the Court did not rely on the statements of CW1 in making its determination on the motion to dismiss.  Dkt. No. 121 at 8-9 ("Plaintiffs' confidential witness allegations do not get them across the goal line either. Confidential Witness 1 merely observed that emissions tests "are super important" to ensure proper certification by the EPA").  Given this, taking the depositions of Plaintiffs' investigators can hardly be said to be "proportional to the needs of the case" as required by Rule 26.

Second, even if Defendants were able to demonstrate relevance, they are certainly not able to demonstrate "substantial need." *S.E.C. v. Nadel*, No. CV 11-215 WFK AKT, 2013 WL 1092144, at *3 (E.D.N.Y. Mar. 15, 2013) ("the desire to use work product for impeachment purposes does not constitute 'substantial need'").  Defendants are seeking the depositions to attack Plaintiffs' recitation of the facts in the Complaint and investigatory process, not to defend their claims.

Third, Defendants are able to obtain the information sought from an alternative source: by deposing CW1 himself. *Aboeid v. Saudi Arabian Airlines, Inc.*, No. CV-10-2518 SJ VVP, 2012 WL 3637430, at *3 (E.D.N.Y. Aug. 22, 2012) ("Given their close familiarity with that potential witness, the plaintiffs have equal if not greater access to the witness's information. They thus cannot demonstrate any substantial need for access to the investigator's knowledge. In the circumstances, the court would be loath to permit a deposition of the investigator even if the discovery deadline had not expired… The plaintiff's motion is denied."). Given that Defendants have been able to procure a declaration from Mr. Crabb, they should have no trouble locating him to schedule his deposition. If anything, it is Mr. Crabb's testimony that would be relevant to whatever it is that Defendants are trying to demonstrate, *not* the testimony of Plaintiffs' investigators.  *See Hatamian v. Advanced Micro Devices, Inc.*, No. 14-CV-00226-YGR(JSC), 2016 WL 2606830, at *4–5 (N.D. Cal. May 6, 2016) ("what matters is not what the witnesses told Plaintiffs' investigator, but what they said under oath when deposed by the parties.").

 Fourth, Plaintiffs have not waived work product protection.  Plaintiffs have not submitted any evidence from their investigators whatsoever or invoked them in any sense. Again, Defendants' argument that Plaintiffs have waived work product by using their investigators' work product in the complaint is absurd.

Finally, in the unlikely event that the Court permits the depositions of Ms. Stanley and Mr. Maio to proceed, Plaintiffs' counsel should first be permitted to take the depositions of all of the CWs referenced in the Complaint to determine if, for example, the assertions in Mr. Crabb's declaration stand up to cross examination. Those depositions should not count against Plaintiffs' limitation of 20 fact depositions because they do not relate to the merits of the case. Additionally, those depositions and the depositions of the investigators should take place after

July 13 (the close of fact discovery) but before the due date for summary judgment motions, once again because they are not fact depositions and also because time does not permit them to take place before July 13 in light of the deposition schedule in the case.  As to the documents sought by the Subpoena, should the Court consider Defendants' argument that the interview memoranda be disclosed, Plaintiffs respectfully request that they be permitted to submit the memos to the Court *in camera* prior to the Court making a final determination.

## RELEVANT FACTS

On August 1, 2017, the Court granted Defendants' motion to dismiss Plaintiffs' Third Amended Complaint ("TAC") finding that Plaintiffs had not adequately alleged scienter with respect to the emissions claims.  (Dkt. No 121).  The TAC included allegations from three CWs, including Alex Crabb, who is identified in the TAC as CW1.  In its order granting the motion to dismiss the TAC the Court held that the CW allegations "do not get them across the goal line either.  Confidential Witness 1 merely observed that emissions tests are 'super important' to ensure proper certification by the EPA" (Dkt. No 121 at 8-9).  The Court granted Plaintiffs leave to amend the Complaint, stating that "if Plaintiffs can allege that the EPA gave notice to high-level FCA officials that the vehicles at issue had unlawful defeat devices (or undisclosed software that the company was required to disclose), their allegation would be much like those that the Court found sufficient with respect to Plaintiff's allegations regarding compliance with safety-related regulations."  (Dkt. No. 121 at p. 13).

