# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY KOOPMANN, TIMOTHY KIDD and VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated, | No. 15 Civ. 7199 (JMF) |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| FIAT CHRYSLER AUTOMOBILES N.V., FCA US, LLC, ROLAND ISELI AND ALESSANDRO BALDI, AS CO-EXECUTORS FOR THE ESTATE OF SERGIO MARCHIONNE, SCOTT KUNSELMAN, MICHAEL DAHL, STEVE MAZURE, and ROBERT E. LEE, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM
## IN SUPPORT OF THEIR MOTION TO
## EXCLUDE THE TESTIMONY OF DR. AXEL FRIEDRICH

Robert J. Giuffra, Jr.
William B. Monahan
Thomas C. White
Jonathan M. Sedlak
Joshua S. Levy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000

*Counsel for Defendants*

December 12, 2018

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................... 5

    A.    EU Regulations Regarding Unlawful Defeat Devices and Lawful Defeat Devices ........................................................................................... 5

    B.    European Regulators' Reports After Volkswagen ................................. 6

    C.    Dr. Friedrich's Report And Opinions ..................................................... 7

LEGAL STANDARD ............................................................................................ 10

ARGUMENT ....................................................................................................... 10

I.       FCA'S COMPLIANCE WITH EUROPEAN EMISSIONS REGULATIONS IS NOT RELEVANT TO THIS ACTION .................................. 10

II.     DR. FRIEDRICH OFFERS IMPROPER OPINIONS ABOUT THE MEANING AND APPLICATION OF EU LAW ....................................... 13

III.    DR. FRIEDRICH'S OPINIONS ARE NOT THE PRODUCT OF A RELIABLE METHODOLOGY .................................................................. 16

    A.    Dr. Friedrich Ignores the Defeat Device Exceptions Codified in European Law ....................................................................................... 16

    B.    Dr. Friedrich's "Methodology" for Reaching His Opinions Has Been Rejected By the Very Regulatory Authorities on Which He Claims To Rely ..................................................................................... 20

    C.    Dr. Friedrich's Admitted Bias Against Automotive Manufacturers Renders His Opinions Unreliable ........................................................ 23

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Advanced Mech. Servs., Inc.* v. *Auto-Owners Ins. Co.*,
  2017 WL 3381366 (W.D. Ky. Aug. 4, 2017) ........................................................................23

*Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................................................................16

*Amorgianos* v. *Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ..........................................................................................5, 19, 20

*Badasa* v. *Mukasey*,
  540 F.3d 909 (8th Cir. 2008) ..................................................................................................23

*Bernhard-Thomas Bldg. Sys., LLC* v. *Weitz Co.*,
  2010 WL 4929029 (D. Conn. Nov. 30, 2010) .........................................................................19

*Bigio* v. *Coca-Cola Co.*,
  2010 WL 3377503 (S.D.N.Y. Aug. 23, 2010) .............................................................3, 14, 15

*Campbell* v. *Metro. Prop. & Cas. Ins. Co.*,
  239 F.3d 179 (2d Cir. 2001) ....................................................................................................16

*Children's Broad. Corp.* v. *Walt Disney Co.*,
  245 F.3d 1008 (8th Cir. 2001) ................................................................................................21

*Contini* v. *Hyundai Motor Co.*,
  876 F. Supp. 540 (S.D.N.Y. 1995) ..........................................................................................15

*Daubert* v. *Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ........................................................................................................ *passim*

*EEOC* v. *Freeman*,
  778 F.3d 463 (4th Cir. 2015) ..................................................................................................20

*Faulkner* v. *Arista Records LLC*,
  46 F. Supp. 3d 365 (S.D.N.Y. 2014) .......................................................................................22

*Floyd* v. *City of New York*,
  910 F. Supp. 2d 506 (S.D.N.Y 2012) .....................................................................................19

*GlobalRock Networks, Inc.* v. *MCI Commc'ns Servs. Inc.*,
  943 F. Supp. 2d 320 (N.D.N.Y. 2013) ....................................................................................15

*Hygh* v. *Jacobs*,
    961 F.2d 359 (2d Cir. 1992)...........................................................................13, 15

*Johnson Elec. N. Am. Inc.* v. *Mabuchi Motor Am. Corp.*,
    103 F. Supp. 2d 268 (S.D.N.Y. 2000)......................................................4, 17, 19

*Kole* v. *Astrue*,
    2010 WL 1338092 (D. Id. Mar. 31, 2010)...................................................23

*LaSalle Bank Nat. Ass'n* v. *CIBC Inc.*,
    2012 WL 466785 (S.D.N.Y. Feb. 14, 2012)................................................18

*Lippe* v. *Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003)....................................................................23

*Malletier* v. *Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007).........................................................22

*In re Med Diversified, Inc.*,
    346 B.R. 621 (Bankr. E.D.N.Y. 2006).................................................24, 25

*Nichols Media Grp.* v. *Town of Babylon*,
    365 F. Supp. 2d 295 (E.D.N.Y. 2005) ................................................4, 24, 25

*Nimely* v. *City of New York*,
    414 F.3d 381 (2d Cir. 2005)........................................................................20

*Nook* v. *Long Island R.R. Co.*,
    190 F. Supp. 2d 639 (S.D.N.Y. 2002).........................................................10

*Querub* v. *Hong Kong*,
    649 F. App'x 55 (2d Cir. 2016) ..................................................................13

*In re Rezulin Prod. Liab.*,
    309 F. Supp. 2d 531 (S.D.N.Y 2004)..........................................................16

*In re Rezulin Prod. Liab.*,
    369 F. Supp. 2d 399 (S.D.N.Y 2005)....................................................20, 21

*Richman* v. *Respironics, Inc.*,
    2012 WL 13102265 (S.D.N.Y. Mar. 13, 2012) ........................................19

*Ruggiero* v. *Warner-Lambert Co.*,
    424 F.3d 249 (2d Cir. 2005)..................................................................10, 16

*Scott* v. *Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ...............................................................3, 13

*SEC* v. *Badian,*
   822 F. Supp. 2d 352 (S.D.N.Y. 2011)....................................................................15

*SEC* v. *Tourre,*
   950 F. Supp. 2d 666 (S.D.N.Y. 2013)..............................................................10, 21

*Solorio* v. *Asplundh Tree Expert Co.,*
   2009 WL 755362 (S.D.N.Y. Mar. 23, 2009) .......................................................14

*United States* v. *Duncan,*
   42 F.3d 97 (2d Cir. 1994)....................................................................................16

*United States* v. *Lumpkin,*
   192 F.3d 280 (2d. Cir. 1999)...............................................................................13

*United States* v. *Scop,*
   846 F.2d 135 (2d Cir. 1988)................................................................................15

*United States* v. *Tin Yat Chin,*
   371 F.3d 31 (2d Cir. 2004)..................................................................................14

*Washington* v. *Kellwood Co.,*
   105 F. Supp. 3d 293 (S.D.N.Y. 2015)..................................................................11

## RULES

Fed. R. Civ. P. 44.1.............................................................................................14

Fed. R. Evid. 702 ........................................................................................ *passim*

## OTHER AUTHORITY

Council Regulation 715/2007, 2007 O.J. (L 171) ................................................ *passim*

Defendants submit this brief in support of their motion under *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Fed. R. Evid. 702 to exclude the purported expert testimony of Dr. Axel Friedrich.

