# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY KOOPMANN, TIMOTHY KIDD and VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff(s), <br><br> v. <br><br> FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, RICHARD K. PALMER, SCOTT KUNSELMAN, SCOTT KUNSELMAN, MICHAEL DAHL, STEVE MAZURE and ROBERT E. LEE <br><br> Defendants. | **Civ. Action No: 15-cv-07199-JMF** |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF DEFENDANTS' PROPOSED EXPERT GEORGE H. PERSON

## TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................ 1

**PERSON'S PROPOSED EXPERT TESTIMONY** ................................................... 3

**ARGUMENT** ................................................................................................................. 3

    **A.**    The Court Should Exclude Person's Improper Opinions on State of Mind ........... 3

**CONCLUSION** ............................................................................................................. 9

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  No. 09 CIV 3020 SAS, 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ..................................... 8

*Fleischman v. Albany Med. Ctr.*,
  728 F. Supp. 2d 130 (N.D.N.Y. 2010) ........................................................................................ 8

*Highland Capital Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) ....................................................................................... 9

*In re Diet Drugs*,
  No. MDL 1203, 2001 WL 454586 (E.D. Pa. Feb. 1, 2001) ...................................................... 8

*In re Fosamax Prod. Liab. Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009) ....................................................................................... 8

*In re Rezulin Prod. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) .................................................................................... 3, 9

Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.,
  14 F. Supp. 2d 391 (S.D.N.Y. 1998) ...................................................................................... 4, 9

*Taylor v. Evans*,
  No. 94 Civ. 8425, 1997 WL 154010, 1997 U.S. Dist. LEXIS 30107, at *5 (S.D.N.Y. Apr.1,
  1997) .......................................................................................................................................... 9

*Tyree v. Boston Sci. Corp.*,
  54 F. Supp. 3d 501 (S.D.W. Va. 2014), *as amended* (Oct. 29, 2014) ....................................... 9

Class Representatives Gary Koopmann, Timothy Kidd and Victor Pirnik (collectively, "Plaintiffs") submit this memorandum of law in support of their motion to exclude certain testimony of Defendants' proposed expert George H. Person ("Person"), which has been presented in the Expert Report of George H. Person, dated September 26, 2018 ("Person Report, Ex. 1 to the Declaration of Sara Fuks ("Fuks Decl.")). [1]

## <u>INTRODUCTION</u>

Defendants proffer Person to respond to the opinions expressed by Plaintiffs' vehicle safety expert, Robert F. Hellmuth ("Hellmuth"). Person Report, ¶5. Plaintiffs retained Hellmuth to provide an opinion as to whether FCA was in compliance with the Safety Act during the Class Period and to evaluate FCA's process for compliance with vehicle safety regulations and the Company's disclosures concerning its compliance with vehicle safety regulations. Person opines that "FCA's safety recall process is consistent with, and in some cases exceeded, industry standards during the relevant time period." Person Report ¶12. Person also opines that "Mr. Hellmuth fails to consider the context surrounding NHTSA's allegations of noncompliance." *Id*.

In Sections V(B), VI, VII and VIII of his report, (Person Report, pages 46-71, ¶¶133-214) Person provides testimony that, impermissibly, goes directly to the state of mind of Defendants and the National Highway Traffic Safety Administration ("NHTSA"), specifically, to: (i) NHTSA's motivation for forcing FCA to effectuate the Takata airbag field actions; (ii) NHTSA's motivation in expressing concern with the completion rate of the Jeep trailer hitch service campaign; and (iii) NHTSA's motivation in its issuance of the May 18, 2015 Special Order to FCA, its decision to hold a July 2, 2015 public hearing on FCA's administration of the 23 recall campaigns, and the 2015 Consent Order. For example, Person opines:

---

[1] All references to "Ex." are to exhibits to the Fuks Decl.

- "In my experience, **public criticism of this kind**[2] [respecting the Takata airbag defect] has a **significant impact on NHTSA and causes the agency to take action it otherwise would not**." Person Report ¶ 145.

- "With regard to the Takata Field Actions, it is my opinion, based on my experience, that **much of the actions taken by NHTSA were influenced by political, media, and public pressure.** Indeed, contemporaneous industry news articles made similar observations." *Id.* ¶ 159.

- "Even though such old vehicles would be expected to have a low completion rate, and there is no minimum regulatory requirement for completion rates, **NHTSA expressed concern about the completion rate, likely in response to negative press** surrounding the service campaign…." *Id.* ¶ 166.

- "In my experience, **FCA's actions with regard to the Jeep Trailer Hitch Service Campaign demonstrate FCA's commitment to exceeding regulatory requirements** in its compliance efforts." *Id.* ¶ 172.

