UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY KOOPMANN, TIMOTHY KIDD and VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., FCA US, LLC, SERGIO MARCHIONNE, RICHARD K. PALMER, SCOTT KUNSELMAN, MICHAEL DAHL, STEVE MAZURE and ROBERT E. LEE<br><br>Defendants. | Civ. Action No: 15-cv-07199-JMF |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' PROPOSED EXPERT NICK MOLDEN**

# TABLE OF CONTENTS

I.   Introduction ................................................................................................................. 1

II.  The Molden Report ..................................................................................................... 2

III. Argument .................................................................................................................... 3

  A.  Molden is not Qualified to Issue his Opinions ....................................................... 4

IV.  Conclusion .................................................................................................................. 7

# **TABLE OF AUTHORITIES**

**Cases**

*Amorgianos v. Amtrak*,
  303 F.3d 256 (2d Cir. 2002) .................................................................................................. 3, 4

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ...................................................... 3, 4

*In re Rezulin Prod. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..................................................................................... 4, 5

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) .......................................................... 4

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007) .......................................................................................... 4

*Solorio v. Asplundh Tree Expert Co.*,
  No. 02CIV8035RJS, 2009 WL 755362 (S.D.N.Y. Mar. 23, 2009) ............................................. 5

*United States v. Tin Yat Chin*,
  371 F.3d 31 (2d Cir. 2004) ........................................................................................................... 4

*United States v. Williams*,
  506 F.3d 151 (2d Cir. 2007) ........................................................................................................ 3

**Rules**

Fed. R. Evid. 702 ........................................................................................................................ 3, 4

Class Representatives Gary Koopmann, Timothy Kidd and Victor Pirnik (collectively, "Plaintiffs") submit this memorandum of law in support of their motion to exclude the testimony of Defendants' proposed expert Nick Molden ("Molden") which has been presented in the Expert Rebuttal Report of Nick Molden ("Molden Report," Ex. 1 to the Declaration of Jonathan Stern).

## I. Introduction

Defendants have put forth Molden as an expert to rebut the testimony of Plaintiffs' expert Dr. Axel Friedrich. Dr. Friedrich is Plaintiffs' expert concerning Defendants' compliance with EU emissions regulations during the Class Period. Dr. Friedrich holds a Ph.D. in engineering and has spent nearly 30 years working with the German Federal Environmental Agency on vehicle emissions. Dr. Friedrich conducted emissions testing of FCA vehicles, examined the results of emissions testing conducted by the German, Dutch and French governments ("the government agencies"), as well as other emissions tests and other public research into FCA vehicles, and concluded that FCA's vehicles contained illegal defeat devices. In response, Molden asserts that the evidence upon which Dr. Friedrich relied is insufficient to conclude that the FCA vehicles contained illegal defeat devices.

Molden is not qualified to opine on the adequacy of NOx emission testing or defeat devices. Molden does not hold any degree in engineering and has absolutely zero engineering training. Rather, he is a businessman, holding a degree in Philosophy, Politics and Economics, and was not even involved in vehicle emissions until 2011. Even then, his role was as a CEO who managed "logistics" and client relationships, while relying on hired engineers for all technical testing and analysis. Moreover, his company, Emissions Analytics, merely measures emissions output of vehicles and has no experience in identifying illegal defeat devices. Indeed, Molden has expressly disclaimed any expertise in identifying defeat devices when asked by a committee of the European

1

Parliament. Molden also admitted to being unqualified to assess the veracity of certain evidence in the Friedrich Report because he lacked the expertise. Tellingly, prior to hiring Molden for this litigation, FCA publicly criticized Molden as unqualified and his methods as unreliable. The Court should come to the same conclusion and exclude Molden's testimony.

**II.     The Molden Report**

Defendants proffer the Molden Report as a rebuttal to the Friedrich Report. Dr. Friedrich opined that FCA was not in compliance with EU emissions regulations related to defeat devices. Dr. Friedrich's opinion was based on: (i) his own testing of FCA vehicles on behalf of the German NGO "Deutsche Umwelthilfe"; (ii) reports on testing performed by the government agencies (iii) other emissions testing performed by the Real Urban Emissions program: and (iv) a published analysis of the code in FCA's Fiat 500X vehicle. Based on those sources, Dr. Friedrich concluded that FCA vehicles contained illegal defeat devices and therefore violated EU regulations.

