# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GARY KOOPMANN, TIMOTHY KIDD and VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., RONALD ISELI AND ALLESANDRO BALDI, AS CO-EXECUTORS FOR THE ESTATE OF SERGIO MARCHIONNE, RICHARD K. PALMER, SCOTT KUNSELMAN, MICHAEL DAHL, STEVE MAZURE, and ROBERT E. LEE,<br><br>Defendants. | **Civ. Action No: 15-cv-07199-JMF**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SPOLIATION SANCTIONS**<br><br>**ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

I.    Plaintiffs' Motion is Timely ................................................................................ 1

II.   FCA Had a Duty to Preserve Orteca's Emails By January of 2017 ...................... 2

    A.   Defendants' Communications with the EPA Put FCA on Notice of
        Potential Litigation ................................................................................. 2

    B.   Defendants' Vague Explanation of the Alleged "Administrative Error" in
        their Privilege Log Does not Undercut the Inference that Their Assertion
        of Work Product Privilege Constitutes an Inference of Notice ................. 5

III.  The Court Should Infer that the Documents Were Relevant and Prejudicial ........ 6

    A.   There is Evidence That Relevant Documents Were Destroyed ................. 6

    B.   The Record Supports a Finding of Prejudice ........................................... 8

    ███████████████████████████████████ ... 9

IV.   Conclusion - The Proposed Sanction is Appropriate ........................................... 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adorno v. Port Auth. of New York & New Jersey*,

258 F.R.D. 217 (S.D.N.Y. 2009) ............................................................................. 3

*Baez v. Delta Airlines, Inc.*,

2013 WL 5272935 (S.D.N.Y. Sept. 18, 2013).......................................................... 1

*Barcroft Media, Ltd. v. Coed Media Grp.*,

2017 WL 4334138 (S.D.N.Y. Sept. 28, 2017).......................................................... 7

*CAT3, LLC v. Black Lineage, Inc.*,

164 F. Supp. 3d 488 (S.D.N.Y. 2016)....................................................................... 7

*Deno v. Blackman*, No. 10 CIV. 8550 KBF,

2011 WL 5980174 (S.D.N.Y. Nov. 30, 2011)......................................................... 10

*Estate of Jackson v. Cty. of Suffolk*,

2014 WL 1342957 (E.D.N.Y. Mar. 31, 2014).......................................................... 7

*Gioia v. Forbes Media LLC*,

No. 09 CIV. 6114 RJS, 2011 WL 4549607 (S.D.N.Y. Sept. 30, 2011) .................... 1

*Grochowski v. Phoenix Const.*,

318 F.3d 80 (2d Cir. 2003)........................................................................................ 5

*Gutman v. Klein*.,

2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010).......................................................... 1

*Haberfeld v. Gramercy Tavern Corp.*,

No. 06CIV.13532DF, 2009 WL 755358 (S.D.N.Y. Mar. 23, 2009) ........................................ 10

*In re 650 Fifth Ave. & Related Properties*,

No. 08 CIV. 10934 (KBF), 2017 WL 2214869 (S.D.N.Y. May 18, 2017) .............................. 7

*In re Barclays Bank*,

2018 WL 6040846 (2d Cir. Nov. 19, 2018) .............................................................. 5

*In re Delta/AirTran Baggage Fee*,

770 F. Supp. 2d 1299 (N.D. Ga. 2011) ..................................................................... 3

*In re The Reserve Fund Sec. & Derivative Litig.*,

No. 09 CIV. 4346 PGG, 2010 WL 11248673 (S.D.N.Y. Nov. 30, 2010) ................................ 6

*In re Volkswagen "Clean Diesel" Mktg. Sales Practice, & Prods. Liab. Litig.*,

No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 1357, at *140 (N.D. Cal. Jan. 5, 2016) ............. 3

