**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| GARY KOOPMANN, TIMOTHY KIDD and VICTOR PIRNIK, Individually and on Behalf of All Others Similarly Situated, | : : : : | **Civ. Action No: 15-cv-07199-JMF** |
| Plaintiff(s), | : : : | **CLASS ACTION** |
| v. | : : : : | |
| FIAT CHRYSLER AUTOMOBILES N.V., FCA US, LLC, RONALD ISELI AND ALESSANDRO BALDI, AS CO-EXUCUTORS FOR THE ESTAT OF SERGIO MARCHIONNE, RICHARD K. PALMER, SCOTT KUNSELMAN, MICHAEL DAHL, STEVE MAZURE, and ROBERT E. LEE, | : : : : : : : : : | |
| Defendants. | : : : | |

**CLASS REPRESENTATIVES' MEMORANDUM OF LAW**
**IN SUPPORT OF UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page(s)**

I.  PRELIMINARY STATEMENT ................................................................... 1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 3

    A.  Procedural History of The Litigation ............................................................ 3

    B.  Summary Of Key Terms Of The Proposed Settlement ......................................... 9

        1.  Relief to Class Members and Release of Claims ....................................... 9

        2.  Class Notice and Settlement Administration ............................................. 9

            a)  Notice ............................................................................. 9

            b)  Administration ............................................................. 10

        3.  Papers in Support of the Settlement, Award of Class Counsel Fees and Expenses, and Compensatory Awards to Plaintiffs ........................... 10

        4.  Objections ................................................................................. 11

        5.  Opt Outs ................................................................................... 11

        6.  Termination of the Settlement ............................................................. 11

        7.  No Admission of Liability .................................................................. 12

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......... 12

    A.  The Courts Favor Settlements Of Complex Class Actions ................................... 12

    B.  The Proposed Settlement Merits Preliminary Approval ...................................... 13

        1.  The Proposed Settlement Recovery Is Substantively Fair ....................... 14

            a)  The Settlement Was Negotiated By Well-Informed Counsel With The Assistance Of A Mediator And Thus Warrants A Presumption Of Fairness ............................................. 14

            b)  The Settlement Is Within The Reasonable Range Of Recovery ... 15

                *1)*  *The Complexity, Expense and Likely Duration of the Litigation* ................................................................. *16*

                *2)*  *Stage of Proceedings and Amount of Discovery Completed* .. *17*

                *3)*  *The Risks of Establishing Liability & Damages* ................... *17*

                *4)*  *The Risks of Maintaining the Class Action Through Trial* ..... *18*

                *5)*  *Reasonableness of the Settlement* ........................................... *18*

IV.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE ............................................................................ 20

    A.  Notice By Direct Mail And Publication Is Appropriate ...................................... 20

       B.     The Proposed Notice Adequately Informs Class Members of Their Rights In This Litigation ................................................................................................ 22

PROPOSED SCHEDULE OF EVENTS ..................................................................................... 23

CONCLUSION .............................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Carson v. Am. Brands, Inc.*,
      450 U.S. 79 (1981)........................................................................................................12, 13

*City of Detroit v. Grinnell Corp.*,
      495 F.2d 448 (2d Cir. 1974)........................................................................14, 15, 16, 19

*Clark v. Ecolab Inc.*,
      Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y.
      May 11, 2010).......................................................................................................................14

*Diaz v. E. Locating Serv. Inc.*,
      No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ...........................................14

*Dura Pharmaceuticals, Inc. v. Broudo*,
      544 U.S. 336 (2005)...............................................................................................................19

*Fleisher v. Phoenix Life Ins. Co.*,
      Nos. 11-cv-8405, 14-cv-8714, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept.
      9, 2015) ..................................................................................................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
      134 S. Ct. 2398 (2014).............................................................................................................16

*In re Am. Bank Note Holographics, Inc.*,
      127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................................17

*In re Crazy Eddie Sec. Litig*,
      824 F. Supp. 320 (E.D.N.Y. June 11, 1993) ..........................................................................19

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
      05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007).........................................12

*In re Global Crossing Sec. & ERISA Litig.*,
      225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................................18

*In re Marsh Erisa Litig.*,
      265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................................20, 21

*In re Mego Fin. Corp. Sec. Litig.*,
      213 F.3d 454 (9th Cir. 2000) .................................................................................................19

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D.P.A. 2001) ...................................................................................19

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
   3:09CV1293 VLB, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) .........................................17

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ...........................................................................................21

*Marsh & McLennan*,
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ...................................................18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)......................................................................................................20, 21

*Palacio v E\*trade Fin. Corp.*,
   2012 WL 2384419 (S.D.N.Y. June 22, 2012) .......................................................................14

