UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
GARY KOOPMANN, TIMOTHY KIDD and :
VICTOR PIRNIK, Individually and on Behalf :
of All Others Similarly Situated, : Case No. 1: 15-cv-07199-JMF
:
Plaintiff(s), :
v. :
:
FIAT CHRYSLER AUTOMOBILES N.V., :
FCA US, LLC, RONALD ISELI AND :
ALESSANDRO BALDI, AS CO- :
EXECUTORS FOR THE ESTATE OF :
SERGIO MARCHIONNE, SCOTT :
KUNSELMAN, MICHAEL DAHL, STEVE :
MAZURE and ROBERT E. LEE, :
;
Defendants. ;
------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES, EXPENSE REIMBURSEMENT, AND
COMPENSATORY AWARDS FOR CLASS REPRESENTATIVES**

**POMERANTZ LLP**
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        mjwernke@pomlaw.com
        vvmontenegro@pomlaw.com
-and-

Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Sara Fuks
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile:  (212) 202-3827
Email:  lrosen@rosenlegal.com
        pkim@rosenlegal.com
        sfuks@rosenlegal.com

*Co-Class Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 4

    A.      Class Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund .................................................................................................. 4

    B.      The Court Should Award a Reasonable Percentage of the Common Fund ........... 6

    C.      The Relevant Factors Confirm that the Requested Fee is Reasonable ................. 7

        1.      The Time and Labor Expended by Class Counsel ..................................... 8

        2.      The Magnitude, Complexity, and Risk of Litigation ................................. 9

        3.      The Settling Parties Were Represented by Experienced, High-Caliber Counsel ..................................................................................................... 14

        4.      The Requested Fee in Relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law............................................................ 16

        5.      Public Policy Considerations: Private Securities Suits Are an "Essential Supplement" to Criminal Prosecution and Civil Enforcement ................ 18

        6.      The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method ....................... 19

        7.      Class Counsel Should Be Reimbursed for $2,603,672.29 in Litigation Expenses, Which is Below the Already-Requested $2,800,000 Limit ..... 23

    D.      The Proposed Plaintiffs' Awards Are Reasonable............................................... 24

III.    CONCLUSION ................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-CV-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)........................... passim

*Allapattah Servs., Inc. v. Exxon Corp.*,
454 F. Supp. 2d 1185 (S.D. Fla. 2006) .................................................................. 17

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)............................................................................................... 4

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ............................................................................. 11

*Anwar v. Fairfield Greenwich Ltd. Group*,
1:09-cv-00118 (S.D.N.Y. 2010) .......................................................................... 16

*Aponte v. Comprehensive Health Mgmt., Inc.*,
No. 10 CIV. 4825 JLC, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ...................... 9

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990).................................................................................. 11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)............................................................................................... 5

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979)................................................................................. 11

*Blum v. Stenson*,
465 U.S. 886 (1984)......................................................................................... 19, 20

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)............................................................................................... 4

*Brown v. Phillips Petroleum Co.*,
838 F.2d 451 (10th Cir. 1988) .............................................................................. 6

*Bryant v. Avado Brands, Inc.*,
100 F. Supp. 2d 1368 (M.D. Ga. 2000) ............................................................... 11

*Cabot E. Broward 2 LLC v. Cabot*,
No. 16-61218-CIV, 2018 U.S. Dist. LEXIS 192706 (S.D. Fla. Nov. 9, 2018) ....... 17

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ............................................................................. 6

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).................................................................................. 15

*City of Pontiac General Employees' Ret. Sys. v. Wal-Mart Stores, Inc. et al*,
   No. 12-cv-05162 (W.D. Ark. 2019).......................................................................... 17

*City of Providence v. Aéropostale, Inc.*,
   2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ............................................ 5, 6, 9, 10

*Eltman v. Grandma Lee's, Inc.*,
   *No.* 82 Civ. 1912, 1986 U.S. Dist. LEXIS 24902 (E.D.N.Y. May 28, 1986)........................ 15

*Fishoff v. Coty Inc.*,
   No. 09 CIV. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010).................................... 12

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015).................. 21

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ................................................................................ 14

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)................................................................................ passim

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) .................................................................................. 6

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) ............................................................................... 6

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................................. 20

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ............................................................................... 11

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................... 7, 10

*In re Amaranth Nat. Gas Commodities Litig.*,
   No. 07 Civ. 6377 SAS, 2012 U.S. Dist. LEXIS 82599 (S.D.N.Y. June 8, 2012) ............... 1, 19

*In re AOL Time Warner, Inc. Sec.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006).............................. 20

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................. 11

*In re Apple Computer Sec. Litig.*,
 No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)..................................... 11

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*,
 No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013) ......................... 18, 25

*In re BankAtlantic Bancorp, Inc.*,
 No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).......................................... 14

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
 909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................................... 13

*In re BioScrip, Inc. Sec. Litig.*,
 273 F. Supp. 3d 474 (S.D.N.Y. 2017)...................................................................................... 21

*In re Busporine Antitrust Litig.*,
 No. 01-1410 (S.D.N.Y. Apr. 11 2003)............................................................................... 17, 20

*In re Colgate-Palmolive Co. ERISA Litig.*,
 36 F. Supp. 3d 344 (S.D.N.Y. 2014)......................................................................................... 7

*In re Comverse Tech., Inc.*,
 No. 06-CV-1825 (NGG)(RER), 2010 U.S. Dist. LEXIS 63342 (E.D.N.Y. June 23, 2010) .... 16

*In re Elan Sec. Litig.*,
 385 F. Supp. 2d 363 (S.D.N.Y. 2005)...................................................................................... 21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
 No. 05 Civ. 10240, (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. Jul. 27, 2007).......... 21, 23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................. 15

*In re Flonase Antitrust Litig.*,
 951 F. Supp. 2d 739 (E.D. Pa. 2013) ................................................................................. 17, 23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
 55 F.3d 768 (3d Cir. 1995)........................................................................................................ 6

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
 279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................................ 24

*In re Glob. Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................ 24

*In re Hi-Crush, Partners L.P. Sec. Litig.*,
 No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ................ 7

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................ 17, 22

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................................................. 1, 16, 20

*In re Interpublic Sec. Litig.*,
    No. 02 CIV.6527(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ................................... 5

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................... 16, 23, 24

