**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
GARY KOOPMANN, TIMOTHY KIDD and
VICTOR PIRNIK, Individually and on Behalf
of All Others Similarly Situated,

               Plaintiff(s),

               v.

FIAT CHRYSLER AUTOMOBILES N.V.,
FCA US, LLC, RONALD ISELI AND
ALESSANDRO BALDI, AS CO-
EXECUTORS FOR THE ESTATE OF
SERGIO MARCHIONNE, SCOTT
KUNSELMAN, MICHAEL DAHL, STEVE
MAZURE and ROBERT E. LEE,

               Defendants.
---------------------------------------------------------------- X

Case No. 1: 15-cv-07199-JMF

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUNDS**

**POMERANTZ LLP**
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
       mjwernke@pomlaw.com
       vvmontenegro@pomlaw.com
-and-

Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Sara Fuks
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile:  (212) 202-3827
Email:  lrosen@rosenlegal.com
       pkim@rosenlegal.com
       sfuks@rosenlegal.com

*Co-Class Counsel for Plaintiffs*

**TABLE OF CONTENTS**

**Page(s)**

| | | |
|---|---|---|
| I. | INTRODUCTION .................................................................................................... | 1 |
| II. | DETERMINATION OF AUTHORIZED CLAIMS ...................................................... | 1 |
| | A. Deficient and Ineligible Claims ..................................................................... | 1 |
| | B. Properly Documented Claims ....................................................................... | 2 |
| | C. Disputed Claim 1 ........................................................................................... | 3 |
| | D. Disputed Claim 2 ........................................................................................... | 3 |
| | E. Disputed Claim 3 ........................................................................................... | 4 |
| | F. Disputed Claim 4 ........................................................................................... | 5 |
| | G. Disputed Claim 5 ........................................................................................... | 5 |
| | H. Disputed Claim 6 ........................................................................................... | 6 |
| III. | DISTRIBUTION OF THE NET SETTLEMENT FUND ........................................... | 6 |
| IV. | CONCLUSION ........................................................................................................ | 7 |

i

## **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
    689 F. Supp. 1250 (E.D.N.Y. 1988) .......................................................................................... 2

*In re Crazy Eddie Sec. Litig.*,
    906 F. Supp. 840 (E.D.N.Y. 1995) ............................................................................................ 3

Class Representatives Gary Koopmann, Timothy Kidd, and Victor Pirnik (collectively, "Plaintiffs"), on behalf of themselves and the Class Members in the above captioned Action, respectfully submit this memorandum of law in support of their support of their Motion for Distribution of Class Action Settlement Funds.[1]

## I. INTRODUCTION

On September 5, 2019, the Court entered the Judgment Approving Class Action Settlement. (Dkt. No. 369). Class Counsel has been advised by the court-appointed Class Action Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), that it has completed processing proofs of claim submitted by those persons who responded to the Notice and has determined which of those persons are Authorized Claimants. *See* Declaration of Nicholas Schmidt Regarding the Results of the Claims Administration Process (the "Schmidt Declaration") ¶3. All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants. *See* Stipulation at p. 31-38, ¶¶18-29. Thus, Class Counsel requests that the Court authorize the distribution of the Net Settlement Fund to the Authorized Claimants.

## II. DETERMINATION OF AUTHORIZED CLAIMS

### A. Deficient and Ineligible Claims

Pursuant to the Preliminary Approval Order (Dkt. No. 356) all claims were to be submitted to the Claims Administrator postmarked no later than one hundred and twenty days after the Notice Date (*i.e.* October 3, 2019). ¶8(a). The Claims Administrator has finalized its determination of which claims are authorized and which are ineligible. See Schmidt Declaration ¶9. Epiq identified 3,139 inadequately documented paper claims and 10,018 deficient or ineligible electronic claims.

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation") filed with the Court on April 5, 2019. ECF No. 355.

Schmidt Declaration ¶¶17, 20(a). When paper claims were inadequately documented, Epiq sent claimants deficiency notices advising them of the nature of their inadequacy and providing them an opportunity to cure. Schmidt Declaration ¶18. When electronic claims were inadequately documented, Epiq sent claimants Transaction Reports identifying the individual transactions and claims that were found to be deficient or ineligible. ¶20.

Epiq identified 12,410 claims that it has recommended for complete rejection because they were either ineligible, wholly deficient, or had no Recognized Loss. Schmidt Declaration ¶37. Such claimants were sent rejection notices advising them of Epiq's determination. Schmidt Declaration ¶¶17-21. To date, six of these 12,410 ineligible claimants object to or contest Epiq's determination. Schmidt Declaration ¶24.

### B. Properly Documented Claims

Of the 19,387 Proofs of Claims received by Epiq, Epiq has determined that 6,279 are acceptable in whole and 698 are acceptable in part. Schmidt Declaration ¶37.