On August 24, 2017 Plaintiffs filed the Fourth Amended Complaint ("Complaint") (Dkt. No. 129).  Unlike the TAC, the Complaint contained specific excerpts from Defendants' communications with the EPA. *See. e.g.* Complaint ¶429 (quoting January 6, 2017 email from EPA official Byron Bunker to Defendants Mazure, Dahl and others stating "at least one of the AECDs in question appears to me [sic] violate EPA's defeat device regulations."). On November

13, 2017 the Court denied Defendants' motion to dismiss the Complaint. (Dkt. No. 142). With respect to scienter the Court stated that "..the FAC identifies specific written exchanges between the EPA and high-level FCA officials warning the company that its vehicles appeared to be out of compliance." (Dkt. 142, at p. 4). Accordingly, the inclusion of the CW statements in the Complaint played no role in the Court's decision to sustain Plaintiffs' emissions allegations.

Thereafter, the parties commenced discovery concerning the emissions allegations. On December 13, 2017 Defendants served their Second Set of Interrogatories on Plaintiffs which asked for the identities of each Confidential Witness described in the Complaint. After initially objecting, on January 31, 2018, Plaintiffs provided Defendants with the names the names of the three CWs in the Complaint. Over two months later, on April 2, 2018, Defendants issued their Third Set Interrogatories to Plaintiffs, demanding that Plaintiffs disclose the identities of each person who had communications with each Confidential Witness and the date of such communications. Plaintiffs objected, asserting that the information sought by the Interrogatories is work product. On May 22, 2018 Defendants filed a letter motion to compel with the Court (Dkt. No. 204) submitting the Declaration of Alex Crabb. Defendants apparently had the Crabb Declaration since April 12, 2018 but never discussed it with Plaintiffs' counsel. Crabb's declaration identified purported inconsistencies between the statements attributed to him in the Complaint and those he attested to in his declaration, which was procured by Defendants' Counsel and dated April 2018. Plaintiffs responded to Defendants' letter motion to compel on May 25, 2018 pointing out that the discrepancies Crabb identified were minor. (Dkt. No. 206). For example, the Crabb Declaration states (i) "[a]t no time during my work at FCA was I involved with testing diesel-engine vehicles'" (ii) "[a]t no time during my work at FCA was I involved with testing related to nitrogen oxide", and (iii) "[t]he statement I made to the

'counselor' …were about fuel economy." However, the Complaint does not misrepresent any of these facts. Statements of CW1 refer only to the general process for engine testing vehicles. NOx is never mentioned. The FAC accurately states that during the Class Period CW1 was involved in "evaluating vehicles for fuel economy and scheduling emissions testing." Complaint ¶451.

On June 4, 2018 the Court issued an order requiring Plaintiffs to disclose the identities of those who communicated with the CWs, stating that Crabb's "declaration raises sufficient cause for concern and further inquiry" but finding that Plaintiffs did not have to disclose the dates of such communications because Defendants did not explain why such information is relevant and proportional to the needs of the case. (Dkt. No. 207 at p. 3). Pursuant to the Court's order, Plaintiffs thereafter disclosed the identities of the individuals who communicated with the CW's: Stephanie Stanley and Patrick Maio, both of whom are investigators retained by Plaintiffs' counsel in connection with the litigation. Plaintiffs informed Defendants that only Mr. Maio communicated with Crabb. Ms. Stanley had no communications with Crabb. Plaintiffs' Counsel agreed to accept service for Ms. Stanley and Mr. Maio. On June 14, 2018 Defendants issued deposition subpoenas and document subpoenas noticing the depositions of Maio and Stanley on July 13 and 11, respectively and demanding production of "all documents concerning any communications with any Confidential Witness, including but not limited to, all documents memorializing or otherwise reflecting any communications between You and any Confidential Witness, including e-mails, electronic notes, and handwritten notes" by June 25.

On June 19, 2018 the parties held a meet and confer call where Plaintiffs' Counsel informed Defendants' Counsel that they objected to the subpoenas based upon work product. On June 21, 2018 Plaintiffs' Counsel spoke with Defendants' Counsel stating that Plaintiffs would

agree to permit the deposition of Mr. Maio if Defendants withdrew their document subpoenas and the request for the deposition of Ms. Stanley, given that she never spoke with Crabb, and permit Plaintiffs to first take the deposition of Mr. Crabb without it counting against the 20 deponent limit.  Defendants responded the next day stating they did not agree to the proposal but would agree to withdraw only the request for Ms. Stanley's deposition.

## ARGUMENT

### I.    LEGAL STANDARD

Rule 45 requires a court to quash or modify a subpoena in certain circumstances, Fed. R. Civ. P. 45(d)(3)(A), and permits it to do so in other circumstances, Fed. R. Civ. P. 45(d)(3)(B). The movant bears the burden of persuasion on a motion to quash. *John Wiley & Sons, Inc. v. Doe Nos. 1–30,* 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (Cott, M.J.). Motions to quash under Rule 45 are "'entrusted to the sound discretion of the district court.' " *In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir.2003), *quoting United States v. Sanders,* 211 F.3d 711, 720 (2d Cir.2000).

"Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." *S.E.C. v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011)).  A court "must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter, if no exception or waiver applies; or ... subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  "Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." *S.E.C. v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011)).  In turn, Rule 26 restricts discovery to information "relevant to any party's claim or defense" that is "proportional to the needs of the case."  Rule 26(b)(1).

Rule 26(b)(3) is the starting point for an analysis of the work-product doctrine.  *Abdell v. City of New York*, No. 05 CIV. 8453 KMK JCF, 2006 WL 2664313, at *2–4 (S.D.N.Y. Sept. 14, 2006). Documents "prepared in anticipation of litigation or for trial" are discoverable only upon

a showing of substantial need of the materials and inability, without undue hardship, to obtain their substantial equivalent elsewhere. Even where this showing has been made, however, the Rule provides that the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998). "Rule 26(b)(3)(A) extends work product protection to 'intangible work product as well as what Fed.R.Civ.P. 26(b)(3) calls documents and tangible things.'" *Cty. of Niagara v. Netherlands Ins. Co.*, No. 14-CV-737A(F), 2017 WL 2059808, at *4 (W.D.N.Y. May 15, 2017), *aff'd,* No. 14-CV-737-A(F), 2017 WL 3917133 (W.D.N.Y. Sept. 7, 2017). Accordingly, deposition testimony, though not tangible, is protected under the work product doctrine.

Additionally, there are two types of work product: fact work product and opinion work product. Fact work product includes "raw factual information" *Baker v. General Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir.2000). Fact work product is not discoverable unless the party seeking discovery has a "substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *See* Fed.R.Civ.P. 26(b)(3). Opinion work product includes "counsel's mental impressions, conclusions, opinions or legal theories." *O'Connor v. Boeing N. Am., Inc.,* 216 F.R.D. 640, 642–44 (C.D. Cal. 2003). Opinion work product "enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *O'Connor v. Boeing N. Am., Inc.,* 216 F.R.D. 640, 642–44 (C.D. Cal. 2003) citing *Baker v. General Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir.2000). For example, "[n]otes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity. *See also Upjohn Co. v. United*

11

*States,* 449 U.S. 383, 399–400, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981) ("[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes").

    **A.**    **Both the Documents and the Testimony Sought by the Subpoenas Are Work Product**

        **1.**    **The Documents Sought by the Subpoenas Are Opinion Work Product**

Defendants have stated that they do not dispute the fact that the documents sought by the Subpoenas are protected work product. The documents- essentially Plaintiffs' Counsel's investigators interview memoranda- are the most protected type of work product because they constitute communications between Plaintiffs' Counsel and their investigators during the prosecution of this case.  "Notes and memoranda of an attorney or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity."  *Baker v. General Motors, Corp.*, 209 F.2d 1051, 1054 (8th Cir. 2000); Disclosure of witness interviews and related information is particularly discouraged because "[f]orcing an attorney to disclose notes and memoranda of witness' oral statements is particularly disfavored because it tends to reveal an attorney's mental process."  *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981). *See also Institute for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals,* 272 F.R.D. 124, 124 (S.D.N.Y. 2011) ("A lawyer's notes of an interview of a non-party witness is classic work product and may contain both facts and mental impressions of the lawyer.");  *Feacher v. Intercontinental Hotels Grp.*, No. CIV.A. 3:06-CV-0877, 2007 WL 3104329, at *1–5 (N.D.N.Y. Oct. 22, 2007) ("analysis of the questions asked when securing an otherwise purely

factual account from a potential witness could indirectly provide enlightenment as to the litigation strategy being developed or explored")[1].

As the Court in *S.E.C. v. Nadel*, CV-11-215 WFK AKT, 2012 WL 1238297, at *7 (E.D.N.Y. Apr. 16, 2012) explained:

> An attorney's mental processes are revealed to a certain extent even when the attorney's memorandum is factual in nature, merely summarizing what the witness said in response to the attorney's questions.   The attorney exercises judgment in determining which witnesses to interview, what subject areas to cover (and not cover) how to frame specific questions and in what order, and how much time to devote to particular topics.   Further the attorney exercises selective judgment in determining what it worthy of being written down (or remembered) during the interview.   As a result, when opposing counsel is given access to the attorney's notes or memoranda from a witness interview, the attorney's mental processes necessarily are revealed.