## PRELIMINARY STATEMENT

Plaintiffs have offered the expert opinion testimony of Dr. Axel Friedrich—the self-professed "enemy No. 1" of the automotive industry—to support their assertion that European affiliates of Fiat Chrysler Automobiles N.V. ("FCA") did not comply with emissions regulations in the European Union ("EU").  For the reasons explained below, Dr. Friedrich's opinions and testimony are inadmissible because they are irrelevant, constitute improper legal opinion and are unreliable.

The EU laws governing the use and operation of emissions control systems on motor vehicles set limits on nitrogen oxide ("NOx") emissions when a vehicle is being tested for compliance with EU regulations on a dynamometer, or "dyno."  Those EU laws also generally prohibit features that reduce the effectiveness of the vehicle's emissions control systems when driven on the road.  Those features are generally referred to as "defeat devices."  But not all "defeat devices" are improper under EU law, which includes a number of express exceptions—codified in Council Regulation 715/2007, art. 3, at 10, 2007 O.J. (L 171) (hereinafter "EC 715/2007")—that permit vehicles to include defeat devices, even if doing so would cause NOx emissions to exceed certification limits when driven on the road.  Thus, under EU law, if the defeat device satisfies one of the exceptions, it is a *lawful* defeat device.  As a result, it is not possible to determine whether any particular diesel vehicle is or is not in compliance with EU regulations *by measuring emissions levels alone*.  Nor can anyone provide a reliable opinion under *Daubert* and Fed. R. Evid. 702 as to the legality of a given emissions control strategy under EU law without evaluating whether one or more of the regulatory exceptions apply.

Dr. Friedrich's analysis is fatally flawed and inadmissible because he based his conclusion of purported noncompliance and illegality *solely* on measuring NOx emissions levels from certain FCA vehicles.  By his own admission, Dr. Friedrich did not evaluate whether *any* of the statutorily enumerated exceptions applied.   His opinions are therefore unreliable and inadmissible, and the Court should exclude his report and testimony for the following three reasons:

*First*, Dr. Friedrich's opinions, which relate solely to *EU* emissions regulations and FCA vehicles sold *outside* of the United States, are not relevant to this action.  This Court previously dismissed Plaintiffs' Third Amended Complaint, which sought to assert claims based on alleged U.S. *and* EU emissions noncompliance.  In dismissing the Third Amended Complaint, the Court held not only that Plaintiffs did not plead a cognizable emissions claim, but also that Plaintiffs could not sustain a claim based on *any violation of EU law*.  (*See* Aug. 1, 2017 Order; ECF No. 121.)  Following Plaintiffs' amendment (the operative Fourth Amended Complaint)— which essentially rehashed the EU emissions allegations the Court had already rejected from the Third Amended Complaint, but added new, *U.S.-specific* allegations regarding communications between the *U.S. EPA* and employees of FCA's U.S. affiliate—the Court thereafter allowed Plaintiffs to proceed with their emissions claims only for "statements regarding FCA's compliance with certain *federal and state* emissions regulations."  (Nov. 13, 2017 Order at 2; ECF No. 142 (emphasis added).)  Having already rejected Plaintiffs' EU emissions allegations in its prior ruling, the Court did not address them again in its ruling on the Fourth Amended Complaint.

Following this Court's motion to dismiss ruling with respect to the Fourth Amended Complaint, Plaintiffs sought production from FCA of "documents concerning [FCA's]

compliance with European diesel emissions regulations." (ECF No. 180 at 1.) FCA opposed that request on multiple grounds, including relevance (given the above facts) and untimeliness. In its Order denying Plaintiffs' motion to compel, the Court stated that Defendants made "colorable arguments based on relevance," but the Court ultimately was able to summarily dismiss Plaintiffs' motion as "patently untimely." (ECF No. 186.)

Despite this Court's rulings, Plaintiffs now assert that the Court *sub silentio* allowed their EU emissions claims to proceed beyond the motion to dismiss stage, and are trying to fill the evidentiary void concerning EU emissions through Dr. Friedrich and his irrelevant (and flawed) report. Plaintiffs' proffer of Dr. Friedrich cannot erase the Court's prior rulings, and FCA's motion to exclude should be granted on this basis alone. There is no place for Dr. Friedrich's opinions concerning EU emissions in this case concerning "FCA's compliance with certain *federal and state* emissions regulations." (Nov. 13, 2017 Order at 2 (emphasis added).)

*Second*, although Dr. Friedrich is not a lawyer, has had no legal training, and testified that he was not offering any legal opinions in this case, he has nevertheless opined not only on EU emissions law but on the application of that law to this case, including by making conclusions about specific vehicles' alleged noncompliance with EU law. Courts in this District routinely bar expert testimony that "state[s] ultimate legal conclusions" based on the facts of the case. *Scott* v. *Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48 (S.D.N.Y. 2016) (Netburn, J.). This is equally true for determinations of foreign law, where, as with domestic law, experts may not "*apply it* to the facts of the case." *Bigio* v. *Coca-Cola Co.*, 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010) (Jones, J.) (emphasis added), *aff'd*, 675 F.3d 163 (2d Cir. 2012).

*Third*, Dr. Friedrich's methodology is unreliable and therefore inadmissible.  His opinions ignore the portions of EU emissions law inconsistent with his preordained opinion, which alone "destroys the validity of his conclusions." *Johnson Elec. N. Am. Inc.* v. *Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 280-81 (S.D.N.Y. 2000) (Conner, J.).  Most notably, Dr. Friedrich did not analyze the question of whether any of the statutory exceptions in the EU defeat device regulations applied here.  Instead, Dr. Friedrich claimed at his deposition that he did not need to evaluate those statutory exceptions because the emissions testing results on which he relied were sufficient to demonstrate a violation of EU law.  But that is just wrong:  EU law provides that "defeat devices" may be *lawful* and NOx output on the road may exceed emissions levels when tested on a dyno if one of three conditions are met.  Dr. Friedrich had no business simply ignoring those exceptions.  Tellingly, Dr. Friedrich revealed during his deposition his real reason for not considering the exceptions:  according to Dr. Friedrich, the exceptions are "residual of . . . old legislation" (Ex. 3 (Friedrich Dep.) at 154), even though the exceptions exist in the EU regulations today.[1]  In other words, instead of applying the law, Dr. Friedrich has re-written the law into what he hopes it would be, true to form of his self-anointed status as "enemy no. 1" of the auto industry.  His report is "so infected by . . . bias as to lack credibility and reliability." *Nichols Media Grp.* v. *Town of Babylon*, 365 F. Supp. 2d 295, 308 (E.D.N.Y. 2005) (Wexler, J.).