- "The fact that FCA voluntarily conducted its own audit **demonstrates FCA's commitment to exceeding regulatory requirements** in its compliance efforts." *Id.* ¶ 174.

- "**In my experience, this level of public scrutiny and increased congressional oversight has a profound impact on NHTSA and can cause it to shift its enforcement practices and increase its regulatory actions**. This shift is illustrated by NHTSA's issuance of the May 18, 2015 Special Order to FCA, its decision to hold a July 2, 2015 public hearing on FCA's administration of the 23 campaigns, and the Consent Order in which FCA agreed to pay a civil penalty of $105 million in connection with the 23 campaigns." *Id.* ¶ 209.

- "Based on my review of the recalls and my nearly 25 years of experience working at NHTSA, it is my opinion that **NHTSA would not have taken these actions in the political and regulatory environment that existed before the GM ignition switch consent order.**" *Id.* ¶ 211.

The sole purpose of these opinions is to provide support for Person's opinion that NHTSA's actions against FCA for FCA's alleged Safety Act violations were **solely motivated by political pressure** NHTSA faced, as opposed to actual wrongdoing on the part of FCA, and that in fact FCA **intended** to meet the Safety Act regulatory requirements.  In other words, FCA's alleged Safety Act violations were not intentional. Person's opinions in this regard

---

[2] Emphasis is supplied unless otherwise noted.

"improperly [..] assume[s] the role of advocate[ ]…by arguing as to the intent or motives underlying the conduct  of [others]."  *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004).  Accordingly, Plaintiffs respectfully request that the Court exclude Person's testimony reflected in Paragraphs 133-214 of the Person Report.

## PERSON'S PROPOSED EXPERT TESTIMONY

Defendants retained Person to "review and respond to the opinions on the expert report submitted by Robert F. Hellmuth."  Person Report ¶ 5.  Person provides improper opinions on the following:

- **FCA's state of mind:** Person opines that "[i]n my experience, FCA's actions with regard to the Jeep Trailer Hitch Service Campaign **demonstrate FCA's commitment to exceeding** regulatory requirements in its compliance efforts" (*Id.* at ¶ 172) and that "[t]he fact that FCA voluntarily conducted its own audit **demonstrates FCA's commitment** to exceeding regulatory requirements in its compliance efforts." *Id.* ¶ 174.

- **NHTSA's state of mind:** Person opines that "Mr. Hellmuth fails to consider the context surrounding NHTSA's allegations of FCA's noncompliance" (*Id.* at ¶ 12) that "[w]ith regard to the Takata Field Actions…**much of the actions taken by NHTSA were influenced by political, media, and public pressure**" (*Id.* ¶ 159), that NHTSA's "expressed concern about the [Jeep trailer hitch service campaigns] completion rate, **likely in response to negative press surrounding the service campaign**" (*Id.* ¶ 166), that "[i]n his experience, **this level of public scrutiny and increased congressional oversight has a profound impact on NHTSA**" and "[t]his shift is illustrated by NHTSA's issuance of the May 18, 2015 Special  Order, its decision to hold a July 2, 2015 public hearing on FCA's administration of the 23 campaigns, and the Consent Order…" (*Id.* ¶ 209) and that [b]ased on my review of the recalls and my nearly 25 years experience working at NHTSA, it is **my opinion that NHTSA would not have taken these actions in the political and regulatory environment that existed before the GM ignition switch consent order**." *Id.* ¶ 210.

## ARGUMENT

### A.    The Court Should Exclude Person's Improper Opinions on State of Mind

In Section V(B) and Sections VI-VIII of his report, Person impermissibly opines as to the motivations of FCA – with regards to its compliance with the Safety Act – and as to NHTSA's

motivations in regards to the Takata airbag field actions, the Jeep trailer hitch service campaign and in issuing the July 2, 2015 Consent Order to FCA.  These opinions clearly go to the state of mind of Defendants and of NHTSA and are not helpful to the fact finder.  Courts in the Second Circuit have long held that expert opinions on state of mind or intent must be excluded.  *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, 14 F. Supp. 2d 391, 398 (S.D.N.Y. 1998) (excluding testimony concerning "the mental processes of the Kidder and M & W people: what they knew, believed, assumed, or understood, on the basis of their own knowledge or communications from others. Again, that evidence must come from the trial testimony of the individuals concerned.").