Molden conducted no testing of any FCA vehicle and provides no opinion concerning whether any FCA vehicle had an illegal defeat device. Instead, Molden opines only that the evidence considered by Dr. Friedrich is insufficient by itself to conclude that FCA vehicles contained defeat devices and, therefore, violated EU regulations. Molden Report ¶ 51. In support of this conclusion, Molden opines that: 1) the existence of a prohibited defeat device cannot be established through emissions testing alone; and 2) none of the government reports that Dr. Friedrich relied upon reaches a conclusion that FCA vehicles used an illegal defeat device. Molden Report ¶¶ 46, 51.

Molden acknowledges that Dr. Friedrich's own testing, as well as the tests performed by the government agencies cited by Dr. Friedrich, all show elevated levels of emissions in real world driving conditions when compared to conditions in the lab. Molden Report ¶¶ 47-51. However, he claims that this is insufficient to conclude that the cause of that elevated testing is due to the

presence of illegal defeat devices. *Id.* Molden asserts that there are factors other than the operation of the emissions control system that could, in theory, account for elevated emissions. Molden Report ¶¶ 31-36. Molden claims that, to rule out those other factors, one must perform an inspection of the vehicles being tested, and points out that Dr. Friedrich (while doing his own testing) did not also perform an inspection of the specific vehicle tested by the government agencies. Molden Report ¶¶ 38-39. While Molden concedes that the FCA vehicles discussed in the Friedrich Report contain emissions control strategies that reduce the effectiveness of the emissions control systems. Transcript of the Declaration of Axel Friedrich, attached hereto as Exhibit 2, at 105:22-106:11. Molden argues that even if one was able to establish through such vehicle inspection that the elevated test results were due to "an emissions control device" (i.e. a defeat device) "it is then necessary to analyse [sic] whether that emissions control device falls within one of the three defeat device exceptions." Molden Report ¶ 40. Molden asserts that none of the government agencies' reports relied on by Dr. Friedrich concluded definitively that the FCA vehicles contained an unlawful defeat device, though he omits any discussion of non-government reports cited in the Friedrich Report. *Id*. ¶¶ 47-51.

**III.     Argument**

Defendants bear the burden to establish, by a preponderance of the evidence that Molden's testimony satisfies each of the *Daubert* and Fed. R. Evid. 702 standards. *See United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). The "gatekeeper" role requires the court to conduct a "rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002). *Daubert* and Fed. R. Evid. 702 "mandates the exclusion of …unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266.

Under Fed. R. Evid. 702, a "qualified" witness may testify in the form of an opinion if the opinion "rests on a reliable foundation" and is "relevant to the task at hand." *Daubert*, 509 U.S. at 597. The reliability inquiry requires that (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) the witness "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Amorgianos*, 303 F.3d at 265. The aim of the "reliability" prong is to exclude expert testimony based on subjective belief or unsupported speculation. *See Daubert*, 509 U.S. at 589-90. An "expert" must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

### A.   Molden is not Qualified to Issue his Opinions

"To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony" *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). "An expert qualified in one subject matter does not thereby become an expert for all purposes." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007). Molden is not qualified to opine as to whether the evidence relied on by Dr. Friedrich is sufficient to conclude that FCA's vehicles contained defeat devices because Molden has absolutely no education, training or experience in detecting defeat devices. Because Molden's opinions do not match his experience, he is not qualified to testify as an expert. *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 549 (S.D.N.Y. 2004) (striking experts who intended to testify regarding conformity to FDA standards when experts lacked expertise regarding compliance with those standards or expertise in the design of tests for the purpose of FDA compliance).

Molden is a businessman, not an engineer. Unlike all the other NOx emissions experts proposed by Plaintiffs as well as Defendants (Dr. Friedrich, Dr. Christopher Atkinson, and James Lyons), Molden does not hold a degree in engineering. He holds a degree in "Philosophy, Politics and Economics". Molden Report, ¶ 6. Nor has Molden gained any engineering knowledge through experience. When asked how much engineering training he has had, he testified, "None at all." Transcript of the Deposition of Nick Molden ("Molden Tr."), attached hereto as Exhibit 3 79:3-6. Molden did not even begin working in the industry of vehicle emission testing until 2011 when he started Emissions Analytics, which conducts general tailpipe emission tests. *Id*; Molden Report ¶ 1. However, he did not personally conduct any testing. Rather, he had the idea for the business venture and then "the business hired technically competent people to conduct the testing itself." Molden Tr. 78:24-79:2. The skills he brought were his "data analysis" and "logistical" skills. *Id*. at 79:7-80:7 ("my business experience was helpful in that logistical, organizational, managerial dimension"). He has never personally conducted any emissions test. Rather, "the operational part will, typically, have only a very high level oversight by me." *Id*. at 86:16-18. Molden has never been hired to attempt to detect an illegal defeat device in a vehicle. *Id.* at 41:3-42:19. Given his complete lack of any education, training or experience with NOx testing or defeat device testing, Molden is not qualified to opine on the adequacy of Friedrich's methodology for detecting defeat devices or the sufficiency of the evidence that Friedrich considered. *Solorio v. Asplundh Tree Expert Co.*, No. 02CIV8035RJS, 2009 WL 755362, at *2 (S.D.N.Y. Mar. 23, 2009) (lack of engineering education and experience weighed against admission of expert report by purported expert in engineering matters).