*Khaldei v. Kaspiev*,

961 F. Supp. 2d 564 (S.D.N.Y.) .............................................................................. 7

*Kronisch v. U.S.*,

150 F.3d 112 (2d Cir. 1998) ............................................................................. 4, 6

*LiButti v. United States*,

107 F.3d 110 (2d Cir. 1997) .................................................................................. 9

*M & T Mortg. Corp. v. Miller*,

2007 WL 2403565 (E.D.N.Y. Aug. 17, 2007) ........................................................... 3

*McEachron ex rel. McEachron v. Glans*,

    No. 97-CV-885(LEK/DRH), 1999 WL 33601543 (N.D.N.Y. June 8, 1999)............................ 1

*Point Blank Sols., Inc. v. Toyobo Am., Inc.*,

    No. 09-61166-CIV, 2011 WL 1456029 (S.D. Fla. Apr. 5, 2011)................................. 3

*R.F.M.A.S., Inc. v. So*,

    271 F.R.D. 13 (S.D.N.Y.) ...................................................................... 6

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,

    306 F.3d 99 (2d Cir. 2002)..................................................................... 6

*Rockman Co. (USA), Inc. v. Nong Shim Co., Ltd,*

    229 F. Supp. 3d 1109 (N.D. Cal. 2017) ...................................................... 3

*S.E.C. v. Nadel*,

    No. CV 11-215 WFK AKT, 2012 WL 214162 (E.D.N.Y. Jan. 24, 2012) ................................. 4

*S.E.C. v. NIR Grp., LLC*,

    283 F.R.D. 127 (E.D.N.Y. 2012) .............................................................. 4

*Shamis v. Ambassador Factors Corp.*,

    34 F. Supp. 2d 879 (S.D.N.Y.)............................................................. 1, 6

*Stinson v. City of New York*,

    No. 10 CIV. 4228 (RWS), 2016 WL 54684 (S.D.N.Y. Jan. 5, 2016) ....................................... 2

In response to Plaintiffs' spoliation motion, Defendants advocate a standard so stringent that it gives free reign to those concealing their misconduct not only from private litigants, but also law enforcement. Defendants ask the Court to apply a non-existent standard where, after a regulator accuses them of a violation, a they can to destroy documents with impunity. Defendants, despite not disputing their gross negligence, argue that Plaintiffs should bear the burden of proving precisely what is in voluminous records that they destroyed. This standard would gut the deterrent purposes of spoliation sanctions. Fortunately, Defendants assertions are not the law. and their failure to apply the correct standard underscores the fact that, once the correct standard is applied, the destruction of Orteca's documents cannot be defended.

## I.   **Plaintiffs' Motion is Timely**

poliation motions are timely so long as they are made relatively soon after the close of discovery. [1] "Key to the discretionary timeliness assessment of lower courts is how long after the close of discovery the relevant spoliation motion has been made". *McEachron ex rel. McEachron v. Glans*, No. 97-CV-885(LEK/DRH), 1999 WL 33601543, at *2 (N.D.N.Y. June 8, 1999). A spoliation motion "soon after the close of discovery" is appropriate. *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 886 (S.D.N.Y.), *on reargument,* 187 F.R.D. 148 (S.D.N.Y. 1999).[2]

Defendants claim Plaintiffs could have moved for sanctions prior to the close of document

---

[1] Defendants claim that Plaintiff's motion is untimely for failing to follow Rule 2C of the Court's Individual Rules of Practice. However, the Court held that spoliation motions are not subject to Rule 2C when it instructed Plaintiffs to file a formal motion instead of a letter motion for a conference.

[2] None of the cases Defendants cite establish that a motion similar to the one here must be made during discovery. *Baez v. Delta Airlines, Inc.* addressed a spoliation motion based not on the destruction of evidence, but the failure to produce allegedly responsive evidence in the defendant's possession, which the court unsurprisingly held should have been addressed through a motion to compel. No. 12 CIV. 3672 KPF, 2013 WL 5272935, at *9 (S.D.N.Y. Sept. 18, 2013). It is unclear why Defendants cite *Gioia v. Forbes Media LLC*, which confirms the timeliness of Plaintiffs' motion, stating that a spoliation argument should be raised by motion "during or after discovery" rather than for the first time in an opposition to summary judgment. No. 09 CIV. 6114 RJS, 2011 WL 4549607, at *3 (S.D.N.Y. Sept. 30, 2011). *Gutman v. Klein* is also irrelevant, as it held as untimely a spoliation made *four years* after the discovery of the destruction of documents. No. 03 CIV. 1570 BMCRML, 2010 WL 4916722, at *8 (E.D.N.Y. Nov. 24, 2010).