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1983)....................................................................................................20

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) .............................................................................................16

*Torres v. Gristede's Operating Corp.*,
   Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892 (S.D.N.Y.
   Dec. 21, 2010)......................................................................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)..............................................................................................13, 14

**Statutes**

15 U.S.C. § 78u-4(a)(7) ...............................................................................................................22

28 U.S.C. § 1775.........................................................................................................................10

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

Fed. R. Civ. P. 45 ..........................................................................................................................7

Fed. R. Evid. 612 ...........................................................................................................................7

**Other Authorities**

Cornerstone Research, *Securities Class Action Settlements: 2017 Review and*
   *Analysis* at 8, 10 (2018) ...................................................................................................2, 19

*Manual for Complex Litigation (Fourth)* (2004) ..............................................................13, 16, 20

*Manual for Complex Litigation (Third)* (1995). ............................................................................14

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation:*
   *2018 Full Year Review* ...........................................................................................................19

*Newberg on Class Actions* (4th ed. 2002) ...............................................................................12, 13

## I.     PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. Rule 23(e), Class Representatives Gary Koopmann, Timothy Kidd and Victor Pirnik (collectively, "Plaintiffs") submit this memorandum of law in support of their unopposed motion for preliminary approval of a settlement of this securities fraud class action filed on behalf of all Persons who purchased or otherwise acquired, on a U.S. Exchange or in a transaction in the U.S., Fiat Chrysler Automobiles N.V. ("FCA") common stock between October 13, 2014 and May 23, 2017, both dates inclusive (the "Class Period"). While Defendants do not oppose the relief sought herein, the analysis and characterizations of the litigation and Settlement are provided only on behalf of Class Counsel and Plaintiffs, and do not necessarily reflect the views of Defendants.

Pursuant to the Stipulation of Settlement dated April 5, 2019 ("Stipulation"), filed contemporaneously herewith, Defendants Fiat Chrysler Automobiles N.V. ("FCA"), FCA US, LLC ("FCA US"), Ronald Iseli and Alessandro Baldi, as co-executors for the estate of Sergio Marchionne ("Marchionne" and the "Estate of Marchionne"), Scott Kunselman ("Kunselman"), Michael Dahl, ("Dahl"), Steve Mazure ("Mazure") and Robert E. Lee ("Lee") (collectively, the "Defendants", and with Plaintiffs, the "Parties"), have agreed to settle the Action for a payment by FCA of $110,000,000, as described more fully in the Stipulation, in return for a release of all claims (the "Settlement").[1]   The Stipulation is the result of extensive arms' length negotiations between highly experienced counsel, which included two full day mediation sessions in September 2018 and January 2019 before the Hon. Daniel Weinstein (ret.) and periodic subsequent correspondence between the Parties and Judge Weinstein.

_____

[1] All capitalized terms that are not defined specifically in this memorandum have the same meanings as set forth in the Stipulation.

Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and therefore asks the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Notice Order") attached to the Stipulation as Exhibit A. The Notice Order will: (1) preliminarily approve the Settlement as set forth in the Stipulation; (2) approve the form and method for providing notice of the Settlement to the Class; and (3) schedule a final approval hearing in which the Court will consider the request for final approval of: (a) the Settlement set forth in the Stipulation; (b) the Plan of Allocation of Settlement proceeds among Class Members; (c) Class Counsel's application for an award of attorneys' fees and expenses; and (d) Plaintiffs' application for a compensatory award.

Plaintiffs estimate that the proposed Settlement provides the Class with approximately 13.75% of maximum recoverable damages[2]—an objectively excellent result when compared to historical statistics in class action settlements, where typical recoveries are between 1.6% and 3.3%. *See, e.g.,* Cornerstone Research, *Securities Class Action Settlements: 2018 Review and Analysis* at 6, (2018), , https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis (noting that in 2018 the median settlement as a percentage of "simplified tiered damages" between $500 million and $999 million was 3.3%); NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2018 Full Year Review*, at 35 https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf. (noting that in 2018 the median of settlement value as a percentage of "NERA-Defined Investor Losses by Level of Investor Losses" between $600 million and $999 million was 1.6%). Thus, according to the Cornerstone measure the Settlement provides the Class with *over four*

---

[2] This estimate is based on a calculation of damages performed by Plaintiffs' damages consultant.

*times* the median percentage of recovery and according to the NERA measure, the Settlement provides the Class with *8.6 times* the median percentage of recovery.  Accordingly, , the Settlement easily falls "within the range of possible approval" and warrants preliminary approval. Moreover, given the likelihood that less than 100% of Class Members will file claims, the actual percentage of recovery is even higher.  So long as the Settlement appears to be *prima facie* reasonable, Plaintiffs request that the Court preliminarily approve the Settlement so that notice of the proposed settlement may be disseminated to the Class.