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016) .......................................................................... 15

*In re Polyurethane Foam Antitrust Litig.*,
    No. 1:10 MD, 2196, 2015 U.S. Dist. LEXIS 23482 (N.D. Ohio Feb. 26, 2015) ..................... 17

*In re Prison Realty Sec. Litig.*,
    No. 3:99-cv-0, 0458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001)..................... 17

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997) ........................................................................ 10

*In re Rayonier Inc. Securities Litigation*,
    3:14-cv-01395 (M.D. Fla.) ................................................................................ 22

*In re Se. Milk Antitrust Litig.*,
    No. 2:07-CV-208, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013)................. 17, 22

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................... 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 3:07-MD-0182, 7-SI, 2011 U.S. Dist. LEXIS 154287 (N.D. Cal. Dec. 27, 2011)........... 17

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995)................................................................................. 6

*In re Titanium Dioxide Antitrust Litig.*,
    No. 10-CV-00318 RDB, 2013 WL 6577029 (D. Md. Dec. 13, 2013) ..................................... 17

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ................................. 5

*In re Tricor Direct Purchaser Antitrust Litig.*,
    No. 05-340-SLR, 2009 U.S. Dist. LEXIS 133251 (D. Del. Apr. 23, 2009)...................... 17, 22

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...................................................................................... 20

*In re Urethane Antitrust Litig.*,
   No. MDL No. 1616, 2016 U.S. Dist. LEXIS 99839 (D. Kan. July 29, 2016) .......................... 17

*In re Vitamins Antitrust Litig.*,
   MDL No. 1285, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) ................................. 17

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................................ 14, 15

*In re Worldcom, Inc. Sec. Litig.*,
   388 Supp. 2d 319, 359 (S.D.N.Y. 2005) .............................................................................. 18

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................................. 10

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964) .............................................................................................................. 5

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) .................................................................................................. 6

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000) ................................................................................... 13

*Landmen Partners Inc. v. The Blackstone Grp. L.P.*,
   No. 08-CV-03601 (S.D.N.Y. filed Apr. 15, 2008) ........................................................... 16, 22

*Lindy Bros. Builders of Phila. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973) ................................................................................................ 20

*Local 703 I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   No. 2:10-cv-02847-KOB, 2015 U.S. Dist. LEXIS 130542 (N.D. Ala. Sept. 14, 2015) ..... 17, 22

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................... 5

*Matter of Cont'l Illinois Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ......................................................................................... 10, 20

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ............................................................................................................ 19

*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc et al.*,
   No. 1:08-cv-05310-DAB-HBP (S.D.N.Y. March 8, 2019) ..................................................... 20

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.,*
 No. 08 Civ. 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ......... 24

*Paul, Johnson, Alston & Hunt v. Graulty,*
 886 F.2d 268 (9th Cir. 1989) ............................................................................. 6

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.,*
 318 F.R.D. 19 (S.D.N.Y. 2016) .......................................................................... 25

*Rawlings v. Prudential-Bache Properties, Inc.,*
 9 F.3d 513 (6th Cir. 1993) ............................................................................... 6

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.,*
 818 F.2d 278 (2d Cir. 1987) ............................................................................. 23

*Robbins v. Koger Properties, Inc.,*
 116 F.3d 1441 (11th Cir. 1997) .................................................................... 11, 14

*Savoie v. Merchants Bank,*
 166 F.3d 456, 1999 U.S. App. LEXIS 1117 (Jan. 28, 1999) ....................................... 6

*Schuh v. HCA Holdings, Inc.,*
 No. 3:11-cv-01033 (M.D. Tenn.) ......................................................................... 22

*Silverstein v. AllianceBernstein, L.P.,*
 No. 09-CV-5904 JPO, 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) ............................ 7

*Six (6) Mexican Workers v. Arizona Citrus Growers,*
 904 F.2d 1301 (9th Cir. 1990) ........................................................................... 6

*Standard Iron Works v. Arcelormittal, et al.,*
 No. 08-cv-5214 (N.D. Ill. 2014) ......................................................................... 17

*Swedish Hosp. Corp. v. Shalala,*
 1 F.3d 1261 (D.C. Cir. 1993) ............................................................................. 6

*Sweetwater Valley Farm, Inc. v. Dean Foods Co. (In re Se. Milk Antitrust Litig.),*
 No. 2:08-MD-1000, 2018 U.S. Dist. LEXIS 131855 (E.D. Tenn. July 11, 2018) ................. 17

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.,*
 No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................. 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
 551 U.S. 308 (2007) ....................................................................................... 5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
 396 F.3d 96 (2d Cir. 2005) ............................................................................... 18

## Statutes

15 U.S.C. §78u-4(a)(4) .................................................................................. 24

15 U.S.C. §78u-4(a)(6) .................................................................................... 7

## Rules

Fed. R. Civ. P. 37 ............................................................................................ 2

## Other Authorities

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1803, at 325 (3d ed. 2005) ................................................................. 4

*An Empirical Study of Class Action Settlements and their Fee Awards*, Brian T. Fitzpatrick, 7 J. EMPIRICAL L. STUD. 811, 833 (2010) .............................................. 17

*Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937 ......................................................................... 18, 19

Cornerstone Research, "Securities Class Action Filings, 2018 Year in Review" ....................... 12

Eisenberg, Miller & Germano, *Attorneys Fees in Class Actions: 2009-2013* ...................... 21, 22

NERA Economic Consulting, Stephen Boettrich and Svetlana Staryck, "Recent Trends in Securities Class Action Litigation: 2018 Full Year Review," January 29, 2019 Recent Trends .................................................................................... 9, 12

*Recent Trends In SEcurities Class Action Litigations: 2018 Full Year Review*, NERA Economic Consulting ........................................................................ 15

*Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L.Q. 739 (2002) ........................................................................ 19

## I.    INTRODUCTION

Class Representatives Gary Koopmann, Timothy Kidd, and Victor Pirnik (collectively, "Plaintiffs"), on behalf of themselves and the Class Members in the above captioned Action,[1] respectfully submit this memorandum of law in support of their motion for (i) an award of attorneys' fees of thirty percent (30%) of the net Settlement Fund (less expenses and award to Class Representatives) (the "Settlement Fund Net of Expenses") plus accrued interest; (ii) reimbursement of necessary and reasonable litigation expenses of $2,603,672.79; and (iii) compensatory awards of $45,000 to the Class Representatives ($15,000 to each of the three Class Representatives).