Through May 21, 2020, Epiq identified 6,976 properly documented valid claims. These valid claims represent total Recognized Losses of $250,227,622.80. Schmidt Declaration ¶40. Of these valid claims, 343 were filed late. Schmidt Declaration ¶31. The Court should accept all late but otherwise valid claims postmarked after August 28, 2019, but received by Epiq on or before February 16, 2019, because the untimely filed claims have not caused significant delay to the distribution of the Net Settlement Fund to the Class, or otherwise prejudiced any Authorized Claimant. *Id.*; *see In re Agent Orange Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative

costs need be incurred to allow the late claims and opt-out claims."); *see also In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (court allowing late claims postmarked within one month and four days of original deadline to participate in the distribution of settlement funds). Plaintiffs respectfully request that the Court approve the 6,976 properly documented claims as listed in Exhibits C-1 and C-2 of the Schmidt Declaration.

### C. Disputed Claim 1

The claimant who submitted Disputed Claim 1 disagrees with Epiq's administrative determination concerning his claim. Schmidt Declaration ¶25; Ex. B-1. Section iv (b) of the Plan of Allocation states that for shares held through the close of trading on August 21, 2017, the recognized loss is the lesser of (a) the price inflation on the date of purchase as appears in Table 1($2.20) or the purchase price paid ($6.42) minus the average closing price for FCA stock during the 90-Day Lookback Period ($11.41). If this calculation results in a negative number, the recognized loss per share is $0. *See Notice* (Dkt. No. 355-2), at p. 26-28; Schmidt Declaration ¶25. Consistent with the Plan of Allocation, the Recognized Loss is the zero for Disputed Claim 1. *Id.* Disputed Claim 1 purchased a total of 300 FCA shares during the Class Period for $6.42 a share. Schmidt Declaration ¶25. Hence, the "losses" associated with those 300 shares result are zero. Accordingly, Epiq determined that Disputed Claim 1 was ineligible. *Id.* Plaintiffs respectfully request that the Court approve Epiq's administrative determination concerning Disputed Claim 1.

### D. Disputed Claim 2

The claimant who submitted Disputed Claim 2 disagrees with Epiq's administrative determination concerning his claim. Schmidt Declaration ¶26; Ex. B-2. Section iv (b) of the Plan of Allocation states that for shares purchased during the Class Period and held through the close of trading on August 21, 2017, the recognized loss is the lesser of (a) the price inflation on the date of purchase as appears in Table 1 ($0.42) or the purchase price paid ($9.832) minus the average

3

closing price for FCA stock during the 90-Day Lookback Period ($11.41). *See Notice* (Dkt. No. 355-2), at p. 26-28. If this calculation results in a negative number, the recognized loss per share is $0. *See Notice* (Dkt. No. 355-2), at p. 26; Schmidt Declaration ¶26. Consistent with the Plan of Allocation, the Recognized Loss is the zero for Disputed Claim 2. *Id.* Disputed Claim 2 purchased a total of 80 FCA shares during the Class Period for prices ranging from $9.62 - $9.8320 a share, sold 25 FCA shares at $10.7052 per shares, and held 55 FCA shares on August 21, 2017. Schmidt Declaration ¶25. Since a Recognized Claim cannot be less than zero, the claim calculates to a Recognized Loss of zero under the Plan of Allocation. Accordingly, Epiq determined that Disputed Claim 2 was ineligible. *Id.* Plaintiffs respectfully request that the Court approve Epiq's administrative determination concerning Disputed Claim 2.

      **E.**      **Disputed Claim 3**

The claimant who submitted Disputed Claim 3 disagrees with Epiq's administrative determination concerning his claim. Schmidt Declaration ¶27; Ex. B-3. Disputed Claim 3 did not provide documentation evidencing a disposition of the shares during the Class Period. According to the claim form, Disputed Claim 3 purchased 500 FCA shares on December 11, 2014 at $11.52 per share, but held 0 FCA shares on August 21, 2017. *Id.* No documentation was provided that evidenced the disposition of those shares. Epiq mailed a Deficiency Notice to Disputed Claimant 3, but the claimant did not respond with evidence of the disposition of the 500 shares. *Id.* Epiq attempted to contact the claimant for further information but was unable to reach them. *Id.* Hence, Epiq was unable to calculate a Recognized Loss pursuant to the Plan of Allocation. Accordingly, Epiq determined that Disputed Claim 3 was ineligible. *Id.* Plaintiffs respectfully request that the Court approve Epiq's administrative determination concerning Disputed Claim 3.