"Courts have consistently held that notes and memoranda prepared by an attorney, or an attorney's agent, with respect to a witness interview 'are opinion work product entitled to almost absolute immunity.'"   *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1149754, at *5 (N.D. Cal. Mar. 19, 2013); *See also Institute for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) ("A lawyer's notes of an interview of a non-party witness is classic work product and may contain both facts and mental impressions of the lawyer.").

When interview materials concern confidential witness statements in a securities class action, the material is considered protected work product.   *In re Harmonic, Inc. Sec. Litig.*, 245

---

[1] The work product protection is equally applicable to documents created by Plaintiffs' Counsel's investigator who was pursuing information based upon discussions of litigation strategy with Plaintiffs' Counsel.   *See* Evidence s. 2301, at 583 (McNaughton rev. 1961) ("The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney of by the client himself, the privilege must include all the persons who act as the attorney's agents."). *See also, von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146-7 (2d Cir. 1987).

F.R.D. 424, 427 (N.D. Cal. 2007) (finding preliminary notes or other memoranda of confidential witness interviews in a securities class action protected by work product); *In re JDS Uniphase Corp. Sec. Litig.*, 2005 WL 6296194, at *1 (N.D. Cal. Sept. 23, 2005) (denying motion to compel production of interview materials of CWs in securities class action even when witnesses are partially quoted in interview materials); *Lake Shore Radiator, Inc. v. Radiator Express Warehouse*, No. 3:05CV1232 J12MCR, 2007 WL 842989, at *4–6 (M.D. Fla. Mar. 19, 2007) (Discovery seeking the specific questions asked by a party's agent during an investigation fall within the opinion work product doctrine and are thus, absolutely immune from discovery.)

This work product protection also extends to confidential communications with confidential witnesses by Plaintiffs' counsel (or investigator) since such witness development was plainly in anticipation of litigation. *Gerber v. Down E. Cmty. Hosp.*, 266 F.R.D. 29, 36 (D. Me. 2010) ("When the work product at issue is interview correspondence for purposes of witness development, that communication is the work product. In other words, such a situation does not involve a disclosure of work-product documents to a non-party unassociated with the process of creating the work product in question.").

Even though the interview memoranda contain facts they are nevertheless opinion work product because they would reveal Plaintiffs' Counsel's mental impression and legal strategies. *See S.E.C. v. Roberts,* 254 F.R.D. 371, 383 (N.D. Cal. 2008) (upholding the withholding of privileged interview notes and finding that the revelation of purely factual assertions contained in interview notes "may reveal the questions asked and therefor the attorneys' mental impressions and conclusions"). *See also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. AARPO, Inc.*, No. 97-CV-1438, 1998 WL 823611, at *1 (S.D.N.Y. Nov. 25, 1998) (holding "[i]t would not be possible

to separate out those parts that are factual from those that disclose theories and thought processes in way that would not distort the witnesses' statements").

### 2.    The Deposition Testimony Sought by the Subpoenas Is Opinion Work Product

Defendants also seek to depose both of Plaintiffs' Counsel's investigators, despite the fact that only Mr. Maio and not Ms. Stanley, communicated with Crabb.  Any deposition testimony by Plaintiffs' investigators is opinion work product, and absent waiver, is entitled to absolute protection because, as with the investigators' notes and communications, even testimony that is purely "factual" would reveal the investigators' thoughts and impressions. *Feacher v. Intercontinental Hotels Grp*., No. CIV.A. 3:06-CV-0877, 2007 WL 3104329, at *1–5 (N.D.N.Y. Oct. 22, 2007) ("To attempt to divine pure facts from mental impressions in such statements and parse out for discoverability purposes the purely factual portions is not always an easy task since oftentimes such distinguishing features are not so easily discerned.").

For example, in *Appeal of Hughes,* 633 F.2d 282 (3d Cir.1980), the Third Circuit held the Government's request for a private investigator's oral testimony regarding witness interviews went "to the core of the work product of an agent of the attorney, the very substance of the interviewee's statements. Though [the private investigator] would presumably have been speaking from memory, examination into his recollection of the interview might have indirectly revealed his, and [counsel's] mental processes." *Id.* at 290. *See, also International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 43 (2d Cir. 1975) (discovery of attorney's thoughts and memories regarding witness interviews is not allowed under work-product doctrine*); Lake Shore Radiator, Inc. v. Radiator Express Warehouse*, No. 3:05CV1232 J12MCR, 2007 WL 842989, at *4–6 (M.D. Fla. Mar. 19, 2007) ("Discovery seeking the specific questions asked by a party's agent during an investigation fall within the opinion work product doctrine and are thus,