Moreover, Dr. Friedrich's method for assessing compliance runs counter to *every* regulator whose reports he cites in his own report.  Each of those regulators not only tested emissions levels (*i.e.*, what Dr. Friedrich relies on), but also then evaluated whether one of the defeat device exceptions justified any elevated NOx levels (*i.e.*, what Dr. Friedrich chose to

---

[1] All citations of "Ex." refer to the accompanying declaration of Jonathan M. Sedlak, dated December 12, 2018.

ignore).  That process in every instance involved evaluations of the rationale for the emissions control features, including discussions with the manufacturers.  Dr. Friedrich inexplicably rejected this consensus, industry-standard approach even though he otherwise relies on those regulators' reports to reach his opinion.  *See Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002 (noting that reliability of expert opinion hinges heavily on "whether a particular technique or theory has gained general acceptance in the relevant . . . community").

For each and any of these independent reasons, this Court should exclude the entirety of Dr. Friedrich's report and testimony in this action.

## BACKGROUND

### A.  EU Regulations Regarding Unlawful Defeat Devices and Lawful Defeat Devices

All automobiles sold in Europe are subject to laws concerning the use of "defeat devices" in the vehicles.  EU law defines a "defeat device" as:

> [A]ny element of design which senses temperature, vehicle speed, engine speed (RPM), transmission gear, manifold vacuum or any other parameter for the purpose of activating, modulating, delaying or deactivating the operation of any part of the emission control system, that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use.

(EC 715/2007, art. 3, at 10.)  EU law generally prohibits the use of defeat devices, but explicitly *permits* defeat devices if one of three exceptions exists:

> The use of defeat devices that reduce the effectiveness of emission control systems shall be prohibited.  *The prohibition shall not apply* where: (a) the need for the device is justified in terms of protecting the engine against damage or accident and for safe operation of the vehicle; (b) the device does not function beyond the requirements of engine starting; or (c) conditions are substantially included in the test procedures for verifying evaporative emissions and average tailpipe emissions.

(EC 715/2007, art. 5, 1-2.)

Thus, under these statutory exceptions, vehicles in the EU *may* include devices that reduce the effectiveness of emissions control systems.  As a result, merely measuring tailpipe emissions for excess NOx emissions on the road and comparing them against the amount of NOx permitted during dyno testing necessarily cannot demonstrate the presence of an unlawful defeat device.  Those elevated NOx emissions may be explained—and may be entirely permissible—if one of the codified exceptions exists.

### B.   European Regulators' Reports After Volkswagen

After the announcement of the Volkswagen emissions issues in September 2015, various European government agencies began investigating the diesel vehicles of many manufacturers to determine if they contained unlawful defeat devices.  In particular here, the German, French, and Dutch regulators tested vehicles from a number of companies, including vehicles sold by FCA's European affiliates, conferred with the manufacturers on those results, and issued reports on their findings.[2]  Dr. Friedrich relies on cherry-picked portions of each of these reports in support of his opinions in this case.  (Ex. 1 (Friedrich Rpt.) ¶¶ 63-79, 102-24.)[3]

As a *first* step in their analysis, each regulator tested the tailpipe emissions of these vehicles on a dynamometer and, separately, on the road.  (Ex. 4 (Dutch Rpt.) at 6; Ex. 5 (French Rpt.) at 4-6; Ex. 6 (German Rpt.) at 18.)   Where this preliminary testing revealed heightened NOx emissions on the road, the regulator then discussed the engine's software and

---

[2] Ex. 4 (Rijksdienst voor het Wegverkeer ("RDW"), *RDW Emission Test Programme: Results of the Follow-up Investigation into the Presence of Unauthorised Defeat Devices*, at 3, 5 (July 2017) (hereinafter "Dutch Rpt.")); Ex. 5 (*Final Rpt. of the Indep. Comm. Implemented by Minister Segolene Royal After the Revelation of the Volkswagen Affair*, at 24 (July 2016) (hereinafter "French Rpt.")); Ex. 6 (*Rpt. by "Volkswagen" Comm. of Inquiry, Fed. Ministry of Transp. and Digital Infrastructure*, at 122 (April 2016) (hereinafter "German Rpt.")).

[3] As discussed further below, Dr. Friedrich's report declined even to discuss opinions and conclusions in the regulators' reports that were contrary to his own, including their *uniform position* that the exceptions listed in EC 715/2007 allow for lawful defeat devices.  (*See infra* Part III.C.)

calibrations with the manufacturer.  Those discussions included an assessment of the cause of the emissions results, as well as an evaluation of whether any of the regulatory exceptions justified the perceived results.  (Ex. 4 (Dutch Rpt.) at 6; Ex. 5 (French Rpt.) at 4-6, 24-25; Ex. 6 (German Rpt.) at 18.)  As the French regulators explained, "[i]t is difficult to draw general conclusions by only examining the type of technology . . . .  The strategy of design and calibration of the engines is, thus, one of the major elements explaining the differences of the emissions between equal technologies."  (Ex. 5 (French Rpt.) at 9.)

        The German, French, and Dutch regulators' reports did *not* conclude that any FCA vehicle violated any EU emissions laws or was otherwise not in "compliance" with EU law.  (Ex. 4 (Dutch Rpt.) at 3, 5; Ex. 5 (French Rpt.) at 25; Ex 6 (German Rpt.) at 128.)  In fact, both the German Kraftfahrt-Bundesamt ("KBA") and the Dutch RDW, relying on one (if not more) of the codified exceptions discussed above, found that multiple FCA vehicles that yielded heightened NOx during on-the-road emissions testing were nonetheless *in compliance* with EU law.  (*See, e.g.*, Ex. 4 (Dutch Rpt.) at 5 (noting that FCA had "plausibly demonstrated that the reduced operation of the emission control system is necessary for engine protection"); Ex. 6 (German Rpt.) at 18, 32 (noting justifications were "technically plausible and acceptable").)  For other FCA vehicles, the German KBA and Dutch RDW made no conclusive findings, but instead stated that their investigations with respect to those vehicles were ongoing.  The French regulators similarly concluded that their results "did not demonstrate . . . illegal defeat devices." (Ex. 5 (French Rpt.) at 25.)

        C.    **Dr. Friedrich's Report And Opinions**

        Dr. Friedrich is the self-professed "enemy No. 1" of European auto manufacturers.  (Ex. 3 (Friedrich Dep.) at 361.)  To that end, he has offered two opinions in this case:

-7-

      i.     FCA was not in compliance with . . . EU emissions regulations during the Class Period; and

      ii.     FCA's statements concerning its compliance with emissions regulations were false and misleading.

(Ex. 1 (Friedrich Rpt.) ¶ 7.)  Dr. Friedrich's report states that his opinions relate only to FCA's "compliance with . . . EU emissions regulations," not any regulations in the United States, and he confirmed that view at his deposition.  (Ex. 1 (Friedrich Rpt.) ¶ 7; Ex. 3 (Friedrich Dep.) at 19, 36.)