In Section V(B) of the Person Report, entitled "The Conclusions In the Hellmuth Report Incorrectly Assume That All At-Issue Campaigns Involved Defect or Non Compliance Determinations, Takata Airbag Field Actions", Person opines that "with regard to the Takata field actions, it is my opinion based on my experience that **much of the actions taken by NHTSA were influenced by political media and public pressure**."  Person Report ¶159.  At his deposition Person confirmed that he is providing an opinion as to NHSTA's motivation:

> Q: Turn to paragraph 159 of your report.  And you write in paragraph 159, "with regard to the Takata field actions, it is my opinion based on my experience that much of the actions taken by NHTSA were influenced by political media and public pressure," Do you see that?
>
> A: Yes.
>
> Q:  So, here, are you providing an opinion as to why individuals at NHTSA took certain actions regarding Takata?
>
> A: Yes, in the timing of those actions.
>
> Q: *So you're opining as to their motivation*—
>
> A: *Yes*.
>
> Q: –for why they took these actions?

4

A:  Yes.

*See* Deposition Transcript of George H. Person dated October 11, 2018,  ("Person Tr.")[3], 187:

23-25; 188: 2-15.

Person admitted that he had no basis for his opinion concerning the motivations of NHTSA.

> Q. Is it possible that Mr. Freeman [NHTSA] decided -- just decided that he agreed
> with the concerns and he had the concerns himself?
>
> A. Probably…. Yeah, he could have agreed. I don't know.
>
> Q. At the end of the day you don't know exactly what his motivation was, correct?
>
> A. Exactly. We didn't sit down and have a beer and talk about it so...

*Id.* 189:23-190:9.

In Section VI of the Person Report, entitled "FCA's Conduct Exceeded Regulatory

Requirements, Person opines, referring to FCA's Jeep Trailer Hitch Service Campaign, that

"**NHTSA expressed concern about the completion rate likely in response to negative press**

surrounding the service campaign."  (Person Report ¶166).  At his deposition, Person confirmed

that in the statement above he is providing an opinion as to NHTSA's motivations in expressing

concern about the completion rate:

> Q:  I want to focus on paragraph 166 where you state in the second line, "NHTSA
> expressed concern about the completion rate likely in response to negative press
> surrounding the service campaign."  Here—***you're opining here again as to the***
> ***motivation*** *behind NHTSA expressing concern about the completion rate?*
>
> A: ***Basically, yes***.

Person Tr. 198: 18-25; 199:2-3 (emphasis added).

Of course, in providing an opinion as to NHTSA's motivations, *i.e.* that NHTSA's

actions were the result of public pressure as opposed to wrongful conduct on the part of FCA,

Person is also implicitly providing an opinion on Defendants' state of mind and liability.  That is,

---

[3] Excerpts from the Person Tr. are annexed as Exhibit 2 to the Fuks Decl.

to the extent that NHSTA is motivated by political pressure and not Defendants' wrongful conduct, Defendants did not act with scienter in violating the Safety Act.

Person also provides the opinion that FCA's actions are demonstrative of their intent to exceed the requirements of the Safety Act.  For example, in paragraph 172 of his report, Person states, "in my experience, FCA's actions with regard to the Jeep trailer hitch service campaign demonstrates FCA's **commitment** to exceeding regulatory requirements in its compliance efforts." (Person Report ¶172). Once again, Person testified that his opinion concerning FCA's "commitment" goes to FCA's state of mind in the sense that it shows that "they *wanted* to do something." Person Tr. 201:17. Person admitted that he had no basis for speculating as to FCA's commitment to compliance:

> Q. What I'm asking, though, is a very narrow question about the use of the word when you say "commitment." Isn't that -- do you agree that when you talk about "commitment" that's starting to touch on people's state of mind?
>
> A. Yeah, it is. It is. … ___No, I don't know what's in their head___.

*Id*. 202:21-203:8.

In Section VI of his report Person also describes certain actions that FCA took, such as establishing the Office of Vehicle Safety and Regulatory Compliance (Person Report ¶179) and the addition of resources to FCA's recall investigation and recall execution process (Person Report ¶180).  At his deposition Person confirmed that the inclusion of this discussion in his Report is to illustrate his opinion that Defendants "*wanted* to improve." Person Tr. 205: 21-24.

Person uses Sections VII and VIII of the Person Report to impermissibly opine that it was the "political and regulatory" environment after the General Motors ("GM") ignition switch consent order which drove NHTSA to issue the May 18, 2015 Special Order to FCA, its decision to hold a July 2, 2015 public hearing and the 2015 Consent Order with FCA.  Person Report ¶ 209.  In Section VII of the Person Report entitled "NHTSA's Relationship with FCA Matched

Industry Standards" Person opines that FCA's "recall performance is generally consistent with that of other large manufacturers in the auto industry" (Person ¶ 188), and that its recall completion rates during the Class Period "were will within industry standards." Person Report ¶189.  Then, in Section VIII of his report, entitled "The Hellmuth Report Does Not Consider the Context For the Consent Order," Person states that NHTSA "does not typically enforce recordkeeping requirements (Person Report page 62, subheading A.); discusses how NHTSA was widely criticized after the GM ignition switch issues came to light (Person Report ¶¶ 195-208), and discusses the "effect of public opinion on NHTSA enforcement." Person Report ¶¶ 209-213.   The discussion in Sections VII and VIII of the Person Report are included to support Person's conclusion that NHSTA was motivated to take action against FCA not because of FCA's own wrongdoing but because of political pressure and the history of the GM Consent Order.  Once again, at his deposition Person testified that he is, in fact, providing a speculative opinion as to NHTSA's state of mind:

Q: Go to paragraph 211 [of the Person Report].