In addition to Molden personally having zero relevant education or experience in NOx emissions testing, he has previously expressly denied that his company, Emissions Analytics, has

any expertise in examining vehicles for defeat devices. The European Parliament's Committee of Inquiry into Emission Measurements in the Automotive Sector ("EMIS") provided a written questionnaire to Molden regarding various aspects of the "Dieselgate" scandal. In those responses, Molden stated "our test method has been designed to show what real-world performance is rather than specifically finding such defeat activity." Ex. 4. EMIS also asked Molden about the justification provided by some manufacturers which involved "switching off the EGR system at certain temperatures in order to protect the engine" – that is, whether a defeat device could fall into the safe harbor. Molden responded, "this is not our [Emissions Analytics] area of expertise." *Id.* In his deposition, Molden explained why he felt that he could not opine as to the plausibility of some manufacturers' justification for their defeat devices. He testified that the specific justification that EMIS raised "is not scenarios [sic] we test for as part of our testing" and that the justification "is not something I have primary data about." Molden Tr. 107:13-18. But if Molden does not have sufficient expertise to opine on whether a vehicle has an illegal defeat device, he also does not have the expertise to evaluate the sufficiency of Friedrich's methodology in answering that question.

Indeed, Molden admitted that he was unable to evaluate all the evidence upon which Friedrich relied because of his lack of expertise. Dr. Friedrich's analysis included a discussion of a study of the emissions control software in the Fiat 500X, conducted by Thorsten Holz. Friedrich Report, ¶¶ 144-147, Thorsten Holz, et al, *How They Did It: An Analysis of Emission Defeat Devices in Modern Automobiles*, 2017 IEEE Symposium on Security and Privacy (SP), May 2017 (the "Holz Paper"). However, the Molden Report does not reference the Holz Paper. When Molden was asked whether he had any disagreement with anything in the Holz Paper, he testified that "elements of that report are – involve computer code, which is not my area of expert. [sic] So I

wouldn't pretend to have an opinion one way or another." Molden Tr. 142:19-25. If Molden is not competent to evaluate some of the materials relied upon by Dr. Friedrich then he cannot be qualified to assess whether the evidence overall supports Dr' Friedrich's conclusions.

Finally, FCA itself has asserted that Molden and Emissions Analytics are not qualified to assess NOx emissions testing. Among other things, Emissions Analytics publishes the "EQUA Index". The EQUA Index provides letter ratings from A through H for vehicles for various emissions and fuel economy issues based on testing conducted by Emissions Analytics. Molden Tr. 22:23-6. In 2016, Emissions Analytics published the EQUA Index, concluding that the Fiat 500X emitted the most NOx of all vehicles tested. John Evans, Eco Engines are Among the Most Polluting According to New Emissions Index, *The Sunday Times Driving*, April 22, 2016, *available at https://www.driving.co.uk/news/eco-engines-are-among-the-most-polluting-according-to-new-emissions-index/*. In response, FCA stated: "This is not a fair or scientific test and we do not accept it. We do not believe that this method can deliver reliable repeatable results." Yet, now, FCA asks this Court in its gatekeeper role to take the exact opposite position.

**IV.  Conclusion**

For the foregoing reasons, the proposed testimony of Molden, as presented in the Molden Report, should be excluded in its entirety.

Dated: December 12, 2018
New York, New York

**POMERANTZ LLP**
*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael J. Wernke
Veronica Montenegro
600 Third Avenue, 20th Floor
New York, New York
10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Sara Fuks
Jonathan Stern
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: sfuks@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Class*