discovery on April 6, 2018 because, they claim, Plaintiffs were on notice of the need to file a spoliation motion by March 5, 2018 when the document identifying the destruction was produced. This is absurd. The 12 page document was included in a production of 31,241 pages, among 932,997 pages of documents produced by Defendants between January 17 and April 27, 2018. Declaration of Jonathan Stern ("Stern Dec.") ¶3. It is unreasonable to expect Plaintiffs immediately to know the contents of hundreds of thousands of pages produced by Defendants. And even if Plaintiffs reviewed that document on March 5, they still needed to determine when the duty to preserve arose, whether the information destroyed was relevant, and whether it could be obtained from other sources. This required review of over three million pages of documents produced by Defendants. For example, Defendants did not produce the text from Lee to Marchionne that the general counsel was "fully engaged" until June 2018 (*See* ECF No. 333, at 17, 30, 45-46; ECF No. 334, at ¶ 392; *see also* June 22, 2018 Production Cover Letter). Plaintiffs were additionally hampered by Defendants' inaccurately listing Orteca as a "custodian… whose documents were produced in the MDL." Stern Dec. Ex. 1. Defendants also did not produce the privilege log admitting that FCA anticipated litigation prior to Orteca's departure until *September* 6, 2018. And Defendants identify no prejudice to them as a result of the motion being brought at this time. Thus, the motion is timely.

## II.  FCA Had a Duty to Preserve Orteca's Emails By January of 2017

### A.  Defendants' Communications with the EPA Put FCA on Notice of Potential Litigation

Defendants' argument, that they had no duty to preserve with respect to Plaintiffs because they were on notice of litigation with the EPA, lacks any support. Courts in this Circuit consistently find a duty to preserve when a defendant reasonably anticipates litigation, including third party litigation. *Stinson v. City of New York*, No. 10 CIV. 4228 (RWS), 2016 WL 54684, at *4 (S.D.N.Y. Jan. 5, 2016) (city on notice to preserve documents related to police summons practices due to

prior lawsuit); *M & T Mortg. Corp. v. Miller*, No. CV2002-5410(NG)(MDG), *Adorno v. Port Auth. of New York & New Jersey*, 258 F.R.D. 217, 227 (S.D.N.Y. 2009); *M & T Mortg. Corp. v. Miller*, 2007 WL 2403565, at \*5 (E.D.N.Y. Aug. 17, 2007) (notice from prior, similar litigation). Defendants do not cite a single case within the Second Circuit that undercuts these holdings.[3]

FCA did or should have reasonably anticipated a securities suit regarding compliance with emissions regulations. Consumer and securities litigations often follow regulatory violations. Specifically, Defendants knew well of the Volkswagen scandal announced September 2015. The scandal was widely reported and, expectedly, consumer and securities class actions followed. Indeed, by December 10, 2015, at least five securities class actions had been filed and transferred to the consumer class action MDL. *In re Volkswagen "Clean Diesel" Mktg. Sales Practice, & Prods. Liab. Litig*., No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 1357, at \*140 (N.D. Cal. Jan. 5, 2016). Moreover, Defendants were already litigating this action, which pertained to their statements of regulatory compliance, stemming from a US regulator's accusations of violations.