## II.   SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.   Procedural History of The Litigation

This Action was first filed on September 11, 2015 in the Southern District of New York. (ECF No. 1).  By order dated December 9, 2015, the Court appointed Gary Koopmann and Timothy Kidd as lead plaintiffs and Pomerantz LLP and The Rosen Law Firm, P.A. as lead counsel. (ECF No. 24).  The First Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint") was filed on January 22, 2016, alleging on behalf of FCA investors between October 13, 2014 and October 28, 2015 (the "Initial Class Period") violations of §10(b) and § 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against FCA, Marchionne, Richard Palmer ("Palmer") and Kunselman.  (ECF No. 28).

On March 7, 2016, the defendants named in the Amended Complaint filed a motion to dismiss that complaint. (ECF Nos. 31-33).  On March 29, 2016, Plaintiffs filed the Second Amended Complaint for Violations of the Federal Securities Laws ("SAC"), addressing deficiencies that defendants alleged in their motion to dismiss (per the Court's invitation in its Order of March 8, 2016).  (ECF No. 38).

The SAC alleges that, during the Initial Class Period, the defendants misled investors by asserting that FCA was in compliance with vehicle safety regulations promulgated by the Safety

Act and the National Highway Traffic Safety Administration ("NHTSA") but failed to disclose that FCA had widespread violations of various provisions of the Safety Act involving FCA's failure to timely conduct recalls, notify customers and remedy safety defects that NTHSA had warned the Company about. The SAC also alleges that FCA underreported its reserves for the cost of recalls, which resulted directly from FCA's failure to timely conduct recalls, notify customers and remedy the safety defects. The SAC alleges that investors began to learn the truth on July 26, 2015 when FCA entered into a Consent Order with NHTSA for violations of the Safety Act in connection with 23 recalls (affecting more than 11 million vehicles) that required FCA to pay $105 million, conduct certain recalls, remedy certain defects and change its internal practices and procedures. On this news, FCA's stock price fell approximately 4.9% on July 27, 2015.  Then on October 28, 2015, FCA announced that it would record a €761 million charge for estimated future recall campaign costs for vehicles sold in prior periods in NAFTA. As a result, FCA shares fell approximately 4.7% on October 28, 2015.

On April 28, 2016, the defendants moved to dismiss that complaint and the motion was fully briefed.  (ECF Nos. 42-44).  On October 5, 2016, this Court granted in part and denied in part Defendants' motion to dismiss.  (ECF No. 50).  The Court denied the motion to dismiss as to alleged misstatements concerning FCA's compliance with vehicle safety regulations, and dismissed all claims against Palmer. The Court granted Defendants' motion as to alleged misstatements concerning FCA's reserves for cost of recalls deeming them inactionable opinions.

On February 22, 2017, having received permission from the Court to do so, Plaintiffs filed the Third Amended Complaint for Violations of the Federal Securities Laws ("TAC"), adding allegations concerning FCA's compliance with emissions regulations. (ECF No. 69).

Specifically, the TAC alleges that Defendants also misled investors as to FCA's compliance with regulations concerning nitrogen oxide ("NOx") emissions in the Company's diesel vehicles sold in the US and the EU by not disclosing that the Company's diesel vehicles utilized undisclosed "AECDs" and "defeat devices" that caused the Company's vehicles to perform differently during regulatory tests than in real-world on-road performance.  The TAC alleges that investors learned the truth through a series of disclosures on May 23, 2016, January 12, 2017, February 6 and 7, 2017 and May 23, 2017 when U.S. and European authorities accused FCA of violating emissions regulations. The TAC alleges that each of the corrective disclosures caused FCA's stock price to decline significantly. The TAC extended the Initial Class period to October 13, 2014 to May 23, 2017 (the "Class Period").

On March 22, 2017, the defendants named in the TAC filed a motion to dismiss the emissions-related allegations in the TAC, which was thereafter fully briefed. (ECF Nos. 91-93). On August 1, 2017, the Court granted the defendants' motion to dismiss the emissions-related allegations in the TAC, holding that the TAC failed to adequately allege a strong inference of scienter, but the Court granted Plaintiffs permission to amend the TAC.  (ECF No. 121).

On August 24, 2017, Plaintiffs filed the Fourth Amended Complaint for Violations of the Federal Securities Laws ("FAC"), adding allegations concerning FCA's compliance with emissions regulations and Defendants' scienter, and adding defendants (in addition to FCA, Marchionne, and Kunselman) FCA US, Dahl, Mazure and Lee.  (ECF No. 129).