Plaintiffs in this action achieved the $110,000,000 settlement after close to four years of hard-fought litigation and providing a significant cash benefit for the Class. Class Counsel now seek attorneys' fees of thirty percent of the Settlement Fund Net of Expenses, or $32,205,398.31. Counsel and their professionals have spent, in the aggregate, 44,359.52 hours in the prosecution of this case against Defendants, with a lodestar of $22,939,144.25. *See* Joint Decl., Wernke Decl., Rosen Decl.[2]  The fee sought in this case is well within the range regularly approved by courts in this Circuit.  *See, e.g.*, *In re Amaranth Nat. Gas Commodities Litig.*, No. 07 Civ. 6377 SAS, 2012 U.S. Dist. LEXIS 82599, at *9 (S.D.N.Y. June 8, 2012) (awarding 30% of $77.1 million settlement fund and $1,662,613.08 in expenses); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467,

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation") filed with the Court on April 5, 2019. ECF No. 355.

[2] "Joint Decl." refers to the Joint Declaration of Jeremy A. Lieberman and Laurence M. Rosen. "Wernke Decl." refers to the Declaration of Michael Wernke on Behalf of Pomerantz LLP in Support of Application for an Award of Attorneys' Fees and Expenses, filed as Exhibit 3 to the Joint  Decl.; "Rosen Decl." refers to the Declaration of Laurence Rosen on Behalf of The Rosen Law Firm, P.A. in Support of Application for an Award of Attorneys' Fees and Expenses, filed as Exhibit 2 to the Joint Decl.

516 (S.D.N.Y. 2009) (awarding one-third (33%) of the settlement fund of $510,254,849.99 and $46,941,557 in expenses). *Moreover, the fee was negotiated and approved by Plaintiffs, all of whom actively participated in the litigation.*

The time and labor Class Counsel expended in litigating this Action for nearly four years included: (a) conducting a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, earnings conference calls, and publicly available information on the Department of Transportation website related to FCA's vehicle recalls; (b) drafting a detailed Amended Complaint and then amending the operative complaint three times; (c) consulting with a damages expert to evaluate recoverable losses; (d) consulting with an investigator; (d) fully briefing three motions to dismiss; (e) successfully moving for class certification, which included expert depositions and defending Plaintiffs' depositions; (f) engaging in comprehensive discovery which included  reviewing and analyzing over 3.5 million pages of documents and thirty-six fact and expert depositions, filing numerous motions to compel, including a motion to compel filed in the Eastern District of Michigan directed to non-party Robert Bosch LLC; (g) filing a motion to quash Defendants' subpoenas directed to Class Counsel's investigators; (h) filing a successful action for declaratory and injunctive relieved arising out of the USDOT's denial of Plaintiffs' request to depose a former NHTSA employee; (i)  submitting opening and rebuttal reports for five experts and responding to six expert reports Defendants submitted; (j) opposing Defendants' motion for summary judgment; (k) filing a motion for spoliation sanctions pursuant to F.R.C.P. 37; (l) participating in two full-day mediation sessions which took place four months apart; (m) successfully negotiating a $110 million settlement; and (n) finalizing the terms of the Stipulation with Defendants.

Epiq Class Action & Mass Tort Solutions Inc. ("Epiq"), the Claims Administrator, provided individual notice of the settlement via first-class mail to each member of the Class whose address was reasonably ascertainable, and caused publication of the Summary Notice in *Investor's Business Daily* and *PR Newswire* on May 6, 2019.  Joint Decl., Exhibit 1, Declaration of Matthew Mulvihill Regarding: (A) Mailing Of The Notice And Proof Of Claim; (B) Publication Of The Summary; And (C) Report On Requests For Exclusion ("Mulvihill Decl."), ¶14. The Notice amply describes the terms of the Settlement, including: (a) the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process to opt out of, or object to, the Settlement; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Class Counsel; and (g) the necessary information for any Class Member to examine the Court records should they desire to do so. *Id.* Mulvihill Decl., Exhibit A. The deadline for objections and requests for exclusion is August 15, 2019. Thus far no objections have been received by Class Counsel. Joint Decl., ¶76.  Only nine Class Members requested exclusion from the Class. Mulvihill Decl. ¶18. These requests for exclusion represent only 7,350 shares of FCA stock, a *de minimis* amount relative to the billions of shares traded during the Class Period. *Id.* Moreover, not a single request for exclusion criticizes the Settlement in any respect.

Class Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $2,603,672.29.  *See* Joint Decl. ¶16 and Rosen Decl. and Wernke Decl., filed as Exs. 2 and 3 to the Joint Decl., respectively.  This amount is below the anticipated $2,800,000 limit of litigation-expense reimbursement included in the Notice to the Class and amounts to only 2.4% of the Settlement. These expenses were both reasonable and necessary to successfully prosecute and resolve the claims against Defendants.

Plaintiffs in this Action well deserve the request for an award of $45,000 total ($15,000 each to the three Class Representatives) to compensate them for their time and service to the Class. They devoted time and effort to researching the facts of the case; each reviewed filings, reviewed hearing and deposition transcripts, produced documents, sat for depositions, conferred with Class Counsel about litigation and settlement strategies, and provided authorization to Class Counsel for the range to be sought in the settlement negotiations.

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . .'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013). Plaintiffs' and Class Counsel's contributions here exemplify the value of this "essential supplement."

## II.     ARGUMENT[3]

### A.     Class Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The U.S. Supreme Court and the Second Circuit have both recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered

---

[3]A description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Final Approval Motion and Joint Declaration.

and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *City of Providence v. Aéropostale, Inc*., 2014 U.S. Dist. LEXIS 64517, at *30 (S.D.N.Y. May 9, 2014). Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g., City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *31; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (*quoting J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). Courts in this Circuit have consistently adhered to these teachings. *In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL 2944620, at *12 (S.D.N.Y. July 31, 2008) ("'It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to "a reasonable fee – set by the court – to be taken from the fund.'"").[4] The "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004).