F.     **Disputed Claim 4**

The claimant who submitted Disputed Claim 4 disagrees with Epiq's administrative determination concerning his claim. Schmidt Declaration ¶28; Ex. B-4. Disputed Claim 4 did not provide supporting documentation for several transactions during the Class Period. According to the claim form, Disputed Claim 4 purchased 1000 FCA shares on October 31, 2016 at $7.29 per share, 500 FCA shares on December 9, 2016 at $8.379 per share, 1000 FCA shares on December 16, 2016 at $8.77 per share and a 1000 FCA shares on February 14, 2017 at $11.43 per share. The claim form also indicates a sale of 500 FCA shares on December 15, 2016 at $8.76 per share holdings, a sale of 2000 FCA shares on January 12, 2017 at $9.55 per share and a sale of 1000 FCA shares on April 4, 2017 at $10.44 per share, with 0 shares of FCA common stock held as of August 21, 2017. *Id.* No documentation was provided at the time of submission. Epiq mailed a Deficiency Notice to Disputed Claimant 4, and the claimant responded by providing supporting documents for all transactions except the February 14, 2017 purchase and the April 4, 2017 sale. After processing the response, Epiq sent a new Deficiency Notice and requested the remaining documentation. Epiq has contained to attempt the claimant but been unable to reach them. Hence, Epiq was unable to calculate a Recognized Loss pursuant to the Plan of Allocation. Accordingly, Epiq determined that Disputed Claim 4 was partially ineligible. *Id.* Plaintiffs respectfully request that the Court approve Epiq's administrative determination concerning Disputed Claim 4.

G.     **Disputed Claim 5**

The claimant who submitted Disputed Claim 5 disagrees with Epiq's administrative determination concerning his claim. Schmidt Declaration ¶29; Ex. B-5. Disputed Claim 5 did not make any eligible purchases during the Class Period. According to the claim form, the claimant held 315 FCA shares at the beginning of the Class Period on October 12, 2014, and held with 315 shares of FCA common stock held as of August 21, 2017. *Id.* Accordingly, Epiq mailed a

5

Deficiency Notice to Disputed Claimant 5, and the claimant responded by indicating that the common shares were acquired as part of a merger. *Id.* With no purchases during the Class Period, the claimant does not have a Recognized Loss. Accordingly, Epiq determined that Disputed Claim 5 was ineligible. *Id.* Plaintiffs respectfully request that the Court approve Epiq's administrative determination concerning Disputed Claim 5.

### H. Disputed Claim 6

Disputed Claim 6 disagrees with Epiq's administrative determination concerning his claim. Schmidt Declaration ¶30; Ex. B-6. Disputed Claim 6 did not provide adequate documentation for the purchases made during the Class Period. According to the claim form, Disputed Claim 6 purchased 600 FCA shares on February 20, 2015 at $14.99 per share, 200 FCA shares on February 26, 2015at $15.44 per share, 300 FCA shares on March 2, 2015 at $15.68 per share, 120 FCA on September 25, 2015 at $13.16 per share and a 300 FCA shares on November 18, 2015 at $13.44 per share with 1,520 shares of FCA common stock held as of August 21, 2017. *Id.* No supporting documentation was provided. Epiq mailed a Deficiency Notice to Disputed Claimant 6. The claimant responded with documentation concerning the 1,520 held shares on August 21, 2017, but not for any purchases. *Id.* Epiq attempted to contact the claimant for further information but was unable to reach them. *Id.* Accordingly, Epiq determined that Disputed Claim 3 was ineligible. *Id.* Plaintiffs respectfully request that the Court approve Epiq's administrative determination concerning Disputed Claim 6.

## III. DISTRIBUTION OF THE NET SETTLEMENT FUND

Pursuant to the Plan of Allocation authorized by the Court's Final Judgment, "[t]he Claims Administrator shall administer and distribute the Net Settlement Fund to the extent that it is equitably and economically feasible." *See* Notice, (Dkt. No. 355-2) at p. 24.

6

If there is any balance remaining in the Net Settlement Fund after three (3) months from the date of distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible: (a) first, pay any amounts mistakenly omitted from the initial disbursement; (b) second, pay any additional settlement administration fees, costs, and expenses, including those of Class Counsel as may be approved by the Court; and (c) finally, make a second distribution to claimants who cashed their checks from the initial distribution and who would receive at least $10.00. *See* Notice, (Dkt. No. 355-2) at p. 29-30.

### IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court decide the within motion on the papers and approve and enter the [Proposed] Order concerning distribution of the Net Settlement Fund.

Dated: November 17, 2020               Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email:  jalieberman@pomlaw.com
mjwernke@pomlaw.com
        vvmontenegro@pomlaw.com
-and-

7

                Patrick V. Dahlstrom
                10 South LaSalle Street, Suite 3505
                Chicago, Illinois 60603
                Telephone: (312) 377-1181
                Facsimile: (312) 377-1184
                Email:  pdahlstrom@pomlaw.com

                **THE ROSEN LAW FIRM, P.A.**
                Laurence M. Rosen
                Phillip Kim
                Sara Fuks
                275 Madison Avenue, 40th Floor
                New York, New York 10016
                Telephone: (212) 686-1060
                Facsimile: (212) 202-3827
                Email:  lrosen@rosenlegal.com
                         pkim@rosenlegal.com
                         sfuks@rosenlegal.com

                *Co-Class Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of November, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

                                      */s/* *DRAFT*_____
                                      Jeremy A. Lieberman