absolutely immune from discovery… Indeed, as Plaintiff points out, Defendant is free to hire its own investigator or interview/depose these same potential witnesses at its own cost."); *O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 643 (C.D. Cal. 2003) (finding "oral testimony regarding witness interviews" to be within the work-product doctrine); *Neal v. Gen. Motors, LLC,* No. 2:14-CV-633-WKW-GMB, 2016 WL 9710087, at *2 (M.D. Ala. Dec. 13, 2016) (granting motion to quash deposition notice of counsel's investigator) *Aboeid v. Saudi Arabian Airlines, Inc.*, No. CV-10-2518 SJ VVP, 2012 WL 3637430, at *3 (E.D.N.Y. Aug. 22, 2012) (denying request for deposition of investigator hired by defendant stating "plaintiffs cite no authority for the proposition that they are entitled to obtain such information").

Despite that the discovery sought pursuant to the Subpoenas is clearly work product Defendants state that they are entitled to it arguing that: 1) Plaintiffs waived protection by referencing the CWs in the Complaint and 2) Defendants have "substantial need" for the documents and investigator depositions because of the "discrepancies" between the allegations concerning CW1 in the Complaint as compared to the statements he made in the declaration Defendants procured. Both arguments should be rejected.

### B.    Plaintiffs Have Not Waived Work Product Protection

Defendants argue that Plaintiffs waived the work product protection by referencing CW1's statements obtained by Plaintiffs' investigators in the Complaint. Unsurprisingly Defendants are unable to identify a single case in which use of a confidential witness interview in a complaint waives work product protection.   This is because courts have universally rejected the argument that use of material from a confidential witness interview waived the work product protection. *E.g. City of Lakeland Employees' Pension Plan v. Baxter Intern., Inc.*, No. 10 C 6016, 2013 WL 2151509, at *3 (N.D. Ill. May 16, 2013) ("use in the complaint of some of the factual information [Plaintiff] obtained from witness does not mean the plaintiff has waived

work product protection for all factual information the witness may have supplied." citing *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1025-26 (7th Cir. 2012); *In re St. Paul Travelers Securities Litigation II*, 2007 WL 1424673, at *1 (D. Minn. May 10, 2007) (work product not waived where plaintiff included CI statements in complaint)); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486, 2005 WL 6296194, at *1 (N.D. Cal. Sept. 23, 2005) (denying defendants' motion to compel production of plaintiff's confidential witness memoranda that were quoted in the complaint).  As a practical matter, Defendants' argument must be rejected because it would result in waiver in the bulk of federal securities fraud litigations, which given the PSLRA's heightened pleading standards utilize confidential witness interviews obtained by investigators engaged by Plaintiffs' counsel.

Here, unlike in cases where courts have found waiver, Plaintiffs have never invoked statements by their investigators through testimony, they have not submitted any affidavits from their investigators, and they do not intend to utilize their investigators as witnesses. In a prior decision by Judge Rakoff in *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.* which Defendants cite, prior to plaintiffs' argument that the notes of their private investigators supported their claims, which plaintiffs argued in response to defendants' summary judgment motion arguing that *several* of the CW's had recanted their claims and that because of this there was *no* evidence to support the claims, Judge Rakoff held that confidential witness interview memoranda, notes and communications were protected by the work product doctrine *"which…has not been waived."*  No. 11 CIV. 5026 JSR, 2012 WL 4202657, at *1 (S.D.N.Y. Sept. 18, 2012).  Accordingly, even in the principle case upon which Defendants rely, the Court did not find waiver based upon use of confidential witness statements in the complaint.  Instead, Judge Rakoff stated that "it is *conceivable* that the work product protection *might* be waived or

overcome at the forthcoming hearing regarding the confidential witnesses." 2012 WL 4202657, at *1 (emphasis added).[2]

Even in cases where plaintiffs have made affirmative use of their investigators' materials or communications with counsel courts have refused to find that doing so constitutes waiver. For example, in *Hatamian v. Advanced Micro Devices, Inc.*, No 14-CV-00226-YGR(JSC), 2016 WL 2606830, at *4-5 (N.D. Cal. May 6, 2016) defendants argued that plaintiffs waived work product by submitting declarations from their investigators in opposing a motion to strike and in utilizing their investigators' call logs of interviews with CWs at the depositions of the CWs. The Court disagreed, stating that "to find a waiver under the circumstances here would mean that any time a defendant challenges the accuracy of a complaint's allegations, and a plaintiff responds to that challenge by defending the good faith basis for making the claims, the plaintiff will be deemed to have waived the work product." *Id* at 5. Here, Plaintiffs have not submitted affidavits or invoked any other communications between either the CWs and the investigators (such as call logs), or between Plaintiffs' Counsel and their investigators. Plaintiffs have merely cited the CWs accounts obtained by the investigators in their Complaint, as is done by nearly all plaintiffs in securities cases brought under the PSLRA. *See also O'Connor v. Boeing*, *N. Am., Inc.*, 216 F.R.D. 640, 642-44 (C.D. Cal. 2003) (refusing request to permit deposition of investigator based