Dr. Friedrich's "methodology" for assessing FCA's compliance with EU emissions laws consisted of measuring tailpipe NOx emissions levels.  (Ex. 3 (Friedrich Dep.) at 77.)  At his deposition, Dr. Friedrich claimed that measuring tailpipe emissions was alone enough for him to reach his conclusions in this case.  (*See id*. ("Q.  Do you believe that you can determine whether a vehicle is in compliance with EU emission regulations solely by conducting emissions testing?  A.  Yes.").)  Dr. Friedrich relied on testing that he supervised involving only five of the over *4.2 million* vehicles FCA's European affiliates sold in Europe the during relevant period.  (Ex. 1 (Friedrich Rpt.) ¶¶ 126-40.)  Dr. Friedrich also harvested some emissions testing results from the German, French, and Dutch reports, but he did not independently verify any of these results.  (Ex. 3 (Friedrich Dep.) at 175, 193, 235-36.)  Moreover, while Dr. Friedrich cherry-picked those portions of the regulators' reports, the regulators' findings were *not* consistent with his conclusions, as the regulators did *not* find illegal defeat devices in FCA vehicles.  (*Compare* Ex. 1 (Friedrich Rpt.) ¶¶ 63-81, 108-24 *with* Ex. 4 (Dutch Rpt.) at 5; Ex. 6 (German Rpt.) at 18, 32.)

By his own admission, no matter whether he relied on his own testing or the testing of the regulators, Dr. Friedrich did *not* consider whether *any* of the legally prescribed

exceptions listed in EC 715/2007 applied.  (Ex. 3 (Friedrich Dep.) at 105-06, 162.)  Tellingly, at his deposition, to attempt to justify his refusal to consider those exceptions, Dr. Friedrich testified that he personally disagrees with the text of EC 715/2007 and chose to disregard the statutory exceptions as mere "residual[s] of . . . old legislation," which, in his sole view, no longer apply.  (Ex. 3 (Friedrich Dep.) at 106, 154, 155.)  Dr. Friedrich took this position even though all of the regulators on whose reports he relies agree—as, of course, they must—that "the use of a defeat device" will "be considered lawful" if one of the three exceptions listed in EC 715/2007 applies.  (Ex. 6 (German Rpt.) at 122; *see also* Ex. 4 (Dutch Rpt.) at 3, 5; Ex. 5 (French Rpt.) at 24.)

Finally, Dr. Friedrich did not review any vehicle calibrations or software code in assessing whether FCA's vehicles complied with EU regulations (Ex. 3 (Friedrich Dep.) at 176, 252-253, 301), despite the fact that (as the French regulator stated) the "design and calibration of the engines" is "one of the major elements explaining the differences of the emissions."  (Ex. 5 (French Rpt.) at 9.)  Dr. Friedrich lacks qualifications in software engineering, conducted no software analysis himself, and even testified to "hav[ing] no interest in software," believing that it is "irrelevant" to emissions compliance.  (Ex. 3 (Friedrich Dep.) at 250-53.)  Yet, Dr. Friedrich nonetheless relied on a software study others conducted—on secondhand imitations of software in FCA vehicles, *not* authentic programs obtained from FCA or Robert Bosch GmbH ("Bosch")—to argue that one FCA vehicle sold in Europe (the Fiat 500X) contained an illegal defeat device.  (Ex. 1 (Friedrich Rpt.) ¶¶ 144-47.)

In the end, by merely looking at NOx tailpipe emissions and *not* independently examining engine functions or software, or even considering any of the three codified exceptions, Dr. Friedrich concluded that an unspecified number of vehicles sold in Europe by

FCA affiliates were noncompliant with EU law, because he considers "a high exceedance of . . . emission[s]" levels *alone* to be "clearly a violation of law."  (Ex. 3 (Friedrich Dep.) at 162.)  While Dr. Friedrich's made-up process for assessing compliance is entirely inconsistent with the process employed by each of the three regulators whose reports Dr. Friedrich relies on, it is fully consistent with his declared agenda, as the self-styled "enemy No. 1" of auto manufacturers, of "trying to reduce emissions."  (Ex. 3 (Friedrich Dep.) at 361.)  But the question of "compliance" is not just about whether a strategy "reduce[s] emissions," and it would be highly prejudicial to FCA if Dr. Friedrich were permitted to offer this opinion testimony—which is the product of his unreliable methodology—at trial.

## LEGAL STANDARD

Federal Rule of Evidence 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.  "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Ruggiero* v. *Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005).  The party seeking to introduce the testimony—here, Plaintiffs—bears the burden of satisfying Rule 702's requirements by a preponderance of the evidence.  *SEC* v. *Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013) (Forrest, J.).

## ARGUMENT

## I.   FCA'S COMPLIANCE WITH EUROPEAN EMISSIONS REGULATIONS IS NOT RELEVANT TO THIS ACTION.

For expert opinion testimony to be admissible, it must be "relevant to the task at hand," and "[e]xpert testimony which does not relate to any issue in the case is not relevant." *Daubert*, 509 U.S. at 591, 597; *see Nook* v. *Long Island R.R. Co.*, 190 F. Supp. 2d 639, 643

(S.D.N.Y. 2002) (Swain, J.) (expert opinion must "provide a sufficient nexus to the facts in issue to qualify as helpful and relevant").  "Under *Daubert*, the relevancy question . . . has long aptly been described . . . as one of 'fit.'"  *Washington* v. *Kellwood Co.*, 105 F. Supp. 3d 293, 308 (S.D.N.Y. 2015) (Dolinger, J.) (quoting *Daubert*, 509 U.S. at 591).

Evidence concerning FCA's claimed noncompliance with *European* emissions regulations is not relevant to this action.  Indeed, this Court has twice blocked Plaintiffs' attempt to inject European emissions issues into this action.  Plaintiffs first raised allegations of FCA's supposed noncompliance with EU emissions regulations in their Third Amended Complaint ("TAC"; ECF No. 69).   In that complaint, Plaintiffs relied on the German KBA's post-Volkswagen report documenting its investigation of NOx emissions, references to investigations by French regulators and meetings of the European parliament.  (TAC ¶¶ 312, 322, 324.)  The Court granted FCA's motion to dismiss the emissions allegations (both U.S. and EU) in the Third Amended Complaint.  In rejecting the EU theories, the Court stated that the KBA report Plaintiffs cited—the same one Dr. Friedrich relies upon now—"is far from conclusive and provides little or no support" for Plaintiffs' claim that FCA officials "'must have known' that FCA cars had illegal defeat devices"  (Aug. 1, 2017 Order at 7-8.)  The Court observed in its decision that the KBA report itself found that FCA had "substantiated" its emissions functions "as 'necessary to protect the engine from damage.'"  (*Id.* at 7.)

Plaintiffs' Fourth Amended Complaint ("Compl."; ECF No. 129) did not meaningfully change Plaintiffs' EU-related allegations.   Instead, Plaintiffs alleged that Germany's investigation involved a meeting that FCA missed with the KBA (which the Third Amended Complaint explicitly pled) (Compl. ¶ 355; TAC ¶ 312); mentioned an unremarkable meeting with the European parliament (Compl. ¶ 363); and noted regulatory developments *after*

the EPA's January 2017 NOV (Compl. ¶¶ 372-73).   None of these allegations addressed the basis of the Court's previous dismissal of these claims, including the Court's holding that Plaintiffs had failed to plead facts showing "that Marchionne and other FCA officials 'must have known' that FCA cars had illegal defeat devices" at the time of the challenged statements.  (Aug. 1, 2017 Order at 7-8.)  By contrast, the Court permitted Plaintiffs' *U.S.*-emissions-based claims to proceed because, in their Fourth Amended Complaint, Plaintiffs added allegations regarding specific emails from *the U.S. EPA to certain Chrysler employees* expressing concern that a Chrysler vehicle might include a U.S. defeat device.  (Nov. 13, 2017 Order at 3-4.)