A: 211.

Q. You say, "Based on my review of the recalls, in my nearly 25 years of experience working at NHTSA, it is my opinion that NHTSA would not have taken these actions in the political and regulatory environment that existed before the GM ignition switch Consent Order,"  Do you see that?

A: Yes.

Q: Now, *is this another situation where you're talking about NHTSA's or individuals from NHTSA's state of mind about what they would have and would not have done?*

A: *Yes.*

Person Tr., 217: 4-18.

Virtually all of Person's opinions, and the accompanying narrative, in Sections V(B)-VIII of the Person Report, are proffered to inform the fact finder on either the state of mind of Defendants or of NHTSA.  An expert may not speculate as to the beliefs of others or a particular state of mind held by a party.  *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 CIV 3020 SAS, 2011 WL 6288415, at *7–9 (S.D.N.Y. Dec. 15, 2011) (stating that "There is no dispute that opinions concerning state of mind are an inappropriate topic for expert opinion," excluding as impermissible expert opinions that party  "relied blindly," was "untroubled by Fitch's ratings withdrawal", "understood neither the odds nor the game", "hoped for the best" and "appeared to assume" as inferences left to the finder of fact); *Fleischman v. Albany Med. Ctr.,* 728 F. Supp. 2d 130, 168 (N.D.N.Y. 2010), quoting  *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) ("Expert witnesses are not permitted to testify as to the 'knowledge, motivations, intent, state of mind, or purposes' of others."); *See also In re Diet Drugs*, No. MDL 1203, 2001 WL 454586, at *2 (E.D. Pa. Feb. 1, 2001) (excluding expert testimony regarding corporate intent of defendant and/or what beliefs of FDA officials were on matters upon which they spoke or acted).

As the Court held in *Rezulin*,

[T]he opinions of these witnesses on the ***intent, motives or states of mind of corporations, <u>regulatory agencies</u> and others*** have no basis in any relevant body of knowledge or expertise. The *Taylor* court aptly described similar testimony as "musings as to defendants' motivations [that] would not be admissible if given by any witness-lay or expert." Furthermore, plaintiffs' experts propose improperly to assume the role of advocates for the plaintiffs' case by arguing as to the intent or motives underlying the conduct of Warner-Lambert or others, a transgression that has resulted in the exclusion of "expert" testimony as to the "real motive" behind certain business transactions.

*In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 546–47  (S.D.N.Y. 2004) (emphasis added).

Person's opinions concerning NHTSA's motivations and FCA's commitment to improve is an opinion that FCA's alleged Safety Act violations were not the result of reckless or intentional misconduct.  It is for the jury, not an expert, to determine what motivations should be ascribed to Defendants and others.  *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 182–83 (S.D.N.Y. 2008) ("Guild's belief about a party's state of mind is an improper subject for expert testimony and cannot be saved by couching his opinion as 'industry custom and practice.'"); *See also Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998) ("…[J]uries traditionally decide whether an individual acted knowingly, or willfully, or maliciously, or with specific intent, or with any other relevant state of mind. Thus, this case will present to the jury no new or more demanding task than what juries have always done"); *Tyree v. Boston Sci. Corp.*, 54 F. Supp. 3d 501, 517–18 (S.D.W. Va. 2014), *as amended* (Oct. 29, 2014) ("I will not permit the parties to use experts to usurp the jury's fact-finding function by allowing an expert to testify as to a party's state of mind or on whether a party acted reasonably."); *Taylor v. Evans,* No. 94 Civ. 8425, 1997 WL 154010, at *2, 1997 U.S. Dist. LEXIS 30107, at *5 (S.D.N.Y. Apr. 1, 1997) (holding that expert's "musings as to defendants' motivations" were inadmissible).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude the Person testimony as reflected in paragraphs ¶¶133-214 of the Person Report.

Dated: December 12, 2018
New York, New York

**POMERANTZ LLP**
*/s/ Jeremy A. Lieberman*

9

Jeremy A. Lieberman
Michael J. Wernke
Veronica Montenegro
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email:
jalieberman@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Sara Fuks
Jonathan Stern
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: sfuks@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Class*