Rather than address the question of when FCA was on notice, Defendants attempt to flip the spoliation standard on its head by arguing that Plaintiffs are required to take affirmative steps to put defendants on notice of impending litigation in order to trigger a duty to preserve. It is true

---

[3] The out-of-circuit cases cited by defendants are distinguishable. *Rockman Co. (USA), Inc. v. Nong Shim Co., Ltd*, simply held that a purported duty under Korean law to preserve documents does not put a party notice for spoliation purposes in a US Court. 229 F. Supp. 3d 1109, 1123 (N.D. Cal. 2017). *In re Delta/AirTran Baggage Fee*, was based on the District Court's holding that because the Eleventh Circuit's standard refers to a "duty to preserve" the use of the word duty implies that it must be directed towards specific people. 770 F. Supp. 2d 1299, 1307-08 (N.D. Ga. 2011). No court has ever interpreted the Second Circuit's standard to imply such a limitation. Moreover, the *Delta* case was decided before the 2015 amendments to Rule 37, which does not refer to a duty but only documents that "should" be preserved. *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, similarly hinges on the Eleventh Circuit's use of the word "duty" to describe then notice standard. No. 09-61166-CIV, 2011 WL 1456029, at \*24 (S.D. Fla. Apr. 5, 2011). In *Brigham Young* the court rejected a rule that would create a preservation obligation that would extend to distantly related lawsuits. But this lawsuit is not "distantly" related to the subject matter of the EPA's investigation and subsequent lawsuit. Orteca's documents are relevant to Plaintiffs' claims for the same reasons they were relevant to the EPA investigation – they bear on how and why Defendants made the determinations they did regarding AECD and defeat device disclosure. Defendants cannot seriously claim that this lawsuit and the EPA's are distantly related when they proposed to satisfy Plaintiffs' document requests by, in large part, producing the documents that they previously produced to the EPA.

that a plaintiff's pre litigation action *can* trigger a duty to preserve, and Defendants cite cases where Courts have so found, but it does not follow that this is the only way to trigger a duty to preserve. In reality, the Second Circuit held to the contrary. In *Kronisch v. U.S.* the Second Circuit held that the CIA was on notice of an obligation to preserve documents related to the MKULTRA program several years before plaintiffs, who were secretly harmed by the program, even learned that they themselves were victims. 150 F.3d 112, 121 (2d Cir. 1998). Moreover, given that a defendant might be aware of the prospect of litigation before a plaintiff is, the rule Defendants propose would be inherently unfair, in that it would allow a defendant, upon realizing their own misconduct, would be free to destroy evidence of misconduct prior to a plaintiff's discovery of it.

Defendants anticipated litigation with the EPA as of January 2016. That Defendants' conversations with the EPA were limited to compliance staff, not enforcement, does not undercut the facts that put Defendants' on notice of the duty to preserve documents. The EPA threatened to issue a 208 letter, which would compel the production of documents, if Defendants did not produce them by a certain date. Dkt. No. 312-14. Defendants cannot seriously contend that they have the legal right to destroy documents knowing of a threat by a regulator to issue mandatory process.[4]

Defendants' suggestion that a party aware of an agency's investigation is not on notice because the investigation represents merely an "interim" regulatory position would set a dangerous

---

[4] Defendants also cite cases that hold that activities of regulators' compliance department are not *per se* work product because they are not necessarily related to contemplated or pending litigation. None of those cases, however, suggest that the activities of compliance staff can never constitute work product, merely that they do not necessarily do so. *S.E.C. v. Nadel*, No. CV 11-215 WFK AKT, 2012 WL 214162, at *2 (E.D.N.Y. Jan. 24, 2012) (holding that "a perfunctory showing fails to satisfy the SEC's burden [to demonstrate validity of work product] since the notes at issue were prepared, not by Enforcement staff, but by OCIE staff"). In addition, the *Nir Group* decision does not deny work product privilege because the SEC did not anticipate litigation, but because the documents would have been prepared irrespective of litigation, an element of the work product standard not relevant here. *S.E.C. v. NIR Grp., LLC*, 283 F.R.D. 127, 132 (E.D.N.Y. 2012). This caselaw is irrelevant because Plaintiffs do not claim that the fact that conversations occurred at all are evidence of notice, but that the substance of those conversations are. While dialogue with EPA compliance staff might not always relate to future litigation, when that dialogue includes a threat that EPA enforcement will compel production of documents, and the statement that "at least one of the AECDs in question appears to me to violate EPA's defeat device regulations", especially right on the heels of the VW scandal, it certainly raises the specter of litigation.