On September 5, 2017, Defendants filed a motion to dismiss the emissions-related allegations in the FAC, asserting that the FAC still failed to allege a strong inference of scienter. (ECF No. 131-133).  The motion was thereafter fully briefed. On November 13, 2017, the Court denied Defendants' motion to dismiss the emissions-related allegations in the FAC in its entirety,

holding that the FAC adequately alleged scienter.  (ECF No. 142).

On December 21, 2017, Plaintiffs filed their motion for class certification, which was thereafter fully briefed. (ECF No. 148-149, 151).   In connection with class certification, Plaintiffs submitted an expert report concerning market efficiency, Defendants submitted an expert report in opposition to class certification, and the parties deposed the other party's expert. Defendants also took the depositions of each of the three proposed class representatives. On June 26, 2018, the Court granted Plaintiffs' motion for class certification, certifying a class consisting of all persons who purchased, on a U.S. Exchange or in a transaction in the United States, FCA common stock between October 13, 2014 and May 23, 2017, both dates inclusive, appointing Gary Koopmann, Timothy Kidd and Victor Pirnik as class representatives, and appointing Pomerantz LLP and The Rosen Law Firm, P.A. as Class Counsel.  (ECF No. 223).

The parties completed fact discovery in August 2018 and expert discovery in November 2018. During the course of fact discovery Plaintiffs propounded two sets of Requests for Production of Documents, three sets of written Interrogatories and one set of written Requests for Admission on Defendants.  Plaintiffs also served third party subpoenas on Robert Bosch, LLC and former NHTSA employee Robert Garris. Plaintiffs filed a petition to enforce the subpoena on Robert Bosch, LLC in the Eastern District of Michigan, which was then transferred to this Court on May 3, 2018 (2:18-CV-11101-VAR-RSW, ECF No. 11).  In connection with the subpoena to Robert Garris, Plaintiffs filed a related action against the United States Department of Transportation ("USDOT") challenging the USDOT's denial of Plaintiffs' request to take Mr. Garris' deposition.  *Koopmann v. United States Department of Transporation*, 18-CV-3460 (JMF).  After the Court held that that the USDOT's denial of Plaintiffs' request was "arbitrary and capricious" it ordered Plaintiffs and the USDOT to submit letter briefs addressing the

subpoena pursuant to Fed. R. Civ. P. 45, which the parties did.  (18-CV-3460, ECF Nos. 30, 31). On August 24, 2018 the Court denied the DOT's motion to quash the subpoena to Garris, after which Plaintiffs deposed Mr. Garris. (ECF No. 244).

Plaintiffs also filed (and Defendant opposed) numerous discovery-related letter motions. These included: a letter motion to compel Defendants to produce documents concerning all recalls and investigative files (ECF Nos. 73, 77);  a letter motion to compel Defendants to produce a more specific privilege log (ECF  Nos. 152, 154); a letter motion to compel Defendants to produce documents related to compliance with emissions regulations outside of the U.S. (ECF  Nos. 181, 183); a letter motion seeking leave to take 40 depositions and propound additional interrogatories (ECF Nos. 190, 194);  and a letter motion requesting spoliation sanctions (ECF No. 305).

Additionally, Plaintiffs filed (and Defendants opposed) a motion to quash subpoenas for documents and testimony related to the confidential witnesses named in Plaintiffs' Complaint (ECF Nos. 221, 228) and a motion for spoliation sanctions (ECF  Nos. 310, 325, 348). Defendants also filed (and Plaintiffs opposed) a letter motion pursuant to Fed. R. Evid. 612 to compel disclosure of Plaintiffs' investigator's interview notes and memorandum. (ECF Nos. 247, 249).

On December 12, 2018 Defendants filed a motion for summary judgment and two *Daubert* motions (ECF Nos. 273-287; 301-303), and Plaintiffs filed four *Daubert* motions.  (ECF Nos. 289-300).  On January 4, 2019, Plaintiffs filed a motion for sanctions based on allegations of spoliation, which was thereafter fully briefed.  (ECF Nos. 310-312).  In connection with summary judgment, Defendants filed two motions in limine to exclude the testimony and

opinions of Plaintiffs' experts (ECF Nos. 273, 276) and Plaintiffs filed four motions in limine to exclude the testimony and opinions of Defendants' experts. (ECF Nos. 289, 292, 295, 298).

By the time the parties concluded fact and expert discovery Defendants and third parties produced over 3,500,000 pages of documents; the Parties collectively took 36 depositions, many of which took place in Detroit, Michigan, and the Parties exchanged reports from 11 expert witnesses.