Plaintiffs' contributions and Class Counsel's representation in this Action embody the policies intended to encourage private advocacy as a weapon to enforce the securities laws. The

---

[4] Citations are omitted, and emphasis is added throughout unless otherwise indicated.

requested attorneys' fees of thirty percent (30%) of the Settlement Fund Net of Expenses ($110 million less expenses of $2,603,672.29 and $45,000 for awards to Class Representatives, (i.e. 30% of $107,351,327.71)), or $32,205,398.31 and reimbursement of $2,603,672.29 of litigation expenses, which were necessary and reasonable, are very much warranted.

## B.    The Court Should Award a Reasonable Percentage of the Common Fund

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Goldberger*, 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *32; *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) (affirming district court's conclusion that the percentage method "aligns the interests of class counsel with those of the class"), cert. denied, 571 U.S. 888, 134 S. Ct. 310 (2013). In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49;[5] *Savoie v. Merchants Bank*, 166 F.3d 456, 460, 1999 U.S. App. LEXIS 1117 (Jan. 28, 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise

---

[5] The use of the percentage-of-the-fund method in common fund cases has been approved by every other Court of Appeals that has addressed the issue. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993), 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). Indeed, the Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden I Condominium Ass'n, Inc.*, 946 F.2d at 774; *Swedish Hosp. Corp.*, 1 F.3d at 1271.

when the lodestar method is used in common fund cases"). The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). This Court has used the percentage method to set attorneys' fees in common fund cases. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2018 WL 6250657, at *1 (S.D.N.Y. Nov. 29, 2018); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175, at *31 (S.D.N.Y. Dec. 19, 2014) (collecting cases); *Silverstein v. AllianceBernstein, L.P.*, No. 09-CV-5904 JPO, 2013 WL 7122612, at *8 (S.D.N.Y. Dec. 20, 2013).

Given the language of the PSLRA, the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the trend among the district courts in this Circuit, the Court should award attorneys' fees based on a percentage of the fund. The percentage approach not only aligns the interests of counsel and the class,[6] it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001). As demonstrated below, the percentage Counsel requests is fair and reasonable.

### C.  The Relevant Factors Confirm that the Requested Fee is Reasonable

The Second Circuit in *Goldberger* explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should consider the traditional criteria that reflect a reasonable fee in common fund cases, including: (i) the time and labor expended by counsel; (ii) the risks of the litigation; (iii) the magnitude and complexity of the litigation; (iv) the requested

---

[6] *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014).

fee in relation to the settlement; (v) the quality of representation; and (vi) public policy considerations. *Goldberger*, 209 F.3d at 50. An analysis of these factors demonstrates that Counsel's requested fee of thirty percent of the Settlement Fund Net of Expenses, or $32,205,398.31, plus accrued interest, is fair and reasonable.

### 1.    The Time and Labor Expended by Class Counsel

Class Counsel have expended a substantial amount of time and effort pursuing this litigation on behalf of the Class. Since its inception nearly four years ago, Class Counsel and their professionals have devoted more than 44,359 hours to this litigation. Joint Decl. ¶107. As discussed more fully in the Joint Declaration, submitted herewith, Class Counsel conducted an extensive investigation into the Class' claims; researched and prepared four detailed amended complaints; fully briefed and successfully challenged Defendants' three motions to dismiss; made 6 motions to compel discovery; successfully moved for certification of the Class, which included expert depositions and defending Plaintiffs' depositions; engaged in comprehensive discovery, which included fact and expert depositions, many of which took place in Detroit, Michigan,  as well as reviewing and analyzing over 3.5 million of pages of documents; opposed Defendants' motion for summary judgment; prepared for and participated in two full day mediations; successfully negotiated a $110 million settlement; and finalized the terms of the Stipulation with Defendants. *Id.* Moreover, Class Counsel, with the assistance of its damages consultant, prepared the proposed Plan of Allocation of Settlement proceeds.  *Id.* at ¶¶88, 92. Indeed, the relative time and labor Class Counsel expended is demonstrated by the advanced stage this case reached compared to securities class actions overall. For example, of cases filed and resolved between January 2000 and December 2018, 73% were settled or dismissed before a motion for class certification was filed and of the 27% where a motion for class certification was filed, only 15%

reached a decision on class certification.[7] Here, by contrast, Class Counsel devoted time and labor sufficient to see the case all the way through summary judgment briefing. Moreover, the legal work on this litigation will not end with the Court's approval of the Settlement. Class Counsel will necessarily expend additional hours and resources to assist Class Members with their Proofs of Claim, shepherding the claims process, and responding to Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013).

At all times during the pendency of the litigation, Class Counsel's efforts were driven by and focused on advancing the litigation to bring about the most successful outcome for the Class, whether through settlement or trial, by the most efficient means possible. Accordingly, the time and effort devoted to this case by Class Counsel to obtain the $110 million recovery confirms that the request for 30 percent of the Settlement Fund Net of Expenses is reasonable.

### 2.     The Magnitude, Complexity, and Risk of Litigation

Courts within the Second Circuit have long recognized that the risk associated with a case undertaken on a contingency basis is an important factor in determining an appropriate fee award:

> Lead Counsel undertook this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute the Action without a guarantee of compensation or even the recovery of expenses. Unlike counsel for Defendants, who is paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began, and would have received no compensation or expenses had this case not been successful.

*City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *40. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret.*

---

[7] NERA Economic Consulting, Stephen Boettrich and Svetlana Staryck, "Recent Trends in Securities Class Action Litigation: 2018 Full Year Review," January 29, 2019 at 21.

*Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *41 (same); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel). Here, Class Counsel pursued Plaintiffs' claims against Defendants in this complex litigation with no guarantee of ever being compensated for the investment of time and money that the case would require. In undertaking this responsibility, Class Counsel dedicated substantial attorney and professional resources to the prosecution of the litigation. Class Counsel also advanced over two and a half million dollars in out-of-pocket expenses with no guaranty that those expenses would ever be reimbursed. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

Law firms handling complex contingent litigation frequently lose, whether on a motion to dismiss, class certification or summary judgment. Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have

devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."). Even plaintiffs who get past summary judgment and succeed at trial may find their judgment overturned on appeal or on a post-trial motion.[8]

As this case amply demonstrates, securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation").As recognized by this District and others with respect to securities class actions, "[l]ittle about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation. As one court has noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc*., 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001). Plaintiffs faced that very risk in this litigation.