---

[2] *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 952 F. Supp. 2d 633, 636–38 (S.D.N.Y. 2013) is distinguishable on several grounds. First, the defendants affirmatively sought and took the depositions of the confidential witnesses named in the complaint, several of whom recanted their statements. *Id* at 36. It was only after defendants filed a summary judgment motion arguing that the recantations meant that there was no longer any evidence supporting plaintiffs' claims that the Court *sua sponte* directed the CWs to appear in court, along with plaintiffs' investigator, for a hearing. By contrast, here the statements of CW1 are not only not necessary for Plaintiffs' case, the Court itself held that those statements were insufficient to *plead* let alone *prove* scienter. Additionally, it is Defendants, not the Court, who are seeking information from Plaintiffs' investigators. Defendants have also *not* sought to take the depositions of any of the CW's.

on work product waiver argument where plaintiffs questioned witness at deposition concerning conversations with investigator holding that "plaintiffs' counsel did not make 'testimonial use' of any information provided by [investigator].   Rather, at best, plaintiffs' counsel utilized information gotten by [investigator] to formulate questions to [witness]…absent any testimonial use, plaintiffs have not waived work product protection." (citing *United States v. Nobles,* 422 U.S. 225, 239-240 n. 14, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)); *Lake Shore Radiator, Inc. v. Radiator Express Warehouse*, No. 3:05 CV1232 J12MCR, 2007 WL 842989, at *4-6 (M.D. Fla. Mar. 19, 2007) (refusing to compel investigator to answer questions concerning witness interviews despite counsel's production of transcripts of phone calls of investigator with witness).

Indeed, a finding of waiver here would not only eviscerate the work production doctrine it would disrupt litigation in PSLRA cases by permitting a defendant to probe a plaintiff's investigatory process.   *Abdell v. City of New York*, No. 05 CIV. 8453 KMK JCF, 2006 WL 2664313, at *4 (S.D.N.Y. Sept. 14, 2006) citing *Hickman v. Taylor*, 329 U.S. at 510-511 ("the work product doctrine serves to prevent the disruption of ongoing litigation.   In performing his various duties…it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.   Proper preparation of a client's case demands that he…prepare his legal theories and plan his strategy without undue and needless interference.").

### C.   Even if the Court Determines that the Requested Discovery is Fact Work Product Defendants Have Not Demonstrated Substantial Need For It

Even if the Court finds that the testimony and documents sought by the Subpoenas is ordinary or fact work product, Defendants have come nowhere close to demonstrating substantial need for the discovery.   To overcome the privilege Defendants are required to show that they

"(1) ha[ve] substantial need of the material and (2) [are] unable, without undue hardship, to obtain the substantial equivalent of the materials by other means." *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron*, 278 F.R.D. 335, 340 (S.D.N.Y. 2011). Defendants assert that they have substantial need for the discovery because of the discrepancies between what is in Crabb's Declaration and what is in the Complaint.

First, Defendants have not attempted to take the deposition of Crabb himself, the actual witness who has first-hand knowledge of what he said. This is likely because Defendants, who procured his declaration, know that if he is required to testify and is subject to cross examination he may again modify what it is he remembers saying to the Plaintiffs' investigators. *See, e.g.,* Jed S. Rakoff, *Confidential Informants and Securities Class Actions:   Mixed Messages and Motives* 45 Loy. U. Chi. L.J. 571, 573-74 (2014) (acknowledging the "special pressures" on former employees acting as CIs that can manifest as motivations to "overstate misconduct by companies", or to recant or lie when deposed for fear of retaliation).  In any case, the "substantial equivalent" to the discovery Defendants are seeking is available through an alternative source, Crabb himself.  As one court explained, "A party seeking to compel disclosure of interview notes must, at a minimum, show that the interviewees are not available for questioning." *Nadel*, 2013 WL 1092144, at 2 (collecting cases).  Defendants have not even attempted to take Crabb's deposition, let alone show that he is unavailable.