Even though Plaintiffs now claim that the Court *sub silentio* reversed itself and held that the Fourth Amended Complaint (unlike the Third Amended Complaint) adequately pled an EU emissions claim, the Court made no mention of any European emissions issues in its motion to dismiss ruling concerning the Fourth Amended Complaint.  Rather, the Court ruled that Plaintiffs' Fourth Amended Complaint stated a claim with respect to "*federal and state emissions regulations*" based on the "specific written exchanges between the EPA" and Chrysler employees concerning compliance with the U.S. Clean Air Act.  (Nov. 13, 2017 Order at 2-4 (emphasis added).)   Consequently, this Court's prior decisions limited Plaintiffs' emissions claims to claims based on alleged noncompliance with "federal and state emissions regulations," not EU regulations.  (Aug. 1, 2017 Order at 1; Nov. 13, 2017 Order at 2.)

Plaintiffs again failed to re-open this issue and shoehorn European emissions issues into the case when, on April 18, 2018, this Court denied discovery into EU emissions compliance issues.  (*See* ECF No. 186 (noting FCA's "colorable arguments based on relevance"

but ultimately explaining that the Court "need not reach them" because Plaintiffs' request was "patently untimely").)[4]

In sum, Dr. Friedrich's opinions are irrelevant to any issue in this case, and the Court should therefore exclude his opinions because testimony "which does not relate to any issue in the case is not relevant." *Daubert*, 509 U.S. at 591; *see, e.g.*, *Querub* v. *Hong Kong*, 649 F. App'x 55, 57 (2d Cir. 2016) (affirming exclusion of purported expert testimony on industry standards that were not applicable to the defendant, as testimony "would not be helpful to the jury on any relevant issue, and would risk muddling the issue of the" applicable "standard of care").

## II.  DR. FRIEDRICH OFFERS IMPROPER OPINIONS ABOUT THE MEANING AND APPLICATION OF EU LAW.

Experts may not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States* v. *Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999).  Second Circuit law "requir[es] exclusion of expert testimony that expresses a legal conclusion." *Hygh* v. *Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).  Accordingly, courts in this district routinely bar "expert testimony that provide[s] legal opinions, legal conclusions, or interpret[s] legal terms," or "state[s] ultimate legal conclusions" based on the facts of the case. *Scott*, 315 F.R.D. at 48.  Although an expert can

---

[4] In its class certification decision, the Court ruled that Plaintiffs' allegations concerning an alleged corrective disclosure relating to EU emissions were, *at best*, not "wholly irrelevant" to class certification. (ECF No. 223 at 6.)  At that class certification stage, the Court had to decide the question of *market efficiency*, and the alleged corrective disclosure relating to EU emissions may have been relevant (or at least not "wholly irrelevant") on class certification with respect to that question.  The Court has now decided that FCA securities "traded in an efficient market during the class period." (*Id.*)  With that question resolved, the limited issue for which the alleged corrective disclosures relating to EU emissions compliance may have had minimal relevance (at the class certification stage) has been resolved, and accordingly, consistent with the Court's motion to dismiss rulings, EU emissions compliance is no longer relevant in this action.

"aid the Court in determining the *content* of the applicable foreign law," experts must first still be qualified with respect to that law, and in all events, may not "*apply it* to the facts of the case." *Bigio*, 2010 WL 3377503, at *4 (emphasis added) (noting courts are not "obliged to credit the parties' partisan application of [foreign] law"); *see also* Fed. R. Civ. P. 44.1.

Dr. Friedrich is not a lawyer (Ex. 3 (Friedrich Dep.) at 37), and he lacks any legal training or experience (*see* Ex. 1 (Friedrich Rpt.) Ex. 1). And he claims to not be offering any legal opinions in this case, undoubtedly because he is not qualified to do so. (Ex. 3 (Friedrich Dep.) at 37 ("Q. And you're not offering any legal opinions today? A. No.").) Dr. Friedrich thus lacks the "superior knowledge, education, experience, or skill" to render him as an expert qualified to opine on the requirements of foreign law. *United States* v. *Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004); *see Solorio* v. *Asplundh Tree Expert Co.*, 2009 WL 755362, at *2 (S.D.N.Y. Mar. 23, 2009) (Sullivan, J.) ("As a threshold matter, the Court must first examine whether the proposed witness *qualifies* as an expert.").

Despite lacking this expertise, he nonetheless has offered numerous legal opinions throughout his report and during his deposition testimony. Among other things, Dr. Friedrich:

- ***Disagreed with the legal positions and conclusions of regulators familiar with EU law.*** Dr. Friedrich claimed that the German regulator made an "illegal statement" when the German regulator explained that, under EU regulations, "[i]f one of the[] three exceptions apply . . . the use of a defeat device is to be considered lawful." (Ex. 3 (Friedrich Dep.) at 105-06; Ex. 6 (German Rpt.) at 122.) Dr. Friedrich also attacked conclusions made by the Dutch regulator about the meaning and application of EU emissions regulations, asserting that the Dutch regulator's positions on vehicle compliance were "not legally correct." (Ex. 3 (Friedrich Dep.) at 188.)

- ***Invented new requirements for emissions controls.*** Dr. Friedrich claims—without any support—that altering the operation of an emissions control system is "[n]ot in line with legislation." (Ex. 3 (Friedrich Dep.) at 131-32; Ex. 1 (Friedrich Rpt.) ¶¶ 55, 57.)

- ***Dismissed provisions of the governing statute's plain text.***  Dr. Friedrich maintains that the codified exceptions that exist in EU law today are merely "residual of . . . old legislation."  (Ex. 3 (Friedrich Dep.) at 154-55, 164.)

Additionally, Dr. Friedrich *drew conclusions* about individual vehicles' alleged noncompliance by offering the opinion that *specific FCA vehicles* did not comply with EU law. (*E.g.*, Ex. 3 (Friedrich Dep.) at 218; Ex. 1 (Friedrich Rpt.) ¶ 79.)  Regardless of whether an expert is qualified to opine on the requirements of foreign law—which Dr. Friedrich is not— purported expert testimony may not "apply it to the facts of the case."  *Bigio*, 2010 WL 3377503, at *4.  Dr. Friedrich's report is infected with these errors:  he offers interpretations and conclusions such as the above *at least 50 times* in his report and deposition.[5]

As his opinion both incorrectly interprets legal provisions and "expresses . . . legal conclusion[s]," it is therefore inadmissible.  *Hygh*, 961 F.2d at 363; *see also United States* v. *Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (excluding expert testimony that "drew directly upon the language of [a] statute and accompanying regulations"), *rev'd in part on other grounds*, 856 F.2d 5 (2d Cir. 1988); *Contini* v. *Hyundai Motor Co.*, 876 F. Supp. 540, 543 (S.D.N.Y. 1995) (Koeltl, J.) (expert not permitted to testify about "meaning" of an automotive safety standard or "as to whether . . . [manufacturer] violated or complied with the standard"); *SEC* v. *Badian*, 822 F. Supp. 2d 352, 357 (S.D.N.Y. 2011) (Swain, J.) (excluding an expert's opinion that was "replete with inadmissible generalized statements of law, legal conclusions and conclusory statements," including opinions about a party's compliance with SEC rules); *GlobalRock Networks, Inc.* v.