precedent if applied. Defendants cite cases regarding a company's duty to disclose ongoing investigations to investors, which refers to interim positions taking during an investigation as "tentative" and attempt to apply the same standard to the spoliation inquiry. This caselaw holds that because an a agency's interim position is not binding, it is not material to investors *In re Barclays Bank*, 2018 WL 6040846, at *7 (2d Cir. Nov. 19, 2018). However, the fact that an agency has not reached a binding decision to bring an action does not mean that the company cannot reasonably anticipate the possibility of litigation. While this action is between private parties, the rule advocated by Defendants would have a much more severe impact on litigation brought by the United States government, as it would give the subjects of investigation free reign to destroy documents when they knew they were under investigation. Such a rule would undercut the purposes of the spoliation doctrine.

**B.    Defendants' Vague Explanation of the Alleged "Administrative Error" in their Privilege Log Does not Undercut the Inference that Their Assertion of Work Product Privilege Constitutes an Inference of Notice**

Notice is inferred because Defendants, in the only privilege log served before the close of discovery, asserted work product privilege as to documents generated before January 18, 2016. Defendants' amended privilege log should not be considered by the Court absent good cause, continues discovery after the cut-off imposed by the Court's orders. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). Rather than move to reopen discovery, or provide a detailed justification in their opposition, Defendants provide a vague and evasive description of the circumstances that led to this "administrative error" that, far from demonstrating good cause, raises serious concerns about Defendants' diligence in the conduct of discovery to begin with.

Defendants claimed that an unnamed associate S&C who prepared the erroneous privilege log accidentally used initial, inaccurate privilege designations rather than "the final, accurate" designations. Dkt. No. 331-34. But Defendants did not disclose to Plaintiffs at that time that the

privilege designations in question, both the initial and final ones, were made not by counsel of record here, but by King & Spalding, which has not appeared in this litigation. Counsel of record has a duty to conduct a reasonable inquiry to ensure that their responses are accurate. *In re The Reserve Fund Sec. & Derivative Litig.*, No. 09 CIV. 4346 PGG, 2010 WL 11248673, at *4 (S.D.N.Y. Nov. 30, 2010). Defendants' explanations do not reflect such a reasonable search.

## III.    The Court Should Infer that the Documents Were Relevant and Prejudicial[5]

### A.  There is Evidence That Relevant Documents Were Destroyed

Even in the absence of gross negligence, the evidence provided by the parties supports a plausible inference that relevant documents were destroyed. In the Second Circuit, where spoliation is premised on ordinary negligence, "the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction.'" *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (internal quotations omitted). Where a large and indefinite number of documents have been destroyed, Plaintiffs "need not establish what specific documents are missing." *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 890 (S.D.N.Y. Rather, "the prejudiced party may be permitted an inference in his favor so long as he has produced some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files." *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998). As set forth in the opening brief, Orteca's role in AECD disclosure warrants inferring that he had relevant evidence.

Defendants' claim state that there is no evidence that relevant emails were destroyed

---

[5] Defendants ignore, and therefore concede, that FCA was at least grossly negligent when it destroyed the documents at issue here. As a result, that the documents were relevant and their destruction was prejudicial should also be presumed. *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y.), *opinion adopted,* 271 F.R.D. 55 (S.D.N.Y. 2010).