On September 26, 2018, Class Counsel and Defendants' Counsel participated in a full-day mediation session before the Honorable Daniel Weinstein (Ret.) of JAMS.  In advance of that session, the Parties exchanged detailed mediation statements with numerous exhibits, addressing liability and damages, which were submitted to Judge Weinstein.  That mediation session ended without any agreement being reached.

On January 8, 2019, Class Counsel and Defendants' Counsel participated in a second full-day mediation session before Judge Weinstein. In advance of that session, the Parties exchanged and submitted to Judge Weinstein supplemental mediation statements with numerous exhibits, addressing additional factors impacting liability and damages. That mediation session ended without any agreement being reached.

Following additional conversations between Judge Weinstein and the Parties, Judge Weinstein issued a Mediator's proposal that the Action settle for $110 million in cash, which was accepted by each Party on February 4, 2019. Subsequently, the Parties continued negotiations resulting in the terms and conditions set forth in the Stipulation.

**B.      Summary Of Key Terms Of The Proposed Settlement**

**1.      Relief to Class Members and Release of Claims**

Defendants have agreed to settle the Action for $110 million as described more fully in the Stipulation, in return for which all claims that have been, or could have been asserted in the Complaint against "Defendants' Releasees" will be dismissed, barred and released.

The monies will be deposited in an escrow account maintained by Huntington National Bank and will be held in instruments or accounts backed by the full faith and credit of the United States Treasury.

If the Settlement is approved, none of the monies will revert to FCA or its insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the monies other than costs of notice will revert.

**2.      Class Notice and Settlement Administration**

**a)      Notice**

Within 20 calendar days of Preliminary Approval (the "Notice Date"), a proposed Notice and Proof of Claim substantially in the form set forth in Exhibits A-1 and A-2 to the Stipulation will be mailed to each Class Member identified by records maintained by FCA's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. A Summary Notice will also be published through the Internet within 10 calendar days of the Notice Date, since that medium is most frequently accessed by investors, and is the most cost-effective.

The Notice describes in plain English the terms of the Settlement, the considerations that led Class Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought,

and the proposed compensatory awards. A copy of the Notice, Claims Form and Stipulation of Settlement will also be posted on a website maintained by the Settlement Administrator.

The Notice will also set forth the date of the Settlement Fairness Hearing, as well as procedures for objecting to the foregoing matters or opting out of the Settlement. It is respectfully requested that the Settlement Fairness Hearing be scheduled 120 calendar days after the Notice Date. This will allow mailing to be completed; Class Members to have ample time to consider their options and, if they choose, to file objections or opt out of the Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1775; as well as time for the Parties to respond to any objections.

The Notice also identifies the date by which claims must be filed, which Class Counsel requests be postmarked 120 calendar days after the Notice Date.

### b)      Administration

After provision of a competitive bid, Class Counsel selected Epiq Class Action & Mass Tort Solutions. Inc. ("Epiq") to administer the notice and process the claims for the Settlement. Epiq is well known and highly experienced in the administration of securities fraud class action settlements.

### 3.      Papers in Support of the Settlement, Award of Class Counsel Fees and Expenses, and Compensatory Awards to Plaintiffs

No later than 35 calendar days prior to the Settlement Fairness Hearing, Class Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and compensatory award to Plaintiffs. Those papers will detail reasons why the Settlement should be approved, as well as Class Counsel's efforts undertaken on behalf of the Class (including a breakdown of the time and hourly rates of each attorney who contributed to the outcome).

No less than 7 calendar days prior to the Settlement Fairness Hearing, Class Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses or request for compensatory awards to Plaintiffs.

### 4.      Objections

Any Class Member who objects to the Settlement or related matters must do so 21 calendar days prior to the Settlement Fairness Hearing, and must send copies of such objections to the Court as well as designated counsel for the Class and Defendants. Any Class Member who does not file a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

To ensure the legitimacy of any such objections, the Class Member must file documents evidencing FCA transactions, as well as submit to the jurisdiction of this Court for possible deposition. These measures are intended to thwart "professional objectors" who have appeared from time to time in these actions.

### 5.      Opt Outs

Any Class Member who wishes to be excluded must do so by written request accompanied by FCA transaction documentation, postmarked no later than 21 calendar days prior to the Settlement Fairness Hearing. The opt out must be sent to Class Counsel, Defendants' Counsel, and the Settlement Administrator (but not the Court).

### 6.      Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Class Members owning a previously negotiated amount of FCA Securities elect to opt out of the Class. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal.