Indeed, the high rate of dismissals in securities class actions demonstrates the risks involved as compared to the prospects for success. Cornerstone reports that of securities class

---

[8] *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment notwithstanding the verdict was denied, on appeal the judgment was reversed and the case was dismissed after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

actions filed in 2015, the year that this Action was filed, 58% have been dismissed.[9] And according to NERA, the rate of dismissal in securities class actions has steadily increased over time:  between 2000 and 2002 one third of cases filed were dismissed, whereas in 2015 at least half of the cases filed were dismissed.[10]

While Plaintiffs believe that their claims would be borne out by the evidence, they also recognize that they face hurdles to proving liability. Defendants have articulated defenses to Plaintiffs' allegations that the Court may accept at summary judgment or the jury may accept at trial. As discussed in Plaintiffs' accompanying Final Approval Motion, to prevail in the Action, Plaintiffs would face complex legal and factual issues, vehemently disputed by Defendants, including expert testimony, as can be seen in the motions to dismiss and motion for summary judgment briefing. This was a complex case and Plaintiffs would have to establish that the alleged misstatements and omissions were materially false and misleading and prove Defendants' scienter. Defendants have argued, and would have continued to argue, that the alleged misstatements were not material given that FCA was "more than 90% compliant" with respect to each of the recalls and that the NOV's asserted violations with "far less than 1% of FCA's vehicles on the road." Joint Decl. ¶60.

Further, Defendants would have continued to argue that even if Plaintiffs could establish a material misstatement or omission, there was no evidence upon which the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness—could be proven. The scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, No. 09 CIV. 628 (SAS), 2010 WL

---

[9] Cornerstone Research, "Securities Class Action Filings, 2018 Year in Review," at p.16 figure 15 (of the cases filed in 2015 28% are settled, 12% are continuing and 2% were remanded).

[10] NERA Economic Consulting, Stephen Boettrich and Svetlana Staryck, "Recent Trends in Securities Class Action Litigation: 2018 Full Year Review," January 29, 2019, page 24.

305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Here, Defendants were adamant that they had no intent to deceive. For example, Defendants asserted that during a May 2012 meeting with regulators they proposed an "alternate AECD" definition and that the EPA agreed with that definition.

Another considerable risk is whether Plaintiffs could ultimately prove, in the face of vigorous opposition, that the Class was damaged and the amount of those damages. Defendants vigorously asserted that no loss causation existed for at least four out of the seven alleged corrective disclosures.  Joint Decl. ¶62. Defendants would have pressed this issue at trial, and if the jury agreed with Defendants, Plaintiffs' damages could be substantially reduced. Proving the full amount of damages is a risk element in this case as in every securities fraud action.

The damage assessments of the parties' trial experts would be sure to vary substantially, and trial would become a "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 67-68 (S.D.N.Y. 2012) (noting that in a battle of the experts "victory is by no means assured" and the "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses"). Thus, even if Plaintiffs prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.

Finally, even if Plaintiffs overcame all of these significant risks and prevailed at trial, such a victory would not have guaranteed the Class an ultimate recovery larger than the $110,000,000 Settlement. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (reversing jury verdict awarding investors $2.46 billion and remanding for a new trial); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Indeed, that Defendants did not settle the case until after the Court granted class certification demonstrates that there was genuine risk the Court would not certify a class or would certify a much smaller class, leading to no recovery, or a much smaller recovery for the Class, and hence, no fee or a much smaller fee, for Counsel.

Accordingly, these factors support the conclusion that the requested fee is reasonable and fair.

### 3. The Settling Parties Were Represented by Experienced, High-Caliber Counsel

The result counsel achieved and the quality of the services provided are important factors for courts to consider in determining reasonable attorneys' fees under a percentage-of-fund analysis. *See Goldberger*, 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748 (S.D.N.Y. 1985). Despite the significant risk to recovery in this Action, Class Counsel successfully obtained a substantial $110 million cash settlement for the Class. This represents approximately 13.75% of estimated class-wide damages; an excellent result when compared

against the median recovery of 1.6% of damages in securities class with investor losses of between $600 million and $999 million.[11]

The standing and prior experience of Class Counsel is also relevant in determining fair compensation. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912, 1986 U.S. Dist. LEXIS 24902, at *24 (E.D.N.Y. May 28, 1986). As the firm resumes demonstrate,[12] Pomerantz[13] and Rosen[14] have extensive experience in the specialized field of securities litigation. Class Counsel leveraged its experience and resources to thoroughly evaluate the merits and value of the case and successfully negotiate the Settlement.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Class Counsel. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 749. This litigation was vigorously contested by Defendants who were ably represented by very experienced and qualified attorneys from Sullivan & Cromwell LLP.  Joint Decl. ¶104. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010) (standing of opposing counsel underscores complexity of litigation and challenges faced by class

---

[11] NERA Economic Consulting, *Recent Trends In Securities Class Action Litigation: 2018 Full Year Review*, at 35.

[12] The resumes of Rosen and Pomerantz are submitted as Joint Decl. Ex. 2 (Rosen Decl., Ex. 3) and Ex. 3 (Wernke Decl., Ex. 3), respectively.

[13] *See, e.g.*, *In re Montage Tech. Group Ltd. Sec. Litig.*, 14-cv-722-SI (N.D. Cal. 2015); *In re Lihua Int'l Inc. Sec. Litig.*, No. 14-cv-5037-RA (S.D.N.Y.); *Lewy v. Skypeople Fruit Juice, Inc.*, 11-cv-2700 (S.D.N.Y. 2011); *Perry v. Duoyuan Printing, Inc.*¸10-cv-07235 (S.D.N.Y.); *Munoz v. China Expert Tech., Inc.*, 07-cv-10531 (S.D.N.Y.); *In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016).

[14] *See, e.g., Christine Asia Co. Ltd. v. Alibaba Group Holding, Ltd.*, No. 15-md-2631 (S.D.N.Y.); *Menaldi v. Och-Ziff Capital Management Group LLC*, No. 14-CV-3251 (S.D.N.Y.); *Tapia-Matos v. Caesarstone Sdot-Yam Ltd.*, No. 15-cv-07726 (S.D.N.Y.) *Munoz v. China Expert Technology, Inc.*, Case No. 07-CV-10531 (S.D.N.Y.); *In re IDreamSky Technology Limited Securities Litigation*, No. 15-cv-2514 (S.D.N.Y.); *Hayes v. Magnachip Semiconductor Corp.*, No. 12-CV-1160-JST (N.D. Cal.).

counsel). "[N]otwithstanding this formidable opposition, Class Counsel was able to develop Plaintiffs' case so as to resolve the litigation on terms favorably to the Class." *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *49. The fact that Class Counsel achieved the Settlement for the Class in the face of high-quality legal opposition further evidences the quality of Class Counsel's efforts. *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010) ("The quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance.")