Defendants can depose the CWs if they choose. When a party has the opportunity to depose a witness concerning the same subject at issue, courts have held that there can be no showing of substantial need. *In re Grand Jury Proceedings,* 473 F.2d 840, 849 (8th Cir. 1973) ("[I]f a witness is available to the party seeking discovery of his statement to opposing counsel, such discovery should not be allowed."). *See also Lake Shore Radiator, Inc. v. Radiator Express*

*Warehouse*, No. 3:05CV1232 J12MCR, 2007 WL 842989, at *4–6 (M.D. Fla. Mar. 19, 2007) (refusing to compel counsel's investigator to answer questions finding that Defendant has failed to show it has 'substantial need'… Indeed, as Plaintiff points out, Defendant is free to hire its own investigator or interview/depose these same potential witnesses at its own cost."); *Miller Oil Co. v. Smith Indus.*, No. 1:88 CV 785, 1990 WL 446502, at *6 (W.D. Mich. Dec. 13, 1990) ("Plaintiffs have not shown a substantial need for the information sought in the deposition of the investigator. Further, Plaintiffs have not shown any inability to obtain this information without undue hardship. The witnesses contacted by Defendants' investigators were names provided by the Plaintiffs. ***Moreover, as former employees, many of these individuals are more available to Plaintiffs than they are to Defendants' investigators***.") (emphasis added).

Not only have Defendants failed to show "substantial need" they have failed to make a bear showing that the discovery sought is relevant and proportional to the needs of the case. Confidential informants are utilized to assist plaintiffs in meeting certain pleading standards under the PSLRA for an *inference* of scienter, but are not necessarily important to the trial of the case, which will focus on Defendants' state of mind. Here, Plaintiffs do not intend to call CW1 (or any of the CWs) or their investigators as witnesses. Nor will counsel utilize communications between the CWs and their investigators at trial. Not only is CW1 in no way critical to the underlying facts, he is completely irrelevant as none of his statements were found by the Court to support scienter, at the pleading stage. Defendants desire to depose Maio and Stanley and for their communications with the CWs is based on their desire to learn what was said during the investigators' interviews, rather than determine the facts of the case. As the Court in *Nadel* stated "the desire to use work product for impeachment purposes does not constitute substantial need." *Id.* at 3.

Defendants have presented no argument as why the discovery sought bears a relationship between the claims and defenses at issue; instead their focus is solely on the inconsistencies between the allegations in the Complaint and what Crabb stated in his declaration.  As the court in *In re Symbol Techs., Inc. Sec. Litig.*, No. CV053923DRHAKT, 2017 WL 1233842, at *13–14 (E.D.N.Y. Mar. 31, 2017) stated, "There is a significant difference between information that is directly relevant to the allegations made in the Amended Complaint compared to information that is relevant only as to whether Plaintiff had a 'reasonable basis for filing the Complaint.' This litigation is primarily concerned with the former situation as opposed to the latter. As such, the Court finds that Defendants have not made the requisite *prima facie* showing of relevance to warrant discovery of such information." *See also Hatamian v. Advanced Micro Devices, Inc.*, No. 14-CV-00226-YGR(JSC), 2016 WL 2606830, at *4–5 (N.D. Cal. May 6, 2016) ("The parties are, in fact, now in the deposition and dispositive motion stage of the litigation. The interview notes and reports are not relevant to whether it is more likely than not that Defendants engaged in securities fraud. In other words, what matters is not what the witnesses told Plaintiffs' investigator, but what they said under oath when deposed by the parties. The Court cannot imagine how Plaintiffs can use their investigator's notes and reports as evidence to meet their burden of proof on summary judgment and Defendants have not explained otherwise.").

The only cases in which courts have permitted discovery concerning counsel's investigatory process are where either: (1) the court ordered such discovery *sua sponte*; (2) the confidential witnesses themselves had first been deposed or their depositions were ongoing; or (3) counsel affirmatively invoked statements or material of their investigator.  For example *In re Millennial Media, Inc.,* 2015 WL 344918, at *12 (S.D.N.Y. May 29, 2015), *City of Pontiac Gen Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 952. F. Supp. 2d 633, 636, 637 (S.D.N.Y. 2013), and

22

*Meyer v. Kalanick*, 212 F. Supp. 3d 437, 442 (S.D.N.Y. 2016) all involved inquiries by the *court* itself.  In *Symbol Techs.*, 2017 WL 1233842, at *13–14 (E.D.N.Y. Mar. 31, 2017) the CWs had been deposed and counsel invoked their investigator's memos.  None of these situations are present here.