---

[5] Ex. 1 (Friedrich Rpt.) ¶¶ 7, 20, 40, 44, 46-50, 53-55, 57, 79, 83, 116, 122, 132, 148, 152-53, 157, 168; Ex. 3 (Friedrich Dep.) at 36, 37, 48-49, 51, 57, 59, 66-67, 76-77, 80, 93, 95-96, 104-10, 113-14, 117-18, 120, 131-32, 138, 141-42, 144, 145-48, 154-58, 162, 164, 167, 180-88, 200-02, 218221, 225-26, 229, 239, 252, 308.

*MCI Commc'ns Servs. Inc.*, 943 F. Supp. 2d 320, 344 (N.D.N.Y. 2013) (precluding expert from testifying that "defendant violated the FCC rules").[6]

## III.   DR. FRIEDRICH'S OPINIONS ARE NOT THE PRODUCT OF A RELIABLE METHODOLOGY.

Not only are Dr. Friedrich's opinions irrelevant *and* improper legal opinion, they are also unreliable because:  (i) Dr. Friedrich ignores EU law inconsistent with his opinion—in particular, the statutorily defined defeat device exceptions; (ii) his methodology is inconsistent with every European regulator that he himself cites in his report; and (iii) Dr. Friedrich has revealed such a pervasive bias against the automotive industry that his opinions cannot be trusted as fair and objective.  The Court may not admit expert testimony—such as Dr. Friedrich's—that lacks "a sufficiently 'reliable foundation'" for its conclusions.  *Campbell* v. *Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001) (quoting *Daubert*, 509 U.S. at 597).

### A.   Dr. Friedrich Ignores the Defeat Device Exceptions Codified in European Law.

"*Daubert* and Rule 702 mandate the exclusion of . . . unreliable opinion testimony," including where "an expert opinion is based on . . . a methodology" that is "simply inadequate to support the conclusions reached."   *Ruggiero*, 424 F.3d at 255.   An expert "destroy[s] the validity of his conclusions" through "erroneous reliance" on faulty positions,

---

[6] In addition to his impermissible legal conclusions, Dr. Friedrich also offers the additional opinion that "FCA's statements concerning its compliance with emissions regulations were false and misleading." (Ex. 1 (Friedrich Rpt.) ¶¶ 7, 160-68; Ex. 3 (Friedrich Dep.) at 36.)  Dr. Friedrich has no expertise in interpreting SEC filings or other corporate communications (Ex. 3 (Friedrich Dep.) at 346-47)—let alone on whether they were "false and misleading."  He is therefore not qualified to offer this opinion.  In any event, this is an ultimate issue for the jury.  *See Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (plaintiffs bear burden to prove to jury that defendant made a "material misrepresentation or omission").  Therefore, Dr. Friedrich's opinions on this topic "usurp" the role of the factfinder and are improper, because "an expert . . . may not tell the jury what result to reach."  *Rezulin*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (Kaplan, J.); *see United States* v. *Duncan*, 42 F.3d 97, 100 (2d Cir. 1994) ("[T]his does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.").

including incorrect legal positions.  *See Johnson*, 103 F. Supp. 2d at 280-81 (excluding damages expert for relying on legally irrelevant data that "significantly alter[ed] [the expert's] measure of damages," which rendered his conclusions "fatally flawed").

Here, Dr. Friedrich has taken numerous positions in contravention of the EU emissions laws he purports to interpret (and, even worse, then apply to the facts), and thus his methodology is fundamentally unreliable.   EU regulations expressly provide that "[t]he prohibition" against defeat devices "*shall not apply*" where the device is justified by certain exceptions, such as, among others, to "protect[] the engine against damage or accident and for safe operation of the vehicle."  EC 715/2007 (emphasis added).   Nothing about this should be controversial, as the language appears in the very text of Article 5 of Council Regulation 715/2007.   Nor is it disputed by the German, Dutch and French regulators on whom Dr. Friedrich relies in his report (at least when it suits his opinion); in fact, those regulators expressly state in their reports that "[i]f one of these three exceptions applies . . . the use of a defeat device is to be considered lawful."  (Ex. 6 (German Rpt.) at 122; *see also* Ex. 4 (Dutch Rpt.) at 3, 5; Ex. 5 (French Rpt.) at 24.)

Yet, even though he concluded that FCA vehicles contained "illegal" defeat devices (*e.g.*, Ex. 1 (Friedrich Rpt.) ¶ 122), Dr. Friedrich did not evaluate whether *any* of the codified exceptions applied.  (*See generally* Ex. 1 (Friedrich Rpt.) ¶¶ 46-157.)   Instead, he shrugged off the text of EC 715/2007 and asserted that the codified exceptions were "residual," "old," and "in a former time appropriate" but "not anymore."  (Ex. 3 (Friedrich Dep.) at 154-55, 164.)  But Dr. Friedrich does not, did not and cannot make the law in Europe.  And it is not his prerogative nor his right to issue an opinion in this case that FCA needed to comply with his fictionalized version of what the law is or should be.  Notably, FCA is not the only entity who

has apparently run afoul of Dr. Friedrich's crusade and should be punished for it:  Dr. Friedrich testified that the *German KBA* made an "illegal statement" when it said, uncontroversial to all but Dr. Friedrich, that EC 715/2007 allows for lawful defeat devices under the statutory exceptions.  (Ex. 3 (Friedrich Dep.) at 105-06; *see also* Ex. 4 (Dutch Rpt.) at 3, 5 (Dutch regulator explicitly acknowledging applicability of the exceptions).)

Dr. Friedrich attempts to justify his opinion by saying that "a high exceedance of emission[s]" levels is "clearly a violation of law."  (Ex. 3 (Friedrich Dep.) at 162.)  In keeping with this view, he relied solely on whether a vehicle test showed elevated NOx levels, stating that "there was no need" to assess whether the tested vehicles' *functions*—*i.e.*, what the defeat device law actually regulates—fell within any of the permitted exceptions.  (Ex. 3 (Friedrich Dep.) at 297-98.)  But Dr. Friedrich's assertion that high levels of emissions is "clearly a violation of law" does not make it so.  The law provides that the prohibition on defeat devices "*shall not apply*" if a vehicle meets one of the exceptions.  EC 715/2007, art. 5, 1-2.  Dr. Friedrich chose to ignore the law.

Perhaps recognizing this fatal flaw, after he had been deposed, Dr. Friedrich served a rebuttal report claiming—for the first time in this action and without any explanation— that he "considered the exceptions and came to the conclusion that they are not applicable." (Ex. 2 (Friedrich Rebuttal Rpt.) ¶ 17.)  Even if this newfound assertion were construed in the best possible light, Dr. Friedrich still could not rely on it because it appears nowhere in his opening report (*see generally* Ex. 1 (Friedrich Rpt.) ¶¶ 64-81, 102-05, 108-40), and it is black-letter law that "[a]n expert cannot testify on a matter not disclosed in his preliminary report."  *LaSalle Bank Nat. Ass'n* v. *CIBC Inc.*, 2012 WL 466785, at *9 (S.D.N.Y. Feb. 14, 2012) (Pitman, J.).