because there are 4,000 emails to or from Orteca that were produced is misleading. Those emails invariably involve communications outside the Certification Group of Orteca, Shaw and Kopinski. Steve Mazure, who ran Regulatory Affairs, testified that Orteca's group made all determinations on AECDs and defeat devices by themselves, and only provided the final disclosure to Mazure. ECF No. 333, at 6; ECF No. 334, at ¶ 92. Indeed, as Mark Shost explained, FCA purposefully kept the Certification Group's analysis concealed from Regulatory Affairs so Regulatory Affairs would have plausible deniability when dealing with EPA and CARB. *See* ECF No. 333, at 39-40; ECF No. 334, at ¶ 259. Thus, it is the communications between only Orteca, Shaw and Kopinski that are particularly relevant to the AECD and defeat device determinations being made, and what AECD definition they believed applied. Because Shaw left way before the start of this litigation, Orteca was the last custodian of their critical communications. Tellingly, a search of Defendants' production reveals that there are no emails between only Orteca and Shaw, only one email between Orteca and Kopinski and 24 emails between all three. Stern Dec. ¶4. Compared to the volume cited by Defendants, this tiny number of documents demonstrates that relevant emails were destroyed.[6]

Defendants' suggestion that Plaintiffs lacked "diligence" in developing a record to

---

[6] Rather than apply this standard, Defendants instead demand that Plaintiffs affirmatively prove that specific documents in Orteca's files were non-duplicative of documents retained by other custodians. But none of the cases support placing such a burden on Plaintiffs in this context. In *Barcroft Media, Ltd. v. Coed Media Grp.*, the allegedly spoliated materials consisted in a relatively small and well defined universe of documents, and thus it was easy to determine whether they were available from other sources. 2017 WL 4334138, at *1 (S.D.N.Y. Sept. 28, 2017) (Furman, J.). In *In re 650 Fifth Ave. & Related Properties*, a spoliation motion was rejected not for failing to show that the documents destroyed were available elsewhere, but for failing to show that any document at all had gone missing. No. 08 CIV. 10934 (KBF), 2017 WL 2214869, at *7 (S.D.N.Y. May 18, 2017). Indeed, in that matter, the allegedly spoliating party affirmatively represented that all documents were accounted for. *Id. Khaldei v. Kaspiev*, is wholly inapposite, in that it holds that a party cannot allege spoliation merely by claiming that moving objects from one location to another destroyed relevant evidence. 961 F. Supp. 2d 564, 570 (S.D.N.Y.), *aff'd*, 961 F. Supp. 2d 572 (S.D.N.Y. 2013). *Estate of Jackson v. Cty. of Suffolk*, similarly is a case where spoliation sanctions were denied when it appeared nothing had been destroyed, not when there was a question about duplicate information. No. 12-1455 JFB AKT, 2014 WL 1342957, at *10 (E.D.N.Y. Mar. 31, 2014), *adopted sub nom. Estate of Jackson ex rel. Jackson v. Cty. of Suffolk*, No. 12-CV-1455 JFB AKT, 2014 WL 3513403 (E.D.N.Y. July 15, 2014). *CAT3, LLC v. Black Lineage, Inc.*, does state that "relief would not be available under the amended rule [37] where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian." 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016). However, it says nothing about the burden of proving that the emails destroyed were otherwise available.

establish FCA's spoliation is factually incorrect and legally irrelevant. Defendants cite *no* case law suggesting that the "diligence" of a victim of spoliation is a relevant concern when determining whether information contained is relevant. As set forth in Section I, it is unreasonable to expect Plaintiffs to have learned of the spoliation on the day that Defendants provided a letter, buried in a large production, that referenced the destruction of documents. Defendants complain that Plaintiffs did not ask Orteca about his "email practices" during his deposition, but given that Orteca was not the one who destroyed his documents, it is not clear that he would have any knowledge of their retention or destruction after he left FCA. Defendants also fault Plaintiffs for failing to request "additional searches of e-mails from other custodians within the Certification Group who may have corresponded with Mr. Orteca." However, It is not about the breadth of the search, it is that Orteca was the last custodian of the three key Certification Group members during the relevant time. Defendants also did not produce any document that could put plaintiff on notice of possible spoliation until March 5 and document discovery ended a mere four weeks later. The Court, shortly thereafter, denied Plaintiffs' request for additional discovery as untimely. Dkt. No. 186.