11

In the event that the Settlement is not approved by the Court, does not become final due to any appeals or Defendants' withdrawal from the Settlement, the parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

### 7. No Admission of Liability

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Courts Favor Settlements Of Complex Class Actions

The law favors settlement, particularly in class actions and other complex cases. *Newberg on Class Actions* (*Fourth*) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n. 14 (1981). Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). As the Second Circuit has held:

> A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action

context. The compromise of complex litigation is encouraged by the courts and favored by public policy.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (citations and internal quotation marks omitted). In evaluating a proposed class-action settlement, "courts should give proper deference to the private consensual decision of the parties" and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405, 14-cv-8714, 2015 U.S. Dist. LEXIS 121574, *17 (S.D.N.Y. Sept. 9, 2015) (citations omitted). Moreover, the Supreme Court has cautioned that courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). This is particularly important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.

The three-step process for approval of a class-action settlement is: (1) preliminary approval; (2) dissemination of notice of the settlement to the class; and (3) a settlement approval hearing where class members may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* §§ 21.632–.634 (2004). This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of the class members' interests. *See* William Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). Plaintiffs respectfully request the Court to take the first step in the process and grant preliminary approval to the Settlement.

**B.    The Proposed Settlement Merits Preliminary Approval**

Preliminary approval is merely the prerequisite for disseminating notice to class members so they may decide whether to approve or reject the Settlement. Accordingly:

If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation (Third)* § 30.41 (1995).

### 1.    The Proposed Settlement Recovery Is Substantively Fair

In the Second Circuit, courts will examine the negotiating process leading to the settlement. *Wal-Mart,* 396 F.3d 96 at 116. They will also determine whether the settlement's terms are fair, reasonable, and adequate, using the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

### a)    The Settlement Was Negotiated By Well-Informed Counsel With The Assistance Of A Mediator And Thus Warrants A Presumption Of Fairness

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). Courts also give weight to the parties' judgment that the settlement is fair and reasonable. *See Palacio v E*trade Fin. Corp.*, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012) (*citing Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010)); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

The Settlement was reached through arm's-length negotiation, which included two all-day mediation sessions before Judge Weinstein – a respected and experienced mediator – held in September 2018 and January 2019.  The parties failed to reach an agreement during these sessions.  Judge Weinstein continued to facilitate settlement discussions between the Parties through numerous communications over the weeks following the mediation session.  On February 4, 2019, Judge Weinstein issued a Mediator's proposal, which the Parties accepted on February 4, 2019. The negotiations, though collegial, were adversarial.  Though Plaintiffs believe that the claims asserted in this litigation have merit and that the evidence developed to date supports their claims, the negotiations were informed in part by the expense and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and through appeals, the uncertain outcome and the risk of any litigation, especially in complex actions such as this litigation, as well as the difficulties and delays inherent in such litigation.

In negotiating the Settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case.

In Class Counsel's view, the Settlement provides substantial benefits to the Class.

### b)      The Settlement Is Within The Reasonable Range Of Recovery

At the Settlement Fairness Hearing, in finally determining whether a settlement is fair, reasonable, and adequate, the Court will have to decide whether to approve the Settlement under the factors articulated in *Grinnell*: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the Settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement

15

fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the particular circumstances. *Thompson v. Metro. Life Ins. Co.,* 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

For preliminary approval purposes, however, the Court need not decide these factors. Rather, if the Court finds that the Settlement is "within the range of possible approval" that might be approved under *Grinnell*, it should then order that the Class receive notification of the Settlement, schedule the Settlement Fairness Hearing, and provide Class members an opportunity to be heard. *See Manual* at § 40.42 (model preliminary approval order). Here, the Settlement satisfies the *Grinnell* test. Therefore, the Court should grant preliminary approval.

### 1) *The Complexity, Expense and Likely Duration of the Litigation*

The Settlement provides the Class with substantial relief, without the delay and expense of trial and post-trial proceedings. Due to the inherent complexity of securities litigation, and particularly the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995's ("PSLRA") amendments to the Exchange Act, as well as supervening case law developments, including the Supreme Court's recent decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014), prosecution of securities class action litigation is inherently complex and lengthy. During the upcoming trial, the jury would have had to determine: (i) whether Defendants' statements were materially false and misleading; (ii) whether Defendants acted with scienter; (iii) whether the alleged fraud was the proximate cause of investors' losses; and (iv) the amount of artificial inflation in FCA's Securities.

If the parties did not agree to settle, they would have faced an expensive trial with an uncertain outcome. The jury would have had to determine numerous complex securities law

issues, and navigate battles of the experts regarding vehicle safety and emissions regulations, loss causation, and damages.  Not only would *any* recovery be very uncertain, considering the near-certainty of appeals, it would inevitably be delayed by years.