### 4. The Requested Fee in Relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *In re Comverse Tech., Inc.*, No. 06-CV-1825 (NGG)(RER), 2010 U.S. Dist. LEXIS 63342, at *9 (E.D.N.Y. June 23, 2010), *see also Alaska Electrical Pension Fund*, 2018 WL 6250657 ("to determine what an appropriate range of fees in relation to the settlement might be, the Court begins not with lead counsel's proposal, but by assessing the percentages awarded to class counsel in comparable cases in this market."). Under the percentage-of-fund approach, Class Counsel's fee request of thirty percent of the Settlement Fund Net of Expenses is fair and reasonable for litigation of this kind and wholly consistent with the range of percentages that courts in this Circuit have awarded in similar securities class-action and complex litigation settlements of this size. *Landmen Partners Inc. v. The Blackstone Grp. L.P.*, No. 08-CV-03601 (S.D.N.Y. filed Apr. 15, 2008) Dkt. No. 191 (awarding 33.33% of $85 million *gross* settlement fund and $1,047,005.77 in expenses) (Dkt. No. 183); *Anwar v. Fairfield Greenwich Ltd. Group* (S.D.N.Y., 1:09-cv-00118) Dkt. No. 1457 (awarding 30% of $125 million *gross* settlement fund and $4,438,320 in expenses); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y.

2009) (33% of $510 million settlement net of $7.5 million in expenses); *In re Busporine Antitrust Litig.*, No. 01-1410 (S.D.N.Y. Apr. 11 2003) (33.3% of $220 million *gross* settlement fund).[15]

Additionally, empirical research shows that the fee request of 30% is well within the range of percentages awarded in class actions nationwide or in the Second Circuit and Southern District of New York. In an empirical study that looked at every class action settlement approved by a federal court between 2006 and 2007, the most common fee awards using the percentage method were 25%, 30% and 33%, with a mean award of 25.4% and a median award of 25%.[16]   In an

---

[15] Courts outside this Circuit have approved similar, if not higher percentages in comparable and even larger settlements. *See, e.g., City of Pontiac General Employees' Ret. Sys. v. Wal-Mart Stores, Inc. et al.*, No. 12-cv-05162, ECF No. 458 (W.D. Ark. 2019) (awarding 30% of $160 million gross settlement); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 U.S. Dist. LEXIS 192706 (S.D. Fla. Nov. 9, 2018) (awarding 33.33% of $100 million gross settlement fund); *Sweetwater Valley Farm, Inc. v. Dean Foods Co. (In re Se. Milk Antitrust Litig.)*, No. 2:08-MD-1000, 2018 U.S. Dist. LEXIS 131855 (E.D. Tenn. July 11, 2018) (awarding 33.33% of $140 million gross settlement fund); *In re Urethane Antitrust Litig.*, No. MDL No. 1616, 2016 U.S. Dist. LEXIS 99839 (D. Kan. July 29, 2016) (awarding 33.33% of $835 million settlement); *Local 703 I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 2:10-cv-02847-KOB, 2015 U.S. Dist. LEXIS 130542 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million gross settlement fund); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 23482 (N.D. Ohio Feb. 26, 2015) (awarding 33.33% of $147.8 million gross settlement fund); *Standard Iron Works v. Arcelormittal, et al.*, No. 08-cv-5214, ECF No. 539 (N.D. Ill. 2014) (awarding 33% of $163.9 million gross settlement fund); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318 RDB, 2013 WL 6577029 (D. Md. Dec. 13, 2013) (awarding 33.33% of $163.5 million gross settlement fund); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739 (E.D. Pa. 2013) (awarding 33.33% of $150 million gross settlement fund); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013) (awarding 33.33% of $158.6 million gross settlement fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-MD-01827-SI, 2011 U.S. Dist. LEXIS 154287 (N.D. Cal. Dec. 27, 2011) (awarding 30% of $405 million gross settlement fund); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340-SLR, 2009 U.S. Dist. LEXIS 133251 (D. Del. Apr. 23, 2009) (awarding 33.33% of $250 million gross settlement fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding 31.33% of $1.075 billion gross settlement fund); *In re Prison Realty Sec. Litig.*, No. 3:99-cv-00458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001) (awarding 30% of $104 million gross settlement fund); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) (awarding 34% of $359.4 million gross settlement fund); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) (awarding 30% of $111 million gross settlement fund).

[16] *See An Empirical Study of Class Action Settlements and their Fee Awards*, Brian T. Fitzpatrick, 7 J. EMPIRICAL L. STUD. 811, 833 (2010)

empirical study that looked at class action settlements between 2009 and 2013, of 78 class actions settlements in the Southern District of New York between 2009 and 2013, the mean and median fee percentages awarded were 27% and 31%, respectively.[17] In the Second Circuit overall, of the 116 class actions settlements between 2009 and 2013 the mean fee was 28% and the median fee was 31%.[18]

### 5.   Public Policy Considerations: Private Securities Suits Are an "Essential Supplement" to Criminal Prosecution and Civil Enforcement

Public policy favors granting counsel fees sufficient to reward counsel for bringing securities class actions and to encourage them to bring additional such actions. *In re Worldcom, Inc. Sec. Litig.*, 388 Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). The "essential supplement" of private securities enforcement depends on Courts awarding ample common-fund attorneys' fees to Counsel who take on serious risks and achieve substantial results.

This Court noted in the *Bank of America* case that the Second Circuit has endorsed a sliding-scale approach in mega-fund cases, in which the percentage fee declines as the settlement amount increases so to avoid economies of scale causing windfalls. *Alaska Elec. Pension Fund v. Bank of America Corp.*, 2018 WL6250567, at *2-3 (*citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122–23 (2d Cir. 2005)). While this court awarded a 26% fee in *Bank of America*, that settlement of $504.5 million is nearly 5 times larger than the settlement in this case. *Id.* at *1. The $110 million settlement amount is at the absolute bottom of the range of mega-funds.