Instead, the discovery sought by Defendants is merely a fishing expedition into Plaintiffs' counsel's investigatory process and an attempt to shift the focus away from Defendants' securities fraud during this very critical final month of fact discovery.  *See Barbara v. Marinemax, Inc.*, 12-cv-368 (ARR)(RER), 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) ("The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition.").

Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' motion so that Plaintiffs' case prosecution can continue unencumbered by Defendants' impermissible discovery tactics.

### D.        The Document Subpoenas are Untimely

As Defendants themselves have pointed out in opposing Plaintiffs' request for documents concerning Chrysler's compliance with European diesel emissions regulations (Dkt. No. 183) Defendants' request for document discovery comes too late. Document discovery closed on April 6, 2018 (Dkt. No. 144).  Plaintiffs provided Defendants with the identities of the CWs on January 31, 2018.  Defendants waited over *two months*, until April 2, 2018- four days before the close of document discovery- to issue interrogatories seeking the names of the individuals who communicated with the CWs.  Defendants then waited another two months to issue subpoenas seeking documents.  Once again, Defendants cannot have it both ways.  They cannot on the one hand oppose Plaintiffs' document discovery requests as untimely based upon the April 6 deadline and at the same time seek document discovery from Plaintiffs' far past that deadline.

Defendants' subpoenas for documents should be quashed on the independent basis that they are untimely.

      **E.**     **In the Event that The Court is Inclined to Permit the Depositions to Proceed They Should Occur After the Close of Fact Discovery Prior to the Filing of Summary Judgment Motions**

In the event that the Court permits Defendants to proceed with the depositions of Maio or Stanley they should occur after July 13, 2018.  Given the current schedule for depositions there are simply not enough days left before July 13, 2018 to schedule the depositions of Maio and Stanley.  As it is, Defendants have provided Plaintiffs with dates for the deponents such that two depositions are taking place in the same day at least twice (Defendant Steve Mazure and Beth Borland will both be deposed on June 10; Morrie Lee and Emanuele Palma both had their depositions taken on June 22).  Additionally, Defendants have still not provided Plaintiffs with dates for the depositions of Mark Shost and Sergio Marchionne (the deposition of Mr. Marchionne, a named Defendant, was noticed on May 1, 2018).  Moreover, the depositions will be taking place in Detroit, New York and Florida requiring some cushion for travel time.  With thirteen business days left between now and July 13 and the intervening July 4 holiday, Plaintiffs will be taking the depositions of ten witnesses, on the following dates: June 27 (Michael Berry, Detroit), (Defendant Robert E. Lee, Detroit), July 2 (Roger Szailer, Detroit), July 6 (Roger Orteca, Detroit), July 10 (Defendant Steve Mazure, New York), July 10 (Beth Borland, New York), July 11, (Hal Zatorksi, Ft. Myers), July 12, (Defendant Michael Dahl, New York), Date Unknown (Mark Shost), Date Unknown (Defendant Sergio Marchionne).  Holding the depositions of Maio and Stanley prior to July 13 is not only nearly impossible it substantially prejudices Plaintiffs by impeding their ability to focus on these very critical merits depositions.

Additionally, if the Court permits the depositions of Maio and Stanley to go forward the Court should also permit Plaintiffs to first take the deposition of Alex Crabb and the other two

CWs, prior to Maio's and Stanley's depositions, and without having it count against Plaintiffs' maximum number of deponents. It would be completely unfair to allow Defendants to take the depositions of Plaintiffs investigators without permitting the deposition of Mr. Crabb, so that Plaintiffs can examine him concerning the statements he made in his declaration and his overall story.  Given that Plaintiffs are already scheduled to take the maximum limit of depositions the Court permitted it would be unfair to require Plaintiffs to make the choice to sacrifice the deposition of one of their fact witnesses simply so they can cross-examine Crabb and defend themselves against Defendants' accusations.

Similarly, if the Court finds that the documents sought by Defendants' subpoenas may be discoverable it should first examine the materials *in camera* before making a final determination as to whether they should be produced.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Quash the Subpoenas for documents and testimony directed to Ms. Stanley and Mr. Maio.

Respectfully submitted,

Dated: June 25, 2018
New York, New York

**THE ROSEN LAW FIRM, P.A.**

*/s/ Sara Fuks*
Laurence M. Rosen
Phillip Kim
Sara Fuks
Jonathan Stern
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

Email: sfuks@rosenlegal.com

**POMERANTZ LLP**

Jeremy A. Lieberman
Michael J. Wernke
Veronica Montenegro
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Co-Lead Counsel for Plaintiffs and the Class*