At worst though, Dr. Friedrich has now contradicted his sworn deposition testimony (Ex. 3 (Friedrich Dep.) at 361), raising the serious concern that the truth will bend for Dr. Friedrich's convenience whenever he needs to maintain his classification as the auto industry's "enemy No. 1." *See Richman* v. *Respironics, Inc.*, 2012 WL 13102265, at *13 (S.D.N.Y. Mar. 13, 2012) (Smith, J.) (indicating that an expert undermines his reliability when his "conclusion[s] . . . also contradict[] his own deposition testimony"). Dr. Friedrich previously testified under oath not only that he did not determine whether any of the exceptions could justify the heightened NOx levels he observed in FCA vehicles, but that there was "no need" for him to have done so. (Ex. 3 (Friedrich Dep.) at 297-98.)

The Court is the "gatekeeper to exclude invalid and unreliable expert testimony." *Floyd* v. *City of New York*, 910 F. Supp. 2d 506, 511 (S.D.N.Y 2012) (Scheindlin, J.). "'[M]inor flaw[s] in an expert's reasoning or a slight modification of an otherwise reliable method' speak to the weight of the expert testimony, not its admissibility." *Bernhard-Thomas Bldg. Sys., LLC* v. *Weitz Co.*,  2010 WL 4929029, at *1 (D. Conn. Nov. 30, 2010) (quoting *Amorgianos*, 303 F.3d at 267). Dr. Friedrich's failings are no mere "minor flaws," and his method is not "otherwise reliable." His entire analysis is predicated on his spurious legal position that excess emissions are enough to demonstrate noncompliance with EU law and that the exceptions codified in EU law are irrelevant. Dr. Friedrich's transparent *ex post* attempt to obscure his *intentional* oversights cannot change the fact that his actual analysis relies on an incorrect legal premise. This alone "destroys the validity of his conclusions," renders them unreliable and mandates their exclusion. *Johnson*, 103 F. Supp. 2d at 280-81.

**B.      Dr. Friedrich's "Methodology" for Reaching His Opinions Has Been Rejected By the Very Regulatory Authorities on Which He Claims To Rely.**

"[W]hether a particular technique or theory has gained 'general acceptance' in the relevant . . . community" is a significant factor in evaluating the reliability of an expert's opinion. *Amorgianos*, 303 F.3d at 266 (quoting *Daubert*, 509 U.S. 594).   Dr. Friedrich's claim that he could assess FCA's compliance with EU law *solely* by measuring emissions levels (*see*, *e.g.*, Ex. 3 (Friedrich Dep.) at 229) has been *rejected* by each of the regulators upon which Dr. Friedrich claims to have relied.   Each of those regulators not only tested vehicles for NOx emissions, but *also* conferred with automakers to determine what caused any elevated NOx levels and to assess the applicability of each of the codified exceptions and whether they could have justified the observed NOx levels.[7]   The fact that Dr. Friedrich failed to engage in these additional steps, which the regulators themselves followed, shows that his analysis is considered unreliable by the relevant community, and cannot demonstrate the existence of an illegal defeat device.   *See Nimely* v. *City of New York*, 414 F.3d 381, 399 (2d Cir. 2005) ("Such a leap is the essence of unverifiable subjectivity, amounting to the sort of *ipse dixit* connection between methodology and conclusion that the district court has the duty to exclude.").

Moreover, courts consistently "exclude[] expert testimony 'where the expert selectively chose his support,'" and "any theory that fails to explain information that otherwise would tend to cast doubt on that theory is inherently suspect." *Rezulin*, 369 F. Supp. 2d 399, 425 (S.D.N.Y. 2005) (Kaplan, J.); *see also EEOC* v. *Freeman*, 778 F.3d 463, 469 (4th Cir. 2015)

---

[7] *See* Ex. 4 (Dutch Rpt.) at 3 ("Manufacturers were obliged to supply additional information about the operation of the emission control system and demonstrate that the detected emission behaviour falls under the permitted exceptions."); Ex. 5 (French Rpt.) at 6 (the French regulator "decided to audition the manufacturers of vehicles displaying [NOx] excesses in order to . . . have them explain the possible causes of these exceedances"); Ex. 6 (German Rpt.) at 18 ("[M]anufacturers . . . were invited for a discussion and asked about the causes" of high NOx emissions).

("[C]ourts have consistently excluded expert testimony that 'cherry-picks'" information in support of the expert's opinion while declining to address contrary evidence); *Children's Broad. Corp.* v. *Walt Disney Co.*, 245 F.3d 1008, 1018 (8th Cir. 2001) (excluding expert testimony where expert "did not consider" relevant evidence that was less favorable to his client). That is exactly what Dr. Friedrich did here: "selectively cho[osing] his support," and ignoring countervailing evidence. *Rezulin*, 369 F. Supp. 2d at 425. His report cited the emissions testing results of the Dutch, French and German regulators but failed to discuss the regulators' assessment of the resulting NOx levels and subsequent discussions with manufacturers. For example, Dr. Friedrich failed to mention in his report that, despite finding elevated NOx emissions in certain FCA vehicles, the Dutch and German regulators found no violations of EU regulations for several of those vehicles and stated that their investigation with respect to the other vehicles would continue. (Ex. 4 (Dutch Rpt.) at 3, 5-6, 24, 32-34, 39; Ex. 6 (German Rpt.) at 18, 32, 70, 78, 90, 108, 128; *see also* Ex. 5 (French Rpt.) at 25.) Dr. Friedrich's failure to confront unfavorable and countervailing evidence in the very materials he cites fatally undermines the reliability of his conclusions.[8]

---

[8] Dr. Friedrich also points to a dispute the German KBA had with Italian regulators regarding whether the Fiat 500X, a vehicle not covered by the German report, complied with EU emissions regulations. (*See* Ex. 1 (Friedrich Rpt.) ¶ 100.) Leaving aside that this regulatory dispute could not justify the improper methodology Dr. Friedrich employs (which, again, unlike the regulators, solely involved NOx emissions testing), Dr. Friedrich is forced to acknowledge in his report, that after their mediation, there was no final determination that this vehicle contained an unlawful defeat device. (*Id.* ¶ 101.) Instead, "Italy and Germany found a common understanding" that was addressed through an agreed service campaign. (*Id.*) In any event, *even if* the German regulator had the view that the Fiat 500x contained an illegal defeat device, under EU law the German regulator lacked authority to declare FCA noncompliant; only FCA's regulator in Italy (FCA's member-state) could determine under EU law that FCA failed to comply with emissions regulations. (Ex. 7 (Esty Rpt.) ¶¶ 39-41.) Regardless, Dr. Friedrich offers no analysis or insight on this matter, but instead simply recites public facts, which is improper for an expert. *See Tourre*, 950 F. Supp. 2d at 675 ("Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology.").