**B.    The Record Supports a Finding of Prejudice**

Defendants argue that the evidence identified by Plaintiffs is insufficient to infer that the emails destroyed would support Plaintiffs' claims because the emails involved because the documents involve individuals that did not attend the May 2012 meeting. Defendants miss the point. The question is not what was said at the meeting, it is what was FCA's understanding during the Class Period as to what AECDs EPA and CARB wanted disclosed. The documents identified by Plaintiffs, which are discussed in greater number and detail in Plaintiffs' opposition to summary judgment (ECF No. 333, at 6-12; 47-48; ECF No. 334, at ¶¶ 117-120, 129, 161, 142, 146, 175-176, 203-209, 262-282) show that (i) the Certification Group knew that certain of the features were AECDs and defeat devices prior to the meeting and always intended to conceal them (ECF. No.

334, at ¶¶ 262-271) (ii) the Certification Group and others at FCA continued their attempts to conceal the defeat devices from EPA and CARB after the May 2012 meeting (*see generally;* ECF No. 333, at 13-17; ECF No. 334, at ¶¶ 138-147; 171-191; 205-236; 363-408 and (iii) expressly acknowledge FCA's understanding that all AECDs should be disclosed. (*Id.* at ¶¶ 278-281). By contrast, Defendants identify only ***one*** email in the entire production of 213,459 emissions documents that even suggest there was any type of an understanding. (Dkt. No. 331-16).  Even then, the email does not state that there was an agreement with EPA about disclosures going forward. Rather it states only that a slide was presented at a meeting and EPA seemed "happy." *Id*. There are zero references to any agreement thereafter. Yet there is overwhelming evidence that the regulatory definition continued dictate the disclosures and of FCA's culpable state of mind. Given that Defendants produced no documents after May 14, 2012 indicating that any agreement was ever actually reached or that Orteca applied the alternate definition, two possible inferences exist: all such documents were destroyed or that none ever existed. Under the first scenario such wholesale destruction supports an inference of prejudice. The latter option undercuts Defendants' claims that anything that happened in the May 2012 meeting has any bearing on this case.



## IV.    <u>Conclusion - The Proposed Sanction is Appropriate</u>

Defendants claim that the sanction is not appropriate because Plaintiffs the deleted emails would not related to the May 2012 meeting. As set forth above, Orteca's emails (particularly with Shaw and Kopinski) would show whether the May 2012 meeting resulted in an agreement with EPA or if Orteca knew that the EPA and CARB would want to know about the various AECDs and defeat devices but concealed them. For that reason, the sanction is appropriate, as it prevents Defendants from advancing a theory that relies on the black box that is Ortecca's emails.

Dated: January 25, 2019                        Respectfully submitted,

                                               **THE ROSEN LAW FIRM, P.A.**

                                               /s/ Jonathan Stern
                                               Jonathan Stern
                                               Laurence M. Rosen
                                               Phillip Kim
                                               Sara Fuks
                                               275 Madison Avenue, 34th Floor
                                               New York, New York 10016
                                               Telephone: (212) 686-1060
                                               Fax: (212) 202-3827
                                               Email: jstern@rosenlegal.com
                                               Email: lrosen@rosenlegal.com
                                               Email: pkim@rosenlegal.com
                                               Email: sfuks@rosenlegal.com

                                               *Co-Lead Counsel for Plaintiffs*

                                               **POMERANTZ LLP**
                                               Jeremy A. Lieberman
                                               Michael J. Wernke
                                               Veronica Montenegro

                                               600 Third Avenue, 20th Floor
                                               New York, New York 10016
                                               Telephone: (212) 661-1100
                                               Facsimile: (212) 661-8665
                                               Email: jalieberman@pomlaw.com
                                                      mjwernke@pomlaw.com
                                               vvmontenegro@pomlaw.com

                                               **POMERANTZ LLP**
                                               Patrick V. Dahlstrom
                                               10 South La Salle Street, Suite 3505
                                               Chicago, Illinois 60603
                                               Telephone: (312) 377-1181
                                               Facsimile: (312) 377-1184
                                               Email: pdahlstrom@pomlaw.com

                                               *Co-Lead Counsel for Plaintiffs*