### 2)   *Stage of Proceedings and Amount of Discovery Completed*

The proceedings had sufficiently advanced to provide Plaintiffs with a thorough understanding of the strengths and weaknesses of their claims.   The parties completed comprehensive fact and expert discovery in 2018. Plaintiffs reviewed over 3,500,000 pages of documents that Defendants and third-parties produced in discovery and engaged in numerous hard-fought discovery disputes. The Parties conducted 36 depositions. Plaintiffs submitted reports and rebuttal reports from five expert witnesses, and defended their depositions. Plaintiffs also deposed Defendants' six expert witnesses. Plaintiffs also moved to exclude testimony from four of Defendants' experts, and opposed Defendants' two motions to exclude and Defendants' motion for summary judgment. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . , it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

### 3)   *The Risks of Establishing Liability & Damages*

Despite Class Counsel's confidence, there are significant risks to proving falsity, materiality, loss causation and damages. Moreover, proving scienter, a notoriously difficult and risky element of securities fraud cases, was not certain. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 3:09CV1293 VLB, 2012 WL 3589610, at *6 (D. Conn. Aug. 20, 2012).

### 4)  *The Risks of Maintaining the Class Action Through Trial*

While Plaintiffs successfully obtained class certification on June 26, 2018, there was no guarantee that status would remain throughout the trial, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *23 (S.D.N.Y. Dec. 23, 2009). The Settlement avoids the uncertainty with respect to the maintaining certification and, thus, supports approval of the Settlement.

### 5)  *Reasonableness of the Settlement*

The Settlement provides for a recovery of $110 million. Plaintiffs' damages expert calculated the declines in FCA's stock price attributable to the corrective events that Plaintiffs allege revealed the fraud to the market. Plaintiffs engaged a consultant to estimate the potentially recoverable aggregate damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. A popular model used to estimate damages is referred to as the "Two-Trader Model" (also called the "80/20 Model"). The Two-Trader model is the model often used by Cornerstone Research, a damages firm routinely hired by Defendants in securities actions. Assuming Plaintiffs were able to prove at trial all aspects of liability, and recover the full amount of the alleged inflation, the aggregate recoverable damages are approximately $800 million. The Settlement thus represents approximately 13.75% of the potential recovery. Moreover, that computation assumes that 100% of eligible class members file claims. It is more likely that less than 100% will do so (despite

efforts that will be made to notify as many eligible claimants, including posting of notice through the Internet).

The percentage of recovery here far outstrips historical averages, yielding an excellent result for Class members. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 at 715 (E.D.P.A. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Crazy Eddie Sec. Litig,* 824 F. Supp. 320, 328 (E.D.N.Y. June 11, 1993) (approving settlement that was 10% of estimated maximum recovery); *Holden v. Burlington N., Inc*., 665 F. Supp. 1398, 1414 (D. Minn. 1987) 495 F.2d 448 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Indeed, according to NERA Economic Consulting the median settlement as a percentage of investor losses between $600 million and $999 million in 2018 was 1.6%. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2018 Full Year Review*, at 35 https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf. According to Cornerstone Research, the median settlement as a percentage of "simplified tiered damages" between $500 million and $999 million in 2018 was 3.3% (the median between 2009 and 2017 was 3.7%). *See* Cornerstone Research, *Securities Class Action Settlements: 2018 Review and Analysis* at 8.[3] Thus, the percentage of recovery here is approximately four to 8.6 times that of the median settlement for cases of this size.

---

[3] It should be noted that these studies tend to focus on the size of the settlement relative to transactions losses, not recoverable damages, and probably understates the recovery rate. *See Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005).

## IV.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A.   Notice By Direct Mail And Publication Is Appropriate

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual* at §§ 21.632, 21.633. To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). "'The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314). In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication, (b) publishing this same summary notice in a press release, (c) mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice on a website. *See, e.g., In re Marsh Erisa Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).

The proposed Notice, which the claims administrator would send to Class Members by first class mail, is attached as Exhibit A-1 to the Stipulation. The Notice describes in plain English the terms of the Settlement, the considerations that led Class Counsel to conclude that the Settlement is fair and adequate, the maximum attorneys' fees and expenses that may be sought, the procedure to object to the Settlement, and the date and place of the Settlement Fairness Hearing.