---

[17] *See* Theodore Eisenberg et. al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 950 Table 2 (2017)
[18] *Id.* at 951 Table 3.

Moreover, here Counsels' lodestar multiplier is only 1.4. Joint Decl. ¶108. The mean lodestar multiplier is 1.93 in the Southern District of New York for all case types and 1.79 nationally for securities cases,[19] evidencing that a 30% fee will not cause a windfall here.[20]

Here, the requested fee of $32,205,398.31, plus accrued interest, is consistent with the policy to incentivize well-qualified plaintiffs' counsel to prosecute federal-securities-law actions.

### 6. The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method

In selecting an appropriate fee award, the Supreme Court recognizes that a fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of thirty percent to forty percent of the gross recovery. *Blum v. Stenson*, 465 U.S. 886, 903 (1984) ("In tort suits, an attorney might receive one third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). A RAND study of federal lawsuits found that, of the cases in which contingent fees were paid, the percentage was 33% over half the time, less than 33% about a quarter of the time, and more than 33% in the remainder.[21] Plainly, if one takes the private market in conventional contingent fee representations as a guide, one must set the fee above 25%.

As this Court stated, in "assessing the percentages awarded to class counsel in comparable cases in this market"[22] the compensation requested here is within the range of percentage fee

---

[19] 92 N.Y.U. L. Rev. 937, 965 Table 12.

[20] *Id.* at Table 13.

[21] *See* Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L.Q. 739, 760 (2002) (summarizing data reported in James S. Kakalik et al., An Evaluation of Judicial Case Management Under the Civil Justice Reform Act (1996)).

[22] *Alaska Electrical Pension Fund*, 2018 WL 6250657, at *2.

awards within the Second Circuit, taking into account the size of the settlement. *In re Amaranth Nat. Gas Commodities Litig.,* 2012 U.S. Dist. LEXIS 82599, at *6 (awarding 30% of $77.1 million fund); *Anwar v. Fairfield Greenwich Ltd. Group* (S.D.N.Y., 1:09-cv-00118) Dkt. No. 1457 (awarding 30% of $125 million settlement fund); *New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc et al*. No. 1:08-cv-05310-DAB-HBP (S.D.N.Y. March 8, 2019), Dkt. No. 320 (granting fees of 28% of $165 million settlement*); In re Busporine Antitrust Litig.*, No. 01-1410 (S.D.N.Y. Apr. 11 2003) (awarding 33.3% of $220 million settlement) *In re Initial Public Offering Securities Litigation*, 671 F. Supp. 2d at 516 (awarding plaintiffs' counsel one-third of the settlement fund of $510 million).

This Court may also consider whether the requested fee determined under the percentage approach is consistent with an award that would result under the lodestar/multiplier approach. *In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *40 (S.D.N.Y. Oct. 25, 2006) (describing this second analysis); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002). While percentage fee awards may decline as the amount of the settlement increases, the lodestar multiplier typically increases with the settlement amount.[23]

As set forth in Joint Declaration, Ex. 2 (Rosen Decl.) and Ex. 3 (Wernke Decl.), counsel expended 44,359.52 hours for a total lodestar of $22,939,144.25 in litigating this Action.[24] Joint

---

[23] Eisenberg, Miller & Germano, *Attorneys Fees in Class Actions: 2009-2013*, at 966.

[24] In computing the lodestar, the hourly billing rate to be applied is the "market rate"—the hourly rate that is normally charged in the community where counsel practices. *See, e.g.*, *Blum*, 465 U.S. at 895; *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) ("market standards should prevail"); *Matter of Continental Illinois Securities Litigation*, 962 F.2d at 568 ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order," holding that district court committed legal error in placing "a ceiling of $175 on the hourly rates of all lawyers for the class, including lawyers whose regular billing rates were almost twice as high"); *Lindy Bros. Builders of Phila. v. Am. Radiator & Standard Sanitary Corp.*,

Decl. ¶¶108-09. Accordingly, the lodestar multiplier is 1.40.[25] *Id.* This multiplier is in the lower

end of lodestar multipliers approved by courts in the Second Circuit in securities class actions and

other complex litigation, which further demonstrates the reasonableness of the requested fee.

Indeed, lodestar multipliers of nearly five have even been deemed common by courts in this

District. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, *17

(S.D.N.Y. July 27, 2007) (citing cases); *see also Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405

(CM), 2015 U.S. Dist. LEXIS 121574, at *61-62 (S.D.N.Y. Sept. 9, 2015) (approving 4.87

multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) (noting in

contingency litigation, "lodestar multiples of over four are routinely awarded"); *In re Elan Sec.

Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (approving multiplier of 3.47 when counsel

achieved an early settlement).

Empirical data supports that the lodestar multiplier here is in the lower range of multipliers

in comparable settlements. First, of class action settlements in the Second Circuit between 2009

and 2013 the mean lodestar multiplier was 1.93.[26] For securities class action settlements

(regardless of circuit) between 2009 and 2013 the mean lodestar multiplier was 1.79.[27] Moreover,

as recoveries grow larger, so do lodestar multipliers.  For recoveries in excess of $67.5 million,

---

487 F.2d 161, 167 (3d Cir. 1973) ("value of an attorney's time generally is reflected in his normal
billing rate").

[25] This time does not include time that will be expended supervising the claims administrator
throughout the claims review process (nor will any further compensation be sought for such time).
*In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017) (recognizing multiplier
does not "reflect any work" to be done after the order).

[26] Eisenberg, Miller & Germano, *Attorneys Fees in Class Actions: 2009-2013*, at 965 Table 12
A. (mean multiplier by circuit).

[27] Eisenberg, Miller & Germano, *Attorneys Fees in Class Actions: 2009-2013*, at 965 Table 12
A. (mean multiplier by case category).

the average multiplier for class action settlements between 2009 and 2013 was 2.72.[28]   Here, despite the fact that the settlement is above $67.5, the lodestar multiplier is in line with settlements of a much smaller size,[29] demonstrating if the Court awards Class Counsel's fee request Class Counsel will not be receiving the type of premium on their fees normally associated with larger settlement amounts.

Specifically, courts routinely award similar percentages in fees for similarly sized settlements with higher multipliers. *E.g.*, *Schuh v. HCA Holdings, Inc*. No. 3:11-cv-01033 (M.D. Tenn.) Dkt. Nos. 555-5, 555-6, 563 (awarded 30% of $215 million settlement fund where lodestar multiplier was 4.3); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340-SLR, 2009 U.S. Dist. LEXIS 133251 (D. Del. Apr. 23, 2009) (awarding 33.33% of $250 million settlement where lodestar multiplier was 3.93 (*see* Dkt No. 531)); *In re Ikon Office Solutions, Inc., Securities Litigation*, 194 F.R.D. 166 (awarding 30% of $111 million settlement where lodestar multiplier was 2.7); *Local 703 I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 2:10-cv-02847-KOB, 2015 U.S. Dist. LEXIS 130542 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million settlement where lodestar multiplier was 2.6 (Dkt 297)); *Landmen Partners Inc. v. The Blackstone Grp. L.P.*, No. 08-CV-03601 (S.D.N.Y. filed Apr. 15, 2008) Dkt. No. 191 (awarding 33.33% of $85 million settlement where lodestar multiplier was 2.06 (Dkt. No. 183)); *In re Rayonier Inc. Securities Litigation* (M.D. Fla., 3:14-cv-01395) Dkt. 175 (Oct. 5, 2017) (awarding 30% of $73 million settlement where lodestar multiplier was 2.03); *In re Se. Milk*

---

[28] Eisenberg, Miller & Germano, *Attorneys Fees in Class Actions: 2009-2013*, at 967 Table 13. (mean, median and standard deviation of multiplier, controlling for class recovery amount, 2009-2013).

[29] For example, for 2009-2013 class action settlements with recoveries of between $3.9 and $6.5 million the mean multiplier was 1.37.  For 2009 class action settlements with recoveries of between $6.5 and $12 million the mean multiplier was 1.48.  Eisenberg, Miller & Germano, *Attorneys Fees in Class Actions: 2009-2013*, at 967 Table 13.

*Antitrust Litig.*, No. 2:07-CV-208, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013) (awarding 33.33% of $158.6 million settlement where lodestar multiplier was 1.9 (Dkt. No. 1350)); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739 (E.D. Pa. 2013) (awarding 33.33% of $150 million settlement where lodestar multiplier was 2.99 lodestar multiplier).

In sum, the thirty percent fee award (net of expenses) requested is well within the range of reasonableness of fees granted in comparable complex actions under both the percentage method and the lodestar cross-check.

### 7.    Class Counsel Should Be Reimbursed for $2,603,672.29 in Litigation Expenses, Which is Below the Already-Requested $2,800,000 Limit

Class Counsel further request that in addition to awarding reasonable attorneys' fees, the Court grant their request for reimbursement of $2,603,672.29 in litigation costs and expenses incurred in connection with the prosecution of this Action. Joint Decl. ¶110. Courts routinely hold that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by a paying client. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *In re MetLife Demutualization Litigation*, 689 F. Supp. 2d at 363 ("In connection with settlement of a class action, counsel's reasonable out-of-pocket expense are properly awarded."); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *56 (S.D.N.Y. Jul. 27, 2007) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course.").

The relatively significant expense items included, for example, expert fees, deposition fees, mediation fees, investigator fees, discovery database fees, travel expenses and online legal research, and are further itemized in the accompanying Rosen and Wernke Declarations. Joint Decl., Exs. 2, 3. These expenses were necessary and reasonable for the prosecution and resolution of this Action and are of the type that are routinely approved. *Alaska Electrical Pension Fund*,

2018 WL 6250657, at *3 (reimbursing expenses in the amount of $18,429,687.63, finding "that amount, although sizeable, was reasonable and necessary given the nature and complexity of this case."); *In re MetLife Demutualization Litigation*, 689 F. Supp. 2d at 364 (approving $4.5 million reimbursement of "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred -- which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review -- are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

### D.    The Proposed Plaintiffs' Awards Are Reasonable

The PSLRA expressly permits Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]."  15 U.S.C. §78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011); *see also Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); In accordance with the PSLRA and the inherent powers of the Court, courts routinely grant reimbursement of substantial sums to

lead plaintiffs and class representative. *Alaska Electrical Pension Fund*, 2018 WL 6250657, at \*4 (awarding $50,000 to six named plaintiffs and $100,000 to two of them, in addition to out-of-pocket expenses for three of them finding that "the considerable effort expended by the named Plaintiffs to assist in the litigation renders the inventive awards requested by lead counsel appropriate" and that "in the aggregate they amount to a miniscule portion of the settlement fund."); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013) (awarding $259,610 to one plaintiff and $125,688 to a second plaintiff), *aff'd*, 772 F.3d 125 (2d Cir. 2014); *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (awarding $130,323 to sole lead plaintiff).

Here, Plaintiffs at all times adequately represented the Class and should receive $15,000 each ($45,000 total) for their efforts. Plaintiffs regularly communicated with Class Counsel regarding the posture and progress of the case, reviewed filings and transcripts, reviewed and/or discussed all significant decisions in the Action; (e) produced documents in response to Defendants' discovery requests; (f) traveled and sat for depositions; (g) conferred with Class Counsel about litigation and settlement strategies and  (g) provided authorization to Class Counsel for the range to be sought in the settlement negotiations. *See* Joint Decl., Ex. 4 (Koopmann Decl.), Ex. 5 (Kidd  Decl.), Ex. 6 (Pirnk Decl.).

Class Counsel submit that the relatively modest request of an award in the amount of $45,000 total to compensate the Class Representatives in this Action for their time and service to the Class, as well as to function as an incentive to serve as class representative, is reasonable.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Class Counsel's application for an award of attorneys' fees, reimbursement of reasonable litigation expenses, and awards to the Plaintiffs.

Dated: August 1, 2019                                              Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email:  jalieberman@pomlaw.com
mjwernke@pomlaw.com
             vvmontenegro@pomlaw.com
-and-

Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen
Phillip Kim
Sara Fuks
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email:  lrosen@rosenlegal.com
pkim@rosenlegal.com
             sfuks@rosenlegal.com

*Co-Class Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Email:  peretz@bgandg.com

*Additional Counsel for Plaintiffs*