Nor can Dr. Friedrich save his flawed analysis by citing a software analysis performed by computer scientists. (Ex. 1 (Friedrich Rpt.) ¶¶ 144-47.) To begin, Dr. Friedrich's reliance on software analysis (at least when it apparently supports his position) is directly contrary to his testimony that software is "irrelevant" to assessing compliance with emissions laws. (Ex. 3 (Friedrich Dep.) at 250-53.) Further, Dr. Friedrich has no degrees in computer science (*see* Ex. 1 (Friedrich Rpt.) Ex. 1) or any qualifications suggesting he could competently conduct software analysis on any FCA vehicle, and courts in this District routinely preclude experts from trying—as Dr. Friedrich did—to opine on matters outside their expertise. *See*, *e.g.*, *Faulkner* v. *Arista Records LLC*, 46 F. Supp. 3d 365, 385-86 (S.D.N.Y. 2014) (Preska, C.J.) (expert unqualified where his assistant "was the designer of the model, chose the endpoints, and constructed the model based on her own expertise," and the purported expert "did not supervise her work because . . . he did not have knowledge of the field"); *Malletier* v. *Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) (Scheindlin, J.) (excluding expert opinion because expert "did not conduct" the required regression analysis and "was demonstrably unqualified to be an expert on statistical analysis" when his only statistics training came from "graduate school 30 years earlier").

Regardless, Dr. Friedrich mischaracterizes the conclusions of the software study on which he relies. That study only purported to identify particular software routines on the Fiat 500X, but did not evaluate whether those routines were lawful under EC 715/2007, including whether they fell within one of the statutory exceptions under that regulation. (*See* Ex. 8 (Thorsten Holz *et al.*, *How They Did It: An Analysis of Emission Defeat Devices in Modern Automobiles*, May 2017 (hereinafter "Holz Article")).) Moreover, Dr. Friedrich admits that he did not test the vehicle the authors examined or verify the accuracy of their findings. (Ex. 3 at

(Friedrich Dep.) at 251-52.)  This is particularly significant here because the authors of the study obtained secondhand imitations of the software they tested—rather than genuine copies from FCA or Bosch [9]—and expressly stated in their report that they could not "guarantee the authenticity" of the software.  (Ex. 8 (Holz Article) at 5.)

Exemplifying his unreliability, Dr. Friedrich cites Wikipedia numerous times in his report (*see* Ex. 1 (Friedrich Rpt.) Ex. 4), claiming that if information appears on Wikipedia "for a longer time, it's tested and proved that it is correct information."  (Ex. 3 (Friedrich Dep.) at 362.)  Dr. Friedrich provides no support for this claim, and, in any event, "[f]ederal courts across the nation have continually recognized that Wikipedia's reliability is doubtful, given that by its own statement, '*[a]nyone with Internet access* can write and make changes to Wikipedia articles.'"  *Advanced Mech. Servs., Inc.* v. *Auto-Owners Ins. Co.*, 2017 WL 3381366, at *4 (W.D. Ky. Aug. 4, 2017) (emphasis added); *see also Badasa* v. *Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008) ("[A] review of the Wikipedia website reveals a pervasive and, for our purposes, disturbing set of disclaimers."); *Kole* v. *Astrue*, 2010 WL 1338092, at *7 n.3 (D. Idaho Mar. 31, 2010) ("[I]n support of his brief, Respondent cites to Wikipedia. . . .  Respondent is admonished from using Wikipedia as an authority in this District again.").

**C.  Dr. Friedrich's Admitted Bias Against Automotive Manufacturers Renders His Opinions Unreliable.**

The "expert's role is to assist the trier of fact," because "they do not serve as advocates, but as sources of information."  *Lippe* v. *Bairnco Corp.*, 288 B.R. 678, 687 (S.D.N.Y. 2003) (Chin, J.), *aff'd*, 99 F. App'x 274 (2d Cir. 2004).  "[W]hen expert witnesses become partisans," the very "objectivity" helpful to courts and the jury "is sacrificed to the need to win."

---

[9] Bosch developed the software programs on the Fiat 500X that control its emissions systems.   (Ex. 8 (Holz Article) at 4.)

*Id.* Such biased testimony must "be excluded as fundamentally unreliable." *In re Med Diversified, Inc.*, 346 B.R. 621, 625-26 (Bankr. E.D.N.Y. 2006) (Bernstein, J.).

At his deposition, Dr. Friedrich betrayed antipathy toward both automotive manufacturers and European regulators.  Notably, he did not even bother to feign impartiality, but instead boasted of being the automotive industry's "enemy No. 1" (Ex. 3 (Friedrich Dep.) at 361), and of spending over "35 years agitating" in that sector (Ex. 9 (Edward Niedermeyer, *Europe Chokes on Emissions Testing*, Bloomberg, Nov. 27, 2015)).  He has called European regulatory systems "corrupt" and lamented that there was "no enforcement" of the laws they administer.  (Ex. 3 (Friedrich Dep.) at 203-05.)  Dr. Friedrich even highlighted his involvement in a "court case against KBA"—one of the many cases he has pursued—to try and impose on the regulator, as in this action, his own version of what EU emissions law should be.  (Ex. 3 (Friedrich Dep.) at 105-06.)  He went one step further in this action, claiming the KBA's interpretation of its own laws was an "illegal statement."  (Ex. 3 (Friedrich Dep.) at 105-06.)

Dr. Friedrich also confessed at his deposition to omitting from his report information from the regulators' reports that favored FCA, explaining that he did not agree with that particular information.  (*See, e.g.*, Ex. 3 (Friedrich Dep.) at 184 (admitting that his report did not discuss the Dutch RDW's exoneration of the Jeep Wrangler because he "personally believe[s] the statement of the RDW is in this case is wrong"); *id.* at 219-20 (refusing to discuss KBA's clearing of the Fiat Panda because he disagreed with KBA's conclusion)); *see Nichols*, 365 F. Supp. 2d at 308 ("the fact that there is no other scientific study with the same or similar conclusions" suggests improper partiality).  In like manner, Dr. Friedrich cherry-picked the parts of the same cited reports that supported his pre-ordained view that FCA violated EU law.  For instance, Dr. Friedrich wrote that "the Jeep Wrangler . . . showed very high emission levels and

unusual emission behavior" and that the Fiat Panda exceeded emissions limits during various test cycles, as if these assertions could prove noncompliance with EU law.  (Ex. 1 (Friedrich Rpt.) ¶¶ 64, 124.)  But one would not know from Dr. Friedrich's report that these are some of the very vehicles that the Dutch and German regulators expressly cleared of violations.  (Ex. 4 (Dutch Rpt.) at 3, 5, 32; Ex. 6 (German Rpt.) 18, 32.)

Altogether, Dr. Friedrich's opinions reveal "a deliberate, manifest, pervasive, and systematic bias" that renders his report "fundamentally unreliable," thereby requiring exclusion. *See In re Med*, 346 B.R. at 625-26 (excluding expert report biased to benefit the hiring party "in selecting his data points, in adjusting the data points, and in assigning weights to the data points in order to drive his valuation opinion toward its lowest levels"); *Nichols*, 365 F. Supp. 2d at 308 (holding that courts should not admit reports "so infected by . . . bias as to lack credibility and reliability").

## CONCLUSION

This Court should exclude the testimony and opinions of Dr. Axel Friedrich under Fed. R. Evid. 702 and *Daubert*.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
William B. Monahan
Thomas C. White
Jonathan M. Sedlak
Joshua S. Levy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants*

December 12, 2018