With the Court's permission, the Claims Administrator will commence mailing the Notice to Class Members identified by FCA's transfer agent and will also post the Notice on the internet within 20 calendar days of approval, and mailed to shareholders identified in requests to nominees as soon thereafter as addresses are received. The Summary Notice, set forth in Exhibit A-3 to the Stipulation, will be published once in the national edition of *Investor's Business Daily* and once over the *GlobeNewswire* within 10 calendar days thereafter.  The Claims Administrator will also make additional copies of the Notice available to nominee holders such as brokerage firms that held FCA common stock during the Class Period. Such nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares or, alternatively, to provide the Claims Administrator with a list of the names and addresses of such beneficial owners so that the Claims Administrator can mail the Notice to such beneficial owners directly.

Sending the Notice by first-class mail, combined with the publication of the Summary Notice in a major publication and on the Claims Administrator's website, is the best notice practicable under the circumstances, and is typical of the notice given in other class actions, and satisfies the requirements of Rule 23 and due process. *See, e.g., In re Marsh Erisa Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010); *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 231-232 (S.D. Ill. 2001) (approving mailed notice to last known addresses of a settlement class with nearly 18.5 million members). Accordingly, the Court should find that the Notice, Summary Notice, and the procedures for dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

**B.**     **The Proposed Notice Adequately Informs Class Members of Their Rights In This Litigation**

In an action proceeding under Rule 23(b)(3), the notice must inform each class member that "the court will exclude anyone from the class if he so requests [by a specified date]; the judgment will include all members who do not request exclusion and any member not requesting exclusion may, if he desires, enter an appearance through counsel." Fed. R. Civ. P. 23(c)(2).

Here, the proposed Notice, Exhibit A-1 to the Stipulation, clearly and accurately discloses the information material to a Class Member's decision whether to accept, object to, or opt out of the Settlement. The Notice provides detailed information concerning (a) the proposed Settlement (including the Settlement Amount and releases to Defendants) ; (b) the nature, history, and progress of the Action; (c) the date of the Settlement Fairness Hearing; (d) the proposed Plan of Allocation; (e) the maximum fees and expenses to be sought by Counsel Counsel and compensatory award to be sought by Plaintiffs; (f) the rights of Class Members, including the procedures for opting-out of the Settlement, filing a Proof of Claim, or objecting to the Settlement, Plan of Allocation, Class Counsel's request for fees and expenses, or Plaintiffs' request for a compensatory award; and (g) how to contact Class Counsel, access the Court's docket, or otherwise learn more about the Action and Settlement.

The Notice also meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice provides:

- a cover page summarizing the information contained in the Notice;

- a statement of the Class Members' recovery before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount recovered by any specific Class Member to vary greatly across the Class;

22

- the general terms of the Settlement;

- a statement of the potential outcome of the case including a statement concerning the issues on which the parties disagree;

- a statement of attorney's fees or costs sought, including a summary of this information on the cover page;

- information on how to contact the Claims Administrator and/or Class Counsel (including names, addresses, telephone numbers, and websites); and

- a discussion of the reasons for the Proposed Settlement, including the factors Plaintiffs and the Defendants considered in reaching the Settlement.

Thus, the proposed Notice to be sent to the Class provides all of the information required by the PSLRA.  The Court should approve the proposed form of Notice and direct that notice be given to the Class.

## PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events in connection with the Settlement Fairness Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Fairness Hearing. | At least 120 calendar days after the Court preliminarily approves the Settlement. (Preliminary Approval Order ¶ 2) |
| Mailing of Notice and Proof of Claim and Release. | No later than 20 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 5(b)) (the "Notice Date") |
| Publication of Summary Notice. | No later than 10 calendar days after the Notice Date (Preliminary Approval Order ¶ 5(d)) |
| Filing deadline for requests for exclusion. | Postmarked no later than 21 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶ 10) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than 35 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶ 23) |

| Filing deadline for objections. | No later than 21 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶ 13) |
|---|---|
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Seven (7) calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶ 23) |
| Date for Claims to be Filed | No later than 120 calendar days after the Notice Date (Preliminary Approval Order ¶ 7) |

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court enter an Order preliminarily approving the Settlement and setting a date for a Settlement Fairness Hearing and deadlines for the mailing and publication of the Notices, the filing of Class Member objections, the filing of Class Member opt-out notices, and the filing of Class Counsel's application for attorneys' fees and expenses and for a compensatory award to Plaintiffs.

Dated:   April 5, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
Email:  jalieberman@pomlaw.com
        mjwernke@pomlaw.com
        vvmontenegro@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603

Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Co-Class Counsel*


**THE ROSEN LAW FIRM, P.A.**
 */s/ Laurence M. Rosen*
Laurence M. Rosen
Phillip Kim
Sara Fuks
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: sfuks@rosenlegal.com

*Co-